| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & EmChristopher Celentino (131688) , Yossina M. Lissebeck (201654) | FOR COURT USE ONLY |
|---|---|
| Christopher B. Ghio (259094); Jacob R. Bothamley (319457) | |
| DINSMORE & SHOHL LLP | |
| 655 West Broadway, Suite 800, San Diego, CA 92101 - 619.400.0500 | |
| Christopher.celentino@dinsmore.com;  Yosina.lissebeck@dinsmore.com | |
| Christopher.ghio@dinsmore.com;  Jacob.bothamley@dinsmore.com | |
| *Attorney for LPG Liquidation Trust* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA

| In re:<br><br>The Litigation Practice Group P.C.<br><br><div align="right">Debtor(s).</div> | CASE NO.:  8:23-bk-10571-SC<br><br>CHAPTER:  11<br><br>ADVERSARY NUMBER: 8:25-ap-01190-SC |
|---|---|
| Richard A. Marshack, Trustee of the LPG Liquidation Trust,<br><br><div align="right">Plaintiff(s)</div><br>Versus<br><br>Laurent Reiss, a Monaco resident; MCA Fund ADV Inc., a New York Corporation; LDR International Ltd., A British Virgin Islands Limited liability company, and DOES 1-10, inclusive | **ANOTHER<br>SUMMONS AND NOTICE OF STATUS<br>CONFERENCE IN ADVERSARY<br>PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is **30 days after service of this summons.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| Date: | **March 19, 2026** |
| Time: | **1:30 p.m.** |
| Hearing Judge: | **Scott C Clarkson** |
| Location: | **411 W Fourth St., Crtrm 5C, Santa Ana, CA 92701** |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference. All parties must read and comply with the rule, even if you are representing yourself.** You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date of Issuance of Another Summons and Notice of Status Conference in Adversary Proceeding: August 27, 2025

By: _____ "/s/" Nickie Bolte _Nickie Bolte_

Deputy Clerk



---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                    Page 2                    **F 7004-1.SUMMONS.ADV.PROC**

## ATTACHMENT A
### Names of plaintiffs and defendants

| Plaintiff(s): | Defendant(s): |
|---|---|
| Richard A. Marshack | Laurent Reiss<br><br> MCA Fund ADV Inc.<br>LDR International Ltd. |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## ATTACHMENT A

# UNITED STATES BANKRUPTCY COURT

### Early meeting of Counsel and Status Conference Instructions

1. **Service of Order.** A copy of this Order re: Rule 26(f) Meeting, Initial Disclosures, and Scheduling Conference must be served with the summons and complaint. The proof of service of the summons and complaint must indicate that a copy of this order was served therewith.

2. **Local Bankruptcy Rule 7026-1.** Compliance with Local Bankruptcy Rule 7026-1 ("LBR 7026-1") is required in ALL adversary proceedings.

3. **Rule 26(f) Meeting.** Unless all defendants default, the parties must meet and confer pursuant to Rule 26(f) of the Federal Rules of Civil Procedure ("Rule 26(f) Meeting") at least 21 days before the status conference date set forth in the summons. **The status conference set forth in the summons shall also serve as the initial Rule 16(b) Scheduling Conference in this adversary proceeding.**

The parties are jointly responsible for arranging and attending the Rule 26(f) Meeting, which may be conducted in person or by telephone. During the Rule 26(f) Meeting, the parties must, at a minimum: (a) discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case; (b) make or arrange for the initial disclosures required by Rule 26(a)(1); and (c) develop a proposed discovery plan. The discussion of claims and defenses must be substantive and meaningful. The parties are directed to approach the Rule 26(f) Meeting cooperatively and in good faith.

4. **Initial Disclosures.** Rule 26(a)(1) states that a party must, without awaiting discovery request, provide to other parties:

   a. The name and, if known, the address and telephone number for each individual likely to have discoverable information - along with the subjects of that

information - that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

b.  A copy of - or a description by category and location - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

c.  A computation of each category of damages claimed by the disclosing party - who must also make available for inspection and copying under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

d.  For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

F.R.Civ.P.26(a)(1)(A). Rule 26(a)(1) requires a party to make its initial disclosures based on the information that is reasonably available to it. A party is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

F.R.Civ.P.26(a)(1)(E).

5.  **Alternative Dispute Resolution ("ADR").** The parties must explore the feasibility of ADR to reach a settlement or early resolution of the adversary proceeding. The specific reasons for any decision not to participate in a form of early ADR must be explained in the Joint Status Report. If the parties elect not to participate in an early ADR effort, the Court may nonetheless direct the parties to ADR before trial.

6.  **Discovery Plan.** At the Rule 26(f) Meeting, the parties must also discuss issues about preserving discoverable information and develop a proposed discovery plan. The discussion regarding discovery following the initial disclosures must address the relevance of the discovery

sought and the sequence and timing of such discovery, including whether the discovery will be conducted informally or formally. The deadlines in the discovery plan must be mutually agreeable, with a view to achieve resolution of the case with a minimum of expense and delay.

7. **Joint Status Report.** A status report must be filed within the time frames specified within LBR 7016-1(a)(2). The Joint Status Report must contain the information set forth in LBR 7016-1(a)(2), and a statement that the parties have completed the Rule 26(f) Meeting and made the initial disclosures required by Rule 26(a)(1). The Joint Status Report shall also serve as the written report of the Rule 26(f) Meeting. If Defendant(s) have not filed and served an answer to the Complaint, a Unilateral Status report is due seven (7) days prior to the first status conference hearing.

8. **Status Conference/Rule 16(b) Scheduling Conference.** At the Rule 16(b) Scheduling Conference, the Court will review the discovery plan set forth in the Joint Status Report and set appropriate deadlines.

Counsel representing any party in conjunction with the Rule 26(f) Meeting, Joint Status Report, and Rule 16(b) Scheduling Conference must be authorized to bind the party on all matters to be covered.

9. **Default.** If no response to the complaint is timely filed, plaintiff should request entry of default by the clerk <u>prior</u> to the status conference date set forth in the summons. F.R.Civ.P.55(a). Plaintiff may also request entry of a default judgment by filing and serving an appropriate motion. F.R.Civ.P.55(b)(2).

10. **Sanctions.** **Failure to comply with these instructions may subject the responsible party and/or counsel to sanctions, which may include dismissal of the adversary proceeding. The failure of either party to cooperate in the preparation of timely filing of a**

Joint Status Report or appear at the status conference may result in the imposition of

sanctions under LBR 7016-1(f) or (g).

11. <u>Joint Pre-Trial Order</u>.  Failure to timely file a Joint Pre-Trial order may subject the

responsible party and/or counsel to sanctions, which may include dismissal of the

adversary proceeding.  The failure of either party to cooperate in the preparation of timely

filing of a Joint Pre-Trial Conference or appear at the Joint Pre-Trial Conference may

result in the imposition of sanctions under LBR 7016-1(f) or (g).

Honorable Scott C. Clarkson
United States Bankruptcy Judge

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: ANOTHER SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1] and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:** On (date) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| Date | Printed Name | Signature |
|------|-------------|-----------|
|      |             |           |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016

**F 7004-1.SUMMONS.ADV.PROC**

Christopher Celentino (SBN 131688)
Yosina M. Lissebeck (SBN 201654)
Christopher B. Ghio (SBN 259094)
Jacob R. Bothamley (SBN 319457)
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101
Tel: (619) 400-0500
Fax: (619) 400-0501
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com
christopher.ghio@dinsmore.com
Jacob.bothamley@dinsmore.com

Attorneys for Richard A. Marshack,
Trustee of the LPG Liquidation Trust

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| The Litigation Practice Group P.C., | Case No. 8:23-bk-10571-SC |
| Debtor. | Adv. Proc. No. 8:25-ap-01190-SC |
| Richard A. Marshack, Trustee of the LPG Liquidation Trust, | **DECLARATION OF RICHARD MULLOT REGARDING SERVICE OF SUMMONS AND COMPLAINT IN MONACO** |
| Plaintiff, | |
| v. | |
| Laurent Reiss, a Monaco resident; MCA Fund ADV Inc., a New York Corporation; LDR International Ltd., a British Virgin Islands limited liability company; and DOES 1-10, inclusive, | |
| Defendants. | |

1

1    I, Richard Mullot, declare:

2    I am with the principal of the law firm Etude Mullot – Avocat-Défenseur, which is located

3    within the Principality of Monaco. I am practicing as a Monaco Attorney and a member of the

4    Monaco bar association since 1994, being several years a member of the Bar Board and served as the

5    Bar President from 2013 to 2015. I am acting as local counsel for the Plaintiff, Richard A. Marshack

6    ("Plaintiff") in the above captioned adversary proceeding and working closely with Plaintiff's main

7    counsel, Dinsmore & Shohl LLP. I make this declaration as a supplement to the proof of service of

8    the summons and complaint upon defendant, Laurent Reiss ("Reiss"). I know the following factual

9    representations from my personal knowledge unless otherwise stated. If called upon to testify, I

10   could and would competently do so.

11   On September 18, 2025, my office, instructed Maître Claire Notari esq., Court Baillif, to

12   serve the following documents on Reiss. The service was made to Reiss, at his home located at

13   Europa Residence – Place des Moulins in Monaco including :

14       1.   The Complaint [Adv. Dkt. 1];

15       2.   The Notice of Required Compliance With Federal Rule of Bankruptcy Procedure 7026

16          and Local Bankruptcy Rule 7026-1 [Adv. Dkt. 2];

17       3.   The Summons issued by this Court on August 27, 2025 [Adv. Dkt. 35].

18   A true and correct copy of the proof of service issued by the Court Baillif and registered with the

19   Monaco State service is attached to this declaration as **Exhibit 1**. For this Court's convenience, I

20   have also included a copy of the proof of service translated into English as **Exhibit 2**.

21   This service was made in accordance with the Monaco Civil procedure Code, and

22   particularly the article 148 which states : " *All legal documents will be served in person or at the*

23   *recipient's home, and if no address is known, at their residence. If the bailiff cannot find the*

24   *recipient at their home or residence, they will deliver the copy, in an envelope, to their spouse,*

25   *partner in a civil partnership agreement, or cohabitant in a cohabitation agreement, to family*

26   *members residing with them, to domestic staff, employees, or clerks. If none of these persons are*

27   *found, the bailiff will deliver the document to the mayor, who will endorse the original free of*

28

1 | *charge. The bailiff will record all relevant information on both the original and the copy. If the*

2 | *document is deposited at the town hall, the bailiff will notify the recipient by registered letter."*

3 | Therefore, I attest that proper service was made upon Reiss in accordance with the protocols

4 | authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents

5 | as set forth in Federal Rule of Civil Procedure 4(f)(1), and also in accordance with the rules of the

6 | Principality of Monaco governing service of judicial documents from the United States of America.

7 | I declare under penalty of perjury pursuant to the law of the United States of America and the

8 | Principality of Monaco that the forgoing is true to the best of my knowledge.

Date: *13 November 2025*

Richard Mullot

3

# EXHIBIT 1





**1 9 SEP. 2025**

ENREGISTRÉ à MONACO, le
F°/Bd **14.3**........Case.**4**:............
Reçu cinquante Euros

# SIGNIFICATION

L'AN DEUX MIL VINGT-CINQ ET LE *Dix - Huit*
DU MOIS DE SEPTEMBRE ;

         A la requête de **la Société de droit américain
en liquidation dénommée « THE LITIGATION PRACTICE GROUP
P.C. » (LPG)**, ayant son siège 17542 E. 17TH Street, Suite
100, Tustin, California 92780, - Etats-Unis d'Amérique,
représentée par Monsieur Richard A. Marshack, en sa
qualité de Syndic Liquidateur du LPG Litigation Trust,
domicilié et demeurant en cette qualité en ses bureaux,
Cabinet d'Avocats MARSHACK HAYS WOOD LLP - 870,
Roosevelt, Irvine, Californie 92620, Etats-Unis
d'Amérique,
         Représentée par par Me Christopher Celentino,
Me Jacob Bothamley, Me Yosina Lissebeck du Cabinet
d'avocats DINSMORE & SHOHL S.E.N.C.R.L. LLP – sis 655
West Broadway, Suite 800, San Diego, Californie 92101,
Etats-Unis d'Amérique,

         Elisant domicile en l'Etude de Maître Richard
MULLOT, Avocat-Défenseur près la Cour d'Appel de Monaco,
y demeurant 20, boulevard de Suisse,

*Je soussignée Claire NOTARI, Maître en droit,
Huissier près la Cour d'Appel de Monaco,
y demeurant, 17, boulevard Albert 1er*

**ACTE SIGNIFIÉ
PAR CLERC
ASSERMENTÉ**

         Ai signifié et en-tête de celle des présentes
donné à :

         **Monsieur Laurent REISS**, demeurant et
domicilié EUROPA RESIDENCE, Place des Moulins à MONACO,
où étant et parlant à : *Sa personne*

1

1/ une plainte, en langue anglaise
« ***TRUSTEE'S COMPLAINT*** », (89 pages), déposée par le
conseil de ma requérante devant le Juge près le Tribunal
des Faillites des Etats-Unis, District Central de
Californie – Division de Santa Ana, le 18 mars 2025,
enregistrée électroniquement par ladite Cour le 18 mars
2025, affaire n° 8:23-bk-10571-SC, et sa traduction en
langue française, et **ses sept annexes** en langue anglaise
et leur traduction en langue française,

2/ une assignation en langue anglaise
« ***ANOTHER SUMMONS AND NOTICE OF STATUS CONFERENCE IN
ADVERSARY PROCEEDING [LBR 7004-1]*** » (8 pages) par-devant
le Tribunal des Faillites des Etats-Unis, DISTRICT
CENTRAL DE CALIFORNIE – SANTA ANA, délivrée par ladite
Cour en date du 27 août 2025, et signée par le greffier
adjoint dans l'affaire n°8:23-bk-10571-SC, et sa
traduction en langue française, fixant la date de la
conférence de mise en état au :

**19 mars 2026 à 13h30,**

**devant le Juge près le Tribunal des Faillites
des Etats-Unis, DISTRICT CENTRAL DE
CALIFORNIE – SANTA ANA,
411W Fourth St., Crtrm 5C, Santa Ana,
CA 92701.**

Déclarant au requis que le délai de réponse
porté dans ladite assignation court à compter des
présentes,

2





**3/** un avis de conformité obligatoire avec la Règle 7026 de la Loi Fédérale, Règles de Procédure de faillite et la Règle 7026-1 de Règle de faillite locale, dénommé en langue anglaise **"Notice of Required Compliance with Rule 7026 of the Federal Rules of BANKRUPTCY Procedure and Rule 7026-1 of the Local Bankruptcy Rules for the Central District of California"** avec deux annexes(15 pages) relatif au litige opposant les parties devant le Tribunal des Faillites des Etats-Unis, DISTRICT CENTRAL DE CALIFORNIE – SANTA ANA, pendant devant l'Honorable Juge Scott C. CLARKSON, dans l'affaire n° 8:23-bk-10571-SC et l'affaire contradictoire N° 8:25-ap-01192-SC en date du 03 septembre 2025 et sa traduction en langue française,

Lui déclarant en outre que faute par lui d'adresser sa réponse ou comparaitre dans le délai imparti, il sera requis défaut à son encontre,

Sous toutes réserves et aux fins qu'il n'en ignore, je lui ai remis et laissé copie des présentes, étant et parlant comme devant.

COUT : SIX CENTS EUROS ( $T : 1,80$ )

CNotai

3

1  Christopher Celentino (State Bar No. 131688)
   Yosina M. Lissebeck (State Bar No. 201654)
2  Christopher B. Ghio (State Bar No. 259094)
3  **DINSMORE & SHOHL LLP**
   655 West Broadway, Ste 800
4  San Diego, CA 92101
   Telephone: 619.400.0500
5  Facsimile: 619.400.0501
   Christopher.Celentino@dinsmore.com
6  Yosina.Lissebeck@dinsmore.com
7  Christopher.Ghio@dinsmore.com

8  Matthew J. Stockl (State Bar No. 329366)
9  **DINSMORE & SHOHL LLP**
   550 South Hope Street, Ste 1765
10 Los Angeles, CA 90071
   Telephone: 213.335.7737
11 Facsimile: 213.335.7740
   Matthew.Stockl@dinsmore.com
12 Special Counsel to Richard A. Marshack,
13 Trustee of the LPG Liquidation Trust

14            **UNITED STAT[...]**

15   **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA [...]**

16 In re:                              | Case No.: 8:23-bk-10571-SC

17 The Litigation Practice Group P.C., | Adv. Proc. No. _____

18            Debtor.                  | Chapter 11

19 _____     | **TRUSTEE'S COMPLAINT FOR:**

20 Richard A. Marshack, Trustee of the LPG
   Liquidation Trust,                  | **(1) AVOIDANCE, RECOVERY, AND**
21                                     | **PRESERVATION OF 2-YEAR ACTUAL**
            Plaintiff,                 | **FRAUDULENT TRANSFERS;**
22
               v.                      | **(2) AVOIDANCE, RECOVERY, AND**
23                                     | **PRESERVATION OF 2-YEAR**
24 Laurent Reiss, a Monaco resident; MCA Fund | **CONSTRUCTIVE FRAUDULENT**
   ADV Inc., a New York Corporation; LDR      | **TRANSFERS;**
25 International Ltd., a British Virgin Islands limited
   liability company; and Does 1-10, inclusive, | **(3) AVOIDANCE, RECOVERY, AND**
26                                     | **PRESERVATION OF 4-YEAR ACTUAL**
            Defendants.                | **FRAUDULENT TRANSFERS;**
27
28                                     | **(4) AVOIDANCE, RECOVERY, AND**
                                       | **PRESERVATION OF 4-YEAR**

1

**CONSTRUCTIVE FRAUDULENT TRANSFERS;**

**(5) AVOIDANCE, RECOVERY, AND PRESERVATION OF UNAUTHORIZED POST-PETITION TRANSFERS;**

**(6) TURNOVER;**

**(7) RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT VIOLATIONS;**

**(8) CONSPIRACY;**

**(9) AIDING AND ABETTING; AND**

**(10) DECLARATORY RELIEF**

Judge: Hon. Scott C. Clarkson

For his *Complaint for (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Unauthorized Post-Petition Transfers; (6) Turnover; (7) Racketeer Influenced and Corrupt Organizations Act Violations; (8) Conspiracy; (9) Aiding and Abetting; and (10) Declaratory Relief* (the "Complaint"), plaintiff Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") and current liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee" or "Plaintiff") in the above-captioned bankruptcy case (the "Bankruptcy Case"), alleges and avers as follows:

## STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and

2

1  which is pending in the United States Bankruptcy Court for the Central District of California, Santa

2  Ana Division (the "Court").

3    2.    Regardless of whether this proceeding is core, non-core, or otherwise, the Plaintiff

4  consents to the entry of a final order and judgment by the Bankruptcy Court.

5    3.    Defendants are hereby notified that Rule 7008 of the Federal Rules of Bankruptcy

6  Procedure requires them to plead whether consent is given to the entry of a final order and judgment

7  by the bankruptcy court.

8    4.    Venue of this adversary proceeding properly lies in this judicial district pursuant to

9  28 U.S.C. § 1409(a) because this proceeding is related to the Debtor's pending Bankruptcy Case.

10  **THE PARTIES**

11    5.    Plaintiff, Richard A. Marshack, was the duly-appointed, qualified Chapter 11 Trustee

12  of Debtor's Estate and is now the current liquidating trustee of the LPG Liquidation Trust.

13    6.    Debtor LPG is, and at all material times was, a professional corporation organized,

14  existing, and in good standing under the laws of the State of California, with its principal place of

15  business in Tustin, California.

16    7.    On information and belief, Defendant Laurent Reiss ("Reiss") is, and at all material

17  times was, an individual resident of Monaco subject to service of process in accordance with the

18  *Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in*

19  *Civil or Commercial Matters* (the "Hague Service Convention") by sending a completed USM-94:

20  Request for Service Abroad of Judicial or Extrajudicial Documents ("USM-94"), along with copies

21  of the summons and Complaint, to the Central Authority for Monaco: Direction des Services

22  Judiciaires, Palais de Justice, 5, rue Colonel Bellando de Castro MC - 98000 Monaco.

23    8.    Defendant MCA Fund ADV Inc. ("MCA Fund ADV") is, and at all material times

24  represented that it was, a corporation existing under the laws of the State of New York.

25    9.    MCA Fund ADV may be served by first class mail postage prepaid upon its registered

26  agent for service of process, USACORP INC., 325 Division Ave, Ste 201, Brooklyn, NY, 11211.

27    10.    LDR International Ltd. ("LDR" and, together with Laurent Reiss and MCA Fund

28  ADV, "Defendants"), is, and at all material times represented that it was, a limited liability company

3

1    existing under the laws of the British Virgin Islands.

2    　　　11.    LDR may be served in accordance with the Hague Service Convention by sending a

3    completed USM-94, along with copies of the summons and Complaint, to the Central Authority for

4    the British Virgin Islands: Registrar of the Supreme Court, Supreme Court Registry, No. 84 Main

5    Street, P.O. Box 418, Road Town, Tortola, British Virgin Islands VG1110.

6    　　　12.    The true names and capacities, whether individual, corporate associate, or otherwise,

7    of defendants Does 1 through 10, inclusive, are unknown to the Plaintiff, who therefore sues said

8    defendants by such fictitious names. The Plaintiff is informed and believes that each of the defendants

9    designated herein as a fictitiously named defendant is in some manner responsible for the events and

10    happenings referred to, and caused the damage herein alleged. When the Plaintiff has ascertained the

11    true names and capacities of Does 1 through 10, inclusive, it will seek leave of this Court to amend

12    its Complaint by setting forth the same.

13    　　　**GENERAL ALLEGATIONS**

14    **A.    The Bankruptcy Case**

15    　　　13.    On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under

16    Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

17    　　　14.    The Office of the United States Trustee ("UST") filed its *Motion by United States*

18    *Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and

19    creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the

20    *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, &*

21    *1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No.

22    44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter*

23    *11 Trustee* [Bankr. Docket No. 58].

24    　　　15.    Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No.

25    63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy

26    Case. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's*

27    *Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

28    　　　16.    Trustee was not appointed until after events of the case and, therefore, bases these

4

1  allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir.

2  2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged

3  upon information and belief where the facts are peculiarly within the possession and control of the

4  defendant or where the belief is based on factual information that makes the inference of culpability

5  plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at

6  *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was

7  allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013

8  U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules

9  of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have

10  evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations

11  omitted)).

12       17.  Pursuant to the *Order Confirming Modified First Amended Joint Chapter 11 Plan of*

13  *Liquidation* entered September 9, 2024, and the *Notice of Occurrence of Effective Date of Modified*

14  *First Amended Joint Chapter 11 Plan of Liquidation* filed September 24, 2024, Richard A. Marshack

15  became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024.  [Bankr.

16  Docket Nos. 1646 & 1762].

17       18.  All claims have been transferred to the Liquidating Trust pursuant to the confirmed

18  plan and Plaintiff brings this action solely in his capacity as the Liquidating Trustee of the LPG

19  Liquidation Trust, for the benefit of Debtor's Estate and its creditors.

20  **B.      Protective Order**

21       19.  On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of

22  Protective Order (the "Protective Order").

23       20.  On June 3, 2024, the Court entered its *Order Granting Motion for Entry of Protective*

24  *Order and the Protective Order* [Bankr. Docket No. 1270] (the "Protective Order"). A true and

25  accurate copy of the Protective Order is attached as **Exhibit 1**, and incorporated herein.

26       21.  By its own terms, the Protective Order applies to this adversary proceeding and

27  governs all discovery conducted herein.

28  / / /

## C.   LPG's Ownership and Management

22.   Prior to the Petition Date, LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify.  At all relevant times, LPG was controlled and operated by the individual named Tony Diab ("Diab").

23.   The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

24.   The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

25.   In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

26.   LPG mismanaged the consumers' monthly payments.

27.   Diab and other defendants devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing  of bankruptcy.

28.   To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG in exchange for a percentage of the ACH Receivables collected by LPG from the consumers. The marketing affiliate went so far as to assist with the execution of an engagement letter between the consumer and LPG.

29.   In exchange, LPG agreed to pay the marketing affiliates a percentage the monthly payments collected by LPG from the consumers.

30.   Because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flows. This borrowing was not only used to finance operations at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

31.   Many of the documents executed in connection with such financing described the transactions as accounts receivable purchase agreements.

32.   Diab used entities he controlled, and were his alter egos, including, without limitation,

Vulcan Consulting Group ("Vulcan"), Maverick Management Group LLC ("Maverick"), Prime Logix, LLC ("Prime Logix"), LGS Holdco, LLC ("LGS"), and/or Coast Processing to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH processing companies in order to easily transfer millions of dollars from Debtor to these entities he controlled, without oversight or detection, and to avoid payment disputes and complications. The money that flowed from Debtor through these bank account to Defendants consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing companies. Debtor also made deposits into these entities bank account such that they received Client Funds directly from Debtor in addition to direct Accounts Receivable.

33. LPG transferred ACH Receivables and the associated client files in this fashion to defraud creditors in a pyramid scheme and for improper personal gain.

34. LPG's monthly revenue from client files was primarily received via ACH payments. To process ACH payments, LPG was required to enlist the services of ACH payment processing companies who handle high risk transactions. In this regard, Diab had enlisted numerous ACH processing companies to easily switch between different vendors and have millions of dollars of LPG funds directed to entities Diab controlled, including but not limited to Vulcan, Maverick, Prime Logix, LGS, and/or Coast Processing. Diab utilized these other entities' bank accounts as LPG bank accounts.

35. Diab instructed lenders and file purchasers to divert LPG loan proceeds or to deposit money otherwise due to LPG into bank accounts he controlled on behalf of LPG but ostensibly held by Vulcan, Maverick, Prime Logix, LPG and/or Coast Processing. Diab used all of these proceeds as if they were LPG funds, because they were.

36. At or around the Petition Date, Diab transferred or sold approximately 15,000 LPG client files to Oakstone Law Group PC ("Oakstone"), 12,000 LPG files to Consumer Legal Group ("CLG"), and the remaining LPG files, approximated at slightly less than 40,000, to Phoenix Law, PC ("Phoenix").

37. Pursuant to the asset purchase agreement between LPG and CLG, Diab instructed CLG to initiate the ACH debits on the transferred files, which it did through Optimum Bank and its

1  processing entity LGS Holdco.

2      38.    At or around the Petition Date, Diab transferred, for no consideration, approximately

3  8,000 files (previously transferred to Phoenix) to Heshy Deutsch ("Deutsch") and Israel Reiches

4  ("Reiches"). Diab instructed Deutsch and Reiches, by and through their co-conspirators Sam Geiger

5  and Solomon Feig, to initiate the ACH debits on the transferred files, which they did through BCB

6  Bank and a processing entity known as CLG Processing, into accounts, not in the name of LPG, but

7  that held funds of behalf of LPG and disbursed those funds for LPG.

8      39.    The funds obtained from the ACH debits described in paragraphs 37 and 38 above

9  were deposited in Maverick and Prime Logix accounts, among others.

10      40.    LPG's ACH Receivables were the primary, if not exclusive source of funds, for

11  Validation Partners, Vulcan, Oakstone, PECC, Prime Logix, Coast Processing, LGS, and Maverick.

12  As set forth above, the other sources of funds for these entities are the proceeds of LPG assets (i.e.,

13  file purchase account receivable proceeds) or constitute loan proceeds for which LPG alone was

14  liable.

15      41.    Diab frequently diverted the LPG money pulled from its consumer clients and other

16  funds it received through investors and lenders, to and through these entities.

17      42.    Diab frequently would direct these entities to pay affiliates (aka marketing capers),

18  MCA lenders, and others with LPG assets.

19      43.    Diab would instruct others at LPG and these entities on how to manage and transfer

20  these funds to and from these entities and LPG interchangeably.

21  **D.    $1.5 Million Loan from MCA Fund ADV Inc. and/or LDR International Ltd.**

22      44.    On or about February 7, 2023, BAT Inc aka B.A.T. Inc. ("BAT") and LPG executed

23  a Loan Agreement with MCA Fund ADV and/or LDR to document the terms of the Loan ("Loan").

24  A true and accurate copy of the Loan Agreement is attached hereto as **Exhibit 2**.

25      45.    Upon information and belief, LPG entered into the Loan, which was arranged by

26  attorney Ronald Richards.

27      46.    LPG executed a promissory note ("Note") in the original principal amount of

28  $1,500,000 and accompanying security agreement ("Security Agreement" and, together with the Note

8

and the Loan Agreement, the "Loan Documents") to document the amount owed under the Loan. True and accurate copies of the Note and Security Agreement are attached hereto as **Exhibit 3** and **Exhibit 4**, respectively.

47.     The terms of the Note are:

| | |
|---|---|
| Principal Amount: | $1,500,000.00 |
| Date: | February 7, 2023 |
| Maturity Date: | May 6, 2023 |
| Interest: | 7.0% per month |
| Default Interest: | 24% |

48.     The effect of these terms is that the interest rate on the Note is approximately 84.3% APR and that in exchange for $1,500,000.00, MCA Fund ADV and/or LDR would have received $1,920,000.00, or a return of $420,000.00 on its $1,500,000.00 (28.0%) in four months.

49.     Upon further information and belief, even though Defendant Laurent Reiss was not a party to this Loan, LPG made payments related to the Loan to Laurent Reiss rather than making payments to MCA Fund ADV or LDR.

**E.     Payments to Laurent Reiss**

50.     During the applicable post-petition period and according to records currently available, Prime Logix, who had no other funds except diverted LPG funds, paid Laurent Reiss the sum of at least $1,710,000 between March 2023 and May 2023 (the "Transfers"), to Swiss bank account number ending 6666 at Bank Julius Baer & Co. AG in the name of Laurent Reiss.  A true and accurate list of the known payments made by LPG to Laurent Reiss is attached hereto as **Exhibit 5** and incorporated herein.   True and correct copies of redacted bank statements evidencing the Transfers are attached hereto as **Exhibit 6**.

**F.     LPG's Ponzi Scheme**

51.     The Ponzi Scheme Presumption exists in bankruptcy proceedings.

52.     The Ponzi Scheme Presumption can be utilized to establish a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible.  A Ponzi scheme cannot work forever.  The investor

1 pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme

2 will eventually collapse as a result of the inability to attract new investors. The perpetrator

3 nevertheless makes payments to present investors, which, by definition, are meant to attract new

4 investors. He must know all along, from the very nature of his activities, that investors at the end of

5 the line will lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of

6 the law," *cf. Restatement (Second) of Torts § 8A* (1963 & 1964), and a debtor's knowledge that future

7 investors will not be paid is sufficient to establish his actual intent to defraud them. *Kirkland v. Rund*

8 *(In re EPD Inv. Co., LLC)*, 114 F.4th 1148, 1153 (9th Cir. 2024) (by definition Ponzi scheme is

9 destined to fail and the swindler and their entities often end in bankruptcy or equitable receivership);

10 *Cf. Coleman Am. Moving Servs., Inc. v. First Nat'l Bank & Trust Co. (In re American Properties,*

11 *Inc.)* 14 B.R. 637, 643 (Bankr. D. Kan. 1981) (intentionally carrying out a transaction with full

12 knowledge that its effect will be detrimental to creditors is sufficient for actual intent to hinder, delay

13 or defraud within the meaning of § 548(a)(1))." *Merrill v. Abbott (In re Independent Clearing House*

14 *Co.)* (D. Utah 1987) 77 B.R. 843, 860. A trustee in bankruptcy is not required to show that an operator

15 of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co.,*

16 *LLC*, 114 F.4th at 1153 ("[a] trustee's action to recover assets fraudulently conveyed in the course of

17 a Ponzi scheme does not require that the trustee also prove the Ponzi-scheme operator was

18 subjectively aware his Ponzi scheme was destined to fail.").

19      53.     "But if all the debtor receives in return for a transfer is the use of the defendant's

20 money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share. In fact,

21 by helping the debtor perpetuate his scheme, the transfers exacerbate the harm to creditors by

22 increasing the amount of claims while diminishing the debtor's estate. In such a situation, the use of

23 the defendant's money cannot objectively be called 'reasonably equivalent value.'" *In re Independent*

24 *Clearing House Co.* 77 B.R. at 859. Therefore, "[t]he trustee can avoid the transfers if they were

25 preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent.

26 Therefore, they constitute "property of the estate," and the trustee can recover them. *Id.* at 853 n.17

27 (citations omitted).

28      54.     Debtor was operating a Ponzi scheme that utilized affiliates and several other entities

1  as investors to continue its unlawful business practices by using funds provided by current investors

2  to attract new investors hoping for very high returns. Therefore, the Debtor was running a Ponzi

3  scheme and the Ponzi Scheme Presumption can be utilized to infer that the Debtor had the intent to

4  defraud investors within the meaning of 11 U.S.C. section 548(a)(1). This is evidenced by the Court

5  in this Bankruptcy Case declaring that Debtor was operating a Ponzi scheme when it stated the

6  following:

> It is important to note that this Court has never received any significant and trustworthy evidence that Debtor accomplished meaningful results for its clients, but only anecdotal examples of viable success for its clients. By reviewing the Estate's claims register, there is evidence of consumer claims for the fraud and demanded but undelivered refunds of approximately $500 million. There is ample evidence that the pre-petition Debtor never placed the collected funds into an attorney-client trust account, and that Debtor or its principals simply looted the payments received through the client automatic withdrawals, stiffing both the clients and outside attorneys who may have been working on client cases with the hopes of being paid. There is also evidence before the Court that Debtor was running a Ponzi scheme and paying some outside (or "network") attorneys with funds obtained from new clients. In this case, it appears that some of the "lenders" may have been serving as "investors," hoping for very high returns before "the music stopped." The Ninth Circuit has recently explained, "[b]y definition, a Ponzi scheme is destined to fail because the pool of available investors is not limitless. When the Ponzi scheme operator's pool of investors inevitably runs dry, the scheme collapses and the swindler and their entities often end up in bankruptcy or equitable receivership. *See generally* David R. Hague, Expanding the Ponzi Scheme Presumption, 64 DePaul L. Rev. 867 (2015). In bankruptcy, the court-appointed trustee is tasked with taking immediate control of the entity, ceasing ongoing fraudulent activity, locating and collecting assets for the bankruptcy or receivership estate, and achieving a final, equitable distribution of the remaining assets. *See* 11 U.S.C. § 704; *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 2024 U.S. App. LEXIS 21363, at *15 (9th Cir. Aug. 23, 2024). Finally, there is evidence that Debtor was encumbering (or as some creditors assert, "double or triple selling") their accounts or receivables to multiple lenders. With respect to Greyson's requested Administrative Claim [Dk. 676], and as more fully described in the concurrently entered order denying the claim, there has been no evidence presented that any work allegedly performed by Greyson assisted any clients or added any value to the Estate.

1 | *See, Case 8:23-bk-10571-SC*, Doc 1545 n. 5.

2 |     55.    Moreover, since the Loan was made with the intent to further the Ponzi scheme, the

3 | Debtor did not receive an objectively reasonable equivalent value for the Loan, and the Trustee can

4 | avoid the Loan because it was fraudulent.

5 |     56.    The transactions between Defendants and the Debtor were loans, not the sales of

6 | receivables, and as such Defendants were serving as "investors," hoping for very high returns before

7 | "the music stopped."

8 | **G.    The Criminal Enterprise**

9 |     57.    Debtor's operations, activities and transfers done in furtherance of the Ponzi scheme,

10 | including those in conjunction with its affiliates and its dealings with Defendants, also constituted a

11 | criminal enterprise.

12 |     58.    This, too, is evidenced by the Court's order in the 1046 Action wherein it denied the

13 | Motion of Greyson Law Center to Vacate the Preliminary Injunction previously entered in Debtor's

14 | main case, and the Court offered the opinion:

15 |
16 |     Through the various proceedings and evidence produced in both the main case and the various adversary proceedings, including but not
17 | limited to various Motions for Temporary Restraining Orders, Preliminary Injunctions, Motions to Dismiss, a Motion for Appointment of a Chapter 11 Trustee, a Motion to Sell Assets, a
18 | multitude of pleadings filed by both secured and unsecured creditors (supported by evidence presented under oath) in support of their
19 | claims, and especially the pleadings and evidence presented by the "Watchdog of the Bankruptcy System" aka the Office of the United
20 | States Trustee (an arm of the United States Department of Justice), it is clear to this Court that Debtor, since its pre-
21 | petition inception (and through the time of the appointment of the   Chapter 11 Trustee) was in the Court's opinion, operating
22 | criminal enterprise.
23 |

24 | Case No. 8:23-bk-10571-SC; Adv. No. 8:23-ap-01046-SC [Bankr. Docket No. 1545, p.3 (emphasis

25 | in text)].

26 |     59.    As part of this criminal enterprise, Debtor and Defendants engaged in fraudulent

27 | transfers pursuant to the Loan.  The Loan was made by MCA Fund ADV and/or LDR at unlawful

28 | usurious interest rates and the Transfers made pursuant to the Loan constituted wire fraud.

## H.   The Sale of LPG's Assets

60.   On July 7, 2023, Richard Marshack in his capacity as the Chapter 11 Trustee moved the Court for an order (A) Approving Sale, Subject to Overbid, of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b), and (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements. [Bankr. Docket No. 191.]  After supplemental briefing that addressed multiple oppositions, holding a lengthy hearing and an auction wherein Morning Law Group was the highest bidder, the Court granted the Sale Motion by order entered August 2, 2023. [Bankr. Docket No. 352.]

## I.   LPG's Prepetition Creditors

61.   Debtor was insolvent when the Loan was made. This insolvency is evidenced in part by the fact that 14 separate UCC-1 statements were of record securing debts of the Debtor as of September 1, 2022. These statements remained unreleased as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired, or provided evidence of the assignment or sale of substantial portions of the Debtor's future income. Debtor's insolvency is an adjudicated fact based on the Court's finding of insolvency entered in other adversary proceedings pending before the Court. *See, e.g.*, Case No. 8:23-bk-10571-SC; Adv. No. 8:24-ap-01002-SC [Adv. Docket No. 28] (finding that "Debtor was insolvent or rendered insolvent at the time of the transfers made to Defendant").

62.   When the Loan was made, these prior UCC-1 statements secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million dollars owed to Diverse Capital, LLC

1  purportedly secured by UCC statements filed on or about September 15, 2021, and

2  December 1, 2021.[1]

3      63.    As alleged above, LPG was borrowing against its assets and future income, often on

4  unfavorable terms, not only to finance operations at LPG, but also to pay the fees owed to the

5  marketing affiliates for providing consumer clients and to pay other loans to creditors that were in

6  default or about to be in default as part of Diab's scheme to keep LPG creditors at bay for a long as

7  possible until he could transfer LPG's assets, client files, Client Funds, and ACH Receivables to other

8  entities under his control. Pursuant to the agreements with the marketing companies, significant

9  percentages of future payments were already promised to be paid to the marketing affiliates from

10  whatever future income the Debtor would receive. And, of course, the payments LPG received in the

11  form of ACH Receivables were also trust funds paid to LPG by its law firm clients, subject to return

12  of funds in the event of a request for refund or termination of the representation before LPG had

13  earned the funds. In this regard, except to the extent earned, the ACH Receivables also represented a

14  liability of the Debtor.

15      64.    In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor scheduled 11

16  unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured

17  creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic

18  Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of

19  Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State

20  Tax Commission, and Wisconsin Dept. of Revenue (collectively, "Priority Unsecured Creditors").

21      65.    Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No.

22  33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling

23  $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina

24  Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT

25  Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela

26  Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.;

27

28  [1] Trustee reserves all rights, claims, and defenses with respect to these and any other purported secured or
unsecured claims.

1   Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra;

2   MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A

3   Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance,

4   Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC;

5   Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC

6   DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center;

7   LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.;

8   Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton;

9   Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny

10   Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively,

11   "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured

12   Creditors, "Prepetition Creditors").

13       66.   The bar date for submitting claims as part of the Bankruptcy Case has passed and

14   Plaintiff now knows that over 5,000 claims were filed totaling approximately $500 million in priority,

15   secured and unsecured claims.

16   **FIRST CLAIM FOR RELIEF**

17   **Count I - Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers**

18   **[11 U.S.C. §§ 548, 550, and 551]**

19       67.   Plaintiff realleges and incorporates herein by reference each and every allegation

20   contained in paragraphs 1 through 66 as though set forth in full.

21       68.   The Loan Documents were executed within two years prior to the Petition Date.

22       69.   LPG received nothing in exchange for the Transfers to Laurent Reiss, who was not a

23   party to the Loan.

24       70.   LPG was insolvent when Mr. Diab caused it to execute the Loan Documents in

25   February 2023 because its debts exceeded the fair market value of its assets at all relevant times.

26       71.   The execution of the Loan Documents, and the incurring of the obligations thereunder,

27   happened while Debtor was insolvent or rendered Debtor insolvent.

28       72.   On or after the date that the Loan Documents were executed, entities to which Debtor

15

1   was or became indebted include the Prepetition Creditors.

2       73.    The Debtor made the Transfers to Laurent Reiss even though the Debtor was obligated

3   MCA Fund ADV and/or LDR—not Reiss—under the terms of the Loan Documents.

4       74.    The Debtor entered into the Loan with actual intent to hinder, delay, or defraud

5   creditors of Debtor.

6       75.    The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be

7   utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. § 548(a)(1).

8       76.    Defendants' conduct relating to the Transfers was done with oppression, fraud and

9   malice, as defined in California Civil Code section 3294, entitling Plaintiff to exemplary and punitive

10   damages.

11       77.    The execution of the Loan Documents is avoidable as fraudulent pursuant to 11 U.S.C.

12   §§ 544, 548(a)(1)(A), 550, and 551, and the common law tort of intentional fraudulent transfers by

13   one or more creditors who held and hold unsecured claims against Debtor that were and are allowable

14   against its Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C.

15   § 502(e), including, without limitation, the Prepetition Creditors.

16       78.    The execution of the Loan Documents, and the incurring of the obligations thereunder,

17   should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A) and under the common law tort of

18   intentional fraudulent transfers, and such transferred property, or the value thereof, should be

19   recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

20                    **SECOND CLAIM FOR RELIEF**

21     **Count II – Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers**

22               **[11 U.S.C. §§ 544, 548(a)(1)(B), 550, and 551]**

23       79.    Plaintiff realleges and incorporates herein by reference each and every allegation

24   contained in paragraphs 1 through 78 as though set forth in full.

25       80.    The Loan Documents were executed within two years prior to the Petition Date.

26       81.    The execution of the Loan Documents, and the incurring of the obligations thereunder,

27   happened while Debtor:

28       a.    was insolvent or became insolvent as a result;

1      b.    was engaged or was about to engage in a transaction for which any property remaining

2  with Debtor was of unreasonably small capital; or

3      c.    intended to incur, or believed that it would incur, debts beyond its ability to pay as

4  such debts matured.

5      82.    The Debtor received less than reasonably equivalent value of the Transfers because it

6  made the Transfers to Laurent Reiss, who was not a party to the Loan Documents.

7      83.    Furthermore, even if the Transfers were somehow deemed to be repayments of the

8  Loan, the Debtor did not receive the reasonable equivalent value of the Transfers to MCA Fund ADV

9  and LDR because by using MCA Fund ADV and LDR's money to run a Ponzi scheme there is nothing

10  in Estate for the creditors to share and no benefit to the estate. Rather, the Transfers exacerbated the

11  harm to creditors by increasing the amount of claims while diminishing the Debtor's Estate.  In this

12  situation, the use of the MCA Fund ADV and LDR's money to further the Debtor's Ponzi scheme

13  cannot be consideration for the Transfers and cannot objectively be called reasonably equivalent

14  value.

15      84.    MCA Fund ADV and LDR were acting as investors in the Debtor's Ponzi scheme.

16      85.    The execution of the Loan Documents, and the incurring of the obligations thereunder,

17  should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(B), and such transferred property, or the

18  value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C.

19  §§ 550 and 551.

20  **THIRD CLAIM FOR RELIEF**

21  **Count III – Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers**

22  **[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.04(b), and 3439.07]**

23      86.    Plaintiff realleges and incorporates herein by reference each and every allegation

24  contained in paragraphs 1 through 85 as though set forth in full.

25      87.    The Loan Documents were executed within four years prior to the Petition Date.

26      88.    On or after the date that such agreements were entered, entities to which Debtor was

27  or became indebted include the Prepetition Creditors.

28      89.    The execution of the Loan Documents, and the incurring of the obligations thereunder,

1  happened while Debtor was insolvent or Debtor became insolvent shortly after the Loan Documents

2  were executed is evidenced by the filing of the voluntary petition.

3     90.    The Debtor did not receive reasonably equivalent value in exchange for executing the

4  Loan Documents because the Loan was used to further assist Debtor in its Ponzi scheme.

5     91.    The Debtor entered into the Loan with actual intent to hinder, delay, or defraud

6  creditors of Debtor.

7     92.    The Debtor's conduct was done with oppression, fraud, and malice, as defined in Civil

8  Code section 3294, based on the Ponzi Scheme Presumption, entitling the Trustee to, in addition to

9  the actual damages, exemplary and punitive damages.

10    93.    The Loan Documents are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and

11  Cal. Civ. Code §§ 3439.04(a), 3439.04(b), and 3439.07 by one or more creditors who held and hold

12  unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502

13  or that were not allowable only under 11 U.S.C. § 502(e) including, without limitation, the Prepetition

14  Creditors.

15    94.    Accordingly, the Loan Documents, and the incurring of the obligations thereunder,

16  should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.04(a) and

17  3439.07, and under the common law tort of intentional fraudulent transfers, and such transferred

18  property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant

19  to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

20                    **FOURTH CLAIM FOR RELIEF**

21  **Count IV - Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers**

22        **[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.05, and 3439.07]**

23    95.    Plaintiff realleges and incorporates herein by reference each and every allegation

24  contained in paragraphs 1 through 94 as though set forth in full.

25    96.    The Loan Documents were executed within four years prior to the Petition Date.

26    97.    The execution of the Loan Documents, and the incurring of the obligations thereunder,

27  happened while Debtor:

28        a.    was insolvent or became insolvent as a result;

b.    was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

c.    intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

98.    Furthermore and objectively, the Debtor did not receive reasonably equivalent value for the Loan because, by Debtor's use of money received from Defendants to run the Ponzi scheme, there is nothing left in the Estate for the creditors to share and no benefit to the Estate. Instead, the Loan exacerbated the harm to creditors by increasing the amount of claims thereby diminishing the Debtor's Estate.

99.    Accordingly, the execution of the Loan Documents, and the incurring of the obligations thereunder, should be avoided pursuant to 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

**FIFTH CLAIM FOR RELIEF**

**Count V – Avoidance, Recovery, and Preservation of Unauthorized Post-Petition Transfers**

**[11 U.S.C. §§ 549, 550, and 551]**

100.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 99 as though set forth in full.

101.    Under 11 U.S.C. § 549(a), the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and that is not authorized by the court with jurisdiction over the Bankruptcy Estate.

102.    The Transfers were transfers of an interest in property of the Debtor.

103.    Laurent Reiss received the Transfers in the amount of at least $1,710,000 after the Petition Date.

104.    The Transfers were not authorized under the Bankruptcy Code or by the Court.

105.    The Transfers are avoidable transfers pursuant to 11 U.S.C. § 549(a).

106.    Section 550 of the Bankruptcy Code provides that if a transfer is avoided under section 549 of the Bankruptcy Code, Plaintiff may recover the property or the value of the property transferred from the initial transferee, the entity for whose benefit the transfers were made, or any immediate or mediate transferee of the initial transferee.

107.    Laurent Reiss is the initial transferee.

108.    Defendants MCA Fund ADV and LDR are the entities for whose benefit the Transfers were made.

109.    In accordance with the foregoing, the Transfers are avoidable transfers pursuant to 11 U.S.C. § 549(a), and may be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## SIXTH CLAIM FOR RELIEF

### Count VI - Turnover of Property of the Estate

### [11 U.S.C. §§ 542]

110.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 109 as though set forth in full.

111.    Laurent Reiss has possession or control over property of the Estate in the form of the Transfers.

112.    The Transfers are not of inconsequential value to the Estate.

113.    The funds that are the subject of the Transfers are paramount to Debtor's ability to pay creditors.

114.    Accordingly, Trustee is entitled to a judgment for turnover of the Transfers, pursuant to 11 U.S.C. § 542.

## SEVENTH CLAIM FOR RELIEF

### Count VII - Racketeer Influenced and Corrupt Organizations

### [18 U.S.C. § 1962(c)]

115.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 114 as though set forth in full.

///

20

**a. The Unlawful Activity**

116.   At least two predicate acts underlie this claim for relief based on information known to date. The first is making an unlawful and usurious loan. The second is engaging in wire fraud.

117.   The interest rate that MCA Fund ADV and/or LDR charged the Debtor under the Note was 7% per month or approximately 84.3% per annum.

**b. The Culpable Persons**

118.   Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) and 18 U.S.C. § 1962(c) in that each is either an individual, corporation or limited liability company capable of holding a legal interest in property. At all material times, Defendants Laurent Reiss, MCA Fund ADV, and LDR were persons that exist separate and distinct from the Enterprise, described below.

**c. The Enterprise**

119.   Defendants constitute an Enterprise (the "Enterprise) within the meaning of 18 U.S.C. §§ 1961(4) and 18 U.S.C. 1962(c).

120.   Defendants are associated in fact through relations with one another for the common purpose of carrying on an ongoing unlawful enterprise. The Enterprise has a common goal of soliciting, funding, servicing and collecting on usurious loans and charging exorbitant interest rates greatly in excess of the permitted interest rate under the applicable usury laws, including those of the State of California.

121.   Since at least 2023 and continuing to date, the members of the Enterprise have had ongoing relations with each other through common control, ownership, shared personnel and/or one or more contracts or agreements relating to and for the purpose of originating, underwriting, servicing and collecting upon unlawful loans issued by the Enterprise to struggling businesses throughout the United States.

122.   The debt evidenced by the Loan constitutes "unlawful debt" within the meaning of 18 U.S.C. § 1961(6); 18 U.S.C. § 1962(c); and 18 U.S.C. § 1962(d) because: (i) the debt is unenforceable under Federal or State law as to principal or interest because of laws relating to usury, and violates the applicable criminal usury statutes; and (ii) the debt was incurred in connection the business of lending money at rates usurious under Federal and State law, and the rates are many times more than

1   the enforceable rate permitted under the usury laws of California.

2        123.   Since at least 2023 and continuing to date, the members of the Enterprise have had

3   ongoing relations with each other through common control, ownership, shared personnel, and/or one

4   of more contracts or agreements relating to and for the purpose of collecting fraudulent transfers

5   through electronic wire transfers.

6        124.   The Enterprise's activity also constitutes "wire fraud" within the meaning of 18 U.S.C.

7   § 1343, which is "racketeering activity" as defined by 18 U.S.C. § 1961(1). The repeated and

8   continuous use of and engaging in such conduct, including the ACH transfers to participate in the

9   affairs of the Enterprise constitutes a pattern of racketeering activity in violation of 18 U.S.C. §

10   1962(c).

11        **d.   Roles of the Defendants in Operating the Enterprise and of the Individual Entities**

12            **Within the Enterprises**

13        125.   The Defendants have organized themselves and the Enterprise into a cohesive group

14   with specific responsibilities and a command structure to operate as a unit in order to accomplish the

15   common goals and purposes of collecting upon unlawful debts.

16        126.   MCA Fund ADV, on information and belief, maintains offices, books, records and

17        bank accounts, some independent of those of the other Defendants but maintained in

18   coordination with them.

19        127.   LDR, on information and belief, also maintains offices, books, records and bank

20   accounts, some independent of those of the other Defendants but maintained in coordination with

21   them.

22        128.   Laurent Reiss, on information and belief, has operated, engaged and/or conspired with

23   MCA Fund ADV and LDR as part of an unlawful enterprise to collect upon an unlawful debt and to

24   commit wire fraud.

25        **e.   Interstate and Foreign Commerce**

26        129.   The Enterprise is engaged in interstate and foreign commerce, and uses and has used

27   the instrumentalities of interstate and foreign commerce in its daily business activities.

28        130.   Members of the Enterprise maintain offices in New York, the British Virgin Islands,

1    and Monaco and use personnel in these offices to originate, underwrite, fund, service and collect upon

2    usurious loans made by the Enterprise to entities in California, including Debtor, and throughout the

3    United States via extensive use of mail, emails, wire transfers and bank withdrawals processed

4    through automated clearing houses.

5        131.    In this Bankruptcy Case, communications between the members of the Enterprise and

6    Debtor were by mail, interstate and foreign email, wire transfers, ACH debits and other interstate and

7    foreign wire communications. The Enterprise used interstate and foreign emails to originate,

8    underwrite, service and collect upon the Loan, and collect the Loan payments via international wire

9    transfers.

10        **f.    Injury and Causation**

11        132.    Plaintiff and the Debtor's Estate and its creditors have been and will continue to be

12    injured by reason of the Enterprise's violations of 18 U.S.C. section 1962(c).

13        133.    The injuries directly, proximately, and reasonably foreseeably resulting from or caused

14    by these violations include, without limitation, millions of dollars in improperly collected usurious

15    loan payments.

16        134.    Plaintiff and the Debtor's Estate also have suffered damages by incurring attorney's

17    fees and costs associated with the prosecution of Defendants' unlawful activities.

18        135.    Pursuant to 18 U.S.C. section 1964(c), Plaintiff is entitled to recover triple damages

19    and costs of suit, including attorney's fees, from Defendants.

20                        **EIGHTH CLAIM FOR RELIEF**

21                        **Count VIII - Conspiracy**

22                        **[18 U.S.C. § 1962(d)]**

23        136.    Plaintiff realleges and incorporates herein by reference each and every allegation

24    contained in paragraphs 1 through 135 as though set forth in full.

25        137.    Defendants have unlawfully, knowingly and willfully, combined, conspired and

26    agreed together to engage in activities that violate 18 U.S.C. section 1962(c), as alleged above, in

27    violation of 18 U.S.C. section 1962(d).

28        138.    By and through Defendants' business relationships with one another, their

coordination with one another in the affairs of the Enterprise, and the frequent email and other communications among the Defendants concerning the underwriting, funding, servicing and collection of the unlawful Loan, each Defendant knew the nature of the Enterprise and each Defendant knew that the Enterprise extended beyond each Defendant's individual role. Moreover, through the same connections and coordination, each Defendant knew that the other Defendants were engaged in a conspiracy to collect upon the unlawful debts in violation of 18 U.S.C. section 1962(c).

139.   Each Defendant agreed to facilitate, conduct and participate in the conduct, management, and/or operation of the Enterprise's affairs in order to collect upon the unlawful debts, including the Loan, in violation of 18 U.S.C. section 1962(c). Each Defendant was a knowing, willing and active participant in the Enterprise and its affairs, and each of the Defendants shared a common purpose, which was the orchestration, planning, preparation and execution of the scheme to solicit, underwrite, fund and collect upon unlawful debts, including the Loan.

140.   Each Defendant agreed to facilitate, conduct and participate, directly or indirectly, in the management and/or operation of the Enterprise's affairs in order to commit wire fraud through a pattern of racketeering activity and collection of unlawful debts in violation of 18 U.S.C. section 1962(c).

141.   The participation and agreement of each Defendant was necessary to implement and perpetuate the commission of the scheme.

142.   Plaintiff and the Debtor's Estate and its creditors have been and will continue to be injured by reason of Defendants' conspiracy in violation of 18 U.S.C section 1962(d), in amounts to be determined at trial.

143.   The injuries to Plaintiff and the Debtor's Estate and to its creditors directly, proximately and reasonably foreseeably resulting from and caused by these violations of 18 U.S.C section 1962(d) include, without limitation, millions of dollars in improperly collected loan payments.

144.   Plaintiff and the Debtor's Estate also suffered damages by incurring attorney's fees and costs associate with the prosecution of Defendants' unlawful activities.

145.   Pursuant to 18 U.S.C. section 1964(c), Plaintiff is entitled to recover triple damages and costs of suit, including attorney's fees, from Defendants.

24

## NINTH CLAIM FOR RELIEF

### Count IX – Aiding and Abetting

### [18 U.S.C. § 2; 11 U.S.C. §§ 544(b), 550, and 551;

### CAL. CIV. CODE §§ 3439.04(a), 3439.04(b), and 3439.07]

146.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 145 as though set forth in full.

147.    Defendants, based upon information and belief and based on the Ponzi Scheme Presumption, had knowledge of the fraudulent transactions, transfers and illegal agreements that were used to perpetuate and conceal the Ponzi scheme and fraudulent transfers.

148.    Defendants, based upon information and belief and based on the Ponzi Scheme Presumption, had knowledge that Prime Logix was an alter ego of Diab.

149.    Defendants, with the foregoing knowledge, intended to, and did, help the Debtor in perpetuating and concealing the Ponzi scheme and fraudulent transfers of money.

150.    At all material times, Defendants had the intent to facilitate and conceal the Ponzi scheme and fraudulent transfers of money by aiding and abetting the illegal capping scheme and signing up consumer clients to keep the business going.

151.    Defendants, upon information and belief, assisted, and did actually engage in, the commission of fraud and the Ponzi scheme by coordinating, facilitating, and directing payments and transfers of monies and executing documents in furtherance of concealing the true nature of their fraudulent and criminal activity related to the Ponzi scheme.

152.    The injuries to Plaintiff, the Debtor's Estate and to its creditors directly, proximately and reasonably foreseeably resulting from and caused by violations of 18 U.S.C. §§ 1962(d) and 1964(c), as well as Sections 6151 and 6155 of the California Business and Professional Code include, without limitation, millions of dollars in improperly transferred and acquired monies.

153.    Plaintiff and the Debtor's Estate also suffered damages by incurring attorney's fees and costs associated with the prosecution of Defendants' unlawful activities.

/ / /

/ / /

154.    Pursuant to 18 U.S.C. §§ 1962(d), 1964(c), 2, and common law or common count, Plaintiff is entitled to recover treble damages and costs of suit, including attorney's fees, from the Defendants.

### TENTH CLAIM FOR RELIEF

#### Count X – Declaratory Relief

155.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 154 as though set forth in full.

156.    An actual controversy exists between Plaintiff and Defendants regarding the enforceability of the Loan.

157.    Plaintiff contends that the Loan is void and unenforceable; the interest rates charged in the Loan are usurious; the law that applies in determining the usurious nature of the agreements is California law and/or federal law; and the Transfers made pursuant to the Loan constitute wire fraud. Defendants dispute each of Plaintiff's contentions.

158.    A judicial determination of the rights, duties and obligation of Plaintiff and Defendants, therefore, is appropriate.

### RESERVATION OF RIGHTS

Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against defendants, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment as follows:

**On the First, Second, Third, and Fourth Claims for Relief:**

A.    Avoiding the Loan and related obligations as unenforceable against the Estate;

**On the First and Third Claims for Relief:**

B.    Awarding punitive and exemplary damages according to proof;

**On the Fifth Claim for Relief:**

C.    Avoiding, recovering, and preserving the Transfers against Defendants;

26

1     **On the Sixth Claim for Relief:**

2     D.     Ordering Defendants to immediately turn over the Transfers;

3     **On the Seventh and Eighth Claims for Relief:**

4     E.     Awarding Plaintiff monetary damages in the total aggregate amount of not less than

5 $1,710,000.00;

6     F.     Awarding treble damages;

7     G.     Awarding costs of suit, including attorneys' fees;

8     **On the Ninth Claim for Relief:**

9     H.     Awarding Plaintiff monetary damages in the amount of all fraudulent transfers

10 obtained by Defendants from Debtor;

11     **On the Tenth Claim for Relief:**

12     I.     Declaring that the Loan is void and unenforceable, the interest rates charged in the

13 Note are usurious, the law that applies in determining the usurious nature of the interest rates is

14 California law and/or federal law; and the Transfers made pursuant to the Loan constitute wire fraud;

15 / / /

16 / / /

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

**On All Claims for Relief:**

J.      Awarding costs of suit;

K.      Awarding punitive damages;

L.      Awarding attorneys' fees;

M.      Awarding pre-judgment interest at the maximum legal rate running from the date of the Complaint to the date of judgment herein;

N.      Awarding post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

O.      Requiring Laurent Reiss to pay forthwith any judgment awarded herein; and

P.      Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated:  March 18, 2025

Respectfully submitted,

DINSMORE & SHOHL LLP


By:  /s/ Matthew J. Stockl
        Christopher Celentino
        Yosina M. Lissebeck
        Matthew J. Stockl

*Special Counsel to Richard A. Marshack,*
*Trustee of the LPG Liquidation Trust*

# EXHIBIT 1

CHRISTOPHER B. GHIO (259094)
christopher.ghio@dinsmore.com
CHRISTOPHER CELENTINO (131688)
christopher.celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
yosina.lissebeck@dinsmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, California 92101
Tele:  619.400.0500
Fax:  619.400.0501

Sarah S. Mattingly (Ky. Bar 94257)
sarah.mattingly@dinsmore.com
DINSMORE & SHOHL, LLP
101 S. Fifth Street, Suite 2500
Louisville, Kentucky 40202
Tele: 859-425-1096
Fax: 502-585-2207
(Admitted pro hac vice)

Special Counsel to Richard A. Marshack

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| | |
|---|---|
| In Re | Case No: 23-bk-10571-SC |
| | Chapter 11 |
| The Litigation Practice Group P.C., | **ORDER GRANTING MOTION FOR ENTRY OF PROTECTIVE ORDER AND THE PROTECTIVE ORDER** |
| Debtor(s), | Date:    May 23, 2024<br>Time:    1:30 p.m.<br>Judge:  Hon. Scott C. Clarkson<br>Place:    Courtroom 5C (via Zoom)[1]<br>           411 West Fourth Street<br>           Santa Ana, CA 92701 |

[1] Video and audio connection information for each hearing will be provided on Judge Clarkson's publicly posted hearing calendar, which may be viewed online at:
http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

Exhibit 1, page 30

FILED & ENTERED

JUN 03 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall    DEPUTY CLERK

1   The Court has read and considered the Notice of Motion and Motion for Entry of Protective

2   Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the

3   "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024,

4   pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1),

5   as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

6        IT IS HEREBY ORDERED that:

7        1.      The Motion is granted;

8        2.      The below Protective Order shall apply to any contested matter arising

9   in the main bankruptcy case and in all adversary proceedings filed by or against Trustee,

10   present and future; and

11        3.      Govern the discovery conducted therein.

12

13                              **PROTECTIVE ORDER**

14   **1.    DEFINITIONS**

15        1.1      "Confidential Information" as used in this Protective Order shall mean documents and

16   other information (regardless of how generated, stored or maintained) that a Party or non-party

17   reasonably believes to contain or reflect non-public financial or business information, bank records,

18   financial records, such as social security numbers, non-public financial or personal information of a

19   Party or non-party, account numbers, sensitive digital information and identifiers, information subject

20   to confidentiality agreements or provisions other than this Protective Order, and other non-public

21   research, development, or commercial information that derives value or avoids injury by virtue of not

22   being known to the public.

23        1.2      This "Action" is defined and hereby means any contested matter arising in the main

24   bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

25        1.3      "Designating Party" means a Party or non-party that designates Confidential

26   Information during the Action.

27        1.4      "Receiving Party" means a Party that receives Confidential Information during the

28   Action.

Exhibit 1, page 31

1.5    "Party" or "Parties" means person or entity subject to this Protective Order.

**2.    SCOPE OF THIS PROTECTIVE ORDER**

2.1    Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.    DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1    This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2    <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

<div align="center">3</div>

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit A</u>; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

      3.3   <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

      3.4   <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

    **4.**   **CHALLENGES TO DESIGNATED INFORMATION**

      4.1   In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

<div align="center">4</div>

resolved by the Parties or ruled upon by the Court, the designated information shall remain protected under this Protective Order. The failure of any Receiving Party to challenge a designation does not constitute a concession that the designation is proper or an admission that the designated information is otherwise competent, relevant, or material.

### 5.   LIMITED ACCESS/USE OF PROTECTED INFORMATION

5.1   <u>Restricted Use:</u> Information that is produced or exchanged in the course of the Action and designated under this Protective Order may be used for preparation for trial and preparation for any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no other purpose, without the written consent of the Designating Party. No Confidential Information may be disclosed to any person except in accordance with the terms of this Protective Order, unless the parties are co-counsel or have entered into joint defense agreements. All persons in possession of Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage of such information to ensure that its confidentiality is maintained. This obligation includes, but is not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of any subpoena that seeks production or disclosure of any designated information and consulting with the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the disclosing person or party to sanctions.

5.2   <u>Access to "Confidential" Information:</u> The Party(ies) and all persons subject to this Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or reviewed by the following:

a)   The Court, its personnel, and court reporters;

b)   Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel in the Action and are informed of the duties and obligations imposed hereunder;

c)   The Parties, including their clients, agents and employees who are assisting or have reason to know of the Action;

///

5

1    d)    Experts or consultants employed by the Parties or their counsel, or co-counsel, for

2  purposes of an Action, so long as each such expert or consultant has signed attached Exhibit A; and

3    e)    Other witnesses or persons with the Designating Party's consent or by court order.

4    5.3    Access to "Attorneys' Eyes Only" Designations: The Parties and all persons subject to

5  this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only

6  be accessed or reviewed by the following:

7    a)    The Court, its personnel, and court reporters;

8    b)    Counsel of record, or co-counsel for any Party, or other party that has entered into a

9  joint defense agreement in the Action and their employees who assist counsel of record in the Action

10  and are informed of the duties hereunder;

11    c)    In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11

12  Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed

13  hereunder;

14    d)    Experts or consultants employed by the Parties or their counsel, or co-counsel for

15  purposes of the Action,  and so long as each such expert or consultant has signed attached Exhibit A;

16  and

17    e)    Other witnesses or persons to whom the Designating Party agrees in advance of

18  disclosure or by court order.

19    5.4    Non-Waiver Effect of Designations: Neither the taking of, nor the failure to take, any

20  action to enforce the provisions of this Protective Order, nor the failure to object to any designation,

21  will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or

22  proceeding, including, but not limited to, a claim or defense that any designated information is or is

23  not Confidential, is or is not entitled to particular protection, or embodies or does not embody

24  information protectable by law.

25    5.5    In-Court Use of Designated Information: If information designated under this

26  Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the

27  Action, then the offering party must give advance notice to the party or non-party that designated

28  prior to offering the information so that any use or disclosure may be addressed in accordance with

the Court's case-management or other pre-trial order, or by a motion *in limine*. Nothing in this Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to the admissibility at trial of any evidentiary materials.

## 6.    CLAW-BACK REQUESTS

6.1    <u>Failure to Make Designation:</u>  If, at any time, a Party or non-party discovers that it produced or disclosed Confidential Information without designation, it may promptly notify the Receiving Party and identify with particularity the Confidential Information to be designated and the level of designation (the claw-back notification). The Receiving Party may then request substitute production of the newly-designated information. Within thirty (30) days of receiving the claw-back notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked or, if substitute production has been requested, destroyed all unmarked copies that it received, made, and/or distributed; and (2) if it was practicably unable to mark or destroy any information because disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms of this Protective Order regarding that information, the Receiving Party must reasonably provide as much information as practicable to aid the Designating Party in protecting the information, consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation privileges.

6.2    <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers that it produced information that it reasonably believes is subject to protection under the attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute information that redacts the information subject to the claimed protection. The Receiving Party must thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed protection.

/ / /

/ / /

/ / /

7

**7. DURATION/CONTINUED RESTRICTIONS**

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u>
Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the Designating Party shared or disclosed designated information in any of the matters under the Action returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or Party may retain designated information that it received from any other Party or non-party under this Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one copy for their respective legal files, and who must also describe to the Designating Party the extra steps taken to protect its legal file containing paper and/or electronic copies of the designated information so that it is not accessed, used, or disclosed inconsistently with the obligations under this Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision does not apply to Trustee, who may retain and use – consistent with this Order – Confidential Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter in the Action.

**8. PRIVILEGED OR PROTECTED INFORMATION**

8.1    Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, the work-product protection, or any other legally cognizable privilege (a "Privilege or Protection"). If information subject to a claim of Privilege or Protection is inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or any other information that may be protected from disclosure by a Privilege or Protection in any proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection, then it shall refrain from examining the document any more than is essential to ascertain if it is privileged or protected and shall promptly notify the producing Party in writing that the receiving

8

Exhibit 1, page 37

1    Party possesses material that appears to be subject to a Privilege or Protection. The producing Party

2    shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the

3    identified material. If the producing Party does not assert a claim of Privilege or Protection within the

4    seven (7)-day period, the material in question shall be deemed not privileged or protected.

5        8.3    If a producing Party has produced a document subject to a claim of Privilege or

6    Protection, upon written request by the producing Party, the document for which a claim of Privilege

7    or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the

8    receiving Party shall not use the document for any purpose other than in connection with analyzing

9    or disputing a claim of Privilege or Protection or in connection with a motion to compel the production

10   of the document.

11       8.4    The receiving Party sequestering or destroying such material may then move the Court

12   for an order compelling production of the material. The applicable producing Party bears the burden

13   of establishing the applicable Privilege or Protection of any clawed-back document or information as

14   and to the same extent that it would have borne such burden had it not produced the document or

15   information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's

16   right to request an in camera review of any information subject to a claim of Privilege or Protection.

17

18                                  ###

19

20

21

22

23

24   Date: June 3, 2024

        _Scott C. Clarkson_
        Scott C. Clarkson
        United States Bankruptcy Judge

25

26

27

28

9

1

2

3

4

5

6          EXHIBIT "A"

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 8:25-ap-10571-SC Doc 270 Filed 03/08/24 Entered 03/08/24 16:01:08 Desc
Main Document Page 140 of 184

Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Yosina M. Lissebeck (State Bar No. 201654)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile: 619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com

Sarah S. Mattingly (Ky. Bar 94257)
DINSMORE & SHOHL, LLP
101 S. Fifth Street, Suite 2500
Louisville, KY 40202
Telephone: 859-425-1096
Facsimile: 502-585-2207
Sarah.mattingly@dinsmore.com
(Admitted pro hac vice)

Special Counsel to Richard A. Marshack,
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

In Re

The Litigation Practice Group P.C.,

Debtor(s),

|  |  |
|---|---|
| Case No. 8:23-BK-10571-SC | |

Chapter 11

**EXHIBIT A TO STIPULATED ORDER**

Date:   May 23, 2024
Time:   1:30 p.m.
Judge:  Hon. Scott C. Clarkson
Place:  Courtroom 5C[1] - Via Zoom
        411 W. Fourth Street
        Santa Ana, CA 92701

---

[1] Video and audio connection information for each hearing will be provided on Judge Clarkson's publicly posted hearing calendar, which may be viewed online at:
http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

Exhibit 1, page 40

1   This is to certify that:

2       (a)    I am being given access to Confidential Information pursuant to the

3   Stipulated Protective Order that was entered into the main bankruptcy case for

4   Litigation Practice Group, but which is binding and controlling as set forth by the

5   Court's Order on any and all contested matters and  any and all litigation commenced

6   by Trustee;

7       (b)    I have read the Stipulated Protective Order; and

8       (c)    I agree to be bound by the terms and conditions thereof, including,

9   without limitation, to the obligations regarding the use, non-disclosure and return of

10  such Confidential Information. I further agree that in addition to being contractually

11  bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above

12  reference Court for any violation thereof.

13

14  Date: _____

15

16                                              _____
                                                Signature

17

18

19                                              _____
                                                Printed Name

20

21

22

23

24

25

26

27

28                                              Exhibit 1, page 41

                              2                 EXHIBIT A
                                                Page 3

# EXHIBIT 2

Exhibit 2. page 42

## LOAN AGREEMENT

THIS LOAN AGREEMENT (the "Loan Agreement") is made as of February 7, 2023 by and between BAT Inc a/k/a B.A.T. Inc. and The Litigation Practice Group PC, ("LPG" or "Borrower" or "Borrowers" which may be used interchangeably), and as personally guaranteed by Daniel March (residing at 20160 Nob Hill Drive, Yorba Linda, CA 92886) and Tony M Diab (an individual residing in California), both of whom are agents and officers of LPG with authority to bind same to this Note ("Guarantor" or "Guarantors" which may be used interchangeably without specification and shall collectively mean everyone identified herein) (LPG, Borrower, and Guarantor may all be used interchangeably throughout this Note) and MCA Fund ADV Inc. maintaining a place of business at 4714 16th Avenue, Brooklyn NY and/or to LDR International Ltd., a British Virgin Islands limited company, having its address at Yamraj Building, Market Square, 3rd Floor, P.O. Box 3175, Road Town, Tortola VG 1110, British Virgin Islands ("Lender" or "Lenders" which may be used interchangeably), or either of their assignees (collectively the "Parties"),

WHEREAS, on or about February 7, 2023, Lender provided a loan to Borrower in the principal amount of One Million Five Hundred Thousand Dollars ($1,500,000.00) (the "Principal") with interest (memorialized in a contemporaneous Promissory Note ("Note") executed by Borrower) due on or prior to May 6, 2023 (the "Maturity Date") subject to a schedule of disbursement(s) as reflected on the Note;

WHEREAS, Borrower has offered to execute and deliver a Promissory Note to Lender in the amount currently due and owing under the Loan, and to grant Lender a first-priority security interest in and lien upon all of Borrower's assets;

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.      Borrower acknowledges and agrees that, as of the date of this Loan Agreement: the total amount currently due and owing under the Loan, including unpaid principal, interest, charges, advances, penalties, and any other amounts due thereunder, equals One Million Five Hundred Thousand Dollars ($1,500,000.00) with interest (as defined in the Note) (the "Principal"); and Borrower has no rights of setoff or other any other defenses to its immediate obligation to pay this amount in full. Upon the occurrence of an Event of Default (as defined in the Promissory Note(s) or Security Agreement), the Interest Rate shall increase to the lesser of twenty four percent (24%) or the maximum amount permitted by applicable law. Interest shall not accrue on unpaid Interest or Late Charges (as defined below).

2.      All attorney fees and expenses actually incurred by Lender to collect on or enforce the Promissory Note, this Loan Agreement, the Security Agreement, or any Confessions of Judgments furnished by Borrower, to declare or adjudicate any rights under any of those documents, or to marshal any collateral that is security for the performance of Borrower's obligations under any of those documents, whether by suit or any other means whatever, shall be payable by Borrower and shall be added to and constitute party of the outstanding Principal.

1

Exhibit 2. page 43

3.      All payments by Borrower shall be applied first to the payment of any unpaid Late Charges, second to the payment of any unpaid Interest, and third to the reduction of the Principal.

4.      All unpaid Principal, Interest, and Late Charges shall be paid in full by the Borrower on or prior to the Maturity Date.

5.      An event of default (an "Event of Default") shall be deemed to be interpreted and defined as stated in the Promissory Note and/or Security Agreement.

6.      Upon the occurrence of an Event of Default, the Maturity Date shall immediate accelerate to the date of the Event of Default, and all unpaid attorney's fees, Late Charges, Interest, Principal, and other expenses contemplated in the Note, Security Agreement, and this Loan Agreement shall be due and payable.

7.      Borrower shall make all payments due under this Loan Agreement by wire, with immediately available funds or a check acceptable to Lender.

8.      Borrower shall execute and deliver to Lender a promissory note (the "Promissory Note") pursuant to which Borrower shall unconditionally promise to pay Lender the Principal sum on or prior to the Maturity Date.

9.      Borrower shall execute and deliver to Lender a security agreement (the "Security Agreement") pursuant to which Borrower shall grant Lender a first-priority security interest in and lien upon all of Borrower's assets (as defined in the security agreement, the "Collateral") a security for performance of Borrower's obligations under this Loan Agreement and the Promissory Note.

10.     Borrower represents and warrants to Lender that: (a) Borrower has the full right, power and authority to bind the corporations identified herein, enter into and perform the terms of this Loan Agreement and none of the terms or conditions of this Loan Agreement, the Promissory Note, or the Security Agreement are or shall be in violation of any provisions of any other agreement to which Borrower is a party; (b) Borrower is duly organized, validly existing and in good standing under the laws of the state of California; (c) there is no litigation pending against Borrower, its shareholders, officers, or directors, which could, if adversely determined, be reasonably expected to materially impair the right of Borrower to carry on business substantially as now conducted or materially adversely affect the financial condition of Borrower; (d) Borrower and each of the shareholders, officers, and directors of Borrower filed or caused to be filed all federal, state and local tax returns, which are required to be filed, and has paid or caused to be paid all taxes and assessments to the extent that such taxes or assessments have become due, except for any assessment contested in good faith and for which adequate reserves have been set aside; (e) Borrower is not insolvent as of the date of this Loan Agreement and shall not become insolvent as result of its obligations under this Loan Agreement, the Promissory Note, or the Security Agreement; (f) there is no action or proceeding pending, or to the knowledge of Borrower, threatened, which could be reasonably expected to materially and adversely affect the rights of Lender under this Loan Agreement, the Promissory Note, or the Security Agreement, Borrower's ability to perform its obligations hereunder or thereunder, title to the Collateral (as

2

Exhibit 2. page 44

defined in the Security Agreement), or the validity or priority of the security interest in and lien on the Collateral created hereunder and thereunder; (g) there are no judgments against Borrower unpaid or unsatisfied of record in any court of this state or of the United States; (h) at no time has Borrower made an assignment for the benefit of creditors; (i) Borrower has been afforded time and been advised by Lender to retain legal counsel to represent Borrower in this transaction.

11.     Borrower hereby agrees that so long as any amount is owed to Lender under this Loan Agreement, Borrower and its shareholders, officers and directors shall: (a) hold and save Lender free and harmless from any causes of actions, claims, damages and liabilities of a contractual, tort or tax nature due to the acts or omissions of Borrower, and to pay for Lender's counsel to represent and defend Lender against any such causes of actions, claims, damages or liabilities; (b) keep the Collateral free and clear of all liens, charges, encumbrances, taxes, assessments and claims except such as arise hereunder, under the Security Agreement or as may otherwise be permitted by Lender; (c) give Lender immediate notice, in writing, at Lender's designated address, within ten (10) days of obtaining any replacements of the Collateral, and cause to be executed appropriate documents so that such replacements shall be secured in accordance with this Loan Agreement and the Security Agreement; (d) obtain all license renewals and any other required licenses and permits necessary for the continued operation of Borrower's business and preservation of the Collateral; (e) promptly pay all fines, penalties or assessments which may be imposed or assessed on Borrower; (f) fully cooperate with Borrower's insurance carrier in reporting, investigating and defending any claim; (g) keep accurate and complete books and records and maintain the same and permit any authorized representative of Lender and its attorneys, accountants and agents to inspect, examine and make copies and abstracts of Borrower's books of account and records at reasonable times during normal business hours; (h) give Lender immediate notice, in writing, at Lender's designated address, of the occurrence of all liens, charges, encumbrances, taxes, assessments and claims which might materially and adversely affect the rights of Lender under this Loan Agreement, the Promissory Note, or the Security Agreement, Borrower's ability to perform its obligations hereunder or thereunder, title to the Collateral or the validity or priority of the security interest in and lien on the Collateral created hereunder and thereunder; (i) pay all indebtedness due under this Loan Agreement and the Promissory Note in accordance therewith, and strictly abide by all terms, covenants, agreements and conditions set forth in this Loan Agreement, the Promissory Note, the Security Agreement and all other documents executed in connection with the Loan; (j) not issue, split, reclassify or declare payment of or a dividend payable on any capital stock or issue any warrants, or options on its capital stock, for consideration or otherwise; and (k) give notice to Lender of the occurrence of any Event of Default (as herein defined) or circumstance which, through lapse of time, may become an Event of Default.

12.     Borrower shall execute simultaneously with this Loan Agreement and from time to time thereafter any documents required by Lender to perfect and/or continue Lender's security interests in any Collateral.

13.     Borrower hereby authorizes Lender to file financing statements to perfect Lender's first-priority security interest in the Collateral from time to time. Borrower hereby appoints Lender as its attorney-in-fact to sign and file any such documents.

3

Exhibit 2. page 45

14.    Borrower hereby appoints Lender as its attorney-in-fact to process any of the accounts/receivables contemplated herein, in the Security Agreement, or in the Note, or to otherwise protect Lender's interest in the Principal.

15.    Upon request, Borrower shall re-execute any document or instrument signed in connection with the Loan which was incorrectly drafted or signed or execute any document or instrument that Lender requires in connection with this Loan.

16.    Lender's obligations under this Loan Agreement shall be conditioned upon the delivery by Borrower, to Lender in form and substance satisfactory to Lender and its counsel, of the following documents each property executed: (a) the Promissory Note; (b) the Security Agreement; (c) a financing statements under the Uniform Commercial Code (UCC) in appropriate form for filing by Lender, sufficient in form and substance to grant to Lender a first priority perfected security interest in the Collateral (as defined in the Security Agreement); (d) an affidavit for judgment by confession executed by Borrower to be retained by Lender pending default by Borrower in any of the terms, covenants and conditions of this Loan Agreement, the Promissory Note, the Security Agreement, or any other collateral documents executed in connection with the Loan, in which event Lender may enter said confessions of judgment in any court of competent jurisdiction; (e) resolutions of the board of directors or managing member(s) of Borrower, certified by the secretary of Borrower, authorizing the execution and performance of this Loan Agreement, the Promissory Notes, and evidence of consent of 100% of the stockholders or members of Borrower to the aforesaid transaction; (f) an unconditional guarantee of performance of Borrower's obligations under this Loan Agreement and the Promissory Note signed by the directors or managing members of the Borrower; (g) to notify Lender immediately in writing of any events which at any time may cause the representations and warranties herein or in the Loan Agreement to cease to be true or that the Principal or Lender's return of same might be jeopardy.

17.    The occurrence of any of the following events shall constitute an Event of Default under this Loan Agreement: (a) the failure of Borrower to pay when due all amounts due under this Loan Agreement, the Promissory Note, and the Security Agreement; (b) the failure of Borrower to perform, or a breach by Borrower of, any of the terms, covenants or conditions of this Loan Agreement, the Promissory Note, or the Security Agreement; (c) the failure of Borrower to pay or bond any judgment against it or remove or bond any levy, execution or judicial process against any item included in the Collateral within thirty (30) days after Borrower obtains knowledge of the entry, or the filing of any tax deficiency notice or lien against Borrower by any municipal, state or federal government or any agency thereof, unless contested by Borrower in good faith; (d) the failure of Borrower to pay all of its debts as they come due; (e) the filing of a bankruptcy petition by or against borrower, the making an assignment for the benefit of Borrower's creditors, or the appointment of custodian, receiver, or trustee for Borrower or its assets; (e) if any of the representations and warranties made by Borrower in this Loan Agreement, the Security Agreement or any other instrument executed in connection with this Loan Agreement or the Loan are or become untrue, incorrect or misleading; (f) the dissolution or other termination of Borrower; (g) the failure of Borrower (or any shareholder, partner or member of Borrower ) to perform or comply with any covenant or condition contained in any agreement to which Lender and Borrower or any such shareholder, partner or member are parties (including, without limitation, any guaranty or pledge agreement guaranteeing or securing

4

Exhibit 2. page 46

Borrower's obligations hereunder), without the benefit of any applicable grace period, including this and these documents.

18.    In addition to the rights under this Loan Agreement, upon the occurrence of any Event of Default, Lender shall have all rights with respect to the Collateral granted under the Promissory Note, the Security Agreement, the UCC or any other applicable law, subject to any notice required by law.

19.    Borrower agrees to: (a) pay or reimburse Lender for all its out-of-pocket costs and expenses incurred in connection with the development, preparation and execution of, and any amendment, supplement or modification to, this Loan Agreement, the Promissory Note and the Security Agreement and any other documents or instruments executed in connection herewith or therewith, and the consummation of the transactions contemplated hereby and thereby, including, without limitation, the fees and disbursements of counsel to Lender; (b) pay or reimburse Lender for all its costs and expenses incurred in connection with the enforcement or preservation of any rights under this Loan Agreement, the Promissory Note, the Security Agreement and any such other documents, including, without limitation, fees and disbursements of counsel to Lender; (c) pay, indemnify, and hold Lender harmless from all recording and filing fees and all liabilities with respect to, or resulting from any delay in paying, stamp, excise and other taxes, if any, which may be payable or determined to be payable in connection with the execution and delivery of, or consummation of any of the transactions contemplated by, or any amendment, supplement or modification of, or any waiver or consent under or in respect of, this Loan Agreement, the Promissory Note, the Security Agreement and any such other documents; and (d) pay, indemnify, and hold Lender harmless from and against all other liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever with respect to the execution, delivery, enforcement, performance and administration of this Loan Agreement, the Promissory Note, the Security Agreement and any such other documents (all the foregoing, collectively, the "indemnified liabilities"), provided that Borrower shall have no obligation hereunder to Lender with respect to liabilities arising directly from the gross negligence or willful misconduct of Lender. The agreements in this subsection shall survive repayment of the Promissory Note and all other amounts payable hereunder.

20.    All notices shall be in writing and shall be deemed to have been properly given (i) upon delivery, if delivered in person or one (1) Business Day (defined below) after having been deposited for overnight delivery with any reputable overnight courier service or sent by email. Either party by notice to the other may designate additional or different addresses for subsequent notices or communications. For purposes of this Section, "Business Day" shall mean a day on which banks are not authorized or required by law to close in the State of New York.

21.    The provisions of this Loan Agreement and all instruments and other agreements executed pursuant hereto are severable and in the event any provision hereof or thereof is invalid or contrary to law, the same shall be null and void but the remaining provisions shall be binding among the parties.

22.    All warranties, representations and covenants of the parties shall survive the consummation of the transactions contemplated thereby.

5

Exhibit 2. page 47

23.    This Loan Agreement represents the entire agreement of Lender and Borrower with respect to the subject matter hereof, and there are no promises, undertakings, representations or warranties by Lender relative to the subject matter hereof not expressly set forth herein, the Promissory Note or the Security Agreement or any other documents and instruments executed hereunder or thereunder.

24.    This Loan Agreement shall bind and inure to the benefit of the parties hereto, their respective heirs, legal representatives, successors and permitted assigns. Each Party shall use all reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other Parties in doing, all things necessary, proper or advisable to carry out the intent and purposes of this Agreement.

25.    This Loan Agreement, the Security Agreement, the Promissory Note and any other document executed in connection with the Loan may not be amended, supplemented or modified except pursuant to a writing executed by the party to be charged with such amendment, supplement or modification. No writing delivered to Borrower by or on behalf of Lender setting forth principal balance, payment or other information regarding the Loan shall constitute any amendment, supplement or modification of this Loan Agreement, the Promissory Note or the obligations of Borrower hereunder or thereunder unless such writing specifically states that it constitutes such an amendment, supplement or modification.

26.    Lender may assign its rights in and to this Loan Agreement, the Promissory Note, the Collateral, the Security Agreement and all other documents and instruments executed hereunder and thereunder.

27.    No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege under this Loan Agreement, the Promissory Note, the Security Agreement, or any other document or instrument executed hereunder or thereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder or thereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided or provided therein are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.

28.    It is the intent of the parties that the Interest Rate and all other charges to Borrower be lawful. If for any reason the payment of a portion of Interest, fees or charges as required by this Loan Agreement, Security Agreement, or Promissory Note would exceed the limit permitted by applicable law then the obligation to pay interest or charges shall automatically be reduced to such limit and, if any amounts in excess of such limit shall have been paid, then such amounts shall be applied to the unpaid Loan Amount or refunded so that under no circumstances shall interest or charges required hereunder exceed the maximum rate allowed by law as aforesaid.

29.    This Loan Agreement is being delivered in the State of New York and shall be construed and enforced in accordance with the laws of the State of New York without any conflict of law provision. Any action(s) or pursuit of any legal remedy in any legal claim or remedy in any legal forum in connection with this document, arising from this document, or related to any obligation related hereto, same must be commenced in the state or federal court sitting in New York

6

Exhibit 2. page 48

County, New York. Each Party hereby irrevocably and unconditionally submits for itself and its property in any legal action or proceeding relating to this Loan Agreement and the other documents to which it is a party related to the Loan, including, without limitation, the Promissory Note and the Security Agreement, or for recognition and enforcement of any judgment in respect thereof, to the non-exclusive general jurisdiction of the courts of the State of New York venued in New York County or in the Southern District of New York, and appellate courts from any thereof, consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same, agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by certified mail (or any substantially similar form of mail), postage prepaid, to its address set forth herein or at such other address of which all of the other parties hereto shall have been notified pursuant thereto; agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction or to file any liens/lis pendens in any court to encumber any real property owned by any Borrower whilst an action pursues in the New York courts; and

30. Each Party agrees to waive a trial by jury in any action or proceeding brought by either of the parties against the other arising out of or in any way connected with this Loan Agreement.

31. This Agreement may be executed in two or more counterparts each of which is an original, but all of which together shall constitute one and the same instrument. Electronic signatures shall be deemed originals and as if signed in "wet ink." Borrower agrees not to raise any claim or defense as to the lack of an original.

32. This writing and the documents executed in connection with the Loan contain the entire agreement of the parties with respect to its subject material and no modifications, alterations or waiver of all or any part shall be valid unless made by a writing and signed by all the parties hereto. Each Party shall use all reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other Parties in doing, all things necessary, proper or advisable to carry out the intent and purposes of this Agreement.

IN WITNESS WHEREOF, the undersigned have executed and delivered this Loan Agreement as of the day and year first above written.

**GUARANTOR:**

By: _____
Name: Tony M Diab

**BORROWER:**

BAT Inc a/k/a B.A.T. Inc.

By: _____
Name: Tony M Diab
Title: Officer

7

Exhibit 2. page 49

**GUARANTOR:**

By: _____
Name: Daniel March

**BORROWER:**

The Litigation Practice Group PC

By: _____
Name: Daniel March
Title: Officer

| LENDER: | LENDER: |
|---|---|
| MCA Fund ADV Inc. | LDR International Ltd., |
| By: _____ | By: _____ |
| Title: Officer | Title: Officer |

8

Exhibit 2. page 50

Case 8:25-ap-01190-SC   Doc 37   Filed 11/17/25   Entered 11/17/25 14:01:38   Desc
Main Document      Page 66 of 232

17, bd Albert 1er
MONACO ☎ +377 97 97 09 09

Case 8:25-ap-01190-SC   Doc 1   Filed 03/18/25   Entered 03/18/25 16:04:36   Desc
Main Document      Page 51 of 84

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____Orange_____)

On _February 7, 2023_ before me, _Olga Lucia Esquivel, Notary Public_
                                    (insert name and title of the officer)

personally appeared _Daniel S. March_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

OLGA LUCIA ESQUIVEL
COMM. # 2282791
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
MY COMM. EXP. MAR. 25, 2023

Exhibit 2. page 51

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Orange _____ )

On ___ 2/7/23 _____ before me, __ Vanessa Banken-Buchner _____
                                    (insert name and title of the officer)

personally appeared ___ Tony Maurice Diab _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Vanessa Banke Bun_ (Seal)

VANESSA BANKEN-BUCHNER
COMM #2364027
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
My Commission Expires July 3, 2025

Exhibit 2. page 52



# EXHIBIT 3

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR ANY STATE SECURITIES LAWS AND NEITHER SUCH SECURITIES NOR ANY INTEREST THEREIN MAY BE OFFERED, SOLD, PLEDGED, ASSIGNED OR OTHER WISE TRANSFERRED UNLESS (1) A REGISTRATION STATEMENT WITH RESPECT THERETO IS EFFECTIVE UNDER THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR (2) AN EXEMPTION TO SUCH REGISTRATION IS AVAILABLE FOR SUCH OFFER, VALUE PLEDGE, ASSIGNMENT OR TRANSFER.

## PROMISSORY NOTE

**$1,500,000.00**                                              Dated: February 7, 2023

1.     **Borrower's Promise to Pay.** For value received, BAT Inc a/k/a B.A.T. Inc. and The Litigation Practice Group PC, (collectively "LPG" or "Borrower" or "Borrowers" which may be used interchangeably), and as personally guaranteed by Daniel March (residing at 20160 Nob Hill Drive, Yorba Linda, CA 92886) and Tony M Diab (an individual residing in California), both of whom are agents and officers of LPG with authority to bind same to this Note ("Guarantor" or "Guarantors" which may be used interchangeably without specification and shall collectively mean everyone identified herein) (LPG, Borrower, and Guarantor may all be used interchangeably throughout this Note), hereby unconditionally promises to pay to MCA Fund ADV Inc. maintaining a place of business at 4714 16th Avenue, Brooklyn NY and/or to LDR International Ltd., a British Virgin Islands limited company, having its address at Yamraj Building, Market Square, 3rd Floor, P.O. Box 3175, Road Town, Tortola VG 1110, British Virgin Islands ("Lender" or "Lenders" which may be used interchangeably), or either of their assignees, the principal sum of One Million Five Hundred Thousand Dollars ($1,500,000.00) (the "Principal") in accordance with this Promissory Note (the "Promissory Note"), to be disbursed pursuant to Schedule A, annexed hereto and made a part hereof.

2.     **Maturity Date.** All unpaid Principal, Interest, and Late Charges shall be paid in full by the Borrower on or prior to May 6, 2023 (the "Maturity Date").

3.     **Interest.** The outstanding principal amount shall bear interest ("Interest") at a rate equal to seven percent (7.0%) per month. Interest shall be paid monthly on the sixth (6th) of every month (or if such day is not a business day, on the next succeeding business day) during the term of this Note. Interest will be calculated based on a 360-day year. Interest payment(s) shall be made payable as designated the Lender. To the extent the interest rate charged is deemed illegal, usurious or unenforceable under the law (even *ab initio* or *nunc pro tunc*), the parties hereto agree that the offending term shall be deemed to have been modified and replaced, *ab initio* or *nunc pro tunc*, with the maximum interest rate permitted by applicable law.

4.     **Default Interest.** Upon the occurrence of an Event of Default (as provided below), the Interest Rate shall increase to the lesser of twenty four percent (24%) ("Default Interest") or the maximum amount permitted by applicable law. To the extent the default interest rate charged is deemed illegal, usurious or unenforceable under the law (even *ab initio* or *nunc pro tunc*), the

1

parties hereto agree that the offending term shall be deemed to have been modified and replaced, *ab initio* or *nunc pro tunc*, with the maximum default interest rate permitted by applicable law.

5.    **Attorney Fees and Expenses**. All attorney fees, costs, disbursements, and expenses incurred by Lender to collect on or enforce this Promissory Note, to declare or adjudicate any rights under the Promissory Note, to enforce Lenders' rights with respect to a Security Agreement and any other loan document which is executed by Borrower contemporaneously herewith, to marshal any collateral that is security for the performance of Borrower's obligations under the Promissory Note, a Security Agreement and any other loan document which is executed by Borrower contemporaneously herewith, whether by suit or any other means whatever, shall be payable by Borrower and Guarantor and shall be added to and constitute part of the outstanding Principal.

6.    **Application of Payments**. All payments by Borrower shall be applied first to the payment of any unpaid Default Interest and second to payment of or the reduction of the Principal.

7.    **Borrower's Authority**. Borrowers Daniel March and Tony M Diab, as a member/officer of the Entity Borrowers has the authority to bind the Borrower Entities to this Promissory Note and/or has obtained the consent to do so from the other member/officers of each of the Entity Borrowers.

8.    **Event of Default**. An event of default (an "Event of Default") shall occur and be ongoing if Lender does not receive the monthly payment of Interest or the Principal by the Maturity Date, time being of the essence after a five (5) day grace period expires wherein Borrower can cure the default. Additionally, an Event of Default shall occur if Borrower defaults on the Security Agreement and any other loan document which is executed by Borrower contemporaneously herewith. In an Event of Default, all outstanding sums (Principal, Interest, attorneys' fees, miscellaneous fees as provided for herein) shall become immediately due, owing, and payable.

9.    **Lender's Rights Upon Event of Default**. Upon the occurrence of an Event of Default, Lender may, in its sole discretion, exercise any and all of its rights under this Promissory Note, all documents and agreements executed by Borrower in connection with this Promissory Note, and applicable laws, including, without limitation, enforcing its rights with respect to all collateral granted by Borrower as security for this Promissory Note, entering any confessions of judgment executed by Borrower, commencing an action in a court of competent jurisdiction in any state and county in which any of the Entity Borrowers operates its business or owns real property, or process/debit Borrowers' consumer's accounts acting or engaging an ACH processor to debt/collect fees from Borrowers' consumer's accounts, filing any UCC financing statements that Lender deems appropriate in any state and against any person, entity, corporation, or affiliate of Borrower.

10.    **Preservation of Collateral**. Borrower shall not, without the prior written consent of Lender, dispose, transfer, encumber, assign, sell, divert, or otherwise prevent marshaling of any collateral that is pledged as security for the performance of Borrower's obligations under the Promissory Note, or dispose, transfer, encumber, assign, sell, divert, or otherwise prevent marshaling of or any stock, membership interests, or equity of Borrower, whether by sale, transfer, assignment, license, lease, merger, surrender, consolidation (other than sales of

2

products in the ordinary course of Borrower's business), or windup, liquidate or dissolve Borrower's business.

11.     **Transfer by Lender.** Lender may transfer the Promissory Note to any party at any time, in its sole discretion, without notice to or the consent of Borrower. For purposes of this Note, "Lender" shall include Lender, any party to whom the Promissory Note is endorsed and transferred, and any party who holds the Promissory Note if it is endorsed "in blank" by Lender or a transferee.

12.     **Transfer by Borrower.** Borrower may not transfer or assign its rights or obligations under this Promissory Note without the prior written consent of Lender.

13.     **Waiver(s).** Borrower hereby waives any and all rights of presentment for payment, notice of dishonor, protest, notice of protest of this Note or other notice of any kind and all demands whatsoever; and in litigation with Lender, whether or not arising out of or relating to this Note or any collateral security therefore, waives trial by jury, and in addition, expressly waive the right to interpose any defense based on any statute of limitations or any claim of laches and any setoff, counterclaim, or cross-claim of any nature or description. Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

14.     **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES**: To the extent permitted by law,
    A. Guarantor waives all rights to:
        1) Require presentment, protest, or demand upon Borrower;
        2) Redeem any Collateral before or after Lender disposes of it;
        3) Have any disposition of Collateral advertised; and
        4) Require a valuation of Collateral before or after Lender disposes of it.

    B. Guarantor waives any notice of:
        1) Any default under the Note;
        2) Presentment, dishonor, protest, or demand;
        3) Execution of the Note;
        4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
        5) Any change in the financial condition or business operations of Borrower or any guarantor;
        6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
        7) The time or place of any sale or other disposition of Collateral.

    C. Guarantor waives defenses based upon any claim that:
        1) Lender failed to obtain any guarantee;
        2) Lender failed to obtain, perfect, or maintain a security interest in any property

3

offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

15.    **No Waiver by Lender.** Lender's rights and remedies herein are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently. No failure by Lender to exercise any of its rights or remedies under this Promissory Note shall constitute a waiver of such right or remedy or bar Lender from exercising such right or remedy at some later date. Lender may only waive a rights or remedy hereunder in writing. A waiver by Lender of any right or remedy under the terms of this Note, on any one occasion, shall not be construed as a bar to the exercise of any right, power, privilege or remedy which the Holder would otherwise have had on any further occasion.

16.    **Modification.** Any modification or amendment of this Promissory Note must be in writing and signed by Borrower and Lender.

17.    **Governing Law.** This Promissory Note shall be governed by the laws of the State of New York, without giving effect to any choice of law provisions indicating the laws of another state. Any litigation involving or stemming from this Note shall only be filed in the state or federal court located in New York, New York. It is the intent of the parties that the interest rate herein and all other charges to Borrower be lawful. If for any reason the payment of a portion of interest, fees or charges as required by this Note would exceed the limit permitted by applicable law then the obligation to pay interest or charges shall automatically be reduced to such limit and, if any amounts in excess of such limit shall have been paid, then such amounts shall be applied to the unpaid Principal or refunded so that under no circumstances shall interest or charges required hereunder exceed the maximum rate allowed by law. Any provision hereof which may

4

prove unenforceable under any law shall not affect the validity of any other provision hereof.

18.    **Non-Original Submissions.** Borrowers, Guarantor, and Lender hereby agree that electronic/facsimile signatures on this Note may be deemed as if signed in "wet ink." Borrowers and Guarantor hereby waive any defense or argument that Lender failed to submit an "original" Note which was signed in "wet ink."

**IN WITNESS WHEREOF**, Borrowers and Guarantor have duly executed this Promissory Note as of the day and year first above written.

**GUARANTOR:**

By: _____
Name: Tony M Diab

SSN:

**GUARANTOR:**

By: _____
Name: Daniel March

SSN: ▓▓▓▓9617

**BORROWER:**

BAT Inc a/k/a B.A.T. Inc.

By: _____
Name: Tony M Diab
Title: Officer

**BORROWER:**

The Litigation Practice Group PC

By: _____
Name: Daniel March
Title: Officer

STATE OF _____ )
COUNTY OF _____ )

    On February __, 2023 before me, the undersigned, a Notary Public in and for said State, personally appeared Tony M Diab personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                                  _____
                                  Notary Public

STATE OF _____ )
COUNTY OF _____ )

    On February __, 2023 before me, the undersigned, a Notary Public in and for said State, personally appeared Daniel March personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, execute the instrument.

                                    _____
                                  Notary Public

5

## Schedule A
### Disbursements of the Principal

1. To The Litigation Practice Group PC, the amount of $1,500,000.00 representative as

   funding of the loan.

   The Litigation Practice Group PC
   17542 E 17th Street, Ste 100
   Tustin, CA 92780
   Routing: ████9593
   Account: ████6512

6

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____Orange_____ )

On _February 7, 2023_ before me, Olga Lucia Esquivel, Notary Public
(insert name and title of the officer)

personally appeared _Daniel S. Maroh_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Olga Esquivel_ (Seal)

OLGA LUCIA ESQUIVEL
COMM. # 2292791
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
MY COMM. EXP. MAR. 25, 2023

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Orange _____ )

On __2/7/23__ before me, __Vanessa Banken-Buchner__
(insert name and title of the officer)

personally appeared _____ Tony Maurice Diab _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

VANESSA BANKEN-BUCHNER
COMM #2364027
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
My Commission Expires July 3, 2026

Signature _____   (Seal)

Exhibit 3, page 61

# EXHIBIT 4

Case 8:25-ap-01190-SC   Doc 37   Filed 11/17/25   Entered 11/17/25 14:01:38   Desc
Main Document    Page 78 of 232

17, bd Albert 1er
MONACO ☎ +377 97 97 09 09

Case 8:25-ap-01190-SC   Doc 1   Filed 03/18/25   Entered 03/18/25 16:04:36   Desc
Main Document    Page 63 of 84

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (the "Security Agreement") is made as of February 7, 2023 by and between BAT Inc a/k/a B.A.T. Inc. and The Litigation Practice Group PC, (collectively "LPG" or "Borrower" or "Borrowers" which may be used interchangeably), and as personally guaranteed by Daniel March (residing at 20160 Nob Hill Drive, Yorba Linda, CA 92886) and Tony M Diab (an individual residing in California), both of whom are agents and officers of LPG with authority to bind same to this Note ("Guarantor" or "Guarantors" which may be used interchangeably without specification and shall collectively mean everyone identified herein) (LPG, Borrower, and Guarantor may all be used interchangeably throughout this Note) and MCA Fund ADV Inc. maintaining a place of business at 4714 16th Avenue, Brooklyn NY and/or to LDR International Ltd., a British Virgin Islands limited company, having its address at Yamraj Building, Market Square, 3rd Floor, P.O. Box 3175, Road Town, Tortola VG 1110, British Virgin Islands ("Lender" or "Lenders" which may be used interchangeably), or either of their assignees (collectively the "Parties"),

WHEREAS, Borrower has executed and delivered to Lender a certain Promissory Note dated February 7, 2023 (the "Note"), pursuant to which, among other things, Borrower has promised to pay to the Lender the principal sum of One Millions Five Hundred Thousand Dollars ($1,500,000.00) (the "Principal")) with interest (per the Note) on or before May 6, 2023 (the "Maturity Date").

WHEREAS, to induce Lender to enter into the Note, Borrower has agreed to grant Lender a security interest in the Collateral (as hereinafter defined), as security for Borrower's full and timely performance of the Secured Obligations (as defined below); and

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      To secure the full and timely performance of all of Borrower's obligations under the Note, including, without limitation, payment of all Principal, interest, and any other amounts due from Borrower to Lender under Note (the collectively, the "Secured Obligations), Borrower hereby grants and conveys to Lender a security interest in and lien upon the following collateral, as such term is used in Article 9 of the Uniform Commercial Code (the "UCC"): all tangible and intangible property, assets, and rights of Borrower now owned or hereafter acquired, including, without limitation, all real estate, real estate interests, membership interests in any corporation/company whether named herein or not, accounts receivables, profits, revenue, cash, tax refunds, loans, financing from banks, fixtures, leases, vehicles, licenses, equipment, contracts, inventory, raw materials, office equipment, computer hardware and software, intellectual property, claims, causes of action, cash, bank accounts, accounts receivable, stock, insurance policies, insurance proceeds and products thereof, books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto, the goods which may be more particularly described in the attached exhibits, if any, and all proceeds and products from all collateral covered by this Security Agreement whether or not purchased with loan proceeds, and all substitutions, replacements and accessions thereto, including but not limited to any real property owned by or revenue from any real property owned

1

by any of the corporations stated herein or not, wherever located, as well as the actual account, anticipated revenue/fee(s) generated therefrom, from all of Borrowers' (and their affiliates' and other entities in their control) consumers' accounts which are debited/processed by Borrower which Borrower pledges as security and subject to a UCC financing statement (the "Collateral").

2.       Separately, and by no means limited, Borrower represents and agrees that it shall continuously provide and grant Lender real-time and continuous access to its/their customer relationship management ("CRM") software, being represented that same is currently known as "Debt Pay Pro." If Borrower changes the CRM software that it uses, it shall notify Lender prior to switching and shall provide Lender with whatever login credentials/capabilities are necessary to ensure that Lender is able to access, in real-time and continuously, Borrower's CRM software. Borrower also represents and agrees that the appropriate instructions shall be given to the CRM software administrative personnel to enable Lender to have the access provided for and contemplated herein. Borrower's violation of this provision shall be deemed an Event of Default which if uncured following a one (1) day cure period, shall be deemed a default of this Agreement and an acceleration of any terms contemplated herein and in any other document executed by Borrower in Lender's favor (a Note, Loan Agreement, etc.) and which shall also entitle Lender to exercise any remedies available to it pursuant to this Agreement (and any other document executed by Borrower in Lender's favor (a Note, Loan Agreement, etc.) and/or at law.

3.       Specifically, and by no means of limitation, if Borrower defaults on this Agreement, the Note, or any other document executed by Borrower in Lender's favor, Lender shall automatically have the realized and vested right to engage a processor (such as an ACH processor) to automatically/electronically debit/process/charge the accounts of Borrowers' clients/customers until the Principal, Interest, and any other fees contemplated by the Note, this Agreement, and any other document executed by Borrower in Lender's favor is paid in full to Lender.

4.       Borrower hereby appoints Lender as its attorney-in-fact to process any of the accounts/receivables contemplated herein, in the Security Agreement, or in the Note, or to otherwise protect Lender's interest in the Principal.

5.       Until such time as Lender receives all of the money contemplated in the Note, Borrower agrees, represents, pledges, and promises that it shall not enter into a similar agreement with anyone else, governing or related to the accounts and/or customers of Borrower nor shall Borrower pledge, encumber, transfer, sell, assign, or otherwise interfere with Lender's ability to secure repayment of its Principal. Borrower also pledges, promises, and represents that it will not, directly or indirectly, instruct or guide any of its customers/accounts/merchants/vendors/ clients to pay any other entity for the payments that are contemplated herein which are and should be directed to Lender.

6.       Until such time as Lender receives all of the money contemplated in the Note, the Principal shall be deemed a lien against and over all of Borrower's assets, accounts, receivables, interests, etc. whether material, vested, realized, or not.

7.       Hold harmless and indemnification. Borrower represents that it is in compliance with all applicable laws and has the power and authority to enter into this Agreement and to engage in the actions contemplated herein. Borrower hereby indemnifies and holds harmless Lender, along

2

with their agents, members, and affiliates from and against any and all claims, actions, suits, proceedings, judgments, damages, liabilities, costs and expenses, including attorneys' fees arising directly or indirectly from challenge or other breach of this Agreement, other than for Lender's own negligence.

8.    Borrower hereby authorizes Lender to pledge, lend, or use the Collateral in a manner which impairs Borrower's rights to redeem it. Borrower hereby permits Lender to file any UCC financing statements against Borrower or any asset of Borrower to secure these obligations in any state throughout the United States, against any entity or individual identified herein, or against any entity or individual subsequently discovered by Lender that Borrower has an interest in, as necessary, in order to secure the Principal.

9.    Lender's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under the UCC or otherwise, shall be to deal with it in the same manner as Lender deals with similar property for its own account. Neither Lender, nor any of its directors, officers, employees or agents, shall be liable for failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so.

10.    Borrower makes the following representations: (a) Borrower has the full and unconditional right and corporate authority to grant to Lender this security interest and any lien(s) granted herein; (b) the Collateral is lawfully owned by Borrower and is free and clear of any and all liens, security interests, claims, charges, encumbrances, taxes and assessments except as may otherwise be specifically set forth in this Security Agreement or publicly recorded; (c) except for any financing statement filed in favor of Lender, or other mortgage financing agreement which is on file with the county clerk for the specific property, no financing statement covering any of the Collateral is on file in any public office; (d) no terms or conditions of this Security Agreement are in violation of the provisions of any other agreement to which Borrower is a party; (e) all of the documents which comprise the Collateral are valid, binding and enforceable in accordance with their respective terms; (f) there is no action or proceeding pending, or to Borrower's knowledge, threatened, which in any way could reasonably be expected to materially and adversely affect (i) the rights of Lender under this Security Agreement, (ii) Borrower's ability to perform its obligations hereunder, (iii) title to the Collateral, or (iv) the validity or priority of the security interest and lien in and on the Collateral created hereunder.

11.    Borrower represents that they have all requisite right, power, and authority to execute, deliver, and perform this Agreement, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder. The execution and delivery of this Agreement and any related documents notwithstanding the consummation of the transactions contemplated hereby and thereby, have been duly approved by all parties, and no further action is required to authorize this Agreement, any related Agreement to which anyone may be a party, or the transactions contemplated hereby and thereby. This Agreement has been, and each of any related Agreements will be, duly and validly executed and delivered by the parties executing same and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the named party thereto, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable

3

bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

12.     No consent of any party to any contract, agreement, instrument, lease or license to which any party hereto is a party or to which any of its properties or assets are subject is required for the execution, delivery or performance by Borrower of any term of this Agreement. Borrower represents that it is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the parties to this Agreement or any other agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

13.     Borrower covenants and agrees as follows: (a) to pay and perform all of the Secured Obligations according to the terms of the Note and to defend the title to the Collateral against all persons and entities and against all claims and demands whatsoever; (b) on demand of Lender, to furnish further assurance of title, execute any written agreement or do any other acts necessary to effectuate the purposes and provisions of this Security Agreement, execute any instrument or statement required by law or otherwise in order to perfect, continue or terminate the security interest of Lender in the Collateral and pay all costs or filing fees in connection therewith; (c) to pay, when due, all taxes, assessments and license fees relating to the Collateral, which if not paid may give rise to a lien, charge or encumbrance on the Collateral; (d) to keep the Collateral, at Borrower's own cost and expense, in good repair and condition and not misuse, abuse, waste or allow the Collateral to deteriorate, except for normal wear and tear, and to make same available for inspection by Lender at all reasonable times; (e) to not sell, exchange, assign, loan, deliver, mortgage, or otherwise dispose of the Collateral during the existence of this Security Agreement without the prior written consent of Lender; (f) to not grant or give a security interest in or financing statement covering the Collateral to anyone other than Lender; (g) to notify Lender immediately in writing of any events which at any time may cause the representations and warranties herein or in the Loan Agreement to cease to be true or that the Principal or Lender's return of same might be jeopardy.

14.     Borrower represents that there is no Action of any nature pending or, to its knowledge, threatened against or by Borrower: (a) relating to or affecting the accounts or receivables contemplated herein or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such action.

15.     Borrower represents that to its knowledge, the accounts or receivables contemplated herein will not be the subject of any litigation or other legal proceedings nor will Borrower permit same to be the subject of any other Agreement, any security agreement such as a UCC, nor subject to any third-party claim without the express written consent of Lender.

16.     The following shall constitute a default by Borrower: (a) any Event of Default under the Note; (b) the failure by Borrower to comply with or perform any provision of this Security Agreement or the Note or any other agreement between Borrower and Lender executed in connection with the Note; (c) any false or misleading representation or warranty made or given

4

Case 8:25-ap-01190-SC   Doc 37   Filed 11/17/25   Entered 11/17/25 14:01:38   Desc
Main Document    Page 82 of 232

17, bd Albert 1er
MONACO ☎ +377 97 97 09 09

Case 8:25-ap-01190-SC   Doc 1   Filed 03/18/25   Entered 03/18/25 16:04:36   Desc
Main Document    Page 67 of 84

by Borrower in connection with this Security Agreement or any information/document furnished by Borrower prior to execution of this Security Agreement; (d) any act of Borrower which imperils the prospect of full performance or satisfaction of the Secured Obligations or impairs the rights of Lender in the Collateral.

17.    Upon any default of Borrower and at the option of Lender, the Secured Obligations secured by this Security Agreement shall immediately become due and payable in full without notice or demand and Lender shall have all the rights, remedies, and privileges with respect to repossession, retention and sale of the Collateral and disposition of the proceeds as are accorded to a Lender by the applicable sections of the UCC respecting "Default," in effect as of the date of this Security Agreement, or as may be granted to Lender pursuant to the Note or other document executed in connection with the Note.

18.    If Borrower fails to pay any part of the Principal or interest thereon when it is due, or otherwise is in default of its obligations under the Note, then Lender shall, in addition to any other rights Lender may have under this Security Agreement, UCC, the Note, any other document executed in connection with the Note, the UCC (including the right to file a UCC against anyone or entity identified herein or against anyone or entity subsequently discovered which relates to Borrower and which may owe an obligation to Lender as security for the Principal or otherwise related hereto), and/or at law or in equity, have the right to: (a) apply any funds which it received pursuant to the provisions of this Security Agreement or the Note to the payment of any amounts due to Lender under the Note in any manner it deems fit in its sole discretion; (b) enter upon Borrower's premises peaceably by Lender's own means or with legal process and take possession of the Collateral, and Borrower agrees not to resist or interfere therewith; (c) require Borrower to assemble Collateral and make it available to Lender at a place to be designated by Lender that is reasonably convenient to both parties (it being agreed that Lender's address set forth above is a place reasonably convenient for such assembling); and (d) sell, assign and deliver Collateral at public or private sale, for cash, on credit or future delivery, with or without advertisement of the time, place or terms of sale and in connection therewith to grant options and to use the services of a broker, except that if the sale be a private sale upon five (5) days' written notice to Borrower of the date, time and place of any sale and the terms of the sale, which notice Borrower agrees is reasonable, all other demands, advertisements and notices being hereby waived. Any sale shall be free and clear of any equity or right of redemption, which Borrower hereby absolutely and irrevocably waives and releases.

19.    At any sale of Collateral by Lender, Lender or its designee may purchase the Collateral. Lender shall not be obligated to make any sale of any Collateral if Lender shall determine not to do so, even if notice of sale may have been given. Lender may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time and if such sale be a private sale by announcement at the time and place fixed for sale, and such sale may, without further notice, be made at the time and place to which the same was so adjourned. If any of the Collateral is sold by Lender upon credit or for future delivery, Lender shall not be liable for the failure of the purchaser to purchase or pay for the same and, in the event of such failure, Lender may resell such Collateral. In no event shall Borrower be credited with any part of the proceeds of sale of any Collateral until cash payment thereof has been received by Lender. In case of any sale, Lender may first deduct all costs and expenses of collection, sale and delivery of the Collateral and any costs and expenses incidental thereto, including, without

5

limitation, the expense of pursuing, searching for, receiving, taking, keeping and storing the Collateral, advertising the sale of the Collateral, reasonable attorneys' fees and disbursements, brokerage commissions and transfer fees and taxes, and shall apply any residue first to the payment of any advances made by Lender pursuant to the Note, then to late charges, if any, then to payment of interest accrued under the Note and then to the payment of the unpaid Principal. The balance, if any, remaining after payment in full of the unpaid Principal shall be paid to Borrower, to the extent permitted by law, unless there are no other claims from whom Lender has received notice. Any sale conducted upon the foregoing terms or by any other method of sale (if conducted in conformity with practices of any banks disposing of similar security) shall be deemed commercially reasonable. Borrower agrees that Lender shall have the right to continue to retain the Collateral until such time as Lender, in its reasonable judgment, believes that an advantageous price can be obtained for the Collateral and, absent gross negligence, Lender shall not be liable to Borrower for any loss in the value of the Collateral by reason of any such retention of the Collateral by Lender. Further, Lender may elect to retain the Collateral in full satisfaction of the Loan, in which event notice thereof shall be given to Borrower, and if Lender receives an objection in writing from Borrower within twenty-one (21) days after service of the notice, Lender shall commence to dispose of the Collateral in the manner as set forth herein; provided, however, that if the net proceeds to be received from any disposition would be insufficient to satisfy in full any amounts due hereunder or under the Note, Lender shall not be compelled to go forward with such proposed disposition, and shall be entitled to retain the Collateral in full satisfaction of the Note despite any objection by Borrower to such retention.

20.     Upon any default, Lender's attorney's fees and the legal and other expenses for pursuing, searching for, filing against, lawsuits against, receiving, taking, keeping, storing, advertising, and selling the Collateral or recovering the Principal, shall be chargeable to Borrower, and shall become part of the principal indebtedness and shall be deemed secured hereunder and by the Collateral until fully paid.

21.     Borrower shall remain liable for any deficiency resulting from a sale of the Collateral and shall pay any such deficiency forthwith on demand.

22.     If Borrower shall default in the performance of any of the provisions of this Security Agreement on Borrower's part to be performed, Lender may perform same for Borrower's account and any monies expended in so doing shall be chargeable with interest (at the same rate as may be due under the Note from time to time) to Borrower and added to the indebtedness secured hereby.

23.     Upon default, Lender shall have the right, but not the obligation, to seize and operate the Collateral and to use the profits from such operation as it may see fit in its sole discretion, so long as Borrower receives credit for the amount of such profits so earned by Lender. Furthermore, Borrower hereby irrevocably appoints Lender as its attorney-in-fact, which appointment is coupled with an interest, for so long as any portion of the debt remains outstanding, for the purpose of executing and delivering, in the name and on behalf of Borrower, any and all documents, instruments, contracts, forms and writing of any nature whatsoever, which are reasonably required to be executed in order to schedule, advertise and consummate a commercially reasonable disposition of the Collateral following Borrower's default hereunder, or under the Note or other document executed in connection with the Note, and to perform any and

6

17, bd Albert 1er
MONACO ☎ +377 97 97 09 09

all other acts in the name of Borrower and on Borrower's behalf as Lender may reasonably deem necessary or advisable in connection with such disposition of the Collateral in connection with complying with all provisions and requirements provided for under the UCC.

24.     The Note is a separate instrument and may be negotiated by Lender without releasing Borrower or the Collateral, or co-maker. Borrower consents to any extension of time of payment. If there be more than one Borrower or co-maker of this Security Agreement or of Notes secured hereby, the obligation of all shall be primary, joint and several.

25.     The waiver of or acquiescence in any default by Borrower, or failure of Lender to insist upon strict performance by Borrower of any warranties or agreements in this Security Agreement, shall not constitute a waiver of any subsequent or other default or failure.

26.     The UCC shall govern the rights, duties and remedies of the parties and any provisions herein declared invalid under any law shall not invalidate any other provision of this Security Agreement.

27.     Lender may assign its rights in this Security Agreement and in the Collateral, as Lender, in its sole discretion, may deem fit. Borrower may not assign its obligations or rights under this Security Agreement without the written consent of Lender.

28.     Lender is hereby authorized to file UCC financing statements as may be necessary to perfect Lender's interest in the Collateral. Notwithstanding the foregoing, Lender shall have no obligation to comply with any recording, re-recording, filing, refiling or other legal requirements necessary to establish or maintain the validity, priority or enforceability of, or Lender's rights in and to, the Collateral or any part thereof.

29.     All notices shall be in writing and shall be deemed to have been properly given: (a) upon delivery, if delivered in person; (b) one (1) business day (defined below) after having been deposited for overnight delivery with any reputable overnight courier service or if sent by email; or (c) three (3) business days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by certified mail, postage prepaid, return receipt requested.

**30.     THIS SECURITY AGREEMENT IS BEING DELIVERED IN THE STATE OF NEW YORK AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT ANY CONFLICT OF LAW PROVISION. ANY ACTION(S) OR PURSUIT OF ANY LEGAL CLAIM OR REMEDY IN ANY LEGAL FORUM IN CONNECTION WITH THIS DOCUMENT, ARISING FROM THIS DOCUMENT, OR RELATED TO ANY OBLIGATION RELATED HERETO, SAME MUST BE COMMENCED IN THE STATE OR FEDERAL COURT SITTING IN NEW YORK COUNTY, NEW YORK WHICH SHALL APPLY NEW YORK LAW TO THE MATTER WITHOUT A "CONFLICT OF LAWS" ANALYSIS.**

31.     In the event that any word, sentence, paragraph or article of this Security Agreement is found to be void or voidable, the balance of this Security Agreement shall nevertheless be legal and binding with the same force and effect as though the void or voidable parts were deleted.

7

32.     Each party shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, certificates, instruments and documents, as the other party may reasonably request in order to carry out the intent and accomplish the purposes of this Agreement and the consummation of the transactions contemplated hereby.

33.     This writing and the documents executed in connection with the Loan contain the entire agreement of the parties with respect to its subject material and no modifications, alterations or waiver of all or any part shall be valid unless made by a writing and signed by all the parties hereto. Each Party shall use all reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other Parties in doing, all things necessary, proper or advisable to carry out the intent and purposes of this Agreement.

34.     This Security Agreement may be executed in two or more counterparts each of which is an original, but all of which together shall constitute one and the same instrument. Electronic signatures shall be deemed originals and as if signed in "wet ink." Borrower agrees not to raise any claim or defense as to the lack of an original.

35.     This Agreement may not be terminated by Borrower until Lender has received all the money, interest, etc. contemplated in the Note.

36.     Confidentiality. All parties to this Agreement agree and acknowledge that all names, terms, representations, agreements, covenants, etc. set forth in this Agreement are confidential (together, the "Confidential Information"). All parties will at all times keep the Confidential Information in confidence and trust. No party hereto will, without the prior written consent of an authorized officer of all parties to this Agreement, (a) copy, use or disclose any Confidential Information, (b) deliver or disclose any Confidential Information to any person or entity outside of this Agreement, or (c) use the Confidential Information for their own use or use it to the detriment of the other parties to this Agreement. Notwithstanding the foregoing, the parties hereto may, without consent, use the Confidential Information and disclose and deliver same to their employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved in writing by Lender and containing provisions at least as restrictive as these provisions. Borrower agrees and understands that the disclosure of the Confidential Information in violation of this Agreement may cause the Lender irreparable harm and that any breach or threatened breach by the Borrower entitles Lender to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

37.     Successors and Assigns. This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns (only Lender may assign its rights hereunder though Borrower may assign its rights and obligations hereunder upon written consent from Lender). Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties. This Agreement will be binding upon any permitted assignee of any Party. No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Case 8:25-ap-01190-SC   Doc 37   Filed 11/17/25   Entered 11/17/25 14:01:38   Desc
Main Document     Page 86 of 232

HUISSIER
17, bd Albert 1er

Case 8:25-ap-01190-SC   Doc 1   Filed 03/18/25   Entered 03/18/25 16:04:36   Desc
Main Document     Page 71 of 84

38.    Expenses and Fees. Unless otherwise provided for herein, all fees and expenses incurred in connection with the transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of Borrower.

39.    Specific Performance. The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

40.    **THE PARTIES HERETO AGREE THAT THEY SHALL WAIVE A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY EITHER OF THE PARTIES AGAINST THE OTHER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS SECURITY AGREEMENT.**

IN WITNESS WHEREOF, the undersigned have executed and delivered this Security Agreement as of the day and year first above written.

**GUARANTOR:**

By: _____
Name: Tony M Diab

**BORROWER:**

BAT Inc a/k/a B.A.T. Inc.

By: _____
Name: Tony M Diab
Title: Officer

**GUARANTOR:**

By: _____
Name: Daniel March

**BORROWER:**

The Litigation Practice Group PC

By: _____
Name: Daniel March
Title: Officer

| **LENDER:** | **LENDER:** |
|---|---|
| MCA Fund ADV Inc. | LDR International Ltd., |
| By: _____ | By: _____ |
| Title: Officer | Title: Officer |

9

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____Orange_____ )

On _February 1, 2023_ before me, _Olga Lucia Esquivel, Notary Public_
(insert name and title of the officer)

personally appeared _Daniel S. March_,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

OLGA LUCIA ESQUIVEL
COMM. # 2282791
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
MY COMM. EXP. MAR. 25, 2023

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Orange _____ )

On __2/7/23__ before me, __Vanessa Banken-Buchner__
(insert name and title of the officer)

personally appeared ___Tony Maurice Diab___,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Vanessa Banken Buch_   (Seal)

VANESSA BANKEN-BUCHNER
COMM #2364027
NOTARY PUBLIC · CALIFORNIA
RIVERSIDE COUNTY
My Commission Expires July 3, 2026

Exhibit 4, page 73

# EXHIBIT 5




In re: The Litigation Practice Group PC
Summary of Disbursements
Post-Petition Activity (3/20/2023 - Present)

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Bank of America | Prime Logix LLC | 9201 | 3/31/2023 | 3/31/2023 | | 105,000.00 | WIRE TYPE:INTL OUT DATE:230331 TIME:1 616 ET TRN:202303310071 1963 SERVICE REF:750657 BNF:LAURENT REISS ID:CH020851 50006666 BNF BK:BANK JULIUS BAER & CO L ID:006550073440 PMT DET:6MM3MVZ S7 POP Loan Payment |
| Bank of America | Prime Logix LLC | 9201 | 4/30/2023 | 4/6/2023 | | 105,000.00 | WIRE TYPE:INTL OUT DATE:230406 TIME:091 0 ET TRN:2023040600267985 SERVICE REF:1 98400 BNF:LAURENT REISS ID:CH020851 50006666 BNF BKBANK JULIUS BAER & Co L 1D006550073440 PMT DET:4329749 76 LOAN PAYMENT POP OTHER/LOAN PAYMENT |
| Bank of America | Prime Logix LLC | 9201 | 4/30/2023 | 4/25/2023 | | 50,000.00 | WIRE TYPE:INTL OUT DATE230425 TIME1 704 ET TRN20230425004781 19 SERVICE REFQ73702 BNF:LAURENT REISS ID:CH020851 50006666 BNF BKBANK JULIUS BAER & CO L 1D0065500073440 PMT DET:4354749 36 POP SERVICES |
| Bank of America | Prime Logix LLC | 9201 | 4/30/2023 | 4/26/2023 | | 100,000.00 | WIRE TYPE:INTL OUT DATE230426 TIME:1 628 ET TRN:2023042600480836 SERVICE REF357121 BNF:LAURENT REISS ID:CH020851S0006666 BNF BKBANK JULIUS BAER & CO L ID006550073440 PMT DET:4356383 58 POP SERVICES |
| Bank of America | Prime Logix LLC | 9201 | 4/30/2023 | 4/28/2023 | | 100,000.00 | WIRE TYPINTL OUT DATE230428 TIME1 311 ET TRN:2023042800529701 SERVICE REF:427036 BNF:LAURENT REISS ID:CH020851 50006666 BNF BKBANK JULIUS BAER & CO L 1D006550073440 PMT DET:4360210 B6 POP SERVICES |
| Bank of America | Prime Logix LLC | 9201 | 5/31/2023 | 5/3/2023 | | 250,000.00 | WIRE TYPE:INTL OUT DATE:230503 TIME:1 708 ET TRN2023050300481 807 SERVICE REF:770508 BNF:LAURENT REISS ID:CH020851 50006666 BNF BKBANK JULIUS BAER & CO L 1D006550073440 PMT DET.54GW97H DQ POP loan payment |
| Bank of America | Prime Logix LLC | 9201 | 5/31/2023 | 5/8/2023 | | 1,000,000.00 | WIRE TYPE:INTL OUT DATE230508 TIME:1 415 Er TRN:2023050800424500 SERVICE REF:913176 BNF:LAURENT REISS ID:CH020851S0006666 BNF BFBANK JULIUS BAER & CO L ID006550073440 PMT DETCBJHZ5TYT POP loan payment |
| | | | | | | 1,710,000.00 | |



DRAFT FORM - SUBJECT TO CHANGE

Exhibit 5, page 75

# EXHIBIT 6

**Your checking account**


**BANK OF AMERICA**

PRIME LOGIX LLC   |   Account # ███████ 9201   |   March 1, 2023 to March 31, 2023

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|--------|
| ██████ | ████████████████████████████████ ████████ | ██████ |
| 03/31/23 | WIRE TYPE:INTL OUT DATE:230331 TIME:1616 ET TRN:2023033100711963 SERVICE REF:750657 BNF:LAURENT REISS ID:CH02085150006666 BNF BK:BANK JULIUS BAER & CO L ID:006550073440 PMT DET:6MM3MVZ S7 POP Loan Payment | -105,000.00 |
| ██████ | ████████████████████████████████ ████████ | ██████ |
| | ████████████████████████████ | ██████ |
| | ████████████████████████████████████ | |
| | █ | |

Card account # XXXX XXXX XXXX 7115

| | | |
|---|---|---|
| ████████████████████████████████ | | ██████ |
| ████████████████████████████████ | | ██████ |
| ████████████████████████████ | | |
| ████████████████████████████████████ | | |
| ████████████████████████████ | | |
| ████████████████████████ | | |
| ████████████████████████████████ | | |

**Subtotal for card account # XXXX XXXX XXXX 7115** ██████
**Total withdrawals and other debits** ██████

## Checks

| Date | Check # | Amount | | Date | Check # | Amount |
|------|---------|--------|---|------|---------|--------|
| ████ | ████ | ████ | | ████ | | ██████ |
| ████ | ████ | ████ | | | | |

| | | |
|---|---|---|
| | **Total checks** | ██████ |
| | **Total # of checks** | **3** |

*  There is a gap in sequential check numbers

**BANK OF AMERICA**

**Your checking account**

PRIME LOGIX LLC  |  Account # ████ 9201  |  April 1, 2023 to April 30, 2023

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|--------|
| 04/06/23 | WIRE TYPE:INTL OUT DATE:230406 TIME:0910 ET TRN:2023040600267985 SERVICE REF:198400 BNF:LAURENT REISS ID:CH02085150006666 BNF BK:BANK JULIUS BAER & CO L ID:006550073440 PMT DET:4329749 76 LOAN PAYMENT POP OTHER/LOAN PAYMENT | -105,000.00 |

*continued on the next page*

Exhibit 6, page 78

Page 5 of 16

Case 8:25-ap-01190-SC    Doc 1    Filed 03/18/25    Entered 03/18/25 16:04:36    Desc
Main Document    Page 79 of 84

**BANK OF AMERICA** 🌠

PRIME LOGIX LLC  |  Account #▮▮▮▮ 9201  |  April 1, 2023 to April 30, 2023

**Your checking account**

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|--------|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| 04/25/23 | WIRE TYPE:INTL OUT DATE:230425 TIME:1704 ET TRN:2023042500478119 SERVICE REF:273702 BNF:LAURENT REISS ID:CH02085150006666 BNF BK:BANK JULIUS BAER & CO L ID:006550073440 PMT DET:4354749 36 POP SERVICES | -50,000.00 |
| | | |
| 04/26/23 | WIRE TYPE:INTL OUT DATE:230426 TIME:1628 ET TRN:2023042600480836 SERVICE REF:357121 BNF:LAURENT REISS ID:CH02085150006666 BNF BK:BANK JULIUS BAER & CO L ID:006550073440 PMT DET:4356383 58 POP SERVICES | -100,000.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| 04/28/23 | WIRE TYPE:INTL OUT DATE:230428 TIME:1311 ET TRN:2023042800529701 SERVICE REF:427036 BNF:LAURENT REISS ID:CH02085150006666 BNF BK:BANK JULIUS BAER & CO L ID:006550073440 PMT DET:4360210 86 POP SERVICES | -100,000.00 |

continued on the next page

**BANK OF AMERICA** 🦅

<span style="color:red">**Your checking account**</span>

PRIME LOGIX LLC  |  Account #    9201  |  May 1, 2023 to May 31, 2023



## Deposits and other credits - continued

## Withdrawals and other debits



| Date | Description | Amount |
|---|---|---|
| 05/03/23 | WIRE TYPE:INTL OUT DATE:230503 TIME:1708 ET TRN:2023050300481807 SERVICE REF:770508 BNF:LAURENT REISS ID:CH02085150006666 BNF BK:BANK JULIUS BAER & CO L ID:006550073440 PMT DET:54GW97H DQ POP loan payment | -250,000.00 |

*continued on the next page*

Exhibit 6, page 80
Page 5 of 36

PRIME LOGIX LLC  |  Account #          9201  May 01 - May 31, 2023

## Withdrawals and other debits - continued



| Date | Description | Amount |
|------|-------------|--------|
| 05/08/23 | WIRE TYPE:INTL OUT DATE:230508 TIME:1415 ET TRN:2023050800424500 SERVICE REF:913176 BNF:LAURENT REISS ID:CH02085150006666 BNF BK:BANK JULIUS BAER & CO L ID:006550073440 PMT DET:CBJHZ5T YT POP loan payment | -1,000,000.00 |

continued on the next page

Case 8:25-ap-01190-SC    Doc 1    Filed 03/18/25    Entered 03/18/25 16:04:36    Desc
Main Document      Page 82 of 84

# Adversary Proceeding Cover Sheet

B1040 (FORM 1040) (12/24)

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Richard A. Marshack, Trustee of the LPG Liquidation Trust | **DEFENDANTS**<br>Laurent Reiss; MCA Fund ADV Inc.; LDR International Ltd.; and<br>Does 1-10, inclusive |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Christopher Celentino (SBN 131688)<br>Yosina M. Lissebeck (SBN 201654)<br>Christopher B. Ghio (SBN 259094)<br>DINSMORE & SHOHL LLP<br>655 West Broadway, Ste 800<br>San Diego, CA 92101   Telephone (619) 400-0500<br>christopher.celentino@dinsmore.com<br>yosina.lissebeck@dinsmore.com<br>christopher.ghio@dinsmore.com<br><br>Matthew J. Stockl (SBN 329266)<br>DINSMORE & SHOHL LLP<br>550 South Hope Street, Ste 1765<br>Los Angeles, CA 90071   Telephone (213) 335-7737<br>matthew.stockl@dinsmore.com | **ATTORNEYS** (If Known) |
|---|---|

**ATTORNEYS** section continued — right column:

**PARTY** (Check One Box Only)
- [ ] Debtor
- [ ] U.S. Trustee/Bankruptcy Admin
- [ ] Creditor
- [ ] Other

**PARTY** (Check One Box Only) — left column:
- [ ] Debtor
- [ ] U.S. Trustee/Bankruptcy Admin
- [ ] Creditor
- [ ] Other
- [X] Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
(1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Unauthorized Post-Petition Transfers; (6) Turnover; (7) Racketeer Influenced and Corrupt Organizations Act Violations; (8) Conspiracy; (9) Aiding and Abetting; and (10) Declaratory Relief

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
- [X] 11-Recovery of money/property - §542 turnover of property
- [ ] 12-Recovery of money/property - §547 preference
- [X] 13-Recovery of money/property - §548 fraudulent transfer
- [X] 14-Recovery of money/property - other – §§ 544(b), 549, 550, and 551; Cal. Civ. Code §§ 3439.04(a), 3439.04(b), 3439.05, and 3439.07

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
- [ ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
- [ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
- [ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
- [ ] 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
- [ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- [ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- [ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(f) – Dischargeability (continued)**
- [ ] 61-Dischargeability - §523(a)(5), domestic support
- [ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
- [ ] 63-Dischargeability - §523(a)(8), student loan
- [ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- [ ] 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
- [ ] 71-Injunctive relief- imposition of stay
- [ ] 72-Injunctive relief - other

**FRBP 7001(h) Subordination of Claim or Interest**
- [ ] 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
- [ ] 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
- [ ] 01-Determination of remove d claim or cause

**Other**
- [ ] SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
- [ ] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| [X] Check if this case involves a substantive issue of state law | [ ] Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| [ ] Check if a jury trial is demanded in complaint | Demand $1,710,000.00 |

**Other Relief Sought**
Racketeering Influenced and Corrupt Organizations Act Violations; Conspiracy; Aiding and Abetting; and Declaratory Relief

**B1040 (FORM 1040) (12/24)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Matthew J. Stockl | | |
| DATE<br>March 18, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Christopher Celentino<br>Yosina M. Lissebeck<br>Matthew J. Stockl | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| | TRADUCTION SIMPLE |
|---|---|

Christopher Celentino (Barreau d'État n° 131688)
Yosina M. Lissebeck (Barreau d'État n° 201654)
Christopher B. Ghio (Barreau d'État n° 259094)
**DINSMORE & SHOHL S.E.N.C.R.L., S.R.L.**
655 West Broadway, bureau 800
San Diego, Californie 92101
Téléphone : 619.400.0500
Télécopieur : 619.400.0501
Christopher.Celentino@dinsmore.com
Yosina.Lissebeck@dinsmore.com
Christopher.Ghio@dinsmore.com

Matthew J. Stockl (Barreau de l'État n° 329366)
**DINSMORE & SHOHL S.E.N.C.R.L., S.R.L.**
550, rue South Hope, bureau 1765
Los Angeles, Californie 90071
Téléphone : 213.335.7737
Télécopieur : 213.335.7740
Matthew.Stockl@dinsmore.com
Conseiller spécial de Richard A. Marshack,
Fiduciaire du LPG Liquidation Trust

### TRIBUNAL DES FAILLITES DES ÉTATS-UNIS

### DISTRICT CENTRAL DE CALIFORNIE - DIVISION DE SANTA ANA

| | |
|---|---|
| En objet : | Cas n° : 8:23-bk-10571-SC |
| Le groupe de pratique Litige C.P., | Adv. Proc. No. _____ |
| Débiteur | Chapitre 11 |
| Richard A. Marshack, administrateur du LPG fiducie de liquidation, Plaignant v. Laurent Reiss, résident monégasque ; Fonds MCA ADV Inc., une société new-yorkaise ; LDR International Ltd., une société limitée des îles Vierges britanniques société à responsabilité civile ; et fait 1-10, inclusivement, Défendeurs. | **PLAINTE DU SYNDIC POUR :**<br><br>**(1) L'ÉVITEMENT, LE RECOUVREMENT ET LA PRÉSERVATION DES TRANSFERTS FRAUDULEUX RÉELS DE 2 ANS ;**<br><br>**(2) L'ANNULATION, LE RECOUVREMENT ET LA PRÉSERVATION DES TRANSFERTS FRAUDULEUX PRÉSUMÉS DE 2 ANS ;**<br><br>**(3) L'ÉVITEMENT, LA RÉCUPÉRATION ET LA PRÉSERVATION DES TRANSFERTS FRAUDULEUX RÉELS DE 4 ANS ;**<br><br>**(4) L'ANNULATION, LE RECOUVREMENT ET LA PRÉSERVATION DES TRANSFERTS FRAUDULEUX PRÉSUMÉS DE 4 ANS ;**<br><br>**(5) L'ÉVITEMENT, LA RÉCUPÉRATION ET LA PRÉSERVATION DES TRANSFERTS NON AUTORISÉS POSTÉRIEURS À LA PÉTITION ;**<br><br>**6° LE CHIFFRE D'AFFAIRES ;**<br><br>**(7) VIOLATIONS DE LA LOI SUR LES ORGANISATIONS INFLUENCÉES PAR LE RACKET ET CORROMPUES ;** |



**(8) COMPLOT ;**

**(9) AIDE ET ENCOURAGEMENT ; ET**

**(10) JUGEMENT DÉCLARATOIRE**

Juge : Hon. Scott C. Clarkson

Pour sa plainte concernant *(1) l'annulation, le recouvrement et la préservation de transferts frauduleux réels de 2 ans ; (2) l'annulation, le recouvrement et la préservation des transferts frauduleux présumés de 2 ans ; (3) l'annulation, la récupération et la préservation des transferts frauduleux réels de 4 ans ; (4) l'annulation, le recouvrement et la préservation des transferts frauduleux présumés de 4 ans ; (5) l'évitement, la récupération et la préservation des transferts non autorisés postérieurs à la pétition ; 6) Chiffre d'affaires ; (7) Violations de la loi sur les organisations influencées par le racket et la corruption ; (8) Complot ; (9) Aide et encourage ; et (10) Jugement déclaratoire* (la « plainte »), le demandeur Richard A. Marshack, l'ancien syndic du chapitre 11 de l'actif de la faillite (« actif ») du débiteur The Litigation Practice Group P.C. (« Débiteur » ou « LPG ») et actuel syndic liquidateur du LPG Liquidation Trust (collectivement, le « syndic » ou le « demandeur ») dans l'affaire de faillite susmentionnée (l'« affaire de faillite »), allègue et affirme ce qui suit :

## DÉCLARATION DE COMPÉTENCE, NATURE DE L'INSTANCE ET LIEU DE L'INSTANCE

1. La Cour est compétente pour connaître de la présente action en vertu de l'article 157(b)(2)(A), (E), (H) et (O), de l'article 1334(b) de l'article 28 du Code des États-Unis, et de l'ordonnance générale n° 13-05 du tribunal de district du district central de Californie, car il s'agit d'une procédure fondamentale découlant de et/ou liée à l'affaire de faillite, qui est une affaire relevant du chapitre 11 du titre 11 du Code des États-Unis (le « Code des faillites »),  et qui est en instance devant le tribunal des faillites des États-Unis pour le district central de Californie, division de Santa Ana (le « tribunal »).

2. Que cette procédure soit essentielle, non essentielle ou autre, le demandeur consent à l'inscription d'une ordonnance et d'un jugement définitifs par le tribunal de faillite.

3. Les défendeurs sont par la présente informés que la règle 7008 des Federal Rules of Bankruptcy Procedure les oblige à plaider si le consentement est donné à l'inscription d'une ordonnance et d'un jugement définitifs par le tribunal de faillite.

4. Le lieu de cette procédure contradictoire se trouve à juste titre dans ce district judiciaire conformément à l'article 1409(a) du titre 28 du Code des États-Unis, car cette procédure est liée à l'affaire de faillite en cours du débiteur.

## LES PARTIES

Me CLAIRE NOTARI
HUISSIER
17, bd Albert 1er
MONACO ☎ +377 97 97 09 09

5. Le demandeur, Richard A. Marshack, était le fiduciaire dûment nommé et qualifié du chapitre 11 de la succession du débiteur et est maintenant le fiduciaire liquidateur actuel du LPG Liquidation Trust.

6. La débitrice LPG est, et a été pendant toute la période pertinente, une société professionnelle organisée, existante et en règle en vertu des lois de l'État de Californie, dont le principal établissement est situé à Tustin, en Californie.

7. Sur la base d'informations et de croyances, le défendeur Laurent Reiss (« Reiss ») est, et était, pendant toute la période pertinente, une personne physique résidant à Monaco et soumise à la signification ou à la notification d'un acte de procédure conformément à la Convention du 15 novembre 1965 relative à la signification et à la notification à l'étranger des actes judiciaires et extrajudiciaires en matière civile ou commerciale (la « Convention de La Haye »), en envoyant un USM-94 dûment rempli :  Demande de signification ou de notification à l'étranger d'actes judiciaires ou extrajudiciaires (« USM-94 »), accompagnée de copies de la convocation et de la plainte, à l'Autorité Centrale de Monaco : Direction des Services Judiciaires, Palais de Justice, 5, rue Colonel Bellando de Castro MC - 98000 Monaco.

8. La défenderesse MCA Fund ADV Inc. (« MCA Fund ADV ») est, et a déclaré pendant toute la période pertinente qu'elle était, une société existant en vertu des lois de l'État de New York.

9. MCA Fund ADV peut être signifié par courrier de première classe affranchi à son agent enregistré pour la signification de la procédure, USACORP INC., 325 Division Ave, Ste 201, Brooklyn, NY, 11211.

10. LDR International Ltd. (« LDR » et, avec Laurent Reiss et MCA Fund ADV, les « défendeurs »), est, et a déclaré à toute la période pertinente qu'elle était, une société à responsabilité limitée de droit des îles Vierges britanniques.

11. Conformément à la Convention de La Haye, la LDR peut être signifiée en envoyant un document USM-94 dûment rempli, accompagné de copies de l'assignation et de la plainte, à l'Autorité centrale des Îles Vierges britanniques : Greffier de la Cour suprême, Greffe de la Cour suprême, n° 84 Main Street, P.O. Box 418, Road Town, Tortola, Îles Vierges britanniques VG1110.

12. Les vrais noms et capacités, qu'ils soient individuels, associés ou autres, des défendeurs 1 à 10, inclusivement, sont inconnus du demandeur, qui poursuit donc lesdits défendeurs sous ces noms fictifs. Le demandeur est informé et croit que chacun des défendeurs désignés aux présentes comme défendeur fictivement nommé est d'une manière ou d'une autre responsable des événements et des événements mentionnés et a causé les dommages allégués aux présentes. Lorsque le demandeur aura vérifié les véritables noms et capacités des Doe 1 à 10, inclusivement, il demandera à la Cour l'autorisation de modifier sa plainte en l'énonçant.

## ALLÉGATIONS GÉNÉRALES

**Un. Le cas de la faillite**

13. Le 20 mars 2023 (« Date de la requête »), le débiteur a déposé une demande volontaire de redressement en vertu du chapitre 11 du Code des faillites, en commençant l'affaire de faillite.

14. Le Bureau du syndic des États-Unis (« UST ») a déposé sa requête par le syndic des États-Unis aux fins de rejeter ou de convertir l'affaire en vertu de l'article 1112(b) du titre 11 du Code des États-Unis [Bankr. Docket No. 21] et les créanciers Debt Validation Fund II, LLC ; MC DVI Fund 1, LLC ; et MC DVI Fund 2, LLC ont déposé la requête de DVF et MC DVI visant à rejeter l'affaire du chapitre 11 conformément à 11 U.S.C. §§ 105, 305, 349 et 1112, ou à titre subsidiaire, à convertir cette affaire en chapitre 7 ou à nommer un fiduciaire [Bankr. Docket No. 44]. Le 4 mai 2023, la Cour a rendu son ordonnance enjoignant au syndic des États-Unis de nommer un fiduciaire en vertu du chapitre 11 [Bankr. Docket No. 58].

15. Conformément à l'acceptation de sa nomination en tant que syndic du chapitre 11 [Bankr. Docket No. 63], le 8 mai 2023, le syndic a accepté sa nomination en tant que syndic du chapitre 11 dans l'affaire de faillite. La Cour a approuvé la nomination du syndic dans son ordonnance approuvant la demande du syndic américain pour la nomination d'un fiduciaire en vertu du chapitre 11 [dossier n° 65].

16. Le syndic n'a été nommé qu'après les événements de l'affaire et, par conséquent, fonde ces allégations sur des informations et des croyances. Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017) (« La norme de plausibilité de Twombly . . . n'empêche pas un demandeur d'invoquer des faits allégués sur la base d'informations et de croyances lorsque les faits sont particulièrement en la possession et sous le contrôle du défendeur ou lorsque la croyance est fondée sur des informations factuelles qui rendent plausible l'inférence de culpabilité. Miller c. Ville de Los Angeles, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, à *5 (C.D. Cal. 7 août 2014) (reconnaissant que l'argumentation du demandeur concernant les « renseignements et la croyance » était accueillie et « parfois nécessaire ») ; voir aussi Mireskandari v. Daily Mail and General Trust PLC, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, à *4 (C.D. Cal. 31 juillet 2013) (« Les Federal Rules of Civil Procedure permettent aux parties d'invoquer des faits sur la base d'"informations et de croyances" » si les faits « seront probablement étayés par des éléments de preuve après une possibilité raisonnable d'enquête ou de découverte plus approfondies » ». (références omises)).

17. Conformément à l'ordonnance confirmant le premier plan de liquidation conjoint modifié du chapitre 11 entré le 9 septembre 2024 et à l'avis de survenance de la date d'entrée en vigueur du premier plan de liquidation conjoint modifié du chapitre 11 déposé le 24 septembre 2024, Richard A. Marshack est devenu le fiduciaire liquidateur de la fiducie de liquidation LPG, à compter du 24 septembre, 2024. [Bankr. Docket Nos. 1646 et 1762].



18. Toutes les réclamations ont été transférées à la fiducie de liquidation conformément au plan confirmé et le demandeur intente cette action uniquement en sa qualité de fiduciaire liquidateur de la fiducie de liquidation LPG, au profit de la masse du débiteur et de ses créanciers.

**B. Ordonnance conservatoire**

19. Le ou vers le 2 mai 2024, le demandeur a déposé cet avis et cette requête pour l'inscription d'une ordonnance de protection (l'« ordonnance de protection »).

20. Le 3 juin 2024, la Cour a rendu son ordonnance faisant droit à la requête en inscription d'une ordonnance conservatoire et de l'ordonnance conservatoire [Bankr. Docket No. 1270] (l'« ordonnance conservatoire »). Une copie conforme et exacte de l'ordonnance conservatoire est jointe à la pièce 1 et incorporée aux présentes.

21. Selon ses propres termes, l'ordonnance conservatoire s'applique à la présente procédure contradictoire et régit tous les interrogatoires préalables qui y sont menés.

/ / /

**C. Propriété et gestion de LPG**

22. Avant la date de la pétition, LPG exploitait un cabinet d'avocats pour les consommateurs de partout au pays qui cherchaient de l'aide pour contester ou résoudre des dettes qu'ils identifieraient. Pendant toute la période pertinente, le GPL était contrôlé et exploité par l'individu nommé Tony Diab (« Diab »).

23. Les consommateurs paieraient le GPL sur une certaine période au moyen de débits mensuels sur leurs comptes bancaires.

24. Les paiements mensuels étaient destinés à couvrir tous les services juridiques que LPG fournissait aux consommateurs, y compris la validation des dettes, l'examen des documents pour déterminer leur force exécutoire et les comparutions devant les tribunaux pour mettre fin aux poursuites afin d'obtenir des jugements.

25. Dans certains cas, LPG intenterait une action en justice dans le but d'éliminer une dette contestée ou de faire valoir des réclamations affirmatives détenues par les consommateurs.

26. LPG a mal géré les paiements mensuels des consommateurs.

27. Diab et d'autres défendeurs ont conçu un plan visant à transférer frauduleusement des fonds, des dossiers de clients, des fonds de clients et des actifs sous forme de créances ACH (les « créances ACH » ou les « comptes débiteurs ») de LPG à des tiers avant le dépôt de bilan.

28. Pour obtenir des clients consommateurs, LPG a passé des contrats avec des sociétés de marketing, qui se livraient à des plafonnements illégaux et faisaient de la publicité ou appelaient pour solliciter les consommateurs à devenir des clients de LPG en échange d'un pourcentage des créances ACH perçues par LPG auprès des consommateurs. L'affilié marketing est allé jusqu'à aider à l'exécution d'une lettre d'engagement entre le consommateur et LPG.

29. En échange, LPG a accepté de verser aux sociétés affiliées commerciales un pourcentage des paiements mensuels perçus par LPG auprès des consommateurs.

30. Étant donné que LPG recevait des paiements de consommateurs au fil du temps, elle cherchait souvent à se financer en empruntant sur ses flux de trésorerie futurs. Cet emprunt n'a pas seulement servi à financer les opérations de GPL, mais aussi à payer les redevances dues aux sociétés de marketing pour la fourniture de références aux clients.

31. Bon nombre des documents signés dans le cadre d'un tel financement décrivaient les opérations comme des conventions d'achat de comptes clients.

32. Diab a utilisé des entités qu'il contrôlait et qui étaient ses alter ego, y compris, sans s'y limiter, Vulcan Consulting Group (« Vulcan »), Maverick Management Group LLC (« Maverick »), Prime Logix, LLC (« Prime Logix »), LGS Holdco, LLC (« LGS ») et/ou Coast Processing pour détourner des fonds de consommateurs de GPL et des créances ACH. Diab a fait appel à de nombreuses sociétés de traitement ACH afin de transférer facilement des millions de dollars du débiteur aux entités qu'il contrôlait, sans surveillance ni détection, et pour éviter les litiges et les complications de paiement. L'argent qui a été transféré du débiteur par l'intermédiaire de ces comptes bancaires aux défendeurs était constitué de fonds de clients que le débiteur a acheminés. à ces entités par l'intermédiaire des sociétés de traitement ACH. Le débiteur a également effectué des dépôts sur le compte bancaire de ces entités de sorte qu'ils ont reçu les fonds du client directement du débiteur en plus des comptes débiteurs directs.

33. LPG a transféré de cette façon ACH Receivables et les dossiers de clients connexes afin de frauder les créanciers dans le cadre d'un système pyramidal et à des fins de gain personnel indu.

34. Les revenus mensuels de LPG provenant des dossiers des clients provenaient principalement de paiements ACH. Pour traiter les paiements ACH, LPG a dû faire appel aux services de sociétés de traitement des paiements ACH qui traitent des transactions à haut risque. À cet égard, Diab a fait appel à de nombreuses sociétés de traitement ACH pour passer facilement d'un fournisseur à l'autre et a des millions de dollars de fonds LPG dirigés vers des entités contrôlées par Diab, y compris, mais sans s'y limiter, Vulcan, Maverick, Prime Logix, LGS et/ou Coast Processing. Diab a utilisé les comptes bancaires de ces autres entités comme comptes bancaires GPL.



35. Diab a demandé aux prêteurs et aux acheteurs de déposer le produit des prêts de GPL ou de déposer de l'argent autrement dû à GPL dans des comptes bancaires qu'il contrôlait pour le compte de GPL, mais qui étaient apparemment détenus par Vulcan, Maverick, Prime Logix, LPG et/ou Coast Processing. Diab a utilisé tous ces produits comme s'il s'agissait de fonds LPG, car c'était le cas.

36. Aux alentours de la date de la pétition, Diab a transféré ou vendu environ 15 000 dossiers de clients de GPL à Oakstone Law Group PC (« Oakstone »), 12 000 dossiers de GPL à Consumer Legal Group (« CLG ») et les dossiers restants, estimés à un peu moins de 40 000, à Phoenix Law, PC (« Phoenix »).

37. Conformément à la convention d'achat d'actifs conclue entre LPG et CLG, Diab a demandé à CLG d'effectuer les débits ACH sur les dossiers transférés, ce qu'elle a fait par l'intermédiaire d'Optimum Bank et de son entité de traitement LGS Holdco.

38. Aux alentours de la date de la pétition, Diab a transféré, sans contrepartie, environ 8 000 dossiers (précédemment transférés à Phoenix) à Heshy Deutsch (« Deutsch ») et à Israel Reiches (« Reiches »). Diab a demandé à Deutsch et Reiches, par l'intermédiaire de leurs co-conspirateurs Sam Geiger et Solomon Feig, d'initier les débits ACH sur les fichiers transférés, ce qu'ils ont fait par l'intermédiaire de BCB Bank et d'une entité de traitement connue sous le nom de CLG Processing, sur des comptes, non pas au nom de LPG, mais qui détenaient des fonds pour le compte de LPG et déboursaient ces fonds pour LPG.

39. Les fonds obtenus à partir des débits ACH décrits aux paragraphes 37 et 38 ci-dessus ont été déposés dans les comptes Maverick et Prime Logix, entre autres.

40. Les comptes débiteurs ACH de LPG ont été la principale, sinon l'unique source de financement, pour Validation Partners, Vulcan, Oakstone, PECC, Prime Logix, Coast Processing, LGS et Maverick. Comme indiqué ci-dessus, les autres sources de financement de ces entités sont le produit des actifs de LPG (c'est-à-dire le produit des comptes débiteurs d'achat de fichiers) ou constituent le produit de prêts dont LPG était seul responsable.

41. Diab a fréquemment détourné l'argent du GPL retiré de ses clients consommateurs et d'autres fonds qu'elle recevait par l'intermédiaire d'investisseurs et de prêteurs, vers et par l'intermédiaire de ces entités.

42. Diab ordonnait fréquemment à ces entités de payer des sociétés affiliées (c'est-à-dire des câpres de marketing), des prêteurs MCA et d'autres personnes détenant des actifs de GPL.

43. M. Diab donnerait des instructions à d'autres personnes de LPG et de ces entités sur la façon de gérer et de transférer ces fonds à destination et en provenance de ces entités et de LPG de manière interchangeable.

**D. Prêt de 1,5 million de dollars de MCA Fund ADV Inc. et/ou LDR International Ltd.**

44. Le ou vers le 7 février 2023, BAT Inc alias B.A.T. Inc. (« BAT ») et LPG ont signé un accord de prêt avec MCA Fund ADV et/ou LDR pour documenter les conditions du prêt (« prêt »). Une copie conforme et exacte de l'accord de prêt est jointe aux présentes en tant qu**'annexe 2.**

45. Sur la foi d'informations et de croyances, LPG a contracté le prêt, qui a été arrangé par l'avocat Ronald Richards.

46. LPG a signé un billet à ordre (le « billet ») d'un montant principal initial de 1 500 000 $ et le contrat de sûreté qui l'accompagnait (le « contrat de sûreté » et, avec le billet et le contrat de prêt, les « documents de prêt ») pour documenter le montant dû au titre du prêt. Des copies conformes et exactes de la note et de la convention de sûreté sont jointes aux présentes en tant qu **'annexes 3** et **4**, respectivement.

47. Les termes de la note sont les suivants :

Montant principal : 1 500 000,00 $

Date:               7 février 2023

Échéance:           6 mai 2023

Intérêt:            7,0 % par mois

Intérêts moratoires :        24%

48. L'effet de ces conditions est que le taux d'intérêt sur le billet est d'environ 84,3 % APR et qu'en échange de 1 500 000,00 $, MCA Fund ADV et/ou LDR aurait reçu 1 920 000,00 $, soit un rendement de 420 000,00 $ sur 1 500 000,00 $ (28,0 %) en quatre mois.

49. Sur la base d'informations supplémentaires et d'une croyance, même si le défenseur Laurent Reiss n'était pas partie à ce prêt, LPG a effectué des paiements liés au prêt à Laurent Reiss plutôt que d'effectuer des paiements à MCA Fund ADV ou LDR.

**E. Paiements à Laurent Reiss**

50. Au cours de la période postérieure à la requête applicable et selon les documents actuellement disponibles, Prime Logix, qui n'avait pas d'autres fonds que des fonds de GPL détournés, a versé à Laurent Reiss la somme d'au moins 1 710 000 $ entre mars 2023 et mai 2023 (les « virements »), au numéro de compte bancaire suisse se terminant par 6666 à la Bank Julius Baer & Co. AG au nom de Laurent Reiss. Une liste véridique et précise des paiements connus effectués par LPG à Laurent Reiss est jointe aux présentes en tant

que **pièce 5** et incorporée aux présentes. Des copies conformes et correctes des relevés bancaires expurgés attestant les transferts sont jointes aux présentes en tant que **pièce 6.**

### F. Le système de Ponzi de LPG

51. La présomption de système de Ponzi existe dans les procédures de faillite.

52. La présomption de système de Ponzi peut être utilisée pour établir l'intention d'un débiteur de frauder les futurs entrepreneurs de pompes funèbres [investisseurs] du simple fait qu'un débiteur exploitait un système de Ponzi. En fait, aucune autre inférence raisonnable n'est possible. Un système de Ponzi ne peut pas fonctionner éternellement. Le bassin d'investisseurs est une ressource limitée et finira par s'épuiser. L'auteur doit savoir que le système finira par s'effondrer en raison de l'incapacité à attirer de nouveaux investisseurs. L'auteur effectue néanmoins des paiements aux investisseurs actuels, qui, par définition, sont destinés à attirer de nouveaux investisseurs. Il doit savoir depuis le début, de par la nature même de ses activités, que les investisseurs au bout du fil vont perdre leur argent. La connaissance avec une certitude substantielle constitue l'intention aux yeux de la loi », cf. Restatement (Second) of Torts § 8A (1963 et 1964), et le fait qu'un débiteur sache que les futurs investisseurs ne seront pas payés est suffisant pour établir son intention réelle de les frauder. Kirkland v. Rund (In re EPD Inv. Co., LLC), 114 F.4th 1148, 1153 (9th Cir. 2024) (par définition, le système de Ponzi est voué à l'échec et l'escroc et ses entités se terminent souvent par la faillite ou la mise sous séquestre en equity) ; Cf. Coleman Am. Moving Servs., Inc. c. First Nat'l Bank & Trust Co. (In re American Properties, Inc.) 14 B.R. 637, 643 (Bankr. D. Kan. 1981) (le fait d'effectuer intentionnellement une transaction en sachant parfaitement que son effet sera préjudiciable aux créanciers est suffisant pour que l'intention réelle d'entraver, de retarder ou de frauder au sens de l'article 548(a)(1)).'' Merrill c. Abbott (In re Independent Clearing House Co.) (D. Utah 1987) 77 B.R. 843, 860. Un syndic de faillite n'est pas tenu de démontrer que l'exploitant d'un système de Ponzi savait subjectivement que son système de Ponzi était voué à l'échec. In re EPD Inv. Co., LLC, 114 F.4th à 1153 (« l'action d'un syndic pour récupérer des actifs frauduleusement transférés dans le cadre d'un stratagème de Ponzi n'exige pas que le syndic prouve également que l'exploitant du système de Ponzi était subjectivement conscient que son système de Ponzi était voué à l'échec. »).

53. ''Mais si tout ce que le débiteur reçoit en retour d'un transfert est l'utilisation de l'argent du défendeur pour gérer un système de Ponzi, il n'y a rien dans l'actif de la faillite que les créanciers peuvent partager. En effet, en aidant le débiteur à pérenniser son stratagème, les transferts exacerbent le préjudice causé aux créanciers en augmentant le montant des créances tout en diminuant le patrimoine du débiteur. Dans une telle situation, l'utilisation de l'argent du défendeur ne peut objectivement pas être qualifiée de « valeur raisonnablement équivalente ». In re Independent Clearing House Co., 77 B.R., p. 859. Par conséquent, « [l]e fiduciaire peut éviter les transferts s'ils étaient préférentiels ou frauduleux. Les transferts à des investisseurs dans un système de Ponzi sont préférentiels et frauduleux. Par conséquent, ils constituent des « biens de la succession » et le fiduciaire peut les récupérer. Id., p. 853, note 17 (références omises).

54. Le débiteur exploitait un système de Ponzi qui utilisait des sociétés affiliées et plusieurs autres entités en tant qu'investisseurs pour poursuivre ses pratiques commerciales illégales en utilisant des fonds fournis par les investisseurs actuels pour attirer de nouveaux investisseurs espérant des rendements très élevés. Par conséquent, le débiteur dirigeait un système de Ponzi et la présomption de système de Ponzi peut être utilisée pour déduire que le débiteur avait l'intention de frauder les investisseurs au sens de l'article 548(a)(1) du titre 11 du Code des États-Unis. C'est ce que démontre le fait que le tribunal dans cette affaire de faillite a déclaré que le débiteur exploitait un système de Ponzi lorsqu'il a déclaré ce qui suit :

> Il est important de noter que la Cour n'a jamais reçu de preuve significative et digne de foi que le débiteur a obtenu des résultats significatifs pour ses clients, mais seulement des exemples anecdotiques de succès viable pour ses clients. En examinant le registre des réclamations de la succession, on constate que les consommateurs ont fait des réclamations pour fraude et des remboursements exigés, mais non livrés, d'environ 500 millions de dollars. Il existe de nombreuses preuves que le débiteur antérieur à la requête n'a jamais placé les fonds collectés dans un compte en fiducie avocat-client, et que le débiteur ou ses mandants ont simplement pillé les paiements reçus par le biais des retraits automatiques du client, raidissant à la fois les clients et les avocats externes qui auraient pu travailler sur des cas de clients dans l'espoir d'être payés. Il y a également des preuves devant le tribunal que le débiteur dirigeait un système de Ponzi et payait des avocats de l'extérieur (ou « réseau ») avec des fonds obtenus de nouveaux clients. Dans ce cas, il semble que certains des « prêteurs » aient pu servir d'« investisseurs », espérant des rendements très élevés avant que « la musique ne s'arrête ». Le neuvième circuit a récemment expliqué : « Par définition, un système de Ponzi est voué à l'échec parce que le bassin d'investisseurs disponibles n'est pas illimité. Lorsque le bassin d'investisseurs de l'opérateur du système de Ponzi s'épuise inévitablement, le système s'effondre et l'escroc et ses entités se retrouvent souvent en faillite ou sous séquestre équitable. Voir, de façon générale, David R. Hague, Expanding the Ponzi Scheme Presumption, 64 DePaul L. Rev. 867 (2015). En matière de faillite, le syndic nommé par le tribunal est chargé de prendre le contrôle immédiat de l'entité, de mettre fin aux activités frauduleuses en cours, de localiser et de percevoir les actifs de la masse de la faillite ou de la mise sous séquestre et de parvenir à une distribution finale et équitable des actifs restants. Voir 11 U.S.C. § 704 ; Kirkland v. Rund (In re EPD Inv. Co., LLC), 2024 U.S. App. LEXIS 21363, à *15 (9th Cir. 23 août 2024). Enfin, il y a des éléments de preuve indiquant que le débiteur grevait (ou, comme l'affirment certains créanciers, « vendait deux ou trois fois ») leurs comptes ou créances à plusieurs prêteurs. En ce qui concerne la réclamation administrative demandée par Greyson [Dk. 676], et comme décrit plus en détail dans l'ordonnance de rejet de la réclamation rendue simultanément, il n'y a eu aucune preuve présentée que des

travaux prétendument effectués par Greyson aient aidé des clients ou ajouté de la valeur à la succession.

*Voir l'affaire 8:23-BK-10571-SC, Doc 1545 n. 5.*

55. De plus, puisque le prêt a été consenti dans l'intention de favoriser le stratagème de Ponzi, le débiteur n'a pas reçu une valeur équivalente objectivement raisonnable pour le prêt, et le syndic peut annuler le prêt parce qu'il était frauduleux.

56. Les transactions entre les défendeurs et le débiteur étaient des prêts, et non des ventes de créances, et en tant que tels, les défendeurs servaient d'« investisseurs », espérant des rendements très élevés avant que « la musique ne s'arrête ».

### G. L'entreprise criminelle

57. Les opérations, les activités et les transferts effectués par le débiteur dans le cadre du système de Ponzi, y compris ceux en collaboration avec ses sociétés affiliées et ses transactions avec les défendeurs, constituaient également une entreprise criminelle.

58. Cela aussi est démontré par l'ordonnance de la Cour dans l'action 1046 dans laquelle elle a rejeté la requête du Greyson Law Center visant à annuler l'injonction préliminaire précédemment inscrite dans l'affaire principale du débiteur, et la Cour a exprimé l'avis suivant :

> À travers les diverses procédures et preuves produites à la fois dans l'affaire principale et dans les diverses procédures contradictoires, y compris, mais sans s'y limiter, diverses requêtes en ordonnances restrictives temporaires, injonctions préliminaires, requêtes en irrecevabilité, requête en nomination d'un syndic en vertu du chapitre 11, requête en vente d'actifs, une multitude d'actes de procédure déposés par des créanciers garantis et non garantis (étayés par des preuves présentées sous serment) à l'appui de leurs réclamations,  et en particulier les plaidoiries et les preuves présentées par le « Watchdog of the Bankruptcy System », c'est-à-dire le Bureau du syndic des États-Unis (une branche du ministère de la Justice des États-Unis), il est clair pour cette Cour que le débiteur, depuis sa création avant la requête (et au moment de la nomination du syndic du chapitre 11) était, de l'avis de la Cour,  exploitation d'une entreprise criminelle.

Affaire n° 8:23-BK-10571-SC ; Adv. No. 8:23-ap-01046-SC [Bankr. Docket No. 1545, p.3 (souligné dans le texte)].

59. Dans le cadre de cette entreprise criminelle, le débiteur et les défendeurs se sont livrés à des transferts frauduleux en vertu du prêt. Le prêt a été consenti par MCA Fund ADV et/ou LDR à des taux d'intérêt usuraires illégaux et les transferts effectués dans le cadre du prêt constituaient une fraude électronique.

**H. La vente des actifs de LPG**

60. Le 7 juillet 2023, Richard Marshack, en sa qualité de syndic du chapitre 11, a demandé à la Cour de rendre une ordonnance (a) approuvant la vente, sous réserve d'une surenchère, d'actifs libres et quittes de tous privilèges, réclamations, charges et intérêts conformément à l'article 11 U.S.C. § 363(b), et (b) approuvant la prise en charge et la cession de certains contrats exécutoires et baux non expirés et autres accords. [Dossier du banquier n° 191.] Après une séance d'information supplémentaire portant sur de multiples oppositions, la tenue d'une longue audience et une vente aux enchères au cours de laquelle Morning Law Group était le plus offrant, la Cour a accueilli la requête en vente par ordonnance rendue le 2 août 2023. [Dossier du banquier n° 352.]

**I. Les créanciers de LPG avant la pétition**

61. Le débiteur était insolvable au moment où le prêt a été consenti. Cette insolvabilité est attestée en partie par le fait que 14 relevés UCC-1 distincts étaient enregistrés pour garantir les dettes du débiteur au 1er septembre 2022. Ces déclarations n'avaient pas été publiées à la date de la pétition. Ces états reflétaient soit des privilèges garantis grevant les actifs du débiteur alors possédés ou acquis par la suite, soit fournissaient la preuve de la cession ou de la vente d'une partie importante du revenu futur du débiteur. L'insolvabilité du débiteur est un fait admis sur la base de la conclusion de la Cour selon laquelle l'insolvabilité a été inscrite dans d'autres procédures contradictoires pendantes devant la Cour. Voir, par exemple, l'affaire n° 8:23-BK-10571-SC ; Adv. No. 8:24-ap-01002-SC [Adv. Docket No. 28] (constatant que « le débiteur était insolvable ou l'était devenu insolvable au moment des transferts effectués au défendeur »).

62. Au moment où le prêt a été consenti, ces états antérieurs de l'UCC-1 garantissaient le remboursement des montants réclamés suivants qui sont actuellement connus du syndic et qui seraient dus par le débiteur : (i) 2 374 004,82 $ dus à Fundura Capital Group, comme en témoigne la preuve de la réclamation n° 335, prétendument garantis par un état de l'UCC déposé le ou vers le 19 mai, 2021; (ii) environ 15 millions de dollars dus à MNS Funding, LLC, comme en témoigne la preuve de réclamation n° 1060 prétendument garantie par une déclaration UCC déposée le ou vers le 28 mai 2021 ; (iii) environ 5 000 000 $ dus à Azzure Capital, LLC, comme en témoigne la preuve de réclamation n° 127 garantie par une déclaration UCC déposée le ou vers le 28 mai 2021 ; et (iv) environ 1,5 million de dollars dus à Diverse Capital, LLC prétendument garantis par des déclarations UCC déposées le ou vers le 15 septembre 2021 et le 1er décembre 2021.[1]

63. Comme il est allégué ci-dessus, LPG empruntait sur ses actifs et ses revenus futurs, souvent à des conditions défavorables, non seulement pour financer les opérations de LPG, mais aussi pour payer les

---

[1] Le syndic se réserve tous les droits, réclamations et défenses à l'égard de ces réclamations et de toute autre réclamation prétendument garantie et non garantie.

commissions dues aux sociétés de commercialisation affiliées pour la fourniture de clients consommateurs et pour rembourser d'autres prêts à des créanciers qui étaient en défaut ou sur le point de l'être dans le cadre du plan de Diab visant à tenir les créanciers de LPG à distance aussi longtemps que possible jusqu'à ce qu'il puisse le faire. transférer les actifs, les dossiers clients, les fonds des clients et les créances ACH de LPG à d'autres entités sous son contrôle. Conformément aux ententes conclues avec les sociétés de commercialisation, des pourcentages importants des paiements futurs avaient déjà été promis aux sociétés affiliées à la commercialisation à partir des revenus futurs que le débiteur recevrait. Et, bien sûr, les paiements que LPG a reçus sous la forme de créances ACH étaient également des fonds fiduciaires versés à LPG par ses clients cabinets d'avocats, sous réserve de la restitution des fonds en cas de demande de remboursement ou de résiliation de la déclaration avant que LPG n'ait gagné les fonds. À cet égard, sauf dans la mesure où ils étaient gagnés, les créances ACH représentaient également un passif du débiteur.

64. De plus, sur l'annexe E/F du débiteur [Bankr. Docket No. 33], le débiteur a inscrit 11 créanciers non garantis avec des réclamations non garanties prioritaires totalisant 374 060,04 $. Ces créanciers non garantis prioritaires comprennent le ministère du Revenu de l'Indiana, le ministère du Travail et des Industries, le ministère de la Sécurité économique de l'Arizona, le ministère des Finances et de l'Administration de l'Arkansas, le California Franchise Tax Board, le ministère du Travail de la Géorgie, l'Internal Revenue Service, le ministère du Revenu du Mississippi, le ministère de la Fiscalité du Nevada, la Commission fiscale de l'État de l'Utah et le ministère du Revenu du Wisconsin (collectivement, les « créanciers non garantis prioritaires »).

65. Un autre groupe de créanciers que le débiteur a énuméré dans son annexe E/F [Bankr. Docket No. 33] sont les créanciers non garantis non prioritaires. Ces 58 créanciers ont des réclamations prévues totalisant 141 439 158,05 $ et comprennent Ajilon ; Hymne de la Croix Bleue ; Azevedo Solutions Groups, Inc. ; Facture Carolina Technologies & Consulting ; Conseillers en collaboration ; Service d'évaluation du crédit inc. ; CT Corporation – Inv. ; Debt Pay Pro ; Services d'exécution de documents ; EnergyCare, LLC ; Exela Enterprise Solutions ; First Legal Network, LLC ; GHA Technologies Inc. ; Harrington Electric, Inc. ; Imaginez le reportage ; Juize, Inc. ; Krisp Technologies, Inc. ; Liberty Mutual ; Marc Lemauviel – Allegra ; MarkSYS Holdings, LLC ; Netsuite-Oracle ; Pitney Bowes ; Rapid Credit, Inc. ; SBS Leasing Un programme de De Lage Landen ; Solutions de sécurité ; Systèmes d'entreprise pointus ; Streamline Performance, Inc. ; Thomson Reuters ; Twilio, Inc. ; Avocats de comparution à l'échelle nationale ; Centre exécutif, LLC ; Outsource Accelerator, Ltd. ; TaskUs Holdings, Inc. ; Marich Bein, LLC ; Partenaires de Validation ; MC DVI Fund 1, LLC ; MC DVI Fund 2, LLC ; Fonds de validation de la dette II, LLC ; Centre exécutif de Tustin ; LexisNexus ; JP Morgan Chase ; Centres d'affaires d'Amérique ; Michael Schwartz ; Anibal Colon Jr. ; Kathleen Lacey ; David Ulery ; Kimberly Birdsong ; Kevin Carpenter ; Karen Suell ; Gloria Eaton ; Carolyn Beech ; Debra Price ; Kenneth Topp ; Darcey Williamson, administrateur ; James Hammett ; Johnny Rizo ; Beverly Graham ; Kathleen Scarlett ; et Geneve et Myranda Sheffield (collectivement, les « créanciers chirographaires non prioritaires » et, conjointement avec les créanciers garantis et les créanciers chirographaires prioritaires, les « créanciers pré-pétitionnaires »).

66. La date limite pour la présentation de réclamations dans le cadre du dossier de faillite est passée et le demandeur sait maintenant que plus de 5 000 réclamations ont été déposées, totalisant environ 500 millions de dollars, en réclamations prioritaires, garanties et non garanties.

## PREMIÈRE DEMANDE DE RÉPARATION

### Chef d'accusation I - Annulation, recouvrement et préservation de transferts frauduleux réels

### [11 U.S.C. §§ 548, 550 et 551]

67. Le demandeur reproduit et incorpore aux présentes par renvoi chacune des allégations contenues aux paragraphes 1 à 66 comme si elles étaient énoncées dans leur intégralité.

68. Les documents de prêt ont été signés dans les deux ans précédant la date de la requête.

69. LPG n'a rien reçu en échange des transferts à Laurent Reiss, qui n'était pas partie au prêt.

70. LPG était insolvable lorsque M. Diab lui a fait signer les documents de prêt en février 2023 parce que ses dettes dépassaient la juste valeur marchande de ses actifs à tous les moments pertinents.

71. La signature des documents de prêt et l'exécution des obligations qui en découlent ont eu lieu alors que le débiteur était insolvable ou l'a rendu insolvable.

72. À compter de la date à laquelle les documents de prêt ont été signés, les entités envers lesquelles le débiteur était ou est devenu endetté comprennent les créanciers pré-pétitionnaires.

73. Le débiteur a effectué les transferts à Laurent Reiss même si le débiteur était tenu de verser MCA Fund ADV et/ou LDR – et non Reiss – aux termes des documents de prêt.

74. Le débiteur a contracté le prêt avec l'intention réelle d'entraver, de retarder ou de frauder les créanciers du débiteur.

75. Le débiteur exploitait un système de Ponzi et la présomption de système de Ponzi peut être utilisée pour déduire l'intention réelle du débiteur de frauder au sens de 11 U.S.C. § 548(a)(1).

76. La conduite des défendeurs à l'égard des transferts a été commise dans le cadre de l'oppression, de la fraude et de la malveillance, au sens de l'article 3294 du Code civil de la Californie, ce qui a donné droit au demandeur à des dommages-intérêts exemplaires et punitifs.



77. L'exécution des documents de prêt peut être annulée en tant que frauduleuse en vertu de l'article 11 U.S.C. §§ 544, 548(a)(1)(A), 550 et 551, et du délit de common law des transferts frauduleux intentionnels par un ou plusieurs créanciers qui détenaient et détiennent des créances non garanties contre le débiteur qui étaient et sont admissibles sur son patrimoine en vertu de l'article 11 U.S.C. § 502 ou qui n'étaient pas et ne sont pas autorisées uniquement en vertu de 11 U.S.C. § 502(e), y compris, sans s'y limiter, les créanciers de la prépétition.

78. L'exécution des documents de prêt et l'exécution des obligations qui en découlent devraient être évitées en tant que fraudes en vertu de l'article 548(a)(1)(A) de l'article 11 du Code des États-Unis et du délit de common law des transferts frauduleux intentionnels, et ces biens transférés, ou leur valeur, devraient être recouvrés et conservés au profit de la succession conformément aux articles 550 et 551 de l'article 11 du Code des États-Unis.

## DEUXIEME DEMANDE DE REDRESSEMENT

### Chef d'accusation II - Annulation, recouvrement et préservation des transferts frauduleux présumés

### [11 U.S.C. §§ 544, 548(a)(1)(B), 550 et 551]

79. Le demandeur reproduit et incorpore aux présentes par renvoi chacune des allégations contenues aux paragraphes 1 à 78 comme si elles étaient énoncées dans leur intégralité.

80. Les documents de prêt ont été signés dans les deux ans précédant la date de la pétition.

81. La signature des documents de prêt et l'engagement des obligations qui en découlent ont eu lieu alors que le débiteur :

a. était insolvable ou est devenu insolvable de ce fait ;

b. s'est engagé ou était sur le point de s'engager dans une transaction pour laquelle les biens restants chez le débiteur étaient d'un capital déraisonnablement faible ; ou

c. avait l'intention de contracter ou croyait contracter des dettes au-delà de sa capacité de paiement à l'échéance de ces dettes.

82. Le débiteur a reçu une valeur inférieure à la valeur raisonnablement équivalente des transferts parce qu'il les a effectués à Laurent Reiss, qui n'était pas partie aux documents de prêt.

83. De plus, même si les transferts étaient réputés être des remboursements du prêt, le débiteur n'a pas reçu la valeur équivalente raisonnable des transferts à MCA Fund ADV et LDR parce qu'en utilisant l'argent

de MCA Fund ADV et LDR pour gérer un système de Ponzi, il n'y a rien dans l'actif que les créanciers peuvent partager et aucun avantage pour l'actif. Au contraire, les transferts ont aggravé le préjudice causé aux créanciers en augmentant le montant des réclamations tout en diminuant l'actif du débiteur. Dans cette situation, l'utilisation de l'argent du Fonds MCA ADV et de LDR pour promouvoir le système de Ponzi du débiteur ne peut pas constituer une contrepartie pour les transferts et ne peut objectivement être qualifiée de valeur raisonnablement équivalente.

84. MCA Fund, ADV et LDR agissaient en tant qu'investisseurs dans le système de Ponzi du débiteur.

85. L'exécution des documents de prêt et l'exécution des obligations qui en découlent doivent être évitées car elles sont frauduleuses en vertu de l'article 548(a)(1)(B) du titre 11 du Code des États-Unis, et les biens transférés, ou leur valeur, doivent être récupérés et conservés au profit de la succession conformément aux articles 550 et 551 du titre 11 du Code des États-Unis.

## TROISIÈME DEMANDE DE RÉPARATION

### Chef d'accusation III - Annulation, recouvrement et préservation de transferts frauduleux réels

**[11 U.S.C. §§ 544(b), 550 et 551 ; CAL. CIV. CODE §§ 3439.04(b) et 3439.07]**

86. Le demandeur reproduit et incorpore aux présentes par renvoi chacune des allégations contenues aux paragraphes 1 à 85 comme si elles étaient énoncées dans leur intégralité.

87. Les documents de prêt ont été signés dans les quatre ans précédant la date de la requête.

88. À compter de la date à laquelle ces accords ont été conclus, les entités envers lesquelles le débiteur était ou est devenu endetté comprennent les créanciers de la prépétition.

89. La signature des documents de prêt et l'exécution des obligations qui en découlent ont eu lieu alors que le débiteur était insolvable ou que le débiteur est devenu insolvable peu de temps après la signature des documents de prêt, comme en témoigne le dépôt de la requête volontaire.

90. Le débiteur n'a pas reçu une valeur raisonnablement équivalente en échange de la signature des documents de prêt, car le prêt a été utilisé pour aider davantage le débiteur dans son système de Ponzi.

91. Le débiteur a contracté le prêt avec l'intention réelle d'entraver, de retarder ou de frauder les créanciers du débiteur.

92. La conduite du débiteur a été commise dans le cadre de l'oppression, de la fraude et de la malveillance, au sens de l'article 3294 du Code civil, sur la base de la présomption de système de Ponzi, donnant droit au syndic, en plus des dommages-intérêts réels, à des dommages-intérêts exemplaires et punitifs.

93. Les documents de prêt peuvent être annulés car ils sont frauduleux conformément à l'article 544(b) de l'article 11 du Code des États-Unis et à l'article 3439.04(a), 3439.04(b) et 3439.07 par un ou plusieurs créanciers qui détenaient et détiennent des créances non garanties à l'encontre du débiteur qui étaient et sont admissibles à l'encontre de l'actif en vertu de l'article 502 du titre 11 du Code des États-Unis ou qui n'étaient pas admissibles uniquement en vertu de l'article 502(e) du titre 11 du Code des États-Unis, y compris : sans limitation, les créanciers de la prépétition.

94. En conséquence, les documents de prêt, et le fait de contracter les obligations qui en découlent, devraient être évités comme frauduleux en vertu de 11 U.S.C. §§ 544(b) et de CAL. CIV. CODE §§ 3439.04(a) et 3439.07, et en vertu du délit de common law des transferts frauduleux intentionnels, et ces biens transférés, ou leur valeur, devraient être recouvrés et conservés au profit de la succession conformément à 11 U.S.C. §§ 550 et 551 et CAL. CIV. CODE § 3439.07.

## QUATRIÈME DEMANDE DE RÉPARATION

### Chef IV - Annulation, recouvrement et préservation des transferts frauduleux présumés

### [11 U.S.C. §§ 544(b), 550 et 551 ; CAL. CIV. CODE §§ 3439.05 et 3439.07]

95. Le demandeur reproduit et incorpore aux présentes par renvoi chacune des allégations contenues aux paragraphes 1 à 94 comme si elles étaient énoncées dans leur intégralité.

96. Les documents de prêt ont été signés dans les quatre ans précédant la date de la requête.

97. La signature des documents de prêt et l'exécution des obligations qui en découlent ont eu lieu alors que le débiteur :

a. était insolvable ou est devenu insolvable de ce fait ;

b. s'est engagé ou était sur le point de s'engager dans une transaction pour laquelle les biens restants chez le débiteur étaient d'un capital déraisonnablement faible ; ou

c. avait l'intention de contracter ou croyait contracter des dettes au-delà de sa capacité de paiement à l'échéance de ces dettes.

98. De plus, et objectivement, le débiteur n'a pas reçu une valeur raisonnablement équivalente pour le prêt parce que, en utilisant l'argent reçu des défendeurs pour gérer le système de Ponzi, il ne reste plus rien dans l'actif à partager pour les créanciers et aucun avantage pour l'actif. Au lieu de cela, le prêt a aggravé le préjudice causé aux créanciers en augmentant le montant des réclamations, diminuant ainsi l'actif du débiteur.

99. En conséquence, l'exécution des documents de prêt et l'exécution des obligations qui en découlent devraient être évitées conformément à l'article 11 U.S.C. §§ 544(b) et au CAL. CIV. CODE §§ 3439.05 et 3439.07, et ces biens transférés, ou leur valeur, devraient être récupérés et conservés au profit de la succession conformément à 11 U.S.C. §§ 550 et 551 et au CAL. CIV. CODE § 3439.07.

## SUR LA CINQUIÈME DEMANDE DE RÉPARATION

### Chef V - Annulation, recouvrement et préservation des transferts non autorisés postérieurs à la pétition

### [11 U.S.C. §§ 549, 550 et 551]

100. Le demandeur reproduit et incorpore aux présentes, par renvoi, chacune des allégations contenues aux paragraphes 1 à 99, comme si elle était énoncée dans son intégralité.

101. En vertu de l'article 549 a) de l'article 11 du Code des États-Unis, le syndic peut éviter un transfert de propriété de la masse qui a lieu après l'introduction de l'affaire et qui n'est pas autorisé par le tribunal compétent pour connaître de la masse de la faillite.

102. Les transferts étaient des transferts d'un intérêt dans les biens du débiteur.

103. Laurent Reiss a reçu les transferts d'un montant d'au moins 1 710 000 $ après la date de la pétition.

104. Les transferts n'ont été autorisés ni par le Code des faillites ni par le tribunal.

105. Les transferts sont des transferts annulables en vertu de l'article 549(a) du titre 11 du Code des États-Unis.

106. L'article 550 du Code des faillites prévoit que si un transfert est annulé en vertu de l'article 549 du Code des faillites, le demandeur peut récupérer les biens ou la valeur des biens transférés auprès du cessionnaire initial, de l'entité au profit de laquelle les transferts ont été effectués, ou de tout cessionnaire immédiat ou intermédiaire du cessionnaire initial.

107. Laurent Reiss est le cessionnaire initial.



108. Les défendeurs MCA Fund, ADV et LDR sont les entités au profit desquelles les transferts ont été effectués.

109. Conformément à ce qui précède, les transferts sont des transferts annulables en vertu de l'article 549(a) de l'article 11 du Code des États-Unis, et peuvent être recouvrés et conservés au profit de la succession en vertu des articles 550 et 551 de l'article 11 du Code des États-Unis.

## SIXIEME DEMANDE DE MESURES

### Chef VI - Transfert des biens de la succession

### [11 U.S.C. §§ 542]

110. Le demandeur reproduit et incorpore aux présentes, par renvoi, chacune des allégations contenues aux paragraphes 1 à 109, comme si elle était énoncée dans son intégralité.

111. Laurent Reiss a la possession ou le contrôle des biens de la succession sous la forme des transferts.

112. Les transferts n'ont pas une valeur sans conséquence pour la succession.

113. Les fonds qui font l'objet des transferts sont primordiaux pour la capacité du débiteur de payer les créanciers.

114. En conséquence, le syndic a droit à un jugement pour le transfert des transferts, conformément à l'article 542 du titre 11 du Code des États-Unis.

## SEPTIÈME DEMANDE DE RÉPARATION

### Chef VII - Organisations influencées par le racket et corrompues

### [18 U.S.C. § 1962(c)]

115. Le demandeur reproduit et incorpore aux présentes par renvoi chacune des allégations contenues aux paragraphes 1 à 114 comme si elles étaient énoncées dans leur intégralité.

/ / /

**un. L'activité illégale**

116. Au moins deux actes sous-jacents sous-tendent cette demande de réparation sur la base d'informations connues à ce jour. La première est la conclusion d'un prêt illégal et usuraire. Le deuxième est la fraude électronique.

117. Le taux d'intérêt que MCA Fund ADV et/ou LDR ont facturé au Débiteur en vertu de la Note était de 7 % par mois, soit environ 84,3 % par an.

### b. Les coupables

118. Les défendeurs sont des « personnes » au sens de l'article 1961(3) et de l'article 1962(c) du titre 18 U.S.C. en ce sens qu'il s'agit chacun d'eux d'un particulier, d'une société ou d'une société à responsabilité limitée capable de détenir un intérêt juridique dans un bien. Pendant toute la période pertinente, les défendeurs Laurent Reiss, MCA Fund ADV et LDR étaient des personnes qui existaient séparément et distinctement de l'Entreprise, décrite ci-dessous.

### c. L'entreprise

119. Les défendeurs constituent une entreprise (l'« entreprise ») au sens de 18 U.S.C. §§ 1961(4) et 18 U.S.C. 1962(c).

120. Les défendeurs sont associés de fait par des relations entre eux dans le but commun d'exploiter une entreprise illégale en cours. L'entreprise a pour objectif commun de solliciter, de financer, d'entretenir et de recouvrer des prêts usuraires et de facturer des taux d'intérêt exorbitants largement supérieurs au taux d'intérêt autorisé en vertu des lois applicables sur l'usure, y compris celles de l'État de Californie.

121. Depuis au moins 2023 et jusqu'à ce jour, les membres de l'Entreprise entretiennent des relations continues les uns avec les autres par le biais d'un contrôle commun, d'une propriété, d'un personnel partagé et/ou d'un ou plusieurs contrats ou accords relatifs à l'origination, à la souscription, à la gestion et au recouvrement de prêts illégaux émis par l'Entreprise à des entreprises en difficulté dans l'ensemble des États-Unis.

122. La dette constatée par le prêt constitue une « dette illégale » au sens de 18 U.S.C. § 1961(6) ; 18 U.S.C. § 1962 c) ; et 18 U.S.C. § 1962(d) parce que : (i) la dette est inopposable en vertu de la loi fédérale ou de l'État en ce qui concerne le principal ou les intérêts en raison des lois relatives à l'usure, et viole les lois pénales applicables en matière d'usure ; et (ii) la dette a été contractée dans le cadre de l'entreprise de prêt d'argent à des taux usuraires en vertu de la loi fédérale et de la loi de l'État, et les taux sont plusieurs fois supérieurs au taux exécutoire autorisé en vertu des lois sur l'usure de la Californie.

123. Depuis au moins 2023 et jusqu'à ce jour, les membres de l'Entreprise entretiennent des relations continues les uns avec les autres par le biais d'un contrôle commun, d'une propriété, d'un personnel partagé

et/ou d'un ou plusieurs contrats ou accords relatifs à et dans le but de collecter des transferts frauduleux par le biais de virements électroniques électroniques.

124. L'activité de l'Entreprise constitue également une « fraude électronique » au sens de l'article 1343 de l'article 18 du Code des États-Unis, qui est une « activité de racket » au sens de l'article 1961(1) du titre 18 du Code des États-Unis. L'utilisation et l'engagement répétés et continus d'un tel comportement, y compris les transferts d'ACH pour participer aux affaires de l'entreprise, constituent un modèle d'activité de racket en violation de l'article 18 U.S.C. § 1962(c).

### d. Rôles des défendeurs dans l'exploitation de l'entreprise et des entités individuelles au sein de l'entreprise

125. Les défendeurs se sont organisés, ainsi que l'Enterprise, en un groupe cohésif doté de responsabilités précises et d'une structure de commandement pour fonctionner comme une unité afin d'atteindre les objectifs communs de recouvrement des créances illégales.

126. MCA Fund ADV, sur la base d'informations et de croyances, tient des bureaux, des livres, des registres et des comptes bancaires, certains indépendants de ceux des autres défendeurs mais tenus en coordination avec eux.

127. LDR, sur la base de l'information et de la croyance, tient également des bureaux, des livres, des registres et des comptes bancaires, certains indépendants de ceux des autres défendeurs, mais tenus en coordination avec eux.

128. Laurent Reiss, sur la base d'informations et de croyances, a opéré, engagé et/ou conspiré avec MCA Fund ADV et LDR dans le cadre d'une entreprise illégale visant à recouvrer une créance illégale et à commettre une fraude électronique.

### e. Commerce interétatique et extérieur

129. L'entreprise fait du commerce interétatique et extérieur, et utilise et a utilisé les instruments du commerce interétatique et étranger dans ses activités commerciales quotidiennes.

130. Les membres de l'Entreprise ont des bureaux à New York, aux îles Vierges britanniques et à Monaco et utilisent le personnel de ces bureaux pour émettre, souscrire, financer, entretenir et recouvrer les prêts usuraires consentis par l'Entreprise à des entités en Californie, y compris le Débiteur, et dans l'ensemble des États-Unis par le biais d'un usage intensif du courrier, des courriels, des virements électroniques et des retraits bancaires traités par des chambres de compensation automatisées.

131. Dans ce cas de faillite, les communications entre les membres de l'entreprise et le débiteur se faisaient par courrier, par courrier électronique interétatique et étranger, par virement bancaire, par débit ACH et par d'autres communications par fil interétatique et étranger. L'entreprise a utilisé des courriels interétatiques et étrangers pour émettre, souscrire, entretenir et percevoir le prêt, et percevoir les paiements du prêt par virement bancaire international.

### f. Dommage et lien de causalité

132. Le demandeur, la masse du débiteur et ses créanciers ont été et continueront d'être lésés en raison des violations par l'entreprise de l'article 1962(c) de l'article 18 du Code des États-Unis.

133. Les préjudices directs, immédiats et raisonnablement prévisibles résultant de ces violations ou causés par celles-ci comprennent, sans s'y limiter, des millions de dollars en paiements de prêts usuraires indûment perçus.

134. Le demandeur et la succession du débiteur ont également subi des dommages en engageant des honoraires d'avocat et des frais associés à la poursuite des activités illégales des défendeurs.

135. Conformément à l'article 1964(c) de l'article 18 du Code des États-Unis, le demandeur a le droit de recouvrer le triple des dommages-intérêts et des frais de poursuite, y compris les honoraires d'avocat, auprès des défendeurs.

## HUITIÈME DEMANDE DE RÉPARATION

### Chef VIII - Complot

### [18 U.S.C. § 1962(d)]

136. Le demandeur reproduit et incorpore aux présentes par renvoi chacune des allégations contenues aux paragraphes 1 à 135 comme si elles étaient énoncées dans leur intégralité.

137. Les défendeurs se sont illégalement et volontairement combinés, conspirés et ont convenu ensemble de se livrer à des activités qui violent l'article 1962 c) de l'article 18 du Code des États-Unis, comme il est allégué ci-dessus, en violation de l'article 1962 d) du titre 18 du Code des États-Unis.

138. Grâce aux relations d'affaires qu'entretiennent les défendeurs les uns avec les autres, à leur coordination dans les affaires de l'Entreprise, ainsi qu'aux fréquents courriels et autres communications entre les défendeurs concernant la souscription, le financement, la gestion et le recouvrement du prêt illégal, chaque défendeur connaissait la nature de l'Entreprise et chaque défendeur savait que l'Entreprise s'étendait au-delà du rôle individuel de chaque défendeur. De plus, grâce aux mêmes relations et à la même coordination, chaque

défendeur savait que les autres défendeurs étaient engagés dans un complot visant à recouvrer les dettes illégales en violation de l'article 18 U.S.C. 1962(c).

139. Chaque défendeur a accepté de faciliter, de diriger et de participer à la conduite, à la gestion et/ou à l'exploitation des affaires de l'entreprise afin de recouvrer les dettes illégales, y compris le prêt, en violation de l'article 18 U.S.C. 1962(c). Chaque défendeur était un participant conscient, volontaire et actif dans l'entreprise et ses affaires, et chacun des défendeurs partageait un objectif commun, qui était l'orchestration, la planification, la préparation et l'exécution du plan visant à solliciter, souscrire, financer et recouvrer des dettes illégales, y compris le prêt.

140. Chaque défendeur a accepté de faciliter, de conduire et de participer, directement ou indirectement, à la gestion et/ou au fonctionnement des affaires de l'entreprise afin de commettre une fraude électronique par le biais d'une activité de racket et de recouvrement de créances illégales en violation de l'article 18 U.S.C. 1962(c).

141. La participation et l'accord de chaque défendeur étaient nécessaires pour mettre en œuvre et pérenniser la commission du système.

142. Le demandeur et la succession du débiteur ainsi que ses créanciers ont été et continueront d'être lésés en raison du complot des défendeurs en violation de l'article 18 U.S.C 1962(d), pour des montants à déterminer au procès.

143. Les préjudices causés au demandeur et à l'actif du débiteur ainsi qu'à ses créanciers directement, de manière immédiate et raisonnablement prévisible résultant de ces violations de l'article 1962(d) de l'article 18 du Code des États-Unis comprennent, sans s'y limiter, des millions de dollars en paiements de prêts indûment perçus.

144. Le demandeur et la succession du débiteur ont également subi des dommages en engageant des honoraires d'avocat et des frais associés à la poursuite des activités illégales des défendeurs.

145. Conformément à l'article 1964(c) de l'article 18 du Code des États-Unis, le demandeur a le droit de recouvrer le triple montant des dommages-intérêts et des frais de poursuite, y compris les honoraires d'avocat, auprès des défendeurs.

## NEUVIÈME DEMANDE DE RÉPARATION

### Chef IX – Aide et encouragement

### [18 U.S.C. § 2 ; 11 U.S.C. §§ 544(b), 550 et 551 ;

**CAL. CIV. CODE §§ 3439.04(a), 3439.04(b) et 3439.07|**

146. Le demandeur reproduit et incorpore aux présentes, par renvoi, chacune des allégations contenues aux paragraphes 1 à 145 comme si elles étaient énoncées dans leur intégralité.

147. Les défendeurs, en se fondant sur des renseignements et des croyances et sur la présomption de système de Ponzi, étaient au courant des transactions, des transferts et des ententes illégales frauduleux qui ont été utilisés pour perpétuer et dissimuler le stratagème de Ponzi et les transferts frauduleux.

148. Les défendeurs, en se fondant sur des renseignements et des croyances et sur la présomption de système de Ponzi, savaient que Prime Logix était un alter ego de Diab.

149. Les défendeurs, en sachant ce qui précède, avaient l'intention d'aider le débiteur à perpétuer et à dissimuler le stratagème de Ponzi et les transferts frauduleux d'argent, et l'ont fait.

150. Pendant toute la période pertinente, les défendeurs avaient l'intention de faciliter et de dissimuler le stratagème de Ponzi et les transferts frauduleux d'argent en aidant et en encourageant le stratagème de plafonnement illégal et en engageant des clients consommateurs pour maintenir l'entreprise en activité.

151. Les défendeurs, sur la foi d'informations et de croyances, ont aidé et ont effectivement participé à la perpétration de la fraude et du stratagème de Ponzi en coordonnant, facilitant et dirigeant des paiements et des transferts de fonds et en signant des documents dans le but de dissimuler la véritable nature de leurs activités frauduleuses et criminelles liées au stratagème de Ponzi.

152. Les préjudices subis par le demandeur, le patrimoine du débiteur et ses créanciers directement, de manière immédiate et raisonnablement prévisible résultant de violations de l'article 18 U.S.C. §§ 1962(d) et 1964(c), ainsi que des articles 6151 et 6155 du Code des affaires et des professions de la Californie comprennent, sans s'y limiter, des millions de dollars en fonds indûment transférés et acquis.

153. Le demandeur et la succession du débiteur ont également subi des dommages en engageant des honoraires d'avocat et des frais associés à la poursuite des activités illégales des défendeurs.

/ / /

/ / /

154. Conformément à l'article 18 U.S.C. §§ 1962(d), 1964(c), 2, et à la common law ou au chef d'accusation commun, le demandeur a le droit de recouvrer des dommages-intérêts triples et des frais de poursuite, y compris les honoraires d'avocat, auprès des défendeurs.

## DIXIÈME DEMANDE DE RÉPARATION

### Chef d'accusation X – Jugement déclaratoire

155. Le demandeur reproduit et incorpore aux présentes par renvoi chacune des allégations contenues aux paragraphes 1 à 154 comme si elles étaient énoncées dans leur intégralité.

156. Il existe une véritable controverse entre le demandeur et les défendeurs au sujet du caractère exécutoire du prêt.

157. Le demandeur soutient que le prêt est nul et inapplicable ; les taux d'intérêt pratiqués dans le prêt sont usuraires ; la loi qui s'applique pour déterminer la nature usuraire des accords est la loi californienne et/ou la loi fédérale ; et les Transferts effectués dans le cadre du Prêt constituent une fraude électronique. Les défendeurs contestent chacune des affirmations du demandeur.

158. Il convient donc de déterminer par les tribunaux les droits, les devoirs et les obligations du demandeur et des défendeurs.

### RÉSERVE DE DROITS

Le demandeur se réserve le droit d'intenter toutes les autres réclamations ou causes d'action qu'il pourrait avoir contre les défendeurs, pour tous les motifs, comme le permet la loi ou l'équité, y compris, mais sans s'y limiter, les réclamations dont le fiduciaire n'a pas connaissance à ce moment-ci, mais qu'il peut découvrir pendant la durée de cette procédure contradictoire.

### PRIÈRE POUR LE SOULAGEMENT

**PAR CONSÉQUENT,** le demandeur demande un jugement comme suit :

**Sur les première, deuxième, troisième et quatrième demandes de réparation :**

A. Éviter le prêt et les obligations connexes comme étant inopposables à la succession ;

**Sur les première et troisième demandes de réparation :**

B. Accorder des dommages-intérêts punitifs et exemplaires sur preuve ;

**Sur la cinquième demande de réparation :**

C. Annulation, recouvrement et préservation des transferts contre les défendeurs ;

**Sur la sixième demande de réparation :**

D. Ordonner aux défendeurs de remettre immédiatement les transferts ;

**Sur les septième et huitième demandes de réparation :**

E. Accorder au demandeur des dommages-intérêts pécuniaires d'un montant total d'au moins 1 710 000,00 $ ;

F. Octroi de dommages-intérêts triples ;

G. Attribution des frais de poursuite, y compris les honoraires d'avocat ;

**Sur la neuvième demande de réparation :**

H. Accorder au demandeur des dommages-intérêts pécuniaires d'un montant égal à tous les transferts frauduleux obtenus par les défendeurs auprès du débiteur ;

**Sur la dixième demande de réparation :**

I. Déclarer que le prêt est nul et inapplicable, que les taux d'intérêt facturés dans le billet sont usuraires, que la loi qui s'applique pour déterminer la nature usuraire des taux d'intérêt est la loi californienne et/ou la loi fédérale ; et les Transferts effectués dans le cadre du Prêt constituent une fraude électronique ;

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**Pour toutes les demandes de redressement :**

J. Adjudication des dépens de l'action ;

K. Accorder des dommages-intérêts punitifs ;

L. Attribution des honoraires d'avocat ;

M. Accorder des intérêts avant jugement au taux légal maximum courant de la date de la plainte à la date du jugement dans les présentes ;

N. Accorder des intérêts postérieurs au jugement au taux légal maximal courant de la date du jugement jusqu'à la date à laquelle le jugement est payé en totalité, plus les dépens ;

O. Enjoignant à Laurent Reiss de payer immédiatement tout jugement rendu en vertu des présentes ; et

P. Accorder au demandeur toute autre réparation supplémentaire que le tribunal juge juste et appropriée.

Daté : 18 mars 2025

Respectueusement soumis,

DINSMORE & SHOHL S.E.N.C.R.L., S.R.L.

Par : /s/ Matthew J. Stockl
Christopher Celentino
Yosina M. Lissebeck
Matthew J. Stockl

*Conseiller spécial de Richard A. Marshack,
Fiduciaire du LPG Liquidation Trust*

# ANNEXE 1

CHRISTOPHER B. GHIO (259094)
christopher.ghio@dinsmore.com
CHRISTOPHER CELENTINO (131688)
christopher.celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
yosina.lissebeck@dinsmore.com
DINSMORE & SHOHL S.E.N.C.R.L., S.R.L.
655 West Broadway, bureau 800
San Diego, Californie 92101
Tél. : 619.400.0500
Télécopieur : 619.400.0501

Sarah S. Mattingly (Ky. Bar 94257)
sarah.mattingly@dinsmore.com
DINSMORE & SHOHL, S.E.N.C.R.L., S.R.L.
101, rue S., bureau 2500
Louisville, Kentucky 40202
Téléphone : 859-425-1096
Télécopieur : 502-585-2207
(Admise pro hac vice)
Conseiller spécial de Richard A. Marshack

DÉPOSÉ ET SAISI

JUIN 03 2024

CLERCK U.S. BRANKRUPTCY COURT
District central de Californie
Par mccall ADJOINT CLERCK

## TRIBUNAL DES FAILLITES DES ÉTATS-UNIS
## DISTRICT CENTRAL DE CALIFORNIE – DIVISION DE SANTA ANA

| | |
|---|---|
| In Re | Cas n° : 23-BK-10571-SC |
| Le groupe de pratique Litige C.P., | Chapitre 11 |
| Débiteur(s), | **ORDONNANCE FAISANT DROIT À LA REQUÊTE EN INSCRIPTION DE L'ORDONNANCE CONSERVATOIRE ET DE L'ORDONNANCE CONSERVATOIRE** |
| | Date : 23 mai 2024 |
| | Heure : 13 h 30 |
| | Juge : Hon. Scott C. Clarkson |
| | Lieu : Salle d'audience 5C (via Zoom)[2] |
| | 411, rue Fourth Ouest |
| | Santa Ana, Californie 92701 |

La Cour a lu et examiné l'avis de requête et la requête en inscription d'une ordonnance conservatoire (la « Requête ») déposés par Richard A. Marshack, en sa qualité de syndic du chapitre 11 (le « syndic ») de l'actif de la faillite (« Actif ») de The Litigation Practice Group P.C., le 2 mai 2024, conformément à la règle fédérale de procédure de faillite 7026 et à la règle fédérale de procédure civile 26(c)(1), en tant que Dk. n° 1164 (« Requête »), et a trouvé un motif valable pour faire droit à la Requête.

IL EST ORDONNÉ ce qui suit :

1. La requête est accueillie ;

---

[2] Les informations de connexion vidéo et audio pour chaque audience seront fournies sur le calendrier d'audience du juge Clarkson affiché publiquement, qui peut être consulté en ligne à l'adresse suivante :
http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

2. L'ordonnance conservatoire ci-dessous s'applique à toute question contestée survenant dans l'affaire principale de faillite et dans toutes les procédures contradictoires intentées par ou contre le syndic, présentes et futures ; et

3. Régir l'interrogatoire préalable qui y est effectué.

## ORDONNANCE DE PROTECTION

### 1. DÉFINITIONS

1.1 Les « informations confidentielles » telles qu'elles sont utilisées dans la présente ordonnance de protection désignent les documents et autres informations (quelle que soit la manière dont ils sont générés, stockés ou conservés) qu'une partie ou un tiers croit raisonnablement contenir ou refléter des informations financières ou commerciales non publiques, des registres bancaires, des dossiers financiers, tels que des numéros de sécurité sociale, des informations financières ou personnelles non publiques d'une partie ou d'un tiers, les numéros de compte, les informations et identifiants numériques sensibles, les informations soumises à des accords de confidentialité ou à des dispositions autres que la présente ordonnance de protection, et d'autres informations non publiques sur la recherche, le développement ou le commerce qui tirent de la valeur ou évitent un préjudice du fait qu'elles ne sont pas connues du public.

1.2 La présente « Action » est définie et désigne par les présentes toute question contestée survenant dans le cas principal de faillite et dans toutes les procédures contradictoires intentées par ou contre le syndic, présentes et futures.

1.3 « Partie désignante » désigne une Partie ou un non-Partie qui désigne des Informations confidentielles au cours de l'Action.

1.4 « Partie réceptrice » désigne une Partie qui reçoit des Informations confidentielles au cours de l'Action.

1.5 « Partie » ou « Parties » désigne la personne ou l'entité soumise à la présente ordonnance de protection.

### 2. CHAMP D'APPLICATION DE LA PRÉSENTE ORDONNANCE DE PROTECTION

2.1 Sauf ordonnance contraire, la présente ordonnance conservatoire régit certains documents et autres produits de découverte obtenus dans le cadre de l'action auprès des parties à celles-ci et de tiers. Ainsi que certaines informations copiées ou dérivées de ceux-ci, des extraits, des résumés ou des compilations de ceux-ci, y compris, mais sans s'y limiter, les documents échangés volontairement dans le cadre de discussions de règlement anticipé, les documents produits à la suite des divulgations initiales, les demandes autorisées par les règles fédérales de procédure civile rendues applicables aux présentes par les règles fédérales de procédure de faillite, les réponses aux interrogatoires, transcriptions de dépositions, réponses aux demandes de production,

réponses aux demandes d'admission, assignations à comparaître, affidavits, déclarations, rapports d'experts et autres documents et informations qui peuvent être produits au cours de l'action et désignés comme des informations confidentielles.

## 3. DÉSIGNATION DES RENSEIGNEMENTS CONFIDENTIELS

3.1 La présente Ordonnance de protection régit la production et le traitement de toute Information confidentielle dans le cadre de la présente Action. Toute partie ou non-partie qui produit des informations confidentielles dans le cadre de la présente action peut les désigner comme « confidentielles » ou « réservées aux avocats », conformément aux conditions de la présente ordonnance de protection. Dans la mesure du possible, la partie désignante ne doit désigner que les parties d'un document, d'une réponse écrite à l'interrogatoire préalable, d'une déposition, d'une transcription ou de tout autre document qui contiennent les informations confidentielles et s'abstenir de désigner des documents entiers. Indépendamment de toute désignation faite en vertu des présentes, la partie désignée n'est pas autrement empêchée d'utiliser ou de divulguer ses informations confidentielles en dehors de la présente action ou à des fins commerciales. En outre, toute partie peut demander une modification ou une autre mesure de redressement de l'une ou l'autre des conditions de la présente ordonnance de protection si elle a d'abord tenté par écrit et de bonne foi de résoudre ses besoins ou ses différends avec les autres parties ou la partie, selon le cas, selon les termes de la présente ordonnance de protection. De plus, rien dans la présente ordonnance de protection n'empêche une partie d'expurger des documents conformément aux règles fédérales de procédure civile et d'utiliser les documents au besoin tout au long de l'action.

3.2 Application aux non-parties : Avant qu'un non-partie ne reçoive des copies de documents ou de documents désignés comme des informations confidentielles ou des avocats uniquement comme autorisé en vertu des présentes, il doit d'abord signer une reconnaissance d'être lié aux présentes conditions qui est jointe aux présentes en tant qu'annexe A ; s'il ne le fait pas, les parties à cette action doivent résoudre un tel différend avant de divulguer les informations désignées comme autorisé par les présentes à l'non-partie. Si un non-partie souhaite faire des désignations en vertu des présentes, il doit d'abord signer l'annexe A ci-jointe.

3.3 Calendrier et protection provisoire : Des désignations d'informations confidentielles peuvent être faites à tout moment. Pour éviter une éventuelle renonciation à la protection en vertu des présentes, la Partie à l'origine de la désignation doit désigner les documents ou les documents contenant des Informations confidentielles au moment de la production ou de la divulgation, y compris dans le dossier lors de la prise de toute déposition. Les dépositions seront réputées provisoirement protégées pour une période de trente (30) jours après que la transcription a été remise aux Parties par le sténographe judiciaire, bien que les Parties puissent convenir à tout moment de délais différents pour la protection provisoire des informations en tant que Confidentiel ou Yeux des avocats uniquement dans le cadre d'une ou plusieurs dépositions spécifiques. Pour conserver des désignations au-delà de la période provisoire, une Partie à l'origine de la désignation doit désigner des pages et des lignes précises de dépositions avant l'expiration de la période provisoire. Ces désignations doivent être

faites par écrit afin que tous les avocats et sténographes judiciaires puissent y apposer une copie de la transcription.

3.4 Mode de désignation : Les informations confidentielles peuvent être désignées en vertu des présentes de toute manière ou méthode raisonnable qui informe la partie destinataire du niveau de désignation et identifie avec précision les informations auxquelles la désignation s'applique. Si elle est faite verbalement, la partie qui désigne doit rapidement confirmer la désignation par écrit. Dans la mesure du possible, la partie désignée doit tamponner, apposer ou intégrer une légende « CONFIDENTIEL » ou « YEUX D'AVOCATS UNIQUEMENT » sur chaque page désignée du document ou de l'image électronique contenant des informations confidentielles.

## 4. CONTESTATIONS DE L'INFORMATION DÉSIGNÉE

4.1 Dans le cas où une Partie destinataire serait en désaccord à tout moment avec une ou plusieurs désignations faites par la Partie désignante, la Partie destinataire doit d'abord tenter de résoudre cette contestation de bonne foi sur une base informelle avec la Partie désignante. La Partie destinataire doit fournir un avis écrit de la contestation et des motifs de celle-ci à la Partie désignée, qui doit répondre par écrit à la contestation dans un délai de quinze (15) jours. À tout moment, il incombe à la partie désignante d'établir le bien-fondé de la désignation et du niveau de protection. À moins que et jusqu'à ce que la contestation soit résolue par les parties ou tranchée par le tribunal, les informations désignées resteront protégées en vertu de la présente ordonnance conservatoire. Le fait qu'une partie réceptrice ne conteste pas une désignation ne constitue pas une concession que la désignation est correcte ou un aveu que les informations désignées sont par ailleurs compétentes, pertinentes ou importantes.

## 5. ACCÈS/UTILISATION LIMITÉS DES INFORMATIONS PROTÉGÉES

5.1 Utilisation restreinte : Les renseignements qui sont produits ou échangés dans le cadre de l'action et qui sont désignés en vertu de la présente ordonnance conservatoire peuvent être utilisés pour la préparation du procès et de tout appel de toutes les questions de l'action, ainsi que pour les négociations de règlement connexes, et à aucune autre fin, sans le consentement écrit de la partie désignée. Aucune information confidentielle ne peut être divulguée à quiconque, sauf conformément aux termes de la présente ordonnance de protection, à moins que les parties ne soient co-avocates ou n'aient conclu des accords de défense conjointe. Toutes les personnes en possession d'informations confidentielles conviennent de faire preuve de diligence raisonnable en ce qui concerne la garde, l'utilisation ou le stockage de ces informations afin de garantir leur confidentialité. Cette obligation inclut, sans s'y limiter, que la partie destinataire fournisse à la partie désignée un préavis rapide de la réception de toute assignation à comparaître demandant la production ou la divulgation de toute information désignée et qu'elle consulte la partie désignée avant de répondre à l'assignation. Toute utilisation ou divulgation d'informations confidentielles ou réservées aux avocats en violation des termes de la présente ordonnance de protection peut exposer la personne ou la partie divulgatrice à des sanctions.

5.2 <u>Accès aux renseignements « confidentiels »</u> : Les parties et toutes les personnes visées par la présente ordonnance de protection conviennent que les renseignements désignés comme « CONFIDENTIELS » ne peuvent être consultés ou examinés que par les personnes suivantes :

a) La Cour, son personnel et les sténographes judiciaires ;

b) L'avocat inscrit au dossier, ou le co-avocat de toute partie, ou toute autre partie qui a conclu un accord de défense conjointe dans l'action et leurs employés qui assistent l'avocat inscrit au dossier, ou le co-conseil dans l'action et qui sont informés des devoirs et obligations imposés en vertu des présentes ;

c) Les Parties, y compris leurs clients, agents et employés qui assistent ou ont des raisons d'avoir connaissance de l'Action ;

/ / /

d) Les experts ou consultants employés par les Parties ou leurs avocats, ou co-conseils, aux fins d'une Action, à condition que chacun de ces experts ou consultants ait signé l'Annexe A ci-jointe ; et

e) D'autres témoins ou personnes avec le consentement de la Partie désignée ou sur décision de justice.

5.3 <u>Accès aux désignations « Avocats réservés »</u> : Les Parties et toutes les personnes visées par la présente Ordonnance conservatoire conviennent que les informations désignées comme « AVOCATS UNIQUEMENT » ne peuvent être consultées ou examinées que par les personnes suivantes :

a) La Cour, son personnel et les sténographes judiciaires ;

b) L'avocat inscrit au dossier, ou le co-avocat de toute partie, ou toute autre partie qui a conclu un accord de défense conjointe dans l'action et leurs employés qui assistent l'avocat inscrit au dossier dans l'action et sont informés des obligations en vertu des présentes ;

c) L'avocat interne de toute partie à l'action et Richard A. Marshack, en tant que fiduciaire du chapitre 11 de The Litigation Practice Group P.C., qui est informé des devoirs et obligations imposés en vertu des présentes ;

d) Les experts ou consultants employés par les Parties ou leurs avocats, ou co-conseils aux fins de l'Action, et pour autant que chacun de ces experts ou consultants ait signé la pièce A ci-jointe ; et

e) D'autres témoins ou personnes avec lesquels la partie désignée a donné son accord avant la divulgation ou sur décision de justice.

5.4 Effet de non-renonciation des désignations : Ni l'adoption ni l'omission de prendre une mesure pour faire appliquer les dispositions de la présente ordonnance conservatoire, ni l'absence d'objection à une désignation, ne constitueront une renonciation à la réclamation ou à la défense d'une ou des parties dans l'action ou toute autre action ou procédure, y compris, mais sans s'y limiter, une réclamation ou une défense selon laquelle des informations désignées sont ou ne sont pas confidentielles, ont ou n'ont pas droit à une protection particulière, ou incorporent ou n'incarnent pas des informations protégeables par la loi.

5.5 Utilisation des renseignements désignés au tribunal : Si des renseignements désignés en vertu de la présente ordonnance conservatoire seront ou peuvent être présentés en preuve lors d'une audience ou d'un procès lié à une question visée par l'action, la partie qui fait l'offre doit en aviser à l'avance la partie ou l'exclusivité qui a été désignée avant de fournir les renseignements afin que toute utilisation ou divulgation puisse être traitée conformément à l'ordonnance de gestion de l'instance ou à toute autre ordonnance préparatoire au procès du tribunal. soit par une motion in limine. Aucune disposition de la présente ordonnance de protection ne doit être interprétée comme une renonciation par une partie à toute objection qui pourrait être soulevée quant à l'admissibilité au procès de tout élément de preuve.

## 6. DEMANDES DE RÉCUPÉRATION

6.1 Défaut de désignation : Si, à tout moment, une Partie ou un non-Partie découvre qu'il a produit ou divulgué des Renseignements confidentiels sans désignation, il peut en aviser rapidement la Partie destinataire et identifier avec précision les Renseignements confidentiels à désigner et le niveau de désignation (l'avis de récupération). La partie réceptrice peut alors demander la production de substitution des informations nouvellement désignées. Dans les trente (30) jours suivant la réception de l'avis de récupération, la partie destinataire doit : (1) certifier à la partie désignante qu'elle a correctement marqué ou, si une production de remplacement a été demandée, détruit toutes les copies non marquées qu'elle a reçues, fabriquées et/ou distribuées ; et (2) s'il n'était pratiquement pas en mesure de marquer ou de détruire des informations parce que les divulgations ont eu lieu alors que la partie destinataire n'était pas tenue à la confidentialité en vertu des termes de la présente ordonnance conservatoire concernant ces informations, la partie destinataire doit raisonnablement fournir autant d'informations que possible pour aider la partie désignée à protéger les informations, conformément aux privilèges avocat-client, produit du travail et/ou préparation au procès de la partie destinataire.

6.2 Production par inadvertance d'informations privilégiées : Si, à tout moment, une partie découvre qu'elle a produit des informations qu'elle estime raisonnablement être protégées en vertu des privilèges avocat/client, du produit du travail ou de la préparation au procès, elle doit informer rapidement chaque partie réceptrice de la demande de protection, du fondement de celle-ci, modifier son registre des privilèges en conséquence et se conformer à Fed. R. Civ. P. 26(b)(5). Dans la mesure du possible, la partie productrice doit produire des informations de remplacement qui expurgent les informations faisant l'objet de la protection revendiquée. La partie destinataire doit alors se conformer à Fed. R. Civ. P. 26(b)(5)(B) en ce qui concerne les informations faisant l'objet de la protection revendiquée.

/ / /

/ / /

/ / /

## 7. DURÉE/RESTRICTIONS CONTINUES

7.1 <u>Traitement des informations désignées lors de la conclusion du dossier de faillite principal</u> : À la conclusion du dossier de faillite principal, par le biais du rejet ou de la clôture du dossier, la ou les parties désignées sont responsables de s'assurer que toute partie ou personne à qui la partie désignée a partagé ou divulgué des informations désignées dans l'une des affaires relevant de l'action retourne ou détruit toutes ses copies, quel que soit le support sur lequel il a été stocké. Aucun témoin ou partie ne peut conserver les informations désignées qu'il a reçues d'une autre partie ou d'un tiers en vertu de la présente ordonnance de protection ; seuls les avocats inscrits au dossier, ou co-avocats, sont les agents autorisés qui peuvent en conserver une copie pour leurs dossiers juridiques respectifs, et qui doivent également décrire à la partie désignée les mesures supplémentaires prises pour protéger son dossier juridique contenant des copies papier et/ou électroniques des informations désignées afin qu'elles ne soient pas consultées, utilisées ou divulguées de manière incompatible avec les obligations en vertu de la présente ordonnance conservatoire. Cette disposition ne s'applique pas à la Cour ni au personnel de la Cour. De plus, cette disposition ne s'applique pas au syndic, qui peut conserver et utiliser, conformément à la présente ordonnance, les renseignements confidentiels reçus dans le cadre d'une action pendant toute la durée de la faillite.

7.2 <u>Restrictions continues en vertu de la présente ordonnance de protection</u> : Les restrictions sur la divulgation et l'utilisation des informations confidentielles survivront à la conclusion de l'affaire de faillite et à toute question dans l'action.

## 8. INFORMATIONS PRIVILÉGIÉES OU PROTÉGÉES

8.1 Rien dans la présente ordonnance de protection n'exige la divulgation d'informations protégées par le secret professionnel de l'avocat, la protection du produit du travail ou tout autre privilège juridiquement reconnu (un « privilège ou une protection »). Si des informations faisant l'objet d'une revendication de privilège ou de protection sont produites par inadvertance, conformément à la règle fédérale de preuve 502(d), cette production ne constitue pas une renonciation ou une préclusion à l'égard de toute revendication de privilège ou de protection pour ces informations ou toute autre information qui peut être protégée contre la divulgation par un privilège ou une protection dans toute procédure.

8.2 Si une Partie reçoit un document qui semble être soumis à un Privilège ou à une Protection, elle s'abstiendra d'examiner le document au-delà de ce qui est nécessaire pour déterminer s'il est privilégié ou protégé et notifiera

rapidement et notifiera par écrit à la Partie productrice que la Partie destinataire possède du matériel qui semble être soumis à un Privilège ou à une Protection. La Partie productrice dispose de sept (7) jours après la réception d'un tel avis pour faire valoir un privilège ou une protection sur le matériel identifié. Si la Partie productrice ne fait pas valoir une revendication de privilège ou de protection dans le délai de sept (7) jours, le matériel en question sera réputé non privilégié ou protégé.

8.3 Si une Partie productrice a produit un document faisant l'objet d'une revendication de Privilège ou de Protection, sur demande écrite de la Partie productrice, le document pour lequel une revendication de Privilège ou de Protection est faite sera séquestré ou détruit dans la mesure du possible, et la Partie destinataire ne pourra pas utiliser le document à d'autres fins que dans le cadre de l'analyse ou de la contestation d'une revendication de Privilège ou de Protection ou en relation avec avec une requête visant à contraindre à la production du document.

8.4 La partie destinataire qui met sous séquestre ou détruit ce matériel peut alors demander au tribunal d'ordonner la production du matériel. Il incombe à la partie productrice concernée d'établir le privilège ou la protection applicable à tout document ou renseignement récupéré de la même manière et dans la même mesure qu'elle aurait assumé ce fardeau si elle n'avait pas produit le document ou l'information. Rien dans la présente ordonnance conservatoire ne limite le droit du tribunal ou de toute partie destinataire de demander un examen à huis clos de toute information faisant l'objet d'une revendication de privilège ou de protection.

### 

Date : 3 juin 2024

_____

Scott C. Clarkson
Juge des faillites des États-Unis



ANNEXE « A »

Christopher B. Ghio (Barreau d'État n° 259094)
Christopher Celentino (Barreau d'État n° 131688)
Yosina M. Lissebeck (Barreau d'État n° 201654)
**DINSMORE & SHOHL S.E.N.C.R.L., S.R.L.**
655 West Broadway, bureau 800
San Diego, Californie 92101
Téléphone : 619.400.0500
Télécopieur : 619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com

Sarah S. Mattingly (Ky. Bar 94257)
DINSMORE & SHOHL, S.E.N.C.R.L., S.R.L.
101, rue S., bureau 2500
Louisville, KY 40202
Téléphone : 859-425-1096
Télécopieur : 502-585-2207
Sarah.mattingly@dinsmore.com
(Admise pro hac vice)

Conseiller spécial de Richard A. Marshack,
Chapitre 11 Fiduciaire

**TRIBUNAL DES FAILLITES DES ÉTATS-UNIS
DISTRICT CENTRAL DE CALIFORNIE**

| | |
|---|---|
| In Re | Cas n° 8:23-BK-10571-SC |
| Le groupe de pratique Litige C.P., | Chapitre 11 |
| Débiteur(s), | **PIÈCE A À L'ORDONNANCE STIPULÉE** |
| | Date : 23 mai 2024<br>Heure : 13 h 30<br>Juge : Hon. Scott C. Clarkson<br>Lieu : Salle d'audience 5C³ – Via Zoom<br>411, rue Fourth Ouest<br>Santa Ana, Californie 92701 |

Il s'agit de certifier que :

(a) J'ai accès à des renseignements confidentiels en vertu de l'ordonnance conservatoire stipulée qui a été inscrite dans le dossier de faillite principal du groupe de pratique du litige, mais qui est exécutoire et déterminante comme indiqué par l'ordonnance du tribunal sur toutes les questions contestées et tout litige entamé par le syndic ;

b) J'ai lu l'ordonnance de protection stipulée ; et

(c) J'accepte d'être lié par les termes et conditions de celle-ci, y compris, sans s'y limiter, les obligations concernant l'utilisation, la non-divulgation et le retour de ces informations confidentielles. Je conviens en

---

¹ Les informations de connexion vidéo et audio pour chaque audience seront fournies sur le calendrier d'audience du juge Clarkson affiché publiquement, qui peut être consulté en ligne à l'adresse suivante : http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

outre qu'en plus d'être lié contractuellement par l'ordonnance de protection stipulée, je suis soumis à la juridiction du tribunal de référence ci-dessus pour toute violation de celle-ci.

Date:_____

_____
Signature

_____
Nom imprimé

# ANNEXE 2



## CONTRAT DE PRÊT

LE PRÉSENT CONTRAT DE PRÊT (le « Contrat de prêt ») est conclu en date du 7 février 2023 par et entre BAT Inc a/k/a B.A.T. Inc. et The Litigation Practice Group PC, (« LPG » ou « Emprunteur » ou « Emprunteurs » qui peuvent être utilisés de manière interchangeable), et tel que garanti personnellement par Daniel March (résidant au 20160 Nob Hill Drive, Yorba Linda, CA 92886) et Tony M Diab (une personne physique résidant en Californie), qui sont tous deux des agents et des dirigeants de LPG avec le pouvoir de les lier à la présente Note (« Garant » ou « Garants » qui peuvent être utilisés de manière interchangeable sans spécification et désigneront collectivement toutes les personnes identifiées dans les présentes) (LPG, Emprunteur et Garant peuvent tous être utilisés de manière interchangeable tout au long de la présente Note) et MCA Fund ADV Inc. ayant un lieu d'affaires au 4 714 l 6u1 A, Brooklyn NY et/ou à LOR International Ltd., une société à responsabilité limitée des Îles Vierges britanniques, dont le siège social est situé à Yamraj Building, Market Square, 3rd Floor, P.O. Box 3175., Road Town, Tortola VG 1110, Îles Vierges britanniques (« Prêteur » ou « Prêteurs » qui peuvent être utilisés de manière interchangeable), ou l'un de leurs cessionnaires (collectivement les « Parties »),

ATTENDU QUE, le ou vers le 7 février 2023, le prêteur a accordé à l'emprunteur un prêt d'un montant principal d'un million cinq cent mille dollars (1 500 000,00 $) (le « principal ») avec intérêts (commémoratifs dans un billet à ordre contemporain (« billet ») signé par l'emprunteur) échéant au plus tard le 6 mai 2023 (la « date d'échéance »), sous réserve d'un calendrier de décaissement tel qu'indiqué sur le billet ;

ATTENDU QUE l'Emprunteur a proposé de signer et de remettre au Prêteur un billet à ordre d'un montant actuellement dû et dû en vertu du Prêt, et d'accorder au Prêteur une sûreté de premier rang et un privilège sur tous les actifs de l'Emprunteur ;

À CES CAUSES, en considération des prémisses susmentionnées et d'autres contreparties valables et valables, dont la réception et la suffisance sont reconnues par les présentes, les Parties conviennent de ce qui suit :

1. L'Emprunteur reconnaît et convient qu'à compter de la date du présent Contrat de prêt : le montant total actuellement dû et dû en vertu du Prêt, y compris le capital impayé, les intérêts, les frais, les avances, les pénalités et tout autre montant dû en vertu de celui-ci, est égal à un million cinq cent mille dollars (1 500 000,00 $) avec intérêts (tels que définis dans le Note) (le « Capital ») ; et l'Emprunteur n'a aucun droit de compensation ou d'autres moyens de défense à son obligation immédiate de payer ce montant en totalité. En cas de survenance d'un Cas de défaut (tel que défini dans le(s) Billet(s) à ordre ou le Contrat de sûreté), le Taux d'intérêt passera au moindre de vingt-quatre pour cent (24 %) ou du montant maximal autorisé par la loi applicable. Les intérêts ne s'accumulent pas sur les intérêts impayés ou les frais de retard (tels que définis ci-dessous).

2. Tous les honoraires et frais d'avocat effectivement encourus par le Prêteur pour recouvrer ou exécuter le billet à ordre, le présent contrat de prêt, le contrat de sûreté ou toute confession de jugement fournie par l'emprunteur, pour déclarer ou statuer sur des droits en vertu de l'un de ces documents, ou pour constituer une garantie pour l'exécution des obligations de l'emprunteur en vertu de l'un de ces documents, que ce soit par voie de poursuite ou par tout autre moyen que ce soit, sont payables par l'emprunteur et s'ajoutent au principal impayé et en constituent une partie.

3. Tous les paiements de l'emprunteur seront appliqués d'abord au paiement de tous les frais de retard impayés, deuxièmement au paiement de tout intérêt impayé et troisièmement à la réduction du principal.

4. Tous les frais de principal, d'intérêts et de retard impayés doivent être payés en totalité par l'emprunteur au plus tard à la date d'échéance.

5. Un cas de défaut (un « cas de défaut ») est réputé être interprété et défini comme indiqué dans le billet à ordre et/ou le contrat de sûreté.

6. En cas de survenance d'un cas de défaut, la date d'échéance sera immédiatement devancée jusqu'à la date de l'événement de défaut, et tous les honoraires d'avocat, frais de retard, intérêts, capital et autres dépenses impayés envisagés dans la note, le contrat de garantie et le présent contrat de prêt seront dus et payables.

7. L'emprunteur doit effectuer tous les paiements dus en vertu du présent accord de prêt par virement, avec des fonds immédiatement disponibles ou un chèque acceptable pour le prêteur.

8. L'emprunteur doit signer et remettre au prêteur un billet à ordre (le « billet à ordre ») en vertu duquel l'emprunteur doit promettre inconditionnellement de payer au prêteur la somme principale au plus tard à la date d'échéance.

9. L'Emprunteur doit signer et remettre au Prêteur un contrat de sûreté (le « Contrat de sûreté ») en vertu duquel l'Emprunteur doit accorder au Prêteur une sûreté de premier rang et un privilège sur tous les actifs de l'Emprunteur (tels que définis dans le contrat de sûreté, le « Garantie ») une garantie pour l'exécution des obligations de l'Emprunteur en vertu du présent Contrat de prêt et du Billet à ordre.

10. L'Emprunteur déclare et garantit au Prêteur que : (a) l'Emprunteur a le droit, le pouvoir et l'autorité de lier les sociétés identifiées dans les présentes, de conclure et d'exécuter les conditions du présent Accord de prêt et qu'aucune des conditions du présent Accord de prêt, du billet à ordre ou de l'Accord de sûreté n'est ou ne sera en violation des dispositions de tout autre accord auquel l'Emprunteur est partie ; (b) l'emprunteur est dûment organisé, existe valablement et est en règle en vertu des lois de l'État de Californie ; (c) il n'y a pas de litige en cours contre l'Emprunteur, ses actionnaires, ses dirigeants ou ses administrateurs, qui pourrait, s'il était déterminé défavorablement, être raisonnablement susceptible de porter atteinte de manière importante au droit de l'Emprunteur d'exercer ses activités de manière substantiellement telle qu'elle est actuellement menée ou d'affecter négativement de manière importante la situation financière de l'Emprunteur ; (d) L'Emprunteur et chacun des actionnaires, dirigeants et administrateurs de l'Emprunteur ont fait déposer toutes les déclarations de revenus fédérales, étatiques et locales, qui doivent être déposées, et ont payé ou fait payer toutes les taxes et cotisations dans la mesure où ces taxes ou cotisations sont devenues exigibles, à l'exception de toute cotisation contestée de bonne foi et pour laquelle des réserves adéquates ont été mises de côté ; (e) L'Emprunteur n'est pas insolvable à la date du présent Contrat de prêt et ne deviendra pas insolvable en raison de ses obligations en vertu du présent Contrat de prêt, du billet à ordre ou du Contrat de sûreté ; (f) il n'y a aucun jugement ou de procédure en cours, ou à la connaissance de l'Emprunteur, qui pourrait raisonnablement être susceptible d'affecter de manière importante et défavorable les droits du Prêteur en vertu du présent Contrat de prêt, du Billet à ordre ou du Contrat de sûreté, la capacité de l'Emprunteur à exécuter ses obligations en vertu des présentes ou de celui-ci, le titre de propriété de la Garantie (telle que définie dans le Contrat de sûreté), ou la validité ou la priorité de la sûreté et du privilège sur les biens grevés créés en vertu des présentes et en vertu des présentes ; (g) il n'y a aucun jugement contre l'emprunteur impayé ou non satisfait enregistré dans un tribunal de cet État ou des États-Unis ; (h) à aucun moment l'Emprunteur n'a effectué de cession au profit des créanciers ; (i) Le prêteur a accordé à l'emprunteur le temps dont il a été avisé de retenir les services d'un avocat pour le représenter dans le cadre de cette transaction.

11. L'Emprunteur convient par les présentes que, tant qu'un montant est dû au Prêteur en vertu du présent Accord de prêt, l'Emprunteur et ses actionnaires, dirigeants et administrateurs doivent : (a) libérer et dégager le Prêteur de toute cause d'action, réclamation, dommage et responsabilité de nature contractuelle, délictuelle ou fiscale en raison des actes ou omissions de l'Emprunteur, et de payer les honoraires de l'avocat du prêteur pour représenter et défendre le prêteur contre de telles causes d'actions, réclamations, dommages ou responsabilités ; (b) garder la garantie libre et libre de tous privilèges, charges, charges, taxes, évaluations et réclamations, sauf ceux qui découlent des présentes, en vertu de la convention de sûreté ou qui peuvent autrement être autorisés par le prêteur ; (c) donner au prêteur un avis immédiat, par écrit, à l'adresse désignée par le prêteur, dans les dix (10) jours suivant l'obtention de tout remplacement de la garantie, et faire signer les documents appropriés afin que ces remplacements soient garantis conformément au présent contrat de prêt et au contrat de sûreté ; (d) obtenir tous les renouvellements de licence et toutes autres licences et permis requis nécessaires à la poursuite de l'exploitation de l'entreprise de l'Emprunteur et à la préservation de la garantie ; (e) payer rapidement toutes les amendes, pénalités ou cotisations qui peuvent être imposées ou imposées à l'Emprunteur ; (f) coopérer pleinement avec la compagnie d'assurance de l'Emprunteur dans le signalement, l'enquête et la défense de toute réclamation ; (g) tenir des livres et des registres exacts et complets et les tenir et permettre à tout représentant autorisé du prêteur et de ses avocats, comptables et agents d'inspecter, d'examiner et de faire des copies et des résumés des livres de comptes et des registres de l'emprunteur à des heures raisonnables pendant les heures normales de bureau ; (h) aviser immédiatement le prêteur, par écrit, à l'adresse désignée par le prêteur, de la survenance de tous les privilèges, charges, charges, taxes, évaluations et réclamations qui pourraient avoir une incidence importante et défavorable sur les droits du prêteur en vertu du présent contrat de prêt, du billet à ordre ou du contrat de sûreté, de la capacité de l'emprunteur à exécuter ses obligations en vertu des présentes ou de celui-ci, du titre de propriété de la garantie ou de la validité ou de la priorité de la sûreté et du privilège sur la garantie créée en vertu des présentes et en dessous de celle-ci ; (i) payer toutes les dettes exigibles en vertu du présent contrat de prêt et du billet à ordre conformément à celui-ci, et se conformer strictement à tous les termes, engagements, accords et conditions énoncés dans le présent contrat de prêt, le billet à ordre, le contrat de sûreté et tous les autres documents signés en relation avec le prêt ; j) ne pas émettre, scinder, reclasser ou déclarer le paiement d'un dividende payable sur un capital-actions ou émettre des bons de souscription ou des options sur son capital-actions, à titre onéreux ou autrement ; et (k) aviser le prêteur de la survenance d'un événement de défaut (tel que défini dans les présentes) ou d'une circonstance qui, par l'écoulement du temps, peut devenir un événement de défaut.

12. L'emprunteur doit signer simultanément avec le présent contrat de prêt et, de temps à autre par la suite, tous les documents requis par le prêteur pour parfaire et/ou maintenir les sûretés du prêteur sur toute garantie.

13. Par les présentes, l'emprunteur autorise le prêteur à déposer des états de financement afin de parfaire la sûreté de premier rang du prêteur sur la garantie de temps à autre. Par la présente, l'emprunteur désigne le prêteur comme son mandataire pour signer et déposer ces documents.

14. Par les présentes, l'emprunteur désigne le prêteur à titre de mandataire pour traiter les comptes ou les créances envisagés aux présentes, dans le contrat de sûreté ou dans le billet, ou pour protéger autrement l'intérêt du prêteur dans le principal.

15. Sur demande, l'emprunteur doit signer de nouveau tout document ou instrument signé dans le cadre du prêt qui a été mal rédigé ou signé, ou signer tout document ou instrument que le prêteur exige dans le cadre de ce prêt.

16. Les obligations du prêteur en vertu du présent contrat de prêt sont subordonnées à la remise par l'emprunteur, au prêteur, dans une forme et une substance satisfaisantes pour le prêteur et son avocat, des documents suivants que chaque propriété a signés : (a) le billet à ordre ; b) le contrat constitutif constitutif de sûreté ; c) des états financiers en vertu du Code de commerce uniforme (UCC) en la forme appropriée pour le dépôt par le prêteur, suffisants quant à la forme et au fond pour

accorder au prêteur une sûreté de premier rang opposable sur le bien grevé (tel que défini dans le contrat de sûreté) ; (d) un affidavit pour un jugement par confession signé par l'Emprunteur devant être conservé par le Prêteur jusqu'à ce que l'Emprunteur fasse défaut à l'un des termes, engagements et conditions du présent Contrat de prêt, du billet à ordre, du Contrat de sûreté ou de tout autre document accessoire signé en relation avec le Prêt, auquel cas le Prêteur peut inscrire lesdits aveux de jugement devant tout tribunal compétent ; (e) les résolutions du conseil d'administration ou du ou des membres gérants de l'Emprunteur, certifiées par le secrétaire de l'Emprunteur, autorisant la signature et l'exécution du présent Contrat de Prêt et des Billets à Ordre, et la preuve du consentement de I 00 % des actionnaires ou membres de l'Emprunteur à ladite transaction ; (f) une garantie inconditionnelle de l'exécution des obligations de l'Emprunteur en vertu du présent Contrat de prêt et du Billet à ordre signé par les administrateurs ou les membres gérants de l'Emprunteur ; (g) d'informer immédiatement le prêteur par écrit de tout événement qui, à tout moment, pourrait faire en sorte que les déclarations et garanties énoncées aux présentes ou dans le contrat de prêt cessent d'être vraies ou que le remboursement de celles-ci par le mandant ou le prêteur pourrait être compromis.

17. La survenance de l'un des événements suivants constitue un cas de défaut en vertu du présent contrat de prêt : (a) le défaut de l'emprunteur de payer, à l'échéance, tous les montants dus en vertu du présent contrat de prêt, du billet à ordre et du contrat de sûreté ; (b) l'inexécution par l'Emprunteur, ou une violation par l'Emprunteur de l'une des modalités, engagements ou conditions du présent Contrat de prêt, du Billet à ordre ou du Contrat de sûreté ; (c) le défaut de l'Emprunteur de payer ou de cautionner tout jugement contre lui ou d'enlever ou de cautionner tout prélèvement, exécution ou procédure judiciaire contre tout élément inclus dans la garantie dans les trente (30) jours suivant la date à laquelle l'Emprunteur a pris connaissance de l'inscription, ou du dépôt de tout avis d'insuffisance fiscale ou privilège contre l'Emprunteur par une municipalité, le gouvernement fédéral ou de l'État ou l'un de ses organismes, à moins qu'il ne soit contesté de bonne foi par l'Emprunteur ; (d) le défaut de l'Emprunteur de payer toutes ses dettes à leur échéance ; (e) le dépôt d'une demande de mise en faillite par ou contre l'emprunteur, la cession au profit des créanciers de l'emprunteur, ou la nomination d'un dépositaire, ou d'un séquestre ou d'un syndic pour l'emprunteur ou ses actifs ; (e) si l'une des déclarations et garanties faites par l'Emprunteur dans le présent Contrat de prêt, le Contrat de sûreté ou tout autre instrument signé en relation avec le présent Contrat de prêt ou le Prêt est ou devient fausse, incorrecte ou trompeuse ; (f) la dissolution ou toute autre résiliation de l'Emprunteur ; (g) l'incapacité de l'Emprunteur (ou de tout actionnaire, partenaire ou membre de l'Emprunteur) à exécuter ou à respecter tout engagement ou condition contenu dans tout accord auquel le Prêteur et l'Emprunteur ou un tel actionnaire, partenaire ou membre sont parties (y compris, sans s'y limiter, tout accord de garantie ou de nantissement garantissant ou garantissant les obligations de l'Emprunteur en vertu des présentes), sans bénéficier d'un délai de grâce applicable, y compris celui-ci et ces documents.

18. En plus des droits prévus par le présent contrat de prêt, en cas de survenance d'un cas de défaut, le prêteur aura tous les droits à l'égard de la garantie accordée en vertu du billet à ordre, du contrat de sûreté, de l'UCC ou de toute autre loi applicable, sous réserve de tout avis requis par la loi.

19. L'Emprunteur s'engage à : (a) payer ou rembourser au Prêteur tous les frais et dépenses qu'il a engagés dans le cadre de l'élaboration, de la préparation et de l'exécution du présent Contrat de prêt, du Billet à ordre et du Contrat de sûreté, ainsi que de tout amendement, supplément ou modification à ceux-ci, ainsi que de tout autre document ou instrument signé en relation avec les présentes ou avec celui-ci, et la réalisation des transactions envisagées par les présentes et par celles-ci, y compris, sans s'y limiter, les honoraires et les débours des avocats du prêteur ; (b) payer ou rembourser au prêteur tous les frais et dépenses encourus dans le cadre de l'exécution ou de la préservation de tout droit en vertu du présent contrat de prêt, du billet à ordre, du contrat de sûreté et de tout autre document similaire, y compris, sans s'y limiter, les honoraires et débours de l'avocat du prêteur ; (c) payer, indemniser et dégager le prêteur de toute responsabilité à l'égard de tous les frais d'enregistrement et de dépôt et de toutes les responsabilités à l'égard de, ou résultant de tout retard dans le paiement, des

taxes de timbre, des taxes d'accise et d'autres taxes, le cas échéant, qui peuvent être payables ou jugés comme étant payables relativement à l'exécution ou à la livraison ou à la réalisation de l'une des opérations envisagées par, ou tout amendement, supplément ou modification, ou toute renonciation ou consentement en vertu du présent contrat de prêt, du billet à ordre, du contrat de sûreté et de tout autre document ou à l'égard de ceux-ci ; et (d) payer, indemniser et dégager le Prêteur de toute responsabilité à l'égard de toutes autres responsabilités, obligations, pertes, dommages, pénalités, actions, jugements, poursuites, coûts, dépenses ou débours de quelque nature que ce soit en ce qui concerne l'exécution, la livraison, l'exécution, l'exécution et l'administration du présent Contrat de prêt, du billet à ordre, du Contrat de sûreté et de tout autre document similaire (tout ce qui précède, collectivement les « passifs indemnisés »), à condition que l'emprunteur n'ait aucune obligation en vertu des présentes envers le prêteur à l'égard des passifs découlant directement de la négligence grave ou de l'inconduite délibérée du prêteur. Les accords prévus dans le présent paragraphe survivront au remboursement du billet à ordre et de tous les autres montants payables en vertu des présentes.

20. Tous les avis doivent être donnés par écrit et sont réputés avoir été correctement donnés (i) à la livraison, s'ils sont remis en personne ou un (1) jour ouvrable (défini ci-dessous) après avoir été déposés pour une livraison le lendemain auprès d'un service de messagerie de nuit réputé ou envoyés par courriel. L'une ou l'autre des parties, par notification à l'autre, peut désigner des adresses supplémentaires ou différentes pour les notifications ou communications ultérieures. Aux fins de la présente section, « jour ouvrable » désigne un jour où les banques ne sont pas autorisées ou tenues par la loi de fermer dans l'État de New York.

21. Les dispositions du présent contrat de prêt et tous les instruments et autres accords signés en vertu des présentes sont séparables et dans le cas où l'une des dispositions des présentes ou de celui-ci serait invalide ou contraire à la loi, celle-ci sera nulle et non avenue, mais les autres dispositions seront contraignantes entre les parties.

22. Toutes les garanties, déclarations et engagements des parties survivront à la consommation des transactions qui y sont envisagées.

23. La présente convention de prêt représente l'intégralité de l'entente entre le prêteur et l'emprunteur en ce qui concerne l'objet des présentes, et il n'y a aucune promesse, engagement, déclaration ou garantie de la part du prêteur relativement à l'objet des présentes qui ne soit expressément énoncé dans les présentes, le billet à ordre ou la convention de sûreté ou tout autre document et instrument signé en vertu des présentes ou en vertu de celles-ci.

24. Le présent accord de prêt lie et s'applique au profit des parties aux présentes, de leurs héritiers, représentants légaux, successeurs et ayants droit autorisés respectifs. Chaque partie déploiera tous les efforts raisonnables pour prendre ou faire prendre toutes les mesures, et pour faire ou faire faire, et pour aider et coopérer avec les autres parties dans l'accomplissement de tout ce qui est nécessaire, approprié ou souhaitable pour réaliser l'intention et les objectifs du présent accord.

25. Le présent contrat de prêt, le contrat de sûreté, le billet à ordre et tout autre document signé en rapport avec le prêt ne peuvent être amendés, complétés ou modifiés qu'en vertu d'un écrit signé par la partie à qui l'on doit être chargé de cet amendement, supplément ou modification. Aucun écrit remis à l'emprunteur par le prêteur ou en son nom, énonçant le solde principal, le paiement ou d'autres informations concernant le prêt ne constitue un écrit, amendement, supplément ou modification du présent contrat de prêt, du billet à ordre ou des obligations de l'emprunteur en vertu des présentes ou de celui-ci, à moins que cet écrit ne stipule spécifiquement qu'il constitue un tel amendement, supplément ou modification.

26. Le prêteur peut céder ses droits à l'égard du présent contrat de prêt, du billet à ordre, de la garantie, du contrat de sûreté et de tous les autres documents et instruments signés en vertu des présentes et en vertu de celui-ci.

27. Le défaut d'exercer et le retard dans l'exercice, de la part du prêteur, d'un droit, d'un recours, d'un pouvoir ou d'un privilège en vertu du présent contrat de prêt, du billet à ordre, du contrat de sûreté ou de tout autre document ou instrument signé en vertu des présentes ou de celui-ci ou en vertu de celui-ci ne constituent une renonciation à celui-ci ; De même, l'exercice unique ou partiel d'un droit, d'un recours, d'un pouvoir ou d'un privilège en vertu des présentes ou des présentes n'empêchera pas tout autre exercice ultérieur de celui-ci ou l'exercice de tout autre droit, recours, pouvoir ou privilège. Les droits, recours, pouvoirs et privilèges prévus aux présentes ou aux présentes sont cumulatifs et non exclusifs des droits, recours, pouvoirs et privilèges prévus par la loi.

28. L'intention des parties est que le taux d'intérêt et tous les autres frais facturés à l'emprunteur soient légaux. Si, pour quelque raison que ce soit, le paiement d'une partie des intérêts, des frais ou des charges exigés par le présent contrat de prêt, le contrat de sûreté ou le billet à ordre dépasse la limite autorisée par la loi applicable, l'obligation de payer les intérêts ou les frais sera automatiquement réduite à cette limite et, si des montants supérieurs à cette limite ont été payés : alors ces montants, seront appliqués au montant du prêt impayé ou remboursés de sorte qu'en aucun cas les intérêts ou les frais requis en vertu des présentes ne dépasseront le taux maximum autorisé par la loi comme indiqué ci-dessus.

29. Le présent contrat de prêt est livré dans l'État de New York et doit être interprété et appliqué conformément aux lois de l'État de New York, sans aucune disposition en matière de conflit de lois. Toute action ou poursuite d'un recours juridique dans toute réclamation ou recours juridique dans tout forum juridique en relation avec le présent document, découlant de ce document, ou liée à toute obligation liée aux présentes, doit être intentée devant le tribunal d'État ou fédéral siégeant dans le comté de New York, New York. Par les présentes, chaque partie se soumet irrévocablement et inconditionnellement pour elle-même et ses biens dans toute action en justice ou procédure relative au présent contrat de prêt et aux autres documents auxquels elle est partie en relation avec le prêt, y compris, sans s'y limiter, le billet à ordre et le contrat de sûreté, ou pour la reconnaissance et l'exécution de tout jugement à cet égard, à la juridiction générale non exclusive des tribunaux de l'État de New York apparus dans le comté de New York ou dans le district sud de New York, et des cours d'appel de l'un quelconque de ces tribunaux, consent à ce qu'une telle action ou procédure puisse être intentée devant ces tribunaux et renonce à toute objection qu'il pourrait avoir maintenant ou ultérieurement au lieu d'une telle action ou procédure devant un tel tribunal ou que cette action ou procédure a été intentée devant un tribunal incommode et convient de ne pas plaider ou réclamer celle-ci, convient que la signification de l'acte de procédure dans une telle action ou procédure peut être effectuée par l'envoi d'une copie de celle-ci par courrier certifié (ou toute forme de courrier substantiellement similaire), affranchi, à son adresse indiquée aux présentes ou à toute autre adresse dont toutes les autres parties aux présentes auront été informées conformément aux présentes ; convient que rien dans les présentes n'affectera le droit d'effectuer la signification d'un acte de procédure de toute autre manière autorisée par la loi ou ne limitera le droit d'intenter une action dans toute autre juridiction ou de déposer des privilèges/litispendances devant un tribunal pour grever tout bien immobilier appartenant à un emprunteur pendant qu'une action se poursuit devant les tribunaux de New York ; et

30. Chacune des Parties convient de renoncer à un procès devant jury dans toute action ou procédure intentée par l'une des parties contre l'autre découlant du présent Contrat de prêt ou s'y rapportant de quelque manière que ce soit.

31. Le présent accord peut être signé en deux ou plusieurs exemplaires, dont chacun est un original, mais qui constituent ensemble un seul et même instrument. Les signatures électroniques sont considérées comme des originaux et comme si elles étaient signées à l'encre humide. L'emprunteur s'engage à ne pas soulever de réclamation ou de défense quant à l'absence d'un original.

32. Le présent écrit et les documents signés dans le cadre du prêt contiennent l'intégralité de l'accord des parties en ce qui concerne le matériel en question et aucune modification, altération ou renonciation à tout ou partie de la totalité ou d'une partie ne sera valide à moins d'être faite par écrit et signée par toutes les parties aux présentes. Chaque partie déploiera tous les efforts raisonnables pour prendre ou faire prendre toutes les mesures, et pour faire ou faire faire, et pour aider et coopérer avec les autres parties dans l'accomplissement de tout ce qui est nécessaire, approprié ou souhaitable pour réaliser l'intention et les objectifs du présent accord.

EN FOI DE QUOI, les soussignés ont signé et remis la présente convention de prêt au jour et à l'année susmentionnés.

**GARANT:**

**EMPRUNTEUR**

BAT Inc a/k/a B.A.T. Inc.

Par:_____
Nom : Tony M DIAB

Par:_____
Nom : Tony M Diab
Titre : Officier

**GARANT:**

**EMPRUNTEUR**

Le groupe de pratique Litige PC

Par:_____
Nom : Daniel March

Par:_____
Nom : Daniel March
Titre : Officier

| **PRÊTEUR:** | **PRÊTEUR:** |
|---|---|
| Fonds MCA ADV Inc. | LDR International Ltd., |
| _____ | _____ |
| Par:_____ | Par:_____ |
| Titre : Officier | Titre : Officier |

## RECONNAISSANCE

Un notaire ou un autre fonctionnaire qui remplit ce certificat ne vérifie que l'identité de la personne qui a signé le document auquel ce certificat est joint, et non la véracité, l'exactitude ou la validité de ce document.

État de Californie
Comté d'Orange

Sur *7 février 2023* devant moi,
<u>Olga Lucía Esquivel, notaire</u>
(insérer le nom et le titre de l'agent)

A comparu personnellement *Daniel S. March,* qui m'a prouvé, sur la base de preuves satisfaisantes, qu'il était la ou les personnes dont le(s) nom(s) est/sont souscrit(s) à l'instrument ci-joint et m'a reconnu qu'il/elle/elles l'ont signé en son/ses qualité(s) autorisée(s), et que par son/ses signature(s) sur l'acte, la (les) personne(s), ou l'entité pour le compte de laquelle la ou les personnes ont agi, exécuté. l'Instrument.

Je certifie en vertu de la PEINE DE PARJURE en vertu des lois de l'État de Californie que le paragraphe précédent est vrai et correct.

TÉMOIN ma main et mon sceau officiel.

Signature _____ **(sceau)**

**RECONNAISSANCE**

Un notaire ou un autre fonctionnaire qui remplit ce
certificat ne vérifie que l'identité de la personne qui a
signé le document auquel ce certificat est joint, et non
la véracité, l'exactitude ou la validité de ce document.

État de Californie
Comté d' *Orange*

Sur *02/07/2023* devant moi, <u>Vanessa Banken-Buchner</u>
                        (insérer le nom et le titre de l'agent)

Comparution en personne *Tony Maurice Diab*, qui m'a prouvé, sur la base de preuves satisfaisantes, qu'il était la ou les
personnes dont le(s) nom(s) est/sont abonné(s) à l'instrument ci-joint et m'a reconnu qu'il/elle/elles l'ont signé en sa (ses)
capacité(s) autorisée(s), et que par son/ses signature(s) sur l'acte, la (les) personne(s), ou l'entité pour le compte de laquelle
la ou les personnes ont agi, exécuté. l'Instrument.

Je certifie en vertu de la PEINE DE PARJURE en vertu des lois de l'État de Californie que le paragraphe précédent est vrai
et correct.

TÉMOIN ma main et mon sceau officiel.

Signature _____ **(sceau)**

# ANNEXE 3

LE PRÉSENT BILLET N'A PAS ÉTÉ ENREGISTRÉ EN VERTU DE LA LOI SUR LES VALEURS
MOBILIÈRES DE 1933, TELLE QUE MODIFIÉE (LA « LOI »), NI EN VERTU DES LOIS SUR LES VALEURS
MOBILIÈRES D'UN ÉTAT, ET NI CES VALEURS MOBILIÈRES NI AUCUN INTÉRÊT DANS CEUX-CI NE
PEUVENT ÊTRE OFFERTS, VENDUS, MIS EN GAGE, CÉDÉS OU AUTREMENT TRANSFÉRÉS À MOINS QUE
(I) UNE DÉCLARATION D'ENREGISTREMENT À CET ÉGARD NE SOIT EN VIGUEUR EN VERTU DE LA LOI
ET DE TOUTE LOI SUR LES VALEURS MOBILIÈRES APPLICABLE OU (2) QU'UNE DISPENSE
D'INSCRIPTION SOIT DISPONIBLE POUR UNE TELLE OFFRE. VALEUR NANTISSEMENT, CESSION OU
TRANSFERT.

**BILLET À ORDRE**

**1 500 000,00 $**                                                    Daté : 7 février 2023

**1. Promesse de paiement de l'emprunteur.** Pour la valeur reçue, BAT Inc a/k/a B.A.T. Inc. et The Litigation Practice
Group PC, (collectivement « LPG » ou « Emprunteur » ou « Emprunteurs » qui peuvent être utilisés de manière
interchangeable), et comme personnellement garantis par Daniel March (résidant au 20160 Nob Hill Drive, Yorba Linda,
CA 92886) et Tony M Diab (une personne physique résidant en Californie), qui sont tous deux des agents et des dirigeants
de LPG ayant le pouvoir de les lier à la présente Note (« Garant » ou « Garants » qui peuvent être utilisé de manière
interchangeable sans spécification et signifie collectivement que toutes les personnes identifiées dans les présentes) (LPG,
Emprunteur et Garant peuvent tous être utilisés de manière interchangeable tout au long de la présente Note), s'engage par
la présente inconditionnellement à payer à MCA Fund ADV Inc. ayant un siège social au 4714 16th Avenue, Brooklyn NY
et/ou à LDR International Ltd., une société à responsabilité limitée des Îles Vierges britanniques,  ayant son adresse à
Yamraj Building, Market Square, 3rd Floor, P.O. Box 3175, Road Town, Tortola VG 1110, Îles Vierges britanniques («
Prêteur » ou « Prêteurs » qui peuvent être utilisés de manière interchangeable), ou l'un de leurs cessionnaires, la somme
principale d'un million cinq cent mille dollars (1 500 000,00 $) (le « principal ») conformément au présent billet à ordre (le
« billet à ordre »),  à débourser conformément à l'annexe A, ci-annexée, et en faire partie intégrante.

**2. Date d'échéance.** Tous les frais de capital, d'intérêts et de retard impayés doivent être payés en totalité par l'emprunteur
au plus tard le 6 mai 2023 (la « date d'échéance »).

**3. Intérêts.** Le montant principal restant dû portera intérêt (« Intérêt ») à un taux égal à sept pour cent (7,0 %) par mois.
Les intérêts seront payés mensuellement le sixième (6) de chaque mois (ou si ce jour n'est pas un jour ouvrable, le jour
ouvrable suivant) pendant la durée du présent billet. Les intérêts seront calculés sur une base annuelle de 360 jours. Les
paiements d'intérêts doivent être payables comme désigné par le prêteur. Dans la mesure où le taux d'intérêt facturé est jugé
illégal, usuraire ou inapplicable en vertu de la loi (même ab inito ou nunc pro tune), les parties aux présentes conviennent
que la condition incriminée sera réputée avoir été modifiée et remplacée, ab initio ou nunc pro tune, par le taux d'intérêt
maximum autorisé par la loi applicable.

**4. Intérêts moratoires.** En cas de survenance d'un cas de défaut (tel que prévu ci-dessous), le taux d'intérêt passera au
moindre de vingt-quatre pour cent (24 %) (« intérêts sur défaut ») ou du montant maximal autorisé par la loi applicable.
Dans la mesure où le taux d'intérêt moratoire facturé est jugé illégal, usuraire ou inapplicable en vertu de la loi (même *ab
initio* ou *nunc pro tune*), les parties aux présentes conviennent que la condition incriminée sera réputée avoir été modifiée
et remplacée, ab initio ou *nunc pro tune*, par le taux d'intérêt moratoire maximal autorisé par la loi applicable.

5. **Honoraires et frais d'avocat**. Tous les honoraires d'avocat, coûts, débours et dépenses encourus par le Prêteur pour recouvrer ou exécuter ce billet à ordre, pour déclarer ou faire valoir des droits en vertu du billet à ordre, pour faire respecter les droits des prêteurs à l'égard d'un contrat de sûreté et de tout autre document de prêt qui est signé par l'Emprunteur en même temps que les présentes, pour constituer toute garantie qui constitue une garantie pour l'exécution des obligations de l'Emprunteur en vertu du billet à ordre, un contrat de sûreté et tout autre document de prêt qui est signé par l'emprunteur en même temps que les présentes, que ce soit par voie de poursuite ou par tout autre moyen que ce soit, sont payables par l'emprunteur et le garant et sont ajoutés au principal impayé et en font partie intégrante.

6. **Affectation des paiements**. Tous les paiements de l'Emprunteur seront appliqués d'abord au paiement de tout intérêt de retard impayé et ensuite au paiement ou à la réduction du principal.

7. **Pouvoir de l'emprunteur**. Les Emprunteurs Daniel March et Tony M Diab, en tant que membre/dirigeant de l'Entité Empruntrice, ont le pouvoir de lier les Entités Emprunteuses au présent billet à ordre et/ou ont obtenu le consentement à cet effet des autres membres/dirigeants de chacune des Entités Emprunteurs.

8. **Cas de défaut**. Un cas de défaut (un « cas de défaut ») se produit et se poursuit si le prêteur ne reçoit pas le paiement mensuel des intérêts ou du capital avant la date d'échéance, le délai étant essentiel après l'expiration d'une période de grâce de cinq (5) jours au cours de laquelle l'emprunteur peut remédier au défaut. De plus, un cas de défaut se produira si l'emprunteur ne respecte pas le contrat de sûreté et tout autre document de prêt signé par l'emprunteur en même temps que les présentes. En cas de défaut, toutes les sommes impayées (principal, intérêts, honoraires d'avocat, frais divers tels que prévus aux présentes) deviendront immédiatement exigibles, exigibles et payables.

9. **Droits du prêteur en cas de défaut**. En cas de survenance d'un cas de défaut, le prêteur peut, à sa seule discrétion, exercer tous ses droits en vertu du présent billet à ordre, de tous les documents et accords signés par l'emprunteur en relation avec le présent billet à ordre et des lois applicables, y compris, sans s'y limiter, faire valoir ses droits à l'égard de toutes les garanties accordées par l'emprunteur à titre de garantie pour ce billet à ordre, l'inscription d'aveux de jugement signés par l'Emprunteur, l'introduction d'une action devant un tribunal compétent dans tout État et comté dans lequel l'une des Entités Emprunteurs exploite son entreprise ou possède des biens immobiliers, ou traite/débite les comptes des consommateurs des Emprunteurs agissant ou engageant un processeur ACH pour endetter/percevoir des frais sur les comptes des consommateurs des Emprunteurs, déposer toute déclaration de financement UCC que le prêteur juge appropriée dans n'importe quel État et contre toute personne, entité, société ou société affiliée de l'emprunteur.

10. **Conservation des garanties**. L'Emprunteur ne doit pas, sans le consentement écrit préalable du Prêteur, céder, transférer, grever ou céder, vendre, détourner ou empêcher de toute autre manière la constitution de toute garantie qui est donnée en garantie de l'exécution des obligations de l'Emprunteur en vertu du billet à ordre, ni céder, transférer, grever du contrat, céder, vendre, détourner ou empêcher de toute autre manière la mobilisation d'actions, de participations ou de capitaux propres de l'Emprunteur, que ce soit par vente, transfert, cession, licence, location, fusion, abandon, consolidation (autre que la vente de produits dans le cours normal des activités de l'emprunteur), ou liquidation, liquidation ou dissolution de l'entreprise de l'emprunteur.

11. **Transfert par le prêteur**. Le prêteur peut transférer le billet à ordre à n'importe quelle partie à tout moment, à sa seule discrétion, sans préavis ni consentement de l'emprunteur. Aux fins du présent billet, le terme « prêteur » comprend le prêteur, toute partie à qui le billet à ordre est endossé et transféré, et toute partie qui détient le billet à ordre s'il est endossé « en blanc » par le prêteur ou un cessionnaire.



12. **Transfert par l'emprunteur.** L'emprunteur ne peut pas transférer ou céder ses droits ou obligations en vertu du présent billet à ordre sans le consentement écrit préalable du prêteur.

13. **Renonciation(s).** L'emprunteur renonce par la présente à tout droit de présentation de paiement, d'avis de déshonneur, de protêt, d'avis de protestation de ce billet ou de tout autre avis de quelque nature que ce soit et de toutes demandes quelles qu'elles soient ; et en cas de litige avec le prêteur, qu'il découle ou non du présent billet ou de toute garantie accessoire ou s'y rapportant, renonce ainsi à un procès devant jury, et en outre, renoncez expressément au droit d'interposer toute défense fondée sur tout délai de prescription ou toute réclamation de laches et toute compensation, demande reconventionnelle ou demande reconventionnelle de quelque nature ou description que ce soit. Le garant garantit inconditionnellement le paiement au prêteur de tous les montants dus en vertu du billet. Cette garantie reste en vigueur jusqu'à ce que le billet soit payé en totalité. Le garant doit payer tous les montants dus en vertu du billet lorsque le prêteur fait une demande écrite au garant. Le prêteur n'est pas tenu de demander le paiement d'une autre source avant d'exiger le paiement du garant.

14. **DROITS, AVIS ET DÉFENSES AUXQUELS LE GARANT RENONCE :** Dans la mesure permise par la loi,

    A. Le garant renonce à tous les droits de :

        1) Exiger une présentation, une protestation ou une demande à l'emprunteur ;

        2) Racheter toute garantie avant ou après que le prêteur en dispose ;

        3) Faire annoncer toute disposition de la garantie ; et

        4) Exiger une évaluation de la garantie avant ou après que le prêteur en dispose.

    B. Le garant renonce à tout avis de :

        1) Tout défaut en vertu de la Note ;

        2) Présentation, déshonneur, protestation ou demande ;

        3) Exécution de la Note ;

        4) Toute action ou inaction sur le billet ou la garantie, telle que les débours, le paiement, le non-paiement, l'accélération, l'intention d'accélérer, la cession, l'activité de recouvrement et l'engagement de frais d'exécution ;

        5) Tout changement dans la situation financière ou les opérations commerciales de l'Emprunteur ou de tout garant ;

        6) Toute modification des conditions du billet ou d'autres documents de prêt, à l'exception de l'augmentation des montants dus en vertu du billet ; et

        7) Le moment ou le lieu de toute vente ou autre disposition de la garantie.

    C. Le garant renonce aux défenses fondées sur toute réclamation selon laquelle :

        1) Le prêteur n'a pas obtenu de garantie ;

        2) Le prêteur n'a pas obtenu, perfectionné ou maintenu une sûreté sur un bien offert ou pris en garantie ;

        3) Le prêteur ou d'autres personnes ont mal évalué ou inspecté la garantie ;

        4) La valeur de la garantie a changé ou a été négligée, perdue, détruite ou sous-assurée ;

        5) Le prêteur a déprécié la garantie ;

        6) le prêteur n'a disposé d'aucune des garanties ;

        7) Le prêteur n'a pas effectué de vente commercialement raisonnable ;

8) le prêteur n'a pas obtenu la juste valeur marchande de la garantie ;

9) Le prêteur n'a pas fait ou rendu parfait une réclamation en cas de décès ou d'invalidité de l'emprunteur ou de tout garant du billet :

10) La situation financière de l'emprunteur ou de tout garant a été surévaluée ou a changé défavorablement ;

11) Le prêteur a commis des erreurs ou des omissions dans les documents de prêt ou dans l'administration du prêt ;

12) Le prêteur n'a pas demandé de paiement à l'emprunteur, à d'autres garants ou à une garantie avant d'exiger le paiement du garant :

13) Le prêteur a porté atteinte aux droits de cautionnement du garant ;

14) Le prêteur a modifié les modalités du billet, sauf pour augmenter les montants dus en vertu du billet. Si le prêteur modifie le billet pour augmenter les montants dus en vertu du billet sans le consentement du garant, le garant ne sera pas responsable des montants majorés et des intérêts et frais connexes, mais demeure responsable de tous les autres montants :

15) L'emprunteur a évité toute responsabilité sur le billet ; ou

16) Le prêteur a pris une mesure permise en vertu du billet, de la présente garantie ou d'autres documents de prêt.

15. **Aucune renonciation par le prêteur.** Les droits et recours du prêteur aux présentes sont cumulatifs et non exclusifs des droits ou recours prévus par la loi et peuvent être exercés individuellement ou simultanément. Le fait que le prêteur n'exerce pas l'un de ses droits ou recours en vertu du présent billet à ordre ne constitue pas une renonciation à ce droit ou recours ou n'empêche le prêteur d'exercer ce droit ou recours à une date ultérieure. Le prêteur ne peut renoncer à un droit ou à un recours en vertu des présentes que par écrit. La renonciation par le prêteur à tout droit ou recours en vertu des modalités du présent billet, à une occasion donnée, ne doit pas être interprétée comme un obstacle à l'exercice d'un droit, d'un pouvoir, d'un privilège ou d'un recours que le détenteur aurait autrement eu à une autre occasion.

16. **Modification.** Toute modification ou amendement du présent billet à ordre doit être faite par écrit et signée par l'emprunteur et le prêteur.

17. **Droit applicable.** Le présent billet à ordre est régi par les lois de l'État de New York, sans donner effet aux dispositions relatives au choix de la loi applicable indiquant les lois d'un autre État. Tout litige impliquant ou découlant de la présente Note ne sera porté que devant le tribunal d'État ou fédéral situé à New York, New York. L'intention des parties est que le taux d'intérêt prévu aux présentes et tous les autres frais facturés à l'emprunteur soient légaux. Isi, pour quelque raison que ce soit, le paiement d'une partie des intérêts, frais ou redevances exigés par la présente note dépasserait la limite autorisée par la loi applicable, l'obligation de payer des intérêts ou des frais sera automatiquement réduite à cette limite et, si des montants dépassant cette limite ont été payés, ces montants seront appliqués au principal impayé ou remboursés de sorte qu'en aucun cas les intérêts ou les frais ne pourront être remboursés. Les frais exigés en vertu des présentes dépassent le tarif maximum autorisé par la loi. Toute disposition des présentes qui peut s'avérer inapplicable en vertu d'une loi n'affectera pas la validité de toute autre disposition des présentes.

18. **Observations non originales.** L'emprunteur, le garant et le prêteur conviennent par la présente que les signatures électroniques/fac-similées sur ce billet peuvent être considérées comme si elles étaient signées à l'encre humide. Les emprunteurs et le garant renoncent par la présente à toute défense ou argument selon lequel le prêteur n'a pas soumis une note « originale » signée à l'encre humide.

**EN FOI DE QUOI**, les Emprunteurs et le Garant ont dûment signé le présent billet à ordre au jour et l'année indiqués ci-dessus.

**GARANT:**

**EMPRUNTEUR**

BAT Inc a/k/a B.A.T. Inc.

Par:_____
Nom : Tony M DIAB

Par:_____
Nom : Tony M Diab
Titre : Officier

SSN:

**GARANT:**

**EMPRUNTEUR**

Le groupe de pratique Litige PC

Par:_____
Nom : Daniel March

Par:_____
Nom : Daniel March
Titre : Officier

Numéro de sécurité sociale : ▮▮▮ 9617

ÉTAT DU
COMTÉ DE

Le ____ février 2023, devant moi, le soussigné, notaire public dans et pour ledit État, a comparu personnellement Tony M Diab que je connais personnellement ou qui m'a prouvé sur la base d'une preuve satisfaisante qu'il était la personne dont le nom est souscrit à l'instrument ci-dessous et je reconnais qu'il l'a exécuté en sa qualité, et que, par sa signature sur l'acte, le particulier, ou la personne au nom de laquelle il a agi, a signé l'acte.

Notaire

ÉTAT DU
COMTÉ DE

Le ____ février 2023, devant moi, le soussigné, notaire public dans et pour ledit État, a comparu personnellement Daniel March que je connais personnellement ou qui m'a prouvé sur la base d'une preuve satisfaisante qu'il était la personne dont le nom est souscrit à l'instrument ci-dessous et je reconnais qu'il l'a exécuté en sa qualité, et que, par sa signature sur l'acte, le particulier, ou la personne au nom de laquelle il a agi, a signé l'acte.

Notaire

## Annexe A

Débours du capital

1.  À l'intention du groupe de pratique en litige PC, le montant de 1 500 000,00 $ représentant à titre de financement du prêt.

    Le groupe de pratique Litige PC

    17542 E 17e rue, bureau 100

    Tustin, Californie 92780

    Itinéraire : ▮▮▮▮ 9593

    Compte : ▮▮▮▮ 6512

M<sup>e</sup> HUISSIER
17, bd Albert 1<sup>er</sup>
MONACO ☎ +377 97 97 09 09

**RECONNAISSANCE**

Un notaire ou un autre fonctionnaire qui remplit ce
certificat ne vérifie que l'identité de la personne qui a
signé le document auquel ce certificat est joint, et non
la véracité, l'exactitude ou la validité de ce document.

État de Californie
Comté d'Orange

Sur *7 février 2023* devant moi, _Olga Lucia Esquivel, notaire_
                                    (insérer le nom et le titre de l'agent)

A comparu personnellement *Daniel S. March*, qui m'a prouvé, sur la base de preuves satisfaisantes, qu'il était la ou les
personnes dont le(s) nom(s) est/sont souscrit(s) à l'instrument ci-joint et m'a reconnu qu'il/elle/elles l'ont signé en son/ses
qualité(s) autorisée(s), et que par son/ses signature(s) sur l'acte, la (les) personne(s), ou l'entité pour le compte de laquelle
la ou les personnes ont agi, exécuté. l'Instrument.

Je certifie en vertu de la PEINE DE PARJURE en vertu des lois de l'État de Californie que le paragraphe précédent est vrai
et correct.

TÉMOIN ma main et mon sceau officiel.

Signature _____ **(sceau)**

**RECONNAISSANCE**

Un notaire ou un autre fonctionnaire qui remplit ce certificat ne vérifie que l'identité de la personne qui a signé le document auquel ce certificat est joint, et non la véracité, l'exactitude ou la validité de ce document.

État de Californie
Comté d' *Orange*

Sur *02/07/2023* devant moi, Vanessa Banken-Buchner
                    (insérer le nom et le titre de l'agent)

Comparution en personne *Tony Maurice Diab*, qui m'a prouvé, sur la base de preuves satisfaisantes, qu'il était la ou les personnes dont le(s) nom(s) est/sont abonné(s) à l'instrument ci-joint et m'a reconnu qu'il/elle/elles l'ont signé en sa (ses) capacité(s) autorisée(s), et que par son/ses signature(s) sur l'acte, la (les) personne(s), ou l'entité pour le compte de laquelle la ou les personnes ont agi, exécuté. l'Instrument.

Je certifie en vertu de la PEINE DE PARJURE en vertu des lois de l'État de Californie que le paragraphe précédent est vrai et correct.

TÉMOIN ma main et mon sceau officiel.

Signature _____ **(sceau)**



# ANNEXE 4

## CONTRAT DE SÛRETÉ

LE CONTRAT DE SÛRETÉ TH1S (le « Contrat de sûreté ») est conclu en date du 7 février 2023 par et entre BAT Inc a/k/a B.A.T. Inc. et The Litigation Practice Group PC, (collectivement « LPG » ou « Emprunteur » ou « Emprunteurs » qui peuvent être utilisés de manière interchangeable), et comme personnellement garanti par Daniel March (résidant au 20160 Nob Hill Drive, Yorba Linda, CA 92886) et Tony M Diab (une personne physique résidant en Californie), qui sont tous deux des agents et des dirigeants de LPG avec le pouvoir de les lier à la présente Note (« Garant » ou « Garants » qui peuvent être utilisés de manière interchangeable sans spécification et désigneront collectivement toute personne identifiée dans les présentes) (LPG, Emprunteur et Garant peuvent tous être utilisés de manière interchangeable tout au long de la présente Note) et MCA Fund ADV Inc, ayant un lieu d'affaires au 4714 16th Avenue,  Brooklyn NY et/ou à LDR International Ltd., une société à responsabilité limitée des Îles Vierges britanniques, dont le siège social est situé à Yamraj Building, Market Square, 3rd Floor, P.O. Box 3175, Road Town, Tortola VG l l 10, Îles Vierges britanniques (« Prêteur » ou « Prêteurs » qui peuvent être utilisés de manière interchangeable). ou l'un de leurs cessionnaires (collectivement les « Parties »),

ATTENDU QUE, l'Emprunteur a signé et remis au Prêteur un certain billet à ordre daté du 7 février 2023 (le « Billet »), en vertu duquel, entre autres, l'Emprunteur a promis de payer au Prêteur la somme principale d'un million cinq cent mille dollars (1 500 000,00 $) (le « Capital )) avec intérêts (selon le Billet) au plus tard le 6 mai 2023 (la « Date d'échéance »).

ATTENDU QUE, pour inciter le prêteur à conclure le billet, l'emprunteur a accepté d'accorder au prêteur une sûreté sur la garantie (telle que définie ci-après), à titre de garantie pour l'exécution intégrale et en temps opportun par l'emprunteur des obligations garanties (telles que définies ci-dessous) ; et

MAINTENANT, DONC, en considération des prémisses ci-dessus et d'autres considérations bonnes et précieuses, dont la réception et la suffisance sont reconnues par les présentes. Les parties aux présentes conviennent de ce qui suit :

1. Afin d'assurer l'exécution intégrale et en temps opportun de toutes les obligations de l'emprunteur en vertu du billet, y compris, sans s'y limiter, le paiement de tous les principaux droits, intérêts et autres montants dus par l'emprunteur au prêteur en vertu du billet (collectivement, les « obligations garanties »). l'emprunteur accorde et transfère par la présente au prêteur une sûreté et un privilège sur les garanties suivantes :  tel que ce terme est utilisé à l'article 9 du Code de commerce uniforme (le « UCC ») : autres biens corporels et incorporels, actifs et droits de l'emprunteur actuellement possédés ou acquis par la suite, y compris, sans s'y limiter, tous les biens immobiliers, les intérêts immobiliers, les participations dans toute société/société, qu'elle soit nommée ou non dans les présentes, les comptes clients, les bénéfices, les revenus, la numéraire, les remboursements d'impôts, prêts, financements bancaires, installations, baux, véhicules, licences, équipement, contrats, stocks, matières premières, matériel de bureau, matériel et logiciels informatiques, propriété intellectuelle, réclamations, causes d'action, espèces, comptes bancaires, comptes clients, stocks, polices d'assurance. produits d'assurance et produits y afférents, livres et registres, listes de clients, dossiers de crédit, fichiers informatiques, programmes, impressions et autres documents informatiques et dossiers s'y rapportant,  les marchandises qui peuvent être décrites plus en détail dans les pièces jointes, le cas échéant, et tous les produits de la vente et de la production de toutes les sûretés couvertes par le présent contrat de sûreté, qu'elles aient été achetées ou non avec le produit du prêt, ainsi que toutes les substitutions, remplacements et acquisitions de ceux-ci, y compris, mais sans s'y limiter, tout bien immobilier appartenant à l'une des sociétés mentionnées ou non ou le revenu provenant de tout bien immobilier appartenant à l'une des sociétés mentionnées aux présentes,  où qu'ils se trouvent, ainsi que le compte réel, les revenus/frais anticipés générés par ceux-ci, à partir de tous les comptes de consommateurs des Emprunteurs (et de leurs sociétés affiliées et autres entités sous

leur contrôle) qui sont débités/traités par l'Emprunteur que l'Emprunteur met en gage à titre de garantie et sous réserve d'un état de financement UCC (le « Garantie »).

2. Séparément, et en aucun cas limité, l'emprunteur déclare et accepte qu'il fournira et accordera en permanence au prêteur un accès en temps réel et continu à son logiciel de gestion de la relation client (« CRM »), étant déclaré que ce même est actuellement connu sous le nom de « Debt Pay Pro ». Si l'emprunteur change le logiciel CRM qu'il utilise, il doit en informer le prêteur avant de changer et doit fournir au prêteur tous les identifiants/capacités de connexion nécessaires pour s'assurer que le prêteur est en mesure d'accéder, en temps réel et en continu, au logiciel CRM de l'emprunteur. L'Emprunteur déclare et accepte également que les instructions appropriées doivent être données au personnel administratif du logiciel CRM pour permettre au Prêteur d'avoir l'accès prévu et envisagé aux présentes. La violation de la présente disposition par l'emprunteur sera considérée comme un cas de défaut qui, s'il n'est pas corrigé après une période de correction d'un (l) jour, sera réputé un défaut du présent accord et une accélération de toute condition envisagée dans les présentes et dans tout autre document signé par l'emprunteur en faveur du prêteur (un billet, un contrat de prêt, etc.) et qui autorisera également le prêteur à exercer tous les recours à sa disposition en vertu du présent accord (et de tout autre document exécutée par l'Emprunteur en faveur du Prêteur (une note, un contrat de prêt, etc.) et/ou en droit.

3. Plus précisément, et en aucun cas de limitation, si l'Emprunteur manque à ses obligations sur le présent Accord, le Note ou tout autre document signé par l'Emprunteur en faveur du Prêteur, le Prêteur aura automatiquement le droit réalisé et acquis d'engager un processeur (tel qu'un processeur ACH) pour débiter/traiter/facturer automatiquement/électroniquement les comptes des clients/clients des Emprunteurs jusqu'à ce que le Principal, Les intérêts et tous les autres frais envisagés par le billet, le présent accord et tout autre document signé par l'emprunteur en faveur du prêteur sont payés en totalité au prêteur.

4. Par les présentes, l'emprunteur désigne le prêteur à titre de mandataire pour traiter les comptes ou les créances envisagés aux présentes, dans le contrat de sûreté ou dans le billet, ou pour protéger autrement l'intérêt du prêteur dans le principal.

5. Jusqu'à ce que le prêteur reçoive la totalité de l'argent envisagé dans le billet, l'emprunteur accepte, déclare, met en gage et promet qu'il ne conclura pas d'accord similaire avec quiconque d'autre, régissant ou lié aux comptes et/ou aux clients de l'emprunteur, et qu'il ne mettra pas en gage, grevera, transférera, vendra, cédera ou interférera de quelque manière que ce soit avec la capacité du prêteur à garantir le remboursement de son capital. L'emprunteur s'engage également, promet et déclare qu'il ne donnera pas, directement ou indirectement, d'instructions ou de guides à l'un de ses clients/comptes/marchands/vendeurs/clients pour payer une autre entité pour les paiements envisagés dans les présentes qui sont et devraient être adressés au prêteur.

6. Jusqu'à ce que le prêteur reçoive la totalité de l'argent envisagé dans le billet, le principal est réputé constituer un privilège sur tous les actifs, comptes, créances, intérêts, etc., de l'emprunteur, qu'ils soient importants, acquis, réalisés ou non.

7. Dégagement de toute responsabilité et indemnisation. L'Emprunteur déclare qu'il se conforme à toutes les lois applicables et qu'il a le pouvoir et l'autorité de conclure le présent Accord et de s'engager dans les actions envisagées dans les présentes. Par la présente, l'Emprunteur indemnise et dégage le Prêteur, ainsi que ses agents, membres et affiliés, de toute réclamation, action, poursuite, procédure, jugement, dommage, responsabilité, coût et dépense, y compris les

honoraires d'avocat découlant directement ou indirectement d'une contestation ou d'une autre violation du présent Accord, autre que la propre négligence du Prêteur.

8. L'Emprunteur autorise par la présente le Prêteur à mettre en gage, prêter ou utiliser la Garantie d'une manière qui porte atteinte aux droits de l'Emprunteur de la racheter. Par les présentes, l'Emprunteur autorise le Prêteur à déposer des relevés de financement UCC contre l'Emprunteur ou tout actif de l'Emprunteur afin de garantir ces obligations dans tout État des États-Unis, contre toute entité ou personne identifiée dans les présentes, ou contre toute entité ou personne découverte par la suite par le Prêteur dans laquelle l'Emprunteur a un intérêt, au besoin, afin de garantir le principal.

9. La seule obligation du prêteur en ce qui concerne la garde, la garde et la préservation physique des biens grevés en sa possession, en vertu de l'UCC ou autrement, est de les traiter de la même manière que le prêteur traite des biens similaires pour son propre compte. Ni le prêteur, ni aucun de ses administrateurs, dirigeants, employés ou agents, ne peuvent être tenus responsables de l'omission d'exiger, de percevoir ou de réaliser la totalité ou une partie de la garantie ou de tout retard à le faire.

10. L'emprunteur fait les déclarations suivantes : (a) l'emprunteur a le droit plein et inconditionnel et l'autorité corporative d'accorder au prêteur cette sûreté et tout privilège accordé aux présentes ; (b) la garantie est la propriété légale de l'emprunteur et est libre et quitte de tous privilèges, sûretés, réclamations, charges, charges, taxes et évaluations, sauf indication contraire expresse dans le présent contrat de sûreté ou enregistrement public ; (c) à l'exception de tout état de financement déposé en faveur du prêteur, ou de tout autre accord de financement hypothécaire qui est déposé auprès du greffier du comté pour la propriété spécifique, aucun état de financement couvrant l'une des garanties n'est déposé dans un bureau public ; (d) aucune modalité ou condition du présent contrat de sûreté n'enfreint les dispositions de tout autre accord auquel l'Emprunteur est partie ; (e) tous les documents qui composent la Garantie sont valides, exécutoires et exécutoires conformément à leurs conditions respectives ; (f) il n'y a aucune action ou procédure en cours, ou à la connaissance de l'Emprunteur, qui pourrait raisonnablement être susceptible d'affecter de quelque manière que ce soit (i) les droits du Prêteur en vertu du présent contrat de sûreté, (ii) la capacité de l'Emprunteur à s'acquitter de ses obligations en vertu des présentes, (iii) le titre de propriété de la Garantie, ou (iv) la validité ou la priorité de la sûreté et du privilège sur la Garantie créée en vertu des présentes.

11. L'emprunteur déclare qu'il a tous les droits, pouvoirs et autorités requis pour signer, livrer et exécuter le présent accord, pour réaliser les transactions envisagées par les présentes et par celui-ci, et pour exécuter ses obligations en vertu des présentes et en vertu de celles-ci. La signature et la livraison du présent Accord et de tout document connexe nonobstant la réalisation des transactions envisagées par les présentes et par celles-ci. ont été dûment approuvés par toutes les parties, et aucune autre action n'est requise pour autoriser le présent Accord, tout Accord connexe auquel quiconque peut être partie, ou les transactions envisagées par les présentes et par conséquent. Le présent Accord. et chacun des Accords connexes. a été dûment et valablement signé et remis par les parties qui l'ont signé et, en supposant l'autorisation, l'exécution et la livraison appropriées et valides du présent Accord par les autres Parties, et de chacun de ces Accords par les autres parties à celui-ci, constitue, ou constituera. une obligation valide et contraignante de la partie désignée à cet égard, exécutoire à son encontre conformément à ses conditions générales, sauf dans la mesure où l'exécution peut être limitée par la faillite, l'insolvabilité, la réorganisation, le moratoire et d'autres lois applicables affectant l'application des droits des créanciers en général et sauf dans la mesure où la disponibilité de recours équitables peut être limitée par la loi applicable.

12. Aucun consentement d'une partie à un contrat, accord, instrument, bail ou licence auquel l'une des parties aux présentes est partie ou auquel l'un de ses biens ou actifs est soumis n'est requis pour la signature, la livraison ou l'exécution par l'emprunteur de toute condition du présent accord. L'Emprunteur déclare qu'il n'est pas tenu de donner un avis,

Mᵉ CLAIRE NOTARI
HUISSIER
17, bd Albert 1er
MONACO ☎ +377 97 97 09 09

d'effectuer un dépôt auprès ou d'obtenir une autorisation, un consentement ou une approbation d'un organisme gouvernemental ou d'un tiers, y compris une partie à un contrat cédé, en ce qui concerne l'exécution, la livraison et l'exécution par les parties au présent Accord ou à tout autre accord auquel il est partie ou la réalisation des transactions envisagées par les présentes et par celles-ci.

13. L'emprunteur s'engage et convient de ce qui suit : (a) de payer et d'exécuter toutes les obligations garanties conformément aux modalités du billet et de défendre le titre de la garantie contre toutes les personnes et entités et contre toutes les réclamations et demandes quelles qu'elles soient : (b) à la demande du prêteur, pour fournir une assurance supplémentaire de titre, signer tout accord écrit ou accomplir tout autre acte nécessaire pour réaliser les objectifs et les dispositions du présent contrat de sûreté, signer tout instrument ou déclaration requis par la loi ou autrement afin de parfaire, maintenir ou résilier la sûreté du prêteur sur le bien grevé et payer tous les frais ou frais de dépôt s'y rapportant ; (c) de payer, à l'échéance, toutes les taxes, cotisations et droits de licence relatifs au Bienfait, qui, s'ils ne sont pas payés, peuvent donner lieu à un privilège, à une charge ou à une charge sur le Bienfait ; (d) de maintenir la garantie, aux frais de l'emprunteur, en bon état et en bon état et de ne pas faire une mauvaise utilisation, un abus, un gaspillage ou de laisser la garantie se détériorer, à l'exception de l'usure normale, et de la mettre à la disposition du prêteur pour inspection à tout moment raisonnable ; (e) de ne pas vendre, échanger, céder, prêter, livrer, hypothéquer ou disposer de toute autre manière des biens grevés pendant la durée de la présente convention de sûreté sans le consentement écrit préalable du prêteur ; (t) de ne pas accorder ou donner une sûreté ou un état de financement couvrant la garantie à quiconque autre que le prêteur ; (g) d'informer immédiatement le prêteur par écrit de tout événement qui, à tout moment, pourrait faire en sorte que les déclarations et garanties énoncées aux présentes ou dans le contrat de prêt cessent d'être vraies ou que le remboursement de celles-ci par le mandant ou le prêteur pourrait être compromis.

14. L'Emprunteur déclare qu'il n'y a aucune Action de quelque nature que ce soit en cours ou, à sa connaissance, menacée contre ou par l'Emprunteur : (a) relative ou affectant les comptes ou créances envisagés dans les présentes ou (b) qui conteste ou cherche à empêcher, interdire ou retarder de toute autre manière les transactions envisagées par le présent Accord. Il n'existe aucun événement survenu ou circonstance susceptible de donner lieu à une telle action ou de lui servir de fondement.

15. L'Emprunteur déclare qu'à sa connaissance, les comptes ou créances envisagés aux présentes ne feront l'objet d'aucun litige ou autre procédure judiciaire et qu'il ne permettra pas qu'ils fassent l'objet d'un autre Accord. d'un contrat de sûreté tel qu'un UCC, ni d'une réclamation de tiers sans le consentement écrit exprès du Prêteur.

16. Les éléments suivants constituent un défaut de la part de l'Emprunteur : (a) tout Cas de défaut en vertu du Note ; (b) le défaut de l'Emprunteur de se conformer ou d'exécuter une disposition du présent Contrat de sûreté ou du Note ou de tout autre accord entre l'Emprunteur et le Prêteur signé en relation avec le Note ; (c) toute déclaration ou garantie fausse ou trompeuse faite ou donnée par l'Emprunteur en relation avec le présent Contrat de sûreté ou toute information/document fourni par l'Emprunteur avant la signature du présent Contrat de sûreté ; (d) tout acte de l'emprunteur qui met en péril la perspective de l'exécution intégrale ou de la satisfaction des obligations garanties ou qui porte atteinte aux droits du prêteur sur la garantie.

17. En cas de défaut de l'emprunteur et au choix du prêteur, les obligations garanties garantis par la présente convention de sûreté deviennent immédiatement exigibles et payables en totalité sans préavis ni mise en demeure, et le prêteur jouit de tous les droits, recours et privilèges relatifs à la reprise, à la conservation et à la vente des biens grevés et à la disposition du produit qui sont accordés à un prêteur par les articles applicables de la CCU

en ce qui concerne « » en vigueur à la date du présent contrat de sûreté, ou tel qu'il peut être accordé au prêteur en vertu du billet ou de tout autre document signé en relation avec le billet.

18. Si l'emprunteur ne paie pas une partie du principal ou des intérêts y afférents à l'échéance, ou s'il est autrement en défaut de ses obligations en vertu du billet, le prêteur doit, en plus de tout autre droit qu'il peut avoir en vertu du présent contrat de sûreté, de l'UCC, du billet, et de tout autre document signé en rapport avec le billet, l'UCC (y compris le droit de déposer une UCC contre toute personne ou entité identifiée dans les présentes ou contre toute personne ou entité découverte ultérieurement qui se rapporte à l'Emprunteur et qui peut avoir une obligation envers le Prêteur à titre de garantie pour le Principal ou autrement liée aux présentes), et/ou en droit ou en équité, a le droit de : (a) affecter au paiement les fonds qu'elle a reçus conformément aux dispositions du présent Contrat de sûreté ou de la Note de tout montant dû au prêteur en vertu du billet de la manière qu'il juge appropriée à sa seule discrétion ; (b) pénétrer paisiblement dans les locaux de l'Emprunteur par ses propres moyens ou par voie judiciaire et prendre possession de la Garantie, et l'Emprunteur s'engage à ne pas résister ou interférer avec celle-ci ; (c) exiger de l'Emprunteur qu'il rassemble les Garanties et les mette à la disposition du Prêteur à un endroit qui sera désigné par le Prêteur et qui est raisonnablement pratique pour les deux parties (étant entendu que l'adresse du Prêteur indiquée ci-dessus est un endroit raisonnablement pratique pour un tel rassemblement) ; et (d) vendre, céder et livrer des sûretés lors d'une vente publique ou privée, au comptant, à crédit ou à terme, avec ou sans publicité de l'heure, du lieu ou des conditions de la vente et, à cet égard, pour accorder des options et utiliser les services d'un courtier, sauf que, si la vente est une vente privée, moyennant un préavis écrit de cinq (5) jours à l'emprunteur de la date, le moment et le lieu de toute vente et les conditions de la vente, dont l'avis que l'emprunteur convient être raisonnable, toutes les autres demandes, publicités et avis étant par les présentes abandonnés. Toute vente sera libre et dégagée de tout droit d'équité ou de rachat, auquel l'Emprunteur renonce et libère absolument et irrévocablement.

19. Lors de toute vente de garantie par le prêteur, le prêteur ou son délégué peut acheter la garantie. Le prêteur n'est pas tenu de procéder à la vente d'une garantie s'il décide de ne pas le faire, même si un avis de vente a pu être donné. Le prêteur peut, sans préavis ni publication, ajourner toute vente publique ou privée ou la faire ajourner de temps à autre et si cette vente est une vente privée par annonce à la date, heure et lieu fixés pour la vente, et cette vente peut, sans autre avis, être faite à la date, heure et lieu où elle a été ainsi ajournée. Si l'une ou l'autre des garanties est vendue par le prêteur à crédit ou pour une livraison future, le prêteur ne sera pas responsable de l'incapacité de l'acheteur à l'acheter ou à la payer et, dans le cas d'un tel échec, le prêteur peut revendre cette garantie. En aucun cas, l'emprunteur ne sera crédité d'une partie du produit de la vente d'une garantie tant que le paiement en espèces n'aura pas été reçu par le prêteur. Dans le cas d'une vente, le prêteur peut d'abord déduire tous les coûts et dépenses de collecte, de vente et de livraison de la garantie et tous les coûts et dépenses qui y sont accessoires, y compris, sans s'y limiter, les frais de poursuite, de recherche, de réception, de prise, de conservation et de stockage de la garantie, de publicité pour la vente de la garantie, les honoraires et débours raisonnables d'avocat, les commissions de courtage et les frais de transfert et taxes, et appliquera tout reliquat d'abord au paiement de toute avance consentie par le prêteur en vertu du billet, puis aux frais de retard, le cas échéant, puis au paiement des intérêts courus au titre du billet et enfin au paiement du principal impayé. Le solde, le cas échéant, restant après le paiement intégral du principal impayé doit être payé à l'emprunteur, dans la mesure permise par la loi, à moins qu'il n'y ait aucune autre réclamation dont le prêteur a reçu un avis. Toute vente effectuée selon les conditions précédentes ou par toute autre méthode de vente (si elle est menée conformément aux pratiques des banques disposant de garanties similaires) sera considérée comme commercialement raisonnable. L'emprunteur convient que le prêteur a le droit de continuer à conserver la garantie jusqu'à ce que le prêteur, selon son jugement raisonnable, estime qu'un prix avantageux peut être obtenu pour la garantie et, en l'absence de négligence grave, le prêteur ne sera pas responsable envers l'emprunteur de toute perte de valeur de la garantie en raison d'une telle rétention de la garantie par le prêteur. De plus, le prêteur peut choisir de conserver la garantie en règlement intégral du prêt, auquel cas un avis en sera donné à l'emprunteur, et si le prêteur reçoit une objection écrite de l'emprunteur dans les vingt et un (21) jours suivant la signification de l'avis, le prêteur commencera à disposer de la garantie

de la manière indiquée aux présentes ; à condition toutefois que. que si le produit net a recevoir d'une aliénation est insuffisant pour régler intégralement les montants dus en vertu des présentes ou du billet, le prêteur ne sera pas obligé d'aller de l'avant avec cette disposition proposée, et aura le droit de conserver la garantie en règlement intégral du billet malgré toute objection de l'emprunteur à une telle rétention.

20. En cas de défaut, les honoraires d'avocat du prêteur et les frais juridiques et autres pour la poursuite, la recherche, le dépôt, les poursuites contre, la réception, la prise, la conservation, l'entreposage, la publicité et la vente de la garantie ou le recouvrement du principal, seront à la charge de l'emprunteur et feront partie de la dette principale et seront réputés garantis en vertu des présentes et par la garantie jusqu'à ce qu'ils soient entièrement payés.

21. L'emprunteur demeure responsable de tout déficit résultant de la vente de la garantie et doit payer un tel déficit immédiatement sur demande.

22. Si l'emprunteur manque à l'exécution de l'une des dispositions du présent contrat de sûreté de la part de l'emprunteur. le prêteur peut l'exécuter pour le compte de l'emprunteur et toute somme dépensée à cette fin sera passible d'intérêts (au même taux que celui qui peut être dû en vertu du billet de temps à autre) à l'emprunteur et ajoutée à la dette garantie par les présentes.

23. En cas de défaut, le prêteur a le droit, mais non l'obligation, de saisir et d'exploiter le bien grevé et d'utiliser les bénéfices de l'opération comme il le juge bon à sa seule discrétion, dans la mesure où l'emprunteur reçoit un crédit pour le montant de ces bénéfices ainsi réalisés par le prêteur. En outre, l'Emprunteur désigne irrévocablement le Prêteur en tant que son mandataire, cette nomination étant assortie d'un intérêt, tant qu'une partie de la dette reste impayée, aux fins de signer et de remettre, au nom et pour le compte de l'Emprunteur, tous les documents, instruments, contrats, formulaires et écrits de quelque nature que ce soit, dont la signature est raisonnablement requise afin de fixer le calendrier, annoncer et réaliser une disposition commercialement raisonnable de la garantie à la suite d'un défaut de l'emprunteur en vertu des présentes, ou en vertu du billet ou de tout autre document signé en relation avec le billet, et d'accomplir tous les autres actes au nom de l'emprunteur et au nom de l'emprunteur que le prêteur peut raisonnablement juger nécessaires ou souhaitables dans le cadre d'une telle disposition de la garantie dans le cadre du respect de toutes les dispositions et exigences prévues par le CCU.

24. Le billet est un instrument distinct et peut être négocié par le prêteur sans libérer l'emprunteur ou la garantie, ou le co-fabricant. L'emprunteur consent à toute prolongation du délai de paiement. S'il y a plus d'un emprunteur ou cosignataire du présent contrat de sûreté ou des billets garantis par les présentes, l'obligation de tous est principale, conjointe et solidaire.

25. La renonciation ou l'acquiescement à un défaut de l'emprunteur, ou le défaut du prêteur d'insister pour que l'emprunteur s'exécute strictement de toute garantie ou accord dans le présent contrat de sûreté, ne constitue pas une renonciation à tout défaut ou défaut ultérieur ou autre.

26. L'UCC régira les droits, les obligations et les recours des parties et toute disposition des présentes déclarée invalide en vertu d'une Jaw n'invalidera aucune autre disposition du présent accord de sécurité.

27. Le prêteur peut céder ses droits sur le présent contrat de sûreté et sur les biens grevés, selon ce qu'il juge approprié, à sa seule discrétion. L'emprunteur ne peut céder ses obligations ou ses droits en vertu du présent contrat de sûreté sans le consentement écrit du prêteur.

28. Le prêteur est autorisé par les présentes à déposer les états de financement de l'UCC qui peuvent être nécessaires pour parfaire l'intérêt du prêteur dans la garantie. Nonobstant ce qui précède, le prêteur n'a aucune obligation de se conformer à l'enregistrement, au réenregistrement, au dépôt, au nouveau dépôt ou à d'autres exigences légales nécessaires pour établir ou maintenir la validité, la priorité ou l'applicabilité, ou les droits du prêteur sur le bien ou une partie de celui-ci.

29. Tous les avis doivent être donnés par écrit et sont réputés avoir été donnés en bonne et due forme : a) au moment de la livraison, s'ils sont remis en personne ; (b) un (1) jour ouvrable (défini ci-dessous) après avoir été déposé pour une livraison le lendemain auprès d'un service de messagerie de nuit réputé ou s'il est envoyé par e-mail ; ou (c) trois (3) jours ouvrables après avoir été déposé dans un bureau de poste ou un dépôt de courrier régulièrement tenu par le service postal des États-Unis et envoyé par courrier certifié, port payé, accusé de réception.

**30. LE PRÉSENT CONTRAT DE SÛRETÉ EST DÉLIVRÉ DANS L'ÉTAT DE NEW YORK ET DOIT ÊTRE INTERPRÉTÉ ET EXÉCUTÉ CONFORMÉMENT AUX LOIS DE LA RÉPUBLIQUE DE NEW YORK, SANS AUCUNE DISPOSITION EN MATIÈRE DE CONFLIT DE LOIS. TOUTE ACTION OU POURSUITE D'UNE RÉCLAMATION OU D'UN RECOURS JURIDIQUE DANS UN FORUM JURIDIQUE EN RELATION AVEC LE PRÉSENT DOCUMENT, DÉCOULANT DE CE DOCUMENT, OU LIÉE À TOUTE OBLIGATION LIÉE AUX PRÉSENTES, DOIT ÊTRE INTENTÉE DEVANT LE TRIBUNAL DE L'ÉTAT OU DE LA FÉDÉRATION SIÉGEANT DANS LE COMTÉ DE NEW YORK, NEW YORK, QUI APPLIQUERA LA LOI DE NEW YORK À L'AFFAIRE SANS QU'IL Y AIT DE « CONFLIT DE LOIS, » ANALYSE.**

31. Dans le cas où un mot, une phrase, un paragraphe ou un article du présent contrat de sûreté serait jugé nul ou annulable, le reste du présent contrat de sûreté sera néanmoins légal et exécutoire avec la même force et le même effet que si les parties nulles ou annulables avaient été supprimées.

32. Chaque partie doit faire et exécuter, ou faire faire et exécuter, tous les autres actes et choses, et doit signer et remettre tous les autres accords, certificats, instruments et documents, que l'autre partie peut raisonnablement demander afin de réaliser l'intention et d'accomplir les objectifs du présent Accord et la réalisation des transactions envisagées par les présentes.

33. Le présent écrit et les documents signés dans le cadre du prêt contiennent l'intégralité de l'accord des parties en ce qui concerne le matériel en question et aucune modification, altération ou renonciation à tout ou partie de la totalité ou d'une partie ne sera valide à moins d'être faite par écrit et signée par toutes les parties aux présentes. Chaque partie déploiera tous les efforts raisonnables pour prendre ou faire prendre toutes les mesures, et pour faire ou faire faire, et pour aider et coopérer avec les autres parties dans l'accomplissement de tout ce qui est nécessaire, approprié ou souhaitable pour réaliser l'intention et les objectifs du présent accord.

34. Le présent contrat constitutif de sûreté peut être signé en deux ou plusieurs exemplaires, dont chacun est un original, mais qui, ensemble, constituent un seul et même instrument. Les signatures électroniques sont considérées comme des originaux et comme si elles étaient signées à l'encre humide. L'emprunteur s'engage à ne pas soulever de réclamation ou de défense quant à l'absence d'un original.

35. Le présent contrat ne peut être résilié par l'emprunteur tant que le prêteur n'a pas reçu tout l'argent, les intérêts, etc. envisagés dans le billet.



36. **Confidentialité.** Toutes les parties au présent Accord conviennent et reconnaissent que tous les noms, conditions, déclarations, accords, engagements, etc. énoncés dans le présent Accord sont confidentiels (ensemble, les « Informations confidentielles »). Toutes les parties garderont en tout temps les informations confidentielles confidentielles. Aucune partie aux présentes, sans le consentement écrit préalable d'un agent autorisé de toutes les parties au présent Accord, (a) ne copiera, n'utilisera ou ne divulguera des Informations confidentielles, (b) ne livrera ou ne divulguera des Informations confidentielles à toute personne ou entité en dehors du présent Accord, ou (c) n'utilisera les Informations confidentielles pour son propre usage ou ne les utilisera au détriment des autres parties au présent Accord. Nonobstant ce qui précède, les parties aux présentes peuvent, sans consentement, utiliser les renseignements confidentiels et les divulguer et les remettre à leurs employés ou agents, le cas échéant, qui ont besoin de les connaître, à condition que ces employés ou agents aient conclu des ententes écrites approuvées par écrit par le prêteur et contenant des dispositions au moins aussi restrictives que ces dispositions. L'Emprunteur convient et comprend que la divulgation des Renseignements confidentiels en violation du présent Accord peut causer au Prêteur un préjudice irréparable et que toute violation ou menace de violation par l'Emprunteur donne au Prêteur le droit de demander une injonction, en plus de tout autre recours juridique ou équitable à sa disposition, devant tout tribunal compétent.

37. **Successeurs et ayants droit.** Le présent Accord lie les Parties nommées aux présentes et à leurs successeurs et ayants droit autorisés respectifs (seul le Prêteur peut céder ses droits en vertu des présentes, bien que l'Emprunteur puisse céder ses droits et obligations en vertu des présentes avec le consentement écrit du Prêteur). Ni le présent Accord ni les droits ou obligations d'une Partie en vertu des présentes ne peuvent être cédés par une Partie (sauf à un Affilié de cette Partie) sans le consentement écrit préalable des autres Parties. Le présent Accord liera tout cessionnaire autorisé d'une Patty. Aucune cession n'aura pour effet de libérer l'une des Parties au présent Accord de l'une quelconque de ses obligations en vertu des présentes.

38. **Dépenses et honoraires.** Sauf disposition contraire des présentes, tous les frais et dépenses encourus en relation avec les transactions envisagées par le présent Accord, y compris tous les frais juridiques, comptables, de conseil financier, de consultation et tous les autres frais et dépenses de Tiers encourus par une Partie dans le cadre de la négociation et de l'exécution des termes et conditions du présent Accord et des transactions envisagées par les présentes, est l'obligation de l'emprunteur.

39. **Exécution en nature.** Les Parties conviennent qu'un dommage irréparable se produirait si l'une des dispositions du présent Accord n'était pas exécutée conformément aux termes des présentes et que les Parties auront droit à l'exécution spécifique des termes des présentes, en plus de tout autre recours auquel elles ont droit en vertu des présentes, en droit ou en équité.

40. **LES PARTIES AUX PRÉSENTES CONVIENNENT QU'ELLES RENONCERONT À UN PROCÈS DEVANT JURY DANS TOUTE ACTION OU PROCÉDURE INTENTÉE PAR L'UNE DES PARTIES CONTRE L'AUTRE DÉCOULANT DU PRÉSENT CONTRAT DE SÛRETÉ OU S'Y RAPPORTANT DE QUELQUE MANIÈRE QUE CE SOIT.**

EN FOI DE QUOI, les soussignés ont signé et remis la présente convention de sûreté au jour et au millésime indiqués ci-dessus.

**GARANT:**                          **EMPRUNTEUR**

BAT Inc a/k/a B.A.T. Inc.

_____      _____

Par:_____
Nom : Tony M DIAB

Par:_____
Nom : Tony M Diab
Titre : Officier

**GARANT:**

**EMPRUNTEUR**

Le groupe de pratique Litige PC

Par:_____
Nom : Daniel March

Par:_____
Nom : Daniel March
Titre : Officier

| **PRÊTEUR:** | **PRÊTEUR:** |
|---|---|
| Fonds MCA ADV Inc. | LDR International Ltd., |
| _____ | _____ |
| Par:_____ | Par:_____ |
| Titre : Officier | Titre : Officier |

**RECONNAISSANCE**

| Un notaire ou un autre fonctionnaire qui remplit ce certificat ne vérifie que l'identité de la personne qui a signé le document auquel ce certificat est joint, et non la véracité, l'exactitude ou la validité de ce document. |
| --- |

État de Californie
Comté d'Orange

Sur *7 février 2023* devant moi,   Olga Lucia Esquivel, notaire
                                    (insérer le nom et le titre de l'agent)

A comparu personnellement *Daniel S. March,* qui m'a prouvé, sur la base de preuves satisfaisantes, qu'il était la ou les personnes dont le(s) nom(s) est/sont souscrit(s) à l'instrument ci-joint et m'a reconnu qu'il/elle/elles l'ont signé en son/ses qualité(s) autorisée(s), et que par son/ses signature(s) sur l'acte, la (les) personne(s),  ou l'entité pour le compte de laquelle la ou les personnes ont agi, exécuté. l'Instrument.

Je certifie en vertu de la PEINE DE PARJURE en vertu des lois de l'État de Californie que le paragraphe précédent est vrai et correct.

TÉMOIN ma main et mon sceau officiel.

Signature _____ **(sceau)**

## RECONNAISSANCE

Un notaire ou un autre fonctionnaire qui remplit ce certificat ne vérifie que l'identité de la personne qui a signé le document auquel ce certificat est joint, et non la véracité, l'exactitude ou la validité de ce document.

État de Californie
Comté d' *Orange*

Sur *02/07/2023*  devant moi,  <u>Vanessa Banken-Buchner</u>
                               (insérer le nom et le titre de l'agent)

Comparution en personne *Tony Maurice Diab*, qui m'a prouvé, sur la base de preuves satisfaisantes, qu'il était la ou les personnes dont le(s) nom(s) est/sont abonné(s) à l'instrument ci-joint et m'a reconnu qu'il/elle/elles l'ont signé en sa (ses) capacité(s) autorisée(s), et que par son/ses signature(s) sur l'acte, la (les) personne(s),  ou l'entité pour le compte de laquelle la ou les personnes ont agi, exécuté. l'Instrument.

Je certifie en vertu de la PEINE DE PARJURE en vertu des lois de l'État de Californie que le paragraphe précédent est vrai et correct.

TÉMOIN ma main et mon sceau officiel.

Signature _____ **(sceau)**

# ANNEXE 5

**GROBSTEIN TEEPLE**

Laurent Reiss

Objet : The Litigation Practice Group PC
Récapitulatif des débours
Activité post-pétition (20/03/2023 – aujourd'hui)

| Nom de la banque | Nom du compte | Numéro de compte | Date de la déclaration | Transaction Date | Numéro de contrôle | Débit/Charge | Mémo |
|---|---|---|---|---|---|---|---|
| Banque d'Amérique | Prime Logix LLC | 9201 | 31/03/2023 | 31/03/2023 | | 105,000.00 | TYPE DE FIL : INTL DATE DE SORTIE :230331 HEURE :1 616 ET TRN :202303310071 1963 SERVICE REF :750657 BNF : LAURENT REISS ID :CH020851 50006666 BNF BK : BANK JULIUS BAER & CO L ID :006550073440 PMT DET :6MM3MVZ S7 POP Loan Payment |
| Banque d'Amérique | Prime Logix LLC | 9201 | 30/04/2023 | 06/04/2023 | | 105,000.00 | TYPE DE FIL : INTL DATE DE SORTIE :230406 HEURE :091 0 ET TRN : 2023040600267985 SERVICE REF :1 98400 BNF : LAURENT REISS ID : CH020851 50006666 BNF BKBANK JULIUS BAER & Co L 1D006550073440 PMT DET :4329749 76 PAIEMENT DE PRÊT POP AUTRE/PAIEMENT DE PRÊT |
| Banque d'Amérique | Prime Logix LLC | 9201 | 30/04/2023 | 25/04/2023 | | 50,000.00 | TYPE DE FIL : INTL OUT DATE230425 TIME1 704 ET TRN20230425004781 19 SERVICE REFQ73702 BNF : LAURENT REISS ID :CH020851 50006666 BNF BKBANK JULIUS BAER & CO L 1D006550073440 PMT DET : 4354749 36 POP SERVICES |
| Banque d'Amérique | Prime Logix LLC | 9201 | 30/04/2023 | 26/04/2023 | | 100,000.00 | TYPE DE FIL : INTL DATE DE SORTIE 230426 HEURE : 1 628 ET TRN :202304260048083 6 SERVICE REF357121 BNF : laurent reiss ID : CH02085150006666 BNF BKBANK JULIUS BAER & CO L 1D006550073440 PMT DET :4356383 58 POP SERVICES |

| Banque d'Amérique | Prime Logix LLC | 9201 | 30/04/2023 | 28/04/2023 | | 100,000.00 | DATE DE SORTIE 230428 HEURE 1 311 ET TRN : 2023042800529701 SERVICE RÉF : 427036 BNF : LAURENT REISS ID : CH020851 50006666 BNF BKBANK JULIUS BAER & CO L 1D006550073440 PMT DET : 4360210 86 POP SERVICES |
| Banque d'Amérique | Prime Logix LLC | 9201 | 31/05/2023 | 03/05/2023 | | 250,000.00 | TYPE DE FIL. INTL OUT DATE.230503 TIME1 708 ET TRN2023050300481 807 SERVICE REF : 770508 BNF : LAURENT REISS ID : CH020851 50006666 BNF BKBANK JULIUS BAER & CO L 1D006550073440 PMT DET.54GW97H DQ POP remboursement de prêt |
| Banque d'Amérique | Prime Logix LLC | 9201 | 31/05/2023 | 08/05/2023 | | 1,000,000.00 | TYPE DE FIL : INTL OUT DATE230508 HEURE :1 415 Er TRN : 2O23050800424500 SERVICE REF :913176 BNF : LAURENT REISS ID : CH02085150006666 BNF BKBANK JULIUS BAER & CO L 1DO06550073440 PMT DETCBJHZ5TYT POP remboursement du prêt |
| | | | | | | 1,710,000.00 | |

# ANNEXE 6



**Votre compte courant**

## BANQUE D'AMÉRIQUE

PRIME LOGIX LLC / Compte # ░░░░ 9201 / Du 1er mars 2023 au 31 mars 2023

### Retraits et autres débits − suite

| Date | Description | Quantité |
|------|-------------|----------|
| 31 03 23 | TYPE DE PMT: INTL PYMT DE SORTIE. SM33 HEURE 14:18 ECT TRN: 20230431007L1903 SERVICE RTP : 78a652 BNF: UAL/BENT REFSS ID: CH02083F5000a6b6 BNF BK: BANK THGLS BAER & CO LTD ID: 00655003444 PMT DET: 6MM3MV2 87/8491 Loan Payment | 40$1,000.00 |

Compte de carte # XXXX XXXX XXXX 7115

Sous-total pour le compte de carte # XXXX XXXX XXXX 7115

Total des retraits et autres débits

## Contrôles

| Date | Vérifier# | Quantité | | Date | Vérifier # | Quantité |
|------|-----------|----------|---|------|-----------|----------|
| | | | | | | |
| | | | | | | |
| | | | | **Total des contrôles** = total de vérifications | | 3 |

*Il y a un gab dans les numéros de contrôle séquentiels

**Votre compte courant**

## BANQUE D'AMÉRIQUE

PRIME LOGIX LLC / Compte # ███████ 9201 / Du 1er avril 2023 au 30 avril 2023

### Retraits et autres débits – suite

| Date | Description | Quantité |
|------|-------------|----------|
| ██████ | ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ | ███████████ |



## BANQUE D'AMÉRIQUE

PRIME LOGIX LLC / Compte # ▮▮▮▮ 9201 / Du 1er avril 2023 au 30 avril 2023

### Retraits et autres débits – suite

| Date | Description | Quantité |
|------|-------------|----------|
| 14.04.23 | TYPE DE FIL : INTL OUT DATE 230423 TIME 1704 ET TRN 2023104439064781 T4 SERVICE REF 0231U2 BNF : LAURENT/REISS ID : CH02 0851 30000600 BNF BKB ANK JULIUS BAER & CO LT ID 00055007344U PMT DET 4354734 3e PUP SERVICE/IS | 507,000.00 |
| 14.04.23 | TYPE DE FIL : INTL DATE DE SORTIE 230423 HEURE 11128 ET TRN 2023042n0n480DR SERVICE REF 337121 BNF 140 courant ID : CH02 0851 30000600 BNF BKBANK JULIUS BAER & CO LT ID 00055007344U PMT DET 4358480 54 PUP SERVICES | 1160,000.00 |
| 14.04.23 | DATE DE SORTIE 230423 HEURE 1511 ET TRN 2023042000520701 SERVICE REF 433530 BNF LAURENT/REISS ID CH02 0851 30000600 BNF BKBANK JULIUS BAER & CO LT ID 00055007344U PMT DET 4360217 86 PUP SERVICE/IS | 110,000.00 |

**Votre compte courant**

## BANQUE D'AMÉRIQUE

PRIME LOGIX LLC / Compte # ████████ 9201 / Du 1er mai 2023 au 31 mai 2023

### Dépôts et autres crédits - suite

| Date | Description | Quantité |
|------|-------------|----------|

Total des dépôts et autres crédits

### Retraits et autres débits – suite

| Date | Description | Quantité |
|------|-------------|----------|

PRIME LOGIX LLC / Compte # ▨ 9201 / Du 1er mai 2023 au 31 mai 2023

**Retraits et autres débits – suite**

| Date | Description | Quantité |
|------|-------------|----------|

# Feuille de couverture de la procédure contradictoire



| PAGE COUVERTURE DE LA PROCÉDURE CONTRADICTOIRE<br>(Instructions sur le revers) | NUMÉRO DE LA PROCÉDURE CONTRADICTOIRE<br>(À l'usage du tribunal seulement) |
|---|---|
| **DEMANDEURS**<br>Richard A. Marshack, fiduciaire du LPG Liquidation Trust | **DÉFENDEURS**<br>Laurent Reiss ; Fonds MCA ADV Inc. ; LDR International Ltd ; et Does 1-10, inclusivement |
| **AVOCATS** (nom du cabinet, adresse et numéro de téléphone)<br>Christopher Celentino (SBN 131688)<br>Yosina M. Lissebeck (SBN 201654)<br>Christopher B. Ghio (SBN 259094)<br>DINSMORE & SHOHL S.E.N.C.R.L., S.R.L.<br>655 West Broadway, bureau 800<br>San Diego, CA 92101 Téléphone (619) 400-0500<br>christopher.celentino@dinsmore.com<br>yosina.lissebeck@dinsmore.com<br>christopher.ghio@dinsmore.com<br><br>Matthew J. Stockl (SBN 329266)<br>DINSMORE & SHOHL S.E.N.C.R.L., S.R.L.<br>550, rue South Hope, bureau 1765<br>Los Angeles, CA 90071 Téléphone (213) 335-7737<br>matthew.stockl@dinsmore.com | **AVOCATS** (si vous les connaissez) |
| **PARTY** (cochez une seule case)<br>[] Débiteur [] U.S. Syndic/Administrateur des faillites<br>[] Créancier [] Autre<br>[X] Fiduciaire | **PARTY** (cochez une seule case)<br>[] Débiteur [] U.S. Syndic/Administrateur des faillites<br>[] Créancier [] Autre<br>[X] Fiduciaire |

**CAUSE D'ACTION** (RÉDIGEZ UN BREF ÉNONCÉ DE LA CAUSE D'ACTION, Y COMPRIS TOUTES LES LOIS AMÉRICAINES CONCERNÉES)

(1) l'annulation, la récupération et la préservation des transferts frauduleux réels de 2 ans ; (2) l'annulation, le recouvrement et la préservation des transferts frauduleux présumés de 2 ans ; (3) l'annulation, la récupération et la préservation des transferts frauduleux réels de 4 ans ; (4) l'annulation, le recouvrement et la préservation des transferts frauduleux présumés de 4 ans ; (5) le chiffre d'affaires ; (6) Violations de la loi sur les organisations influencées par le racket et la corruption ; (7) Complot ; (8) Aide et encouragement ; et (9) Jugement déclaratoire

## NATURE DE LA POURSUITE

(Numérotez jusqu'à cinq (5) cases commençant par la cause d'action principale par 1, la première cause alternative par 2, la deuxième cause alternative par 3, etc.)

| | |
|---|---|
| **FRBP 7001(a) – Recouvrement de l'argent ou des biens**<br>[X] 11-Recouvrement de l'argent/des biens - §542 Chiffre d'affaires des biens<br>[] 12-Recouvrement de l'argent/des biens - Préférence de l'article 547<br>[X] 13-Recouvrement d'argent/de biens - §548 transfert frauduleux<br>[X] 14-Recouvrement d'argent/de biens - autres – §§ 544(b), 550 et 551 : Code civil de Californie §§ 3439.04(a), 3439.04(b), 3439.05 et 3439.07<br><br>**FRBP 7001(b) – Validité, priorité ou étendue du privilège**<br>[] 21-Validité, priorité ou étendue du privilège ou autre intérêt dans un bien<br><br>**FRBP 7001(c) – Approbation de la vente d'un bien**<br>[] 31-Approbation de la vente d'un bien immobilier et d'un copropriétaire - §363(h)<br><br>**FRBP 7001(d) – Opposition/révocation de la libération**<br>[] 41-Objection / révocation de la décharge - §727(c),(d),(e)<br><br>**FRBP 7001(e) – Révocation de la confirmation**<br>[] 51-Révocation de la confirmation<br><br>**FRBP 7001(f) – Déchargeabilité** | **FRBP 7001(f) – Déchargeabilité (suite)**<br>[] 61-Possibilité de décharge - §523(a)(5), soutien interne<br>[] 68-Décharge - §523(a)(6), blessure volontaire et malveillante<br>[] 63-Libérabilité - §523(a)(8), prêt étudiant<br>[] 64-Libabilité - §523(a)(15), divorce ou obligation de séparation (autre que une pension alimentaire)<br>[] 65-Déchargeabilité - autre<br><br>**FRBP 7001(g) – Injonction**<br>[] 71-Injonction - suspension<br>[] 72-Injonction - autres<br><br>**FRBP 7001(h) Subordination de la réclamation ou de l'intérêt**<br>[] 81-Subordination de la créance ou de l'intérêt<br><br>**FRBP 7001(i) Jugement déclaratoire**<br>[] 91-Jugement déclaratoire<br><br>**FRBP 7001(j) Détermination de la mesure retirée**<br>[] 01-Détermination de la suppression d'une revendication ou d'une cause<br><br>**Autre**<br>[] Affaire SS-SIPA - 15 U.S.C. §§78aaa et suiv. |

| [] 66-Libérabilité - §523(a)(1),(14),(14A) réclamations fiscales prioritaires<br>[] 62-Acquittabilité - §523(a)(2), faux semblants, fausse déclaration, fraude réelle<br>[] 67-Acquittabilité - §523(a)(4), fraude en tant que fiduciaire, détournement de fonds, vol<br><br>**(suite de la chronique suivante)** | [] 02-Autres (par exemple, d'autres actions qui auraient été intentées devant un tribunal d'État si elles n'avaient pas été liées à une affaire de faillite) |
|---|---|
| [X] Vérifiez si cette affaire porte sur une question de fond de droit étatique | [] Cochez la case suivante : s'il s'agit d'un recours collectif en vertu du FRCP 23 |
| [] Vérifiez si un procès devant jury est exigé dans la plainte | Demande 1 710 000,00 $ |
| Autres mesures de redressement demandées<br>violations de la loi sur les organisations influencées par le racket et la corruption ; Conspiration; Aide et encouragement ; et jugement déclaratoire | |

| CAS DE FAILLITE DANS LEQUEL CETTE PROCÉDURE CONTRADICTOIRE PREND NAISSANCE | | |
|---|---|---|
| NOM DU DÉBITEUR<br>Le groupe de pratique Litige C.P. | CAS DE FAILLITE N°<br>8:23-BK-10571-SC | |
| DISTRICT DANS QUEL CAS EN INSTANCE<br>District central de Californie | BUREAU DE LA<br>DIVISION<br>Santa Ana | NOM DU JUGE<br>Scott C. Clarkson |
| PROCÉDURE CONTRADICTOIRE CONNEXE (LE CAS ÉCHÉANT) | | |
| PLAIGNANT | ACCUSÉ | PROCÉDURE<br>CONTRADICTOIRE NO. |
| DISTRICT DANS LEQUEL L'ADVERSAIRE<br>EST EN INSTANCE | BUREAU DE LA DIVISION | NOM DU JUGE |
| SIGNATURE DE L'AVOCAT (OU DU PLAIGNANT)<br><br>/s/ Matthew J. Stockl | | |
| DATE:<br>18 mars 2025 | NOM DE L'AVOCAT (OU DU DEMANDEUR) EN<br>CARACTÈRES D'IMPRIMERIE<br>Christopher Celentino<br>Yosina M. Lissebeck<br>Matthew J. Stockl | |

## INSTRUCTIONS

Le dépôt d'un dossier de faillite crée une « masse » sous la juridiction du tribunal des faillites qui comprend tous les biens du débiteur, quel que soit l'endroit où ces biens se trouvent. En raison de l'étendue de la masse de la faillite et de la compétence du tribunal, il peut y avoir des poursuites concernant la propriété ou les droits de propriété de la succession. Il peut également y avoir des poursuites concernant la libération du débiteur. Si une telle poursuite est intentée devant un tribunal de faillite, on parle d'une procédure contradictoire.

Une partie qui dépose une procédure contradictoire doit également remplir et déposer le formulaire 1040, la feuille de couverture de la procédure contradictoire, à moins que la partie ne dépose la procédure contradictoire par voie électronique par l'intermédiaire du système de gestion des cas/dépôt électronique des affaires (CM/ECF) du tribunal. (CM/ECF saisit les informations sur le formulaire 1040 dans le cadre du processus de dépôt.) Une fois remplie, la page couverture résume les informations de base sur la procédure contradictoire. Le greffier du tribunal a besoin de l'information pour traiter la procédure contradictoire et préparer les rapports statistiques requis sur l'activité du tribunal.

La page de couverture et les informations qu'elle contient ne remplacent ni ne complètent le dépôt et la signification des actes de procédure ou d'autres documents comme l'exige la loi, les règles de faillite ou les règles de procédure locales. La page de couverture, qui est en grande partie explicite, doit être remplie par l'avocat du demandeur (ou par le demandeur si le demandeur n'est pas représenté par un avocat). Une page couverture distincte doit être soumise au greffier pour chaque plainte déposée.

**Demandeurs et défendeurs.** Donnez les noms des demandeurs et des défendeurs exactement tels qu'ils apparaissent sur la plainte.

**Avocats.** Donnez les noms et adresses des avocats, s'ils sont connus.

**Parti.** Cochez la case la plus appropriée dans la première colonne pour les plaignants et dans la deuxième colonne pour les défendeurs.

**Demande.** Entrez le montant en dollars exigé dans la plainte.

**Signature.** Cette page de couverture doit être signée par l'avocat inscrit au dossier dans la case située à la deuxième page du formulaire. Si le demandeur est représenté par un cabinet d'avocats, un membre du cabinet doit signer. Si le demandeur est pro se, c'est-à-dire qu'il n'est pas représenté par un avocat, le demandeur doit signer.

| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & EmChristopher Celentino (131688) , Yossina M. Lissebeck (201654)<br><br>Christopher B. Ghio (259094); Jacob R. Bothamley (319457)<br><br>DINSMORE & SHOHL LLP<br><br>655 West Broadway, Suite 800, San Diego, CA 92101 - 619.400.0500<br><br>Christopher.celentino@dinsmore.com;  Yosina.lissebeck@dinsmore.com<br><br>Christopher.ghio@dinsmore.com;  Jacob.bothamley@dinsmore.com<br><br>*Attorney for LPG Liquidation Trust* | FOR COURT USE ONLY |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA

| | |
|---|---|
| In re:<br><br>The Litigation Practice Group P.C.<br><br><br><br>                                              Debtor(s) | CASE NO.:  8:23-bk-10571-SC<br><br>CHAPTER:  11<br><br><br>ADVERSARY NUMBER: 8:25-ap-01190-SC |
| Richard A. Marshack, Trustee of the LPG Liquidation Trust,<br><br>                                              Plaintiff(s)<br><br>                          Versus<br><br>Laurent Reiss, a Monaco resident; MCA Fund ADV Inc., a New York Corporation; LDR International Ltd., A British Virgin Islands Limited liability company, and DOES 1-10, inclusive | **ANOTHER<br>SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left–hand corner of this page. The deadline to file and serve a written response is **30 days after service of this summons.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| Date: | **March 19, 2026** |
| Time: | **1:30 p.m.** |
| Hearing Judge: | **Scott C Clarkson** |
| Location: | **411 W Fourth St., Crtrm 5C, Santa Ana, CA 92701** |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                              Page 1                    **F 7004-1.SUMMONS.ADV.PROC**

You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference. All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date of Issuance of Another Summons and Notice of Status Conference in Adversary Proceeding: August 27, 2025

By: _____ "/s/" Nickie Bolte *Nickie Bolte*

Deputy Clerk



This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                    Page 2                    **F 7004–1.SUMMONS.ADV.PROC**

**ATTACHMENT A**
Names of plaintiffs and defendants

| Plaintiff(s): | Defendant(s): |
|---|---|
| Richard A. Marshack | Laurent Reiss<br><br>MCA Fund ADV Inc.<br>LDR International Ltd. |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**ATTACHMENT A**

# UNITED STATES BANKRUPTCY COURT

## Early meeting of Counsel and Status Conference Instructions

1. **Service of Order.** A copy of this Order re: Rule 26(f) Meeting, Initial Disclosures, and Scheduling Conference must be served with the summons and complaint. The proof of service of the summons and complaint must indicate that a copy of this order was served therewith.

2. **Local Bankruptcy Rule 7026-1.** Compliance with Local Bankruptcy Rule 7026-1 ("LBR 7026-1") is required in ALL adversary proceedings.

3. **Rule 26(f) Meeting.** Unless all defendants default, the parties must meet and confer pursuant to Rule 26(f) of the Federal Rules of Civil Procedure ("Rule 26(f) Meeting") at least 21 days before the status conference date set forth in the summons. **The status conference set forth in the summons shall also serve as the initial Rule 16(b) Scheduling Conference in this adversary proceeding.**

The parties are jointly responsible for arranging and attending the Rule 26(f) Meeting, which may be conducted in person or by telephone. During the Rule 26(f) Meeting, the parties must, at a minimum: (a) discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case; (b) make or arrange for the initial disclosures required by Rule 26(a)(1); and (c) develop a proposed discovery plan. The discussion of claims and defenses must be substantive and meaningful. The parties are directed to approach the Rule 26(f) Meeting cooperatively and in good faith.

4. **Initial Disclosures.** Rule 26(a)(1) states that a party must, without awaiting discovery request, provide to other parties:

      a. The name and, if known, the address and telephone number for each individual likely to have discoverable information - along with the subjects of that

information - that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

b. A copy of - or a description by category and location - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

c. A computation of each category of damages claimed by the disclosing party - who must also make available for inspection and copying under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

d. For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

F.R.Civ.P.26(a)(1)(A). Rule 26(a)(1) requires a party to make its initial disclosures based on the information that is reasonably available to it. A party is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures. F.R.Civ.P.26(a)(1)(E).

5. **Alternative Dispute Resolution ("ADR").** The parties must explore the feasibility of ADR to reach a settlement or early resolution of the adversary proceeding. The specific reasons for any decision not to participate in a form of early ADR must be explained in the Joint Status Report. If the parties elect not to participate in an early ADR effort, the Court may nonetheless direct the parties to ADR before trial.

6. **Discovery Plan.** At the Rule 26(f) Meeting, the parties must also discuss issues about preserving discoverable information and develop a proposed discovery plan. The discussion regarding discovery following the initial disclosures must address the relevance of the discovery

sought and the sequence and timing of such discovery, including whether the discovery will be conducted informally or formally. The deadlines in the discovery plan must be mutually agreeable, with a view to achieve resolution of the case with a minimum of expense and delay.

7. **Joint Status Report.** A status report must be filed within the time frames specified within LBR 7016-1(a)(2). The Joint Status Report must contain the information set forth in LBR 7016-1(a)(2), and a statement that the parties have completed the Rule 26(f) Meeting and made the initial disclosures required by Rule 26(a)(1). The Joint Status Report shall also serve as the written report of the Rule 26(f) Meeting. If Defendant(s) have not filed and served an answer to the Complaint, a Unilateral Status report is due seven (7) days prior to the first status conference hearing.

8. **Status Conference/Rule 16(b) Scheduling Conference.** At the Rule 16(b) Scheduling Conference, the Court will review the discovery plan set forth in the Joint Status Report and set appropriate deadlines.

Counsel representing any party in conjunction with the Rule 26(f) Meeting, Joint Status Report, and Rule 16(b) Scheduling Conference must be authorized to bind the party on all matters to be covered.

9. **Default.** If no response to the complaint is timely filed, plaintiff should request entry of default by the clerk <u>prior</u> to the status conference date set forth in the summons. F.R.Civ.P.55(a). Plaintiff may also request entry of a default judgment by filing and serving an appropriate motion. F.R.Civ.P.55(b)(2).

10. **Sanctions. Failure to comply with these instructions may subject the responsible party and/or counsel to sanctions, which may include dismissal of the adversary proceeding. The failure of either party to cooperate in the preparation of timely filing of a**

Joint Status Report or appear at the status conference may result in the imposition of sanctions under LBR 7016-1(f) or (g).

11. <u>Joint Pre-Trial Order</u>.  Failure to timely file a Joint Pre-Trial order may subject the responsible party and/or counsel to sanctions, which may include dismissal of the adversary proceeding.  The failure of either party to cooperate in the preparation of timely filing of a Joint Pre-Trial Conference or appear at the Joint Pre-Trial Conference may result in the imposition of sanctions under LBR 7016-1(f) or (g).

<div align="center">
Honorable Scott C. Clarkson<br>
United States Bankruptcy Judge
</div>

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: ANOTHER SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1] and (2) the accompanying pleading(s) entitled:

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:** On (date) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| Date | Printed Name | Signature |
|---|---|---|

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                                    **F 7004-1.SUMMONS.ADV.PROC**

| | RÉSERVÉ À L'USAGE DU TRIBUNAL |
|---|---|
| Nom de l'avocat ou de la partie, adresse, numéros de téléphone et de télécopieur, numéro du barreau et de l'État<br><br>Em Christopher Celentino (131688), Yossina M. Lissebeck (201654)<br><br>Christopher B. Ghio (259094) ; Jacob R. Bothamley (319457)<br><br>DINSMORE & SHOHL LLP<br><br>655 West Broadway, Suite 800, San Diego, CA 92101 - 619.400.0500<br><br>Christopher.celentino@dinsmore.com; Yossina.lissebeck@dinsmore.com; Christopher.ghio@dinsmore.com<br><br>**Avocat du LPG Liquidation Trust** | |

| | |
|---|---|
| **TRIBUNAL DES FAILLITES DES ÉTATS-UNIS** | |
| **DISTRICT CENTRAL DE CALIFORNIE - SANTA ANA** | |

| En ce qui concerne | |
|---|---|
| Le Groupe Litigation Practice P.C.<br><br>Débiteur(s) | AFFAIRE N° : 8:23-bk-1O571- SC<br><br>CHAPITRE : 11<br><br>ADVERSAIRE NUMÉRO : 8:25-ap-01190- SC |
| Richard A. Marshack, administrateur du LPG Liquidation Trust,<br><br>Demandeur(s)<br><br>: Contre<br><br>Laurent Reiss, résident de Monaco ; MCA Fund ADV Inc., une société de New York ; LDR International Ltd., une société à responsabilité limitée des îles Vierges britanniques , et DOES 110, inclus | **AUTRE ASSIGNATION ET AVIS DE STATUT - CONFÉRENCE DE PROCÉDURE CONTRADICTOIRE**<br>**[LBR 70041]** |

AU(X) DÉFENDEUR(S) : Une plainte a été déposée par le demandeur contre vous. Si vous souhaitez vous défendre contre cette plainte, vous devez déposer auprès du tribunal une plaidoirie écrite en réponse à celle-ci. Vous devez également signifier une copie de votre réponse écrite à la partie indiquée en haut à gauche de cette page. Le délai pour déposer et signifier une réponse écrite est de **30 jours après la signification de la présente assignation**. À défaut de dépôt et de signification de votre réponse dans les délais, le tribunal pourra rendre un jugement par défaut contre vous pour la réparation demandée dans la plainte.

Une conférence de mise en état dans la procédure contradictoire engagée par la plainte a été fixée

| | |
|---|---|
| Date: | 19 mars 2026 |
| Heure: | 13h30 |
| Juge d'audience | Scott C Clarkson |
| Emplacement: | 411 W Fourth St, Crtrm 5C, Santa Ana, CA 92701 |

Ce formulaire est obligatoire. Il a été approuvé par le tribunal des faillites des États-Unis pour le district central de Californie.

Vous devez vous conformer à la règle LBR 70161, qui exige le dépôt d'un rapport conjoint sur l'état de l'instance et la comparution à une conférence de mise en état. Toutes les parties doivent lire et respecter cette règle, même si vous représentez seul. Vous devez coopérer avec les autres parties à l'affaire, déposer un rapport conjoint sur l'état de l'instance auprès du tribunal et le signifier aux parties concernées au moins 14 jours avant la conférence de mise en état. Un formulaire de rapport conjoint approuvé par le tribunal est disponible sur le site web du tribunal (formulaire LBR F 7016-1.STATUS.REPORT) avec une pièce jointe pour les parties supplémentaires si nécessaire (formulaire LBR F 7016-1.STATUS.REPORT.ATTACH). Si les autres parties ne coopèrent pas au dépôt d'un rapport conjoint, vous devez tout de même déposer auprès du tribunal un rapport unilatéral sur l'état de l'instance et la déclaration requise au lieu d'un rapport conjoint 7 jours avant la conférence de mise en état. Le tribunal peut vous infliger une amende ou d'autres sanctions en cas de non-dépôt d'un rapport. Le tribunal peut également vous infliger une amende ou d'autres sanctions en cas de non-comparution à une conférence de mise en état.

KATHLEEN J. CAMPBELL
GREFFIER DU TRIBUNAL

Date de délivrance d'une autre assignation et avis de conférence de mise en état dans une procédure contradictoire : 27 août 2025

Par:    *"/s/" Nickie Bolte*  Nichie Bolte

greffier adjoint



Ce formulaire est obligatoire. Il a été approuvé par le tribunal des faillites des États-Unis pour le district central de Californie.

Décembre 2016                              Page 2                    F 7004-1.CONVOCATION.ADV.PROC

Affaire 8:25-ap-01190-SC Doc 35 Déposé le 27/08/25 Saisi le 27/08/25 18:51:06 Desc
Document principal Page 3 sur 8



## ANNEXE A
### Noms des plaignants et des défendeurs

| Plaignant(s) : | Défendeur(s) : |
|---|---|
| Richard A. Marshack | Laurent Reiss |
| | Fonds MCA ADV Inc. |
| | LDR International Ltd. |

Ce formulaire est obligatoire. Il a été approuvé par le tribunal des faillites des États-Unis pour le district central de Californie.

## ANNEXE A

## TRIBUNAL DES FAILLITES DES ÉTATS-UNIS

**Instructions relatives à la réunion anticipée des conseils et à la conférence de mise en état.**

1. **Signification de l'ordonnance.** Une copie de cette ordonnance concernant la réunion, les divulgations/preuves initiales et l'organisation d'une conférence de mise en état visée à la règle 26(f), doit être signifiée en même temps que l'assignation et les demandes. La preuve de signification de la convocation et de la plainte doit indiquer qu'une copie de la présente ordonnance y a été signifiée.

2. **Règle locale de faillite 70264.** La conformité avec la règle locale de faillite 70261 (« LBR 70261 ») est requise dans TOUTES les procédures contradictoires.

3. **Règle 26(f) Réunion.** Sauf en cas de défaut de tous les défendeurs, les parties doivent se réunir et se concerter, conformément à la règle 26(O) des Règles fédérales de procédure civile (« Règle 26(O Réunion ») au moins 21 jours avant la date de la conférence de mise en état fixée dans la convocation. La <u>conférence de mise en état fixée énoncée dans la convocation servira également de conférence de planification initiale en vertu de la règle 16(b) dans la présente procédure contradictoire.</u>

Les parties sont conjointement responsables de l'organisation et de la participation à la réunion prévue à la règle 26(f), qui peut être menée en personne ou par téléphone. Lors de la réunion prévue à la règle 26(t), les parties doivent, au minimum : (a) discuter de la nature et du fondement de leurs réclamations et de leurs défenses et des possibilités de règlement ou de résolution rapide de l'affaire ; (b) effectuer ou organiser le règlement initial divulgations/preuves requises par la règle 26(a)(1); et (c) élaborer une proposition de plan de divulgations des preuves. La discussion des prétentions et des défenses doit être substantielle et significative. Les parties sont invitées à aborder la réunion prévue à la règle 26(f) de manière coopérative et de bonne foi.

4. **Divulgations initiales.** La règle 26(a)(1) stipule qu'une partie doit, sans attendre la communication des pièces, demander, fournir aux autres parties :

      a. Le nom et, si connu, l'adresse et le numéro de téléphone de chaque individu susceptible de détenir des informations découvrables - ainsi que les sujets de ces informations

informations - que la partie divulgatrice peut utiliser pour étayer ses réclamations ou ses défenses, à
moins que l'utilisation ne soit uniquement destinée à s'incriminer.

    b. Une copie - ou une description par catégorie et emplacement - de tous les documents, les informations stockées
électroniquement et les choses tangibles que la partie divulgatrice a en sa possession,
sous sa garde ou sous son contrôle et qu'elle peut utiliser pour étayer ses réclamations ou ses
défenses, à moins que l'utilisation ne soit uniquement destinée à s'incriminer ;

    c. Un calcul de chaque catégorie de dommages réclamés par la partie divulgatrice - qui doit
également mettre à disposition pour inspection et copie en vertu de la règle 34 les documents ou autres
éléments de preuve, sauf s'ils sont privilégiés ou protégés contre la divulgation, sur lesquels chaque calcul
est basé, y compris les éléments portant sur la nature et l'étendue des préjudices subis ; et

    d. Pour inspection et copie conformément à la règle 34, tout contrat d'assurance en vertu duquel une
entreprise d'assurance peut être tenue de satisfaire tout ou partie d'un jugement éventuel dans l'action
ou d'indemniser ou de rembourser les paiements effectués pour satisfaire au jugement.

FRCiv.P.26(a)(1)(A). La règle 26(a)(1) exige qu'une partie fasse ses divulgations initiales sur la base des informations auxquelles

elle a raisonnablement accès. Une partie n'est pas dispensée de divulguer ces informations. parce qu'elle n'a pas complètement

terminé son enquête sur l'affaire ou parce qu'elle conteste la suffisance des divulgations d'une autre partie ou parce qu'une autre

partie n'a pas fait ses divulgations.

FRCiv.P.26(a)(1)(E).

    5. **Modes alternatifs de résolution des conflits (« MARC »).** Les parties doivent étudier la faisabilité de ces modes

alternatifs de résolution des conflits. Le règlement extrajudiciaire des différends (ADR) vise à parvenir à un règlement amiable

ou à une résolution rapide de la procédure contradictoire. Les raisons spécifiques d'une décision de ne pas participer à une forme

de MARC précoce doit être expliquée dans le Rapport de statut conjoint. Si les parties choisissent de ne pas participer à un effort ADR

précoce, le tribunal peut néanmoins orienter les parties vers l'ADR avant le procès.

    6. **Plan de divulgations.** Lors de la réunion prévue à la règle 26(f), les parties doivent également discuter des questions

relatives à préserver les informations découvrables et élaborer un plan de divulgations. La discussion concernant la divulgation

suivant les divulgations initiales doit aborder la pertinence de la divulgation.

recherchée et la séquence et le calendrier de ces divulgations, y compris si les divulgations seront menées de manière

informelles ou formelles. Les délais prévus dans le plan de découverte doivent être mutuellement convenus., en vue de parvenir

à une résolution de l'affaire avec un minimum de dépenses et de délais.

7. **Rapport conjoint sur l'état d'avancement**. Un rapport d'état doit être déposé dans les délais impartis

conformément à la LBR 70161(a)(2). Le rapport conjoint doit contenir les informations énoncées dans LBR 70161(a)(2), et une

déclaration selon laquelle les parties ont terminé la réunion de la règle 26(f) et ont effectué les divulgations initiales

requises par la règle 26(a)(1). Le rapport conjoint sur l'état d'avancement servira également comme rapport écrit de la réunion

visée à la règle 26(f). Si le(s) défendeur(s) n'ont pas déposé et signifié une réponse à la plainte, un rapport d'état unilatéral

est dû sept (7) jours avant la première audience de mise en état.

8. **Audience de mise en état/Conférence de planification selon la règle 16(b).** Lors de la conférence de planification selon la

règle 16(b). Conférence, le tribunal examinera le plan de divulgations énoncé dans le rapport conjoint sur l'état d'avancement et fixera

des délais appropriés.

L'Avocat représentant chaque partie dans le cadre de la réunion prévue à la règle 26(f), du Rapport conjoint sur l'état d'avancement et de

la règle 16(b) sur la conférence de mise en état doivent être autorisé à engager la partie sur tous les points à traiter.

9. **Défaut.** Si aucune réponse à la plainte n'est déposée dans les délais, le plaignant doit demander l'inscription de défaut

par le greffier avant la date de la conférence de mise en état fixée dans la convocation. FRCiv.P.55(a).

Le demandeur peut également demander l'inscription d'un jugement par défaut en déposant et en signifiant un acte approprié.

FRCiv.P.55(b)(2).

10.    **Sanctions.** Le non-respect de ces instructions peut entraîner des sanctions contre la partie et/ou l'avocat

responsable, qui peuvent inclure la radiation de la procédure contradictoire. Le défaut de coopération de l'une ou

l'autre des parties dans la préparation du dépôt en temps opportun d'un

Rapport de situation conjoint ou de comparaitre à la conférence de mise en état peut entrainer des sanctions

en vertu de LBR 70161(O ou (g).

11.   <u>Ordonnance conjointe préalable au procès.</u> Le défaut de déposer une ordonnance conjointe préalable au

procès dans les délais impartis peut entrainer des sanctions contre la partie et/ou l'avocat responsable, qui peuvent

inclure la radiation de la procédure contradictoire. Le défaut de coopération de l'une ou l'autre des parties dans la

préparation d'une conférence préliminaire conjointe ou de comparaitre à la conférence préliminaire conjointe peut

entrainer des sanctions en vertu du LBR 70161(f) ou (g).

L'honorable Scott C. Clarkson - Juge des faillites des États-Unis

## PREUVE DE SIGNIFICATION DE DOCUMENT

Je suis âgé(e) de plus de 18 ans et je ne suis pas partie à cette procédure de faillite ni à cette procédure contradictoire. Mon adresse professionnelle est :

Une copie conforme et exacte du document précédent intitulé : AUTRE ASSIGNATION ET AVIS DE CONFÉRENCE DE STATUT EN PROCÉDURE CONTRADICTOIRE [LBR 70041] et (2) la ou les plaidoiries ci-jointes intitulées :

sera signifié ou a été signifié (a) au juge en chambre sous la forme et de la manière requises par LBR 5005-2(d) ; et (b) de la manière indiquée ci-dessous :

1. **À SIGNIFIER PAR LE TRIBUNAL PAR AVIS DE DÉPÔT ÉLECTRONIQUE (NEF)** : Conformément aux ordonnances générales et au règlement LBR, le document susmentionné sera signifié par le tribunal par NEF et par hyperlien. Le (date)
_____. J'ai vérifié le dossier CM/ECF pour cette affaire de faillite ou procédure contradictoire et j'ai déterminé que les personnes suivantes sont sur la liste des avis de courrier électronique pour recevoir la transmission NEF aux adresses électroniques indiquées ci-dessous :

☐ Les informations sur le service se poursuivent sur la page ci-jointe

2. **SIGNIFIÉ PAR COURRIER DES ÉTATS-UNIS** : Le (date) _____, J'ai servi les personnes et/ou aux entités aux dernières adresses connues dans cette affaire de faillite ou procédure contradictoire en plaçant une copie conforme et correcte de celle-ci dans une enveloppe scellée envoyée par courrier des États-Unis, en première classe, port payé, et adressée comme suit. Le fait d'indiquer le nom du juge ici constitue une déclaration selon laquelle l'envoi au juge sera effectué au plus tard 24 heures après le dépôt du document.

Suite des informations sur le service sur la page ci-jointe

3. **SIGNIFIÉ PAR REMISE EN PERSONNE, PAR COURRIER DE 24 HEURES, PAR TÉLÉCOPIE OU PAR COURRIER ÉLECTRONIQUE** (indiquer la méthode pour chaque personne ou entité signifiée) ; conformément à la FRCiv.P. 5 et/ou au LBR applicable, le (date) _____, J'ai signifié les personnes et/ou entités suivantes par livraison personnelle, par service postal de nuit ou (pour ceux qui ont consenti par écrit à une telle méthode de signification), par télécopieur et/ou par courrier électronique comme suit. Le fait d'indiquer le nom du juge ici constitue une déclaration selon laquelle la remise en main propre ou l'envoi par courrier de nuit au juge sera effectué au plus tard 24 heures après le dépôt du document.

Suite des informations sur le service sur la page ci-jointe

Je déclare sous peine de parjure en vertu des lois des États-Unis que ce qui précède est vrai et correct.

| Date | Nom imprimé | Signature |
|------|-------------|-----------|
| | | |

Ce formulaire est obligatoire. Il a été approuvé par le tribunal des faillites des États-Unis pour le district central de Californie.

Décembre 2016

F 7004-1.CONVOCATION.ADV.PROC



1  CHRISTOPHER CELENTINO (131688)
   Christopher.Celentino@dinsmore.com
2  YOSINA M. LISSEBECK (201654)
   Yosina.Lissebeck@dinsmore.com
3  CHRISTOPHER B. GHIO (259094)
   Christopher.Ghio@dinsmore.com
4  JACOB R. BOTHAMLEY(319457)
   Jacob.Bothamley@dinsmore.com
5  **DINSMORE & SHOHL LLP**
   655 West Broadway, Ste 800
6  San Diego, California 92101
   Tele: (619) 400-0500
7  Fax: (619) 400-0501

8  Counsel for Plaintiff, Richard A. Marshack,
   Trustee of the LPG Liquidation Trust
9

10              **UNITED STATES BANKRUPTCY COURT**

11       **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| 12  In re: | Chapter 11 |
| 13  The Litigation Practice Group P.C., | Case No.:      8:23-bk-10571-SC |
| 14                               Debtor. | Adv No.:      8:25-ap-01190-SC |
| 15 | **NOTICE OF REQUIRED COMPLIANCE WITH RULE 7026 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND RULE 7026-1 OF THE LOCAL BANKRUPTCY RULES** |
| 16 | |
| 17  Richard A. Marshack, Trustee of the LPG Liquidation Trust, | |
| 18                               Plaintiff, | |
| 19       v. | Judge:  Hon. Scott C. Clarkson |
| 20  Laurent Reiss, a Monaco resident; MCA Fund ADV Inc., a New York Corporation; LDR International Ltd., a British Virgin Islands limited liability company; and DOES 1-10, inclusive, | |
| 21 | |
| 22 | |
| 23                               Defendants. | |

24

25  **TO ALL DEFENDANTS:**

26       PLEASE TAKE NOTICE that the parties in the above-captioned adversary proceeding are

27  required to comply with Rule 7026 of the Federal Rules of Bankruptcy Procedure and Rule 7026-1

28  of the Local Bankruptcy Rules for the Central District of California. A true and correct copy of Rule

7026 of the Federal Rules of Bankruptcy Procedure is attached hereto as **Exhibit 1**. A true and

correct copy of Rule 7026-1 of the Local Bankruptcy Rules for the Central District of California is

attached hereto as **Exhibit 2**.

Dated: September 3, 2025                       DINSMORE & SHOHL LLP


By: /s/ Yosina M. Lissebeck
    Yosina M. Lissebeck
    Jacob R. Bothamley
Counsel for Plaintiff, Richard A. Marshack,
Trustee of the LPG Liquidation Trust



# EXHIBIT 1

Exhibit 1
Page 3

### *USCS Fed Rules Civ Proc R 26, Part 1 of 5*

Current through changes received through December 20, 2024.

**USCS Federal Rules Annotated > Federal Rules of Civil Procedure > Title V. Disclosures and Discovery**

## Rule 26. Duty to Disclose; General Provisions Governing Discovery

**(a) Required Disclosures.**

**(1)** *Initial Disclosure.*

**(A)** In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

**(i)** the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**(ii)** a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

**(iii)** a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

**(iv)** for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

**(B)** Proceedings Exempt from Initial Disclosure. The following proceedings are exempt from initial disclosure:

**(i)** an action for review on an administrative record;

**(ii)** a forfeiture action in rem arising from a federal statute;

**(iii)** a petition for habeas corpus or any other proceeding to challenge a criminal conviction or sentence;

**(iv)** an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision;

**(v)** an action to enforce or quash an administrative summons or subpoena;

**(vi)** an action by the United States to recover benefit payments;

**(vii)** an action by the United States to collect on a student loan guaranteed by the United States;

**(viii)** a proceeding ancillary to a proceeding in another court; and

**(ix)** an action to enforce an arbitration award.

Jeremy Freedman

Exhibit 1
Page 4

USCS Fed Rules Civ Proc R 26, Part 1 of 5

**(C)** Time for Initial Disclosures—In General. A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure.

**(D)** Time for Initial Disclosures—For Parties Served or Joined Later. A party that is first served or otherwise joined after the Rule 26(f) conference must make the initial disclosures within 30 days after being served or joined, unless a different time is set by stipulation or court order.

**(E)** Basis for Initial Disclosure; Unacceptable Excuses. A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

**(2)** *Disclosure of Expert Testimony.*

**(A)** In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under *Federal Rule of Evidence 702*, 703, or 705.

**(B)** Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

    **(i)** a complete statement of all opinions the witness will express and the basis and reasons for them;

    **(ii)** the facts or data considered by the witness in forming them;

    **(iii)** any exhibits that will be used to summarize or support them;

    **(iv)** the witness's qualifications, including a list of all publications authored in the previous 10 years;

    **(v)** a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    **(vi)** a statement of the compensation to be paid for the study and testimony in the case.

**(C)** Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

    **(i)** the subject matter on which the witness is expected to present evidence under *Federal Rule of Evidence 702*, 703, or 705; and

    **(ii)** a summary of the facts and opinions to which the witness is expected to testify.

**(D)** Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

    **(i)** at least 90 days before the date set for trial or for the case to be ready for trial; or

    **(ii)** if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

**(E)** Supplementing the Disclosure. The parties must supplement these disclosures when required under Rule 26(e).

Exhibit 1
Page 5

USCS Fed Rules Civ Proc R 26, Part 1 of 5

**(3)** *Pretrial Disclosures.*

**(A)** In General. In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

**(i)** the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises;

**(ii)** the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

**(iii)** an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises.

**(B)** Time for Pretrial Disclosures; Objections. Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made—except for one under *Federal Rule of Evidence 402* or *403*—is waived unless excused by the court for good cause.

**(4)** *Form of Disclosures.* Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

**(b) Discovery Scope and Limits.**

**(1)** *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

**(2)** *Limitations on Frequency and Extent.*

**(A)** When Permitted. By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

**(B)** Specific Limitations on Electronically Stored Information. A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(C)** When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

**(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

Exhibit 1
Page 6

USCS Fed Rules Civ Proc R 26, Part 1 of 5

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

(3) *Trial Preparation: Materials.*

**(A)** Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

**(B)** Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

**(C)** Previous Statement. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

(i) a written statement that the person has signed or otherwise adopted or approved; or

(ii) a contemporaneous stenographic, mechanical, electrical, or other recording—or a transcription of it—that recites substantially verbatim the person's oral statement.

(4) *Trial Preparation: Experts.*

**(A)** Deposition of an Expert Who May Testify. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

**(B)** Trial-Preparation Protection for Draft Reports or Disclosures. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

**(C)** Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

(i) relate to compensation for the expert's study or testimony;

(ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

(iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

**(D)** Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

(i) as provided in Rule 35(b); or

(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Exhibit 1
Page 7

**(E)** Payment. Unless manifest injustice would result, the court must require that the party seeking discovery:

**(i)** pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

**(ii)** for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

**(5)** *Claiming Privilege or Protecting Trial-Preparation Materials.*

**(A)** Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

**(B)** Information Produced. If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

**(c) Protective Orders.**

**(1)** *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending — or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

**(A)** forbidding the disclosure or discovery;

**(B)** specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

**(C)** prescribing a discovery method other than the one selected by the party seeking discovery;

**(D)** forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

**(E)** designating the persons who may be present while the discovery is conducted;

**(F)** requiring that a deposition be sealed and opened only on court order;

**(G)** requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

**(H)** requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

**(2)** *Ordering Discovery.* If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

Exhibit 1
Page 8

USCS Fed Rules Civ Proc R 26, Part 1 of 5

**(3)** *Awarding Expenses.* Rule 37(a)(5) applies to the award of expenses.

**(d) Timing and Sequence of Discovery.**

**(1)** *Timing.* A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

**(2)** *Early Rule 34 Requests.*

**(A)** Time to Deliver. More than 21 days after the summons and complaint are served on a party, a request under Rule 34 may be delivered:

**(i)** to that party by any other party, and

**(ii)** by that party to any plaintiff or to any other party that has been served.

**(B)** When Considered Served. The request is considered to have been served at the first Rule 26(f) conference.

**(3)** *Sequence.* Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:

**(A)** methods of discovery may be used in any sequence; and

**(B)** discovery by one party does not require any other party to delay its discovery.

**(e) Supplementing Disclosures and Responses.**

**(1)** *In General.* A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

**(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

**(B)** as ordered by the court.

**(2)** *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

**(f) Conference of the Parties; Planning for Discovery.**

**(1)** *Conference Timing.* Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable—and in any event at least 21 days before a scheduling conference is held or a scheduling order is due under Rule 16(b).

**(2)** *Conference Content; Parties' Responsibilities.* In conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan. The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan. The court may order the parties or attorneys to attend the conference in person.

**(3)** *Discovery Plan.* A discovery plan must state the parties' views and proposals on:

**(A)** what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;

Exhibit 1
Page 9

USCS Fed Rules Civ Proc R 26, Part 1 of 5

**(B)** the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;

**(C)** any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced;

**(D)** any issues about claims of privilege or of protection as trial-preparation materials, including — if the parties agree on a procedure to assert these claims after production — whether to ask the court to include their agreement in an order under *Federal Rule of Evidence 502*;

**(E)** what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and

**(F)** any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).

**(4)** *Expedited Schedule.* If necessary to comply with its expedited schedule for Rule 16(b) conferences, a court may by local rule:

**(A)** require the parties' conference to occur less than 21 days before the scheduling conference is held or a scheduling order is due under Rule 16(b); and

**(B)** require the written report outlining the discovery plan to be filed less than 14 days after the parties' conference, or excuse the parties from submitting a written report and permit them to report orally on their discovery plan at the Rule 16(b) conference.

**(g) Signing Disclosures and Discovery Requests, Responses, and Objections.**

**(1)** *Signature Required; Effect of Signature.* Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented—and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

**(A)** with respect to a disclosure, it is complete and correct as of the time it is made; and

**(B)** with respect to a discovery request, response, or objection, it is:

**(i)** consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

**(ii)** not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

**(iii)** neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

**(2)** *Failure to Sign.* Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.

**(3)** *Sanction for Improper Certification.* If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

## History

Amended Dec. 27, 1946, eff. March 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; March 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Apr. 28, 1983, eff. Aug. 1, 1983; March 2, 1987,

Exhibit 1
Page 10

USCS Fed Rules Civ Proc R 26, Part 1 of 5

eff. Aug. 1, 1987; Dec. 1, 1993; Dec. 1, 2000; Dec. 1, 2006; Dec. 1, 2007; April 28, 2010, eff. Dec. 1, 2010; April 29, 2015, eff. Dec. 1, 2015.

Exhibit 1
Page 11

# EXHIBIT 2

Exhibit 2
Page 12

LBR 7026-1

(2)  Other Parties.  Any party other than plaintiff who has not received plaintiff's proposed pretrial stipulation within the time limits set forth in subsection (c) of this rule must prepare, file, and serve at least 14 days prior to the trial or pretrial conference, if one is ordered, a declaration attesting to plaintiff's failure to prepare and serve a proposed pretrial stipulation in a timely manner.

(f)  **Sanctions for Failure to Comply with Rule.**  In addition to the sanctions authorized by F.R.Civ.P. 16(f), if a status conference statement or a joint proposed pretrial stipulation is not filed or lodged within the times set forth in subsections (a), (b), or (e), respectively, of this rule, the court may order one or more of the following:

(1)  A continuance of the trial date, if no prejudice is involved to the party who is not at fault;

(2)  Entry of a pretrial order based conforming party's proposed description of the facts and law;

(3)  An award of monetary sanctions including attorneys' fees against the party at fault and/or counsel, payable to the party not at fault; and/or

(4)  An award of non-monetary sanctions against the party at fault including entry of judgment of dismissal or the entry of an order striking the answer and entering a default.

(g)  **Failure to Appear at Hearing or Prepare for Trial.**  The failure of a party's counsel (or the party, if not represented by counsel) to appear before the court at the status conference or pretrial conference, or to complete the necessary preparations therefor, or to appear at or to be prepared for trial may be considered an abandonment or failure to prosecute or defend diligently, and judgment may be entered against the defaulting party either with respect to a specific issue or as to the entire proceeding, or the proceeding may be dismissed.

## LBR 7026-1. <u>DISCOVERY</u>

(a)  **General.**  Compliance with FRBP 7026 and this rule is required in all adversary proceedings.

(1)  Notice.  The plaintiff must serve with the summons and complaint a notice that compliance with FRBP 7026 and this rule is required.

(2)  Proof of Service.  The plaintiff must file a proof of service of this notice together with the proof of service of the summons and complaint.

(b)  **Discovery Conference and Disclosures.**

(1)  Conference of Parties.  Unless all defendants default, the parties must conduct the meeting and exchange the information required by FRBP 7026 within the time limits set forth therein.  Unless otherwise ordered, the initial status conference

LBR 7026-1

constitutes the "scheduling conference" referred to in FRCP 26(f)(1) (incorporated by FRBP 7026).

(2) Joint Status Report. Within 7 days after such meeting, the parties must prepare a joint status report containing the information set forth in LBR 7016-1(a)(2). The joint status report will serve as the written report of the meeting required by FRBP 7026.

(c)  **Failure to Make Disclosures or Cooperate in Discovery.**

(1) General. Unless excused from complying with this rule by order of the court for good cause shown, a party must seek to resolve any dispute arising under FRBP 7026-7037 or FRBP 2004 in accordance with this rule.

(2) Meeting of Parties. Prior to the filing of any motion relating to discovery, the parties must meet in person or by telephone in a good faith effort to resolve a discovery dispute. It is the responsibility of the moving party to arrange the conference. Unless altered by agreement of the parties or by order of the court for cause shown, the opposing party must meet with the moving party within 7 days of service upon the opposing party of a letter requesting such meeting and specifying the terms of the discovery order to be sought.

(3) Moving Papers. If the parties are unable to resolve the dispute, the party seeking discovery must file and serve a notice of motion together with a written stipulation by the parties.

(A) The stipulation must be contained in 1 document and must identify, separately and with particularity, each disputed issue that remains to be determined at the hearing and the contentions and points and authorities of each party as to each issue.

(B) The stipulation must not simply refer the court to the document containing the discovery request forming the basis of the dispute. For example, if the sufficiency of an answer to an interrogatory is in issue, the stipulation must contain, verbatim, both the interrogatory and the allegedly insufficient answer, followed by each party's contentions, separately stated.

(C) In the absence of such stipulation or a declaration of a party of noncooperation by the opposing party, the court will not consider the discovery motion.

(4) Cooperation of Parties; Sanctions. The failure of any party either to cooperate in this procedure, to attend the meeting of parties, or to provide the moving party the information necessary to prepare the stipulation required by this rule within 7 days of the meeting of parties will result in the imposition of sanctions, including the sanctions authorized by FRBP 7037 and LBR 9011-3.

Exhibit 2
Page 14



LBR 7026-2

(5)  <u>Contempt</u>.  LBR 9020-1 governing contempt proceedings applies to a discovery motion to compel a non-party to comply with a deposition subpoena for testimony and/or documents under FRBP 7030 and 7034.

## LBR 7026-2.  <u>DISCOVERY DOCUMENTS – RETENTION, FILING, AND COPIES</u>

(a)  **<u>Retention by Propounding Party</u>.**  The following discovery documents and proof of service thereof must not be filed with the clerk until there is a proceeding in which the document or proof of service is in issue:

(1)  Transcripts of depositions upon oral examination;
(2)  Transcripts of depositions upon written questions;
(3)  Interrogatories;
(4)  Answers or objections to interrogatories;
(5)  Requests for the production of documents or to inspect tangible things;
(6)  Responses or objections to requests for the production of documents or to inspect tangible things;
(7)  Requests for admission;
(8)  Responses or objections to requests for admission;
(9)  Notices of Deposition, unless filing is required in order to obtain issuance of a subpoena in another district; and
(10) Subpoena or Subpoena Duces Tecum.

(b)  **<u>Period of Retention for Discovery Documents</u>.**  Discovery documents must be held by the attorney for the propounding party pending use pursuant to this rule for the period specified in LBR 9070-1(b) for the retention of exhibits, unless otherwise ordered by the court.

(c)  **<u>Filing of Discovery Documents</u>.**

(1)  When required in a proceeding, only that part of the document that is in issue must be filed with the court.

(2)  When filed, discovery documents must be submitted with a notice of filing that identifies the date, time, and place of the hearing or trial in which it is to be offered.

(3)  Original deposition transcripts are treated as trial exhibits and must be delivered to the judge for use at the hearing or trial.  The original deposition transcript and a copy must be lodged with the clerk pursuant to LBR 7030-1(b).

(d)  **<u>Copies of Discovery Documents</u>.**

(1)  Unless an applicable protective order otherwise provides, any entity may obtain a copy of any discovery document described in subsection (a) of this rule by making a written request therefor to the clerk and paying duplication costs.

Exhibit 2
Page 15



Machine Translated by Google

1   CHRISTOPHER CELENTINO (131688)
    Christopher.Celentino@dinsmore.com YOSINA
2   M. LISSEBECK (201654)
    Yosina.Lissebeck@dinsmore.com
3   CHRISTOPHER B. GHIO (259094)
    Christopher.Ghio@dinsmore.com JACOB
4   R. BOTHAMLEY(319457)
    Jacob.Bothamley@dinsmore.com
5   DINSMORE & SHOHL LLP 655 West
6   Broadway, Ste 800 San Diego,
    Californie 92101 Tél. : (619)
7   400-0500 Fax : (619)
    400-0501

8   Avocat du demandeur, Richard A. Marshack, fiduciaire
9   du LPG Liquidation Trust

10                  TRIBUNAL DES FAILLITES DES ÉTATS-UNIS

11          DISTRICT CENTRAL DE CALIFORNIE - DIVISION DE SANTA ANA

12  |                                    | Chapitre 11

13  Le groupe de pratique en litige PC,   | Numéro de dossier :    8:23-bk-10571-SC 8:25-
                                            Numéro de conseil :    ap-01190-SC
14                          Débiteur.

15                                          AVIS DE CONFORMITÉ OBLIGATOIRE
                                            AVEC LA RÈGLE 7026 DE LA LOI FÉDÉRALE
                                            RÈGLES DE PROCÉDURE DE FAILLITE
16                                          ET LA RÈGLE 7026-1 DE LA LOCALE
                                            RÈGLES DE FAILLITE
17  Richard A. Marshack, administrateur du LPG
    Liquidation Trust,

18                          Demandeur,

19      v.
                                            Juge : L'honorable Scott C. Clarkson
20  Laurent Reiss, résident de Monaco ; MCA Fund ADV Inc.,
21  une société de New York ; LDR International Ltd.,
    une société à responsabilité limitée des îles Vierges
22  britanniques ; et DOES 1 à 10, inclus,

23                          Les défendeurs.

24

25  À TOUS LES DÉFENDEURS :

26      VEUILLEZ PRENDRE NOTE que les parties dans la procédure contradictoire susmentionnée sont

27  tenu de se conformer à la règle 7026 des règles fédérales de procédure de faillite et à la règle 7026-1

28  des règles locales de faillite du district central de Californie. Une copie conforme de la règle

                                            1

Machine Translated by Google

7026 des Règles fédérales de procédure de faillite est jointe aux présentes en tant que pièce 1. Une déclaration vraie et

copie correcte de la règle 7026-1 des règles de faillite locales pour le district central de Californie est

ci-joint en tant que pièce 2.

Daté : 3 septembre 2025                         DINSMORE & SHOHL LLP


                                                Par : /s/ Yosina M. Lissebeck
                                                     Yosina M. Lissebeck
                                                     Jacob R. Bothamley
                                                Avocat du demandeur, Richard A. Marshack,
                                                administrateur du LPG Liquidation Trust



Machine Translated by Google

# PIÈCE 1

Machine Translated by Google

**Règles fédérales de l'USCS, procédure civile R 26, partie 1 sur 5**

À jour jusqu'aux modifications reçues jusqu'au 20 décembre 2024.

Règles fédérales annotées de l'USCS > Règles fédérales de procédure civile > Titre V. Divulgations et découvertes

### Règle 26. Obligation de divulgation ; dispositions générales régissant la communication des pièces

(a) Divulgations requises.

(1) Divulgation initiale.

(A) En général. Sauf dérogation prévue à la règle 26(a)(1)(B) ou disposition contraire du tribunal, une partie doit, sans attendre une demande de communication préalable, fournir aux autres parties :

(i) le nom et, s'ils sont connus, l'adresse et le numéro de téléphone de chaque personne susceptible de détenir des informations pouvant être découvertes – ainsi que les personnes concernées par ces informations – que la partie divulgatrice peut utiliser pour étayer ses prétentions ou ses défenses, à moins que l'utilisation ne soit effectuée uniquement à des fins de mise en accusation ;

(ii) une copie – ou une description par catégorie et emplacement – de tous les documents, informations stockées électroniquement et objets tangibles que la partie divulgatrice a en sa possession, sous sa garde ou sous son contrôle et qu'elle peut utiliser pour étayer ses réclamations ou ses défenses, à moins que l'utilisation ne soit uniquement destinée à la mise en accusation ;

(iii) un calcul de chaque catégorie de dommages réclamés par la partie divulgatrice — qui doit également mettre à disposition pour inspection et copie, conformément à la règle 34, les documents ou autres éléments de preuve, à moins qu'ils ne soient privilégiés ou protégés contre la divulgation, sur lesquels chaque calcul est basé, y compris les éléments portant sur la nature et l'étendue des préjudices subis ; et

(iv) pour inspection et copie conformément à la règle 34, tout contrat d'assurance en vertu duquel une entreprise d'assurance peut être tenue de satisfaire tout ou partie d'un jugement éventuel dans l'action ou d'indemniser ou de rembourser les paiements effectués pour satisfaire au jugement.

(B) Procédures exemptées de divulgation initiale. Les procédures suivantes sont exemptées de divulgation initiale :

(i) une action en révision d'un dossier administratif;

(ii) une action en confiscation réelle découlant d'une loi fédérale;

(iii) une requête en habeas corpus ou toute autre procédure visant à contester une condamnation ou une peine pénale ;

(iv) une action intentée sans avocat par une personne sous la garde des États-Unis, d'un État ou d'une subdivision d'un État ;

(v) une action visant à faire exécuter ou à annuler une assignation ou une assignation administrative ;

(vi) une action des États-Unis visant à recouvrer les prestations versées ;

(vii) une action des États-Unis visant à recouvrer un prêt étudiant garanti par les États-Unis États;

(viii) une procédure accessoire à une procédure devant un autre tribunal; et

(ix) une action visant à faire exécuter une sentence arbitrale.

Machine Translated by Google

Règles fédérales de l'USCS, procédure civile R 26, partie 1 sur 5

(C) Délai de divulgation initiale – En général. Une partie doit procéder à la divulgation initiale dans les 14 jours suivant la conférence des parties prévue à la règle 26(f), sauf si une date différente est fixée par stipulation ou ordonnance du tribunal, ou si une partie conteste, pendant la conférence, que la divulgation initiale n'est pas appropriée dans le cadre de la présente action et formule son objection dans le plan de communication proposé. Pour statuer sur cette objection, le tribunal doit déterminer les divulgations à effectuer, le cas échéant, et fixer le délai de divulgation.

(D) Délai de divulgation initiale – Pour les parties signifiées ou jointes ultérieurement. Une partie signifiée ou jointe pour la première fois après la conférence prévue à la règle 26(f) doit procéder à la divulgation initiale dans les 30 jours suivant la signification ou la jonction, sauf si un délai différent est fixé par stipulation ou ordonnance du tribunal.

(E) Fondement de la divulgation initiale ; excuses inacceptables. Une partie doit procéder à ses divulgations initiales sur la base des informations dont elle dispose raisonnablement. Une partie n'est pas dispensée de procéder à ses divulgations au motif qu'elle n'a pas mené une enquête approfondie sur l'affaire, qu'elle conteste le caractère suffisant des divulgations d'une autre partie ou qu'une autre partie n'a pas procédé aux siennes.

(2) Divulgation du témoignage d'expert.

(A) En général. Outre les divulgations requises par la règle 26(a)(1), une partie doit divulguer aux autres parties l'identité de tout témoin qu'elle pourrait citer au procès pour présenter des preuves en vertu des articles 702, 703 ou 705 de la Règle fédérale de preuve .

(B) Témoins tenus de fournir un rapport écrit. Sauf disposition contraire ou ordonnance du tribunal, cette divulgation doit être accompagnée d'un rapport écrit, rédigé et signé par le témoin, s'il s'agit d'un témoin spécialement engagé pour témoigner en tant qu'expert dans l'affaire ou dont les fonctions d'employé de la partie impliquent régulièrement de témoigner en tant qu'expert. Le rapport doit contenir :

(i) un exposé complet de toutes les opinions que le témoin exprimera ainsi que les fondements et les raisons de celles-ci;

(ii) les faits ou les données pris en compte par le témoin pour les former;

(iii) toutes les pièces qui serviront à les résumer ou à les étayer;

(iv) les qualifications du témoin, y compris une liste de toutes les publications rédigées au cours des 10 dernières années années;

(v) une liste de tous les autres cas dans lesquels, au cours des quatre années précédentes, le témoin a témoigné en tant qu'expert au procès ou par déposition; et

(vi) une déclaration de l'indemnité à verser pour l'étude et le témoignage dans l'affaire.

(C) Témoins ne fournissant pas de rapport écrit. Sauf disposition contraire ou ordonnance du tribunal, si le témoin n'est pas tenu de fournir un rapport écrit, cette divulgation doit préciser :

(i) le sujet sur lequel le témoin est censé présenter des preuves en vertu des règles fédérales de preuve 702, 703 ou 705 ; et

(ii) un résumé des faits et des opinions sur lesquels le témoin est censé témoigner.

(D) Délai de divulgation des témoignages d'experts. Une partie doit procéder à ces divulgations aux moments et selon l'ordre fixés par le tribunal. Sauf stipulation ou ordonnance du tribunal, les divulgations doivent être effectuées :

(i) au moins 90 jours avant la date fixée pour le procès ou pour que l'affaire soit prête pour le procès; ou

(ii) si la preuve vise uniquement à contredire ou à réfuter la preuve sur le même sujet identifié par une autre partie en vertu de la règle 26(a)(2)(B) ou (C), dans les 30 jours suivant la divulgation par l'autre partie.

(E) Compléter la divulgation. Les parties doivent compléter ces divulgations lorsque cela est requis en vertu de la règle 26(e).

Machine Translated by Google

Règles fédérales de l'USCS, procédure civile R 26, partie 1 sur 5

(3) Divulgations préalables au procès.

(A) En général. Outre les informations requises par la règle 26(a)(1) et (2), une partie doit fournir aux autres parties et déposer sans délai les informations suivantes concernant les preuves qu'elle pourrait présenter au procès, sauf dans le cadre de la seule mise en accusation :

(i) le nom et, s'ils n'ont pas été fournis précédemment, l'adresse et le numéro de téléphone de chaque témoin, en identifiant séparément ceux que la partie prévoit présenter et ceux qu'elle peut appeler si le besoin s'en fait sentir;

(ii) la désignation des témoins dont la partie prévoit présenter le témoignage par déposition et, si celui-ci n'est pas pris en sténographie, une transcription des parties pertinentes de la déposition; et

(iii) une identification de chaque document ou autre pièce, y compris des résumés d'autres preuves, identifiant séparément les éléments que la partie s'attend à présenter et ceux qu'elle peut présenter si le besoin s'en fait sentir.

(B) Délai de divulgation préalable au procès ; Objections. Sauf ordonnance contraire du tribunal, ces divulgations doivent être faites au moins 30 jours avant le procès. Dans les 14 jours suivant leur communication, sauf si le tribunal fixe un délai différent, une partie peut signifier et déposer sans délai une liste des objections suivantes : toute objection à l'utilisation, en vertu de la règle 32(a), d'une déposition désignée par une autre partie en vertu de la règle 26(a)(3)(A)(ii) ; et toute objection, motivée, pouvant être formulée à l'admissibilité des documents identifiés en vertu de la règle 26(a)(3)(A)(iii). Toute objection non formulée, à l'exception de celle formulée en vertu des articles 402 ou 403 de la Règle fédérale de preuve . est levée, sauf si le tribunal l'excuse pour un motif valable.

(4) Forme des divulgations. Sauf ordonnance contraire du tribunal, toutes les divulgations prévues à la règle 26(a) doivent être faites par écrit, signées et signifiées.

(b) Portée et limites de la découverte.

(1) Portée générale. Sauf ordonnance du tribunal, la portée de la communication préalable est la suivante : les parties peuvent obtenir une communication préalable sur toute question non privilégiée pertinente à leur demande ou à leur défense, proportionnelle aux besoins de l'affaire, compte tenu de l'importance des enjeux de l'action, du montant en litige, de l'accès relatif des parties aux informations pertinentes, de leurs ressources, de l'importance de la communication préalable pour résoudre les problèmes et de la question de savoir si la charge ou le coût de la communication préalable proposée dépassent son utilité probable. Les informations relevant de cette portée de communication préalable n'ont pas besoin d'être admissibles en preuve pour être communicables.

(2) Limitations de fréquence et d'étendue.

(A) Lorsque cela est autorisé. Le tribunal peut, par ordonnance, modifier les limites fixées par le présent règlement concernant le nombre de dépositions et d'interrogatoires ou la durée des dépositions en vertu de la règle 30. Le tribunal peut également, par ordonnance ou par règlement local, limiter le nombre de demandes en vertu de la règle 36.

(B) Limitations spécifiques aux informations stockées électroniquement. Une partie n'est pas tenue de fournir la communication d'informations stockées électroniquement provenant de sources qu'elle identifie comme n'étant pas raisonnablement accessibles en raison d'une charge ou d'un coût excessifs. Lors d'une requête en communication forcée ou d'une ordonnance conservatoire, la partie sollicitée doit démontrer que les informations ne sont pas raisonnablement accessibles en raison d'une charge ou d'un coût excessifs. Si cette démonstration est faite, le tribunal peut néanmoins ordonner la communication de ces informations à partir de ces sources si la partie requérante justifie d'un motif valable, compte tenu des limites de la règle 26(b)(2)(C). Le tribunal peut fixer les conditions de la communication.

(C) Lorsque requis. Sur requête ou de sa propre initiative, le tribunal doit limiter la fréquence ou l'étendue de la communication des pièces, autrement autorisée par les présentes règles ou par la réglementation locale, s'il estime que :

(i) la découverte recherchée est déraisonnablement cumulative ou redondante, ou peut être obtenue auprès d'une autre source plus pratique, moins contraignante ou moins coûteuse ;

Machine Translated by Google

Règles fédérales de l'USCS, procédure civile R 26, partie 1 sur 5

(ii) la partie qui demande la communication préalable a eu amplement l'occasion d'obtenir les renseignements par communication préalable dans le cadre de l'action; ou

(iii) la découverte proposée dépasse le cadre autorisé par la règle 26(b)(1).

(3) Préparation de l'essai : Matériel.

(A) Documents et objets tangibles. En règle générale, une partie ne peut pas divulguer les documents et objets tangibles préparés en prévision d'un litige ou d'un procès par ou pour une autre partie ou son représentant (y compris l'avocat, le consultant, la caution, le garant, l'assureur ou le mandataire de l'autre partie). Toutefois, sous réserve de la règle 26(b)(4), ces documents peuvent être divulgués si :

(i) ils sont autrement découvrables en vertu de la règle 26(b)(1); et

(ii) la partie démontre qu'elle a un besoin substantiel des documents pour préparer sa cause et qu'elle ne peut pas, sans difficultés excessives, obtenir leur équivalent substantiel par d'autres moyens.

(B) Protection contre la divulgation. Si le tribunal ordonne la communication de ces documents, il doit protéger contre la divulgation les impressions mentales, les conclusions, les opinions ou les théories juridiques de l'avocat ou de tout autre représentant d'une partie concernant le litige.

(C) Déclaration antérieure. Toute partie ou autre personne peut, sur demande et sans les preuves requises, obtenir sa propre déclaration antérieure concernant l'action ou son objet. Si la demande est refusée, la personne peut demander une ordonnance du tribunal, et la règle 37(a)(5) s'applique à l'attribution des dépens. Une déclaration antérieure est :

(i) une déclaration écrite que la personne a signée ou autrement adoptée ou approuvée; ou

(ii) un enregistrement sténographique, mécanique, électrique ou autre contemporain — ou une transcription de celui-ci — qui récite sensiblement mot pour mot la déclaration orale de la personne.

(4) Préparation du procès : Experts.

(A) Déposition d'un expert susceptible de témoigner. Une partie peut faire déposer toute personne identifiée comme expert dont les opinions peuvent être présentées au procès. Si la règle 26(a)(2)(B) exige un rapport de l'expert, la déposition ne peut avoir lieu qu'après la remise de ce rapport.

(B) Protection des projets de rapports ou de divulgations pour la préparation du procès. Les règles 26(b)(3)(A) et (B) protègent les projets de tout rapport ou divulgation requis en vertu de la règle 26(a)(2), quelle que soit la forme sous laquelle le projet est enregistré.

(C) Protection des communications entre l'avocat d'une partie et les témoins experts lors de la préparation du procès. Les règles 26(b)(3)(A) et (B) protègent les communications entre l'avocat d'une partie et tout témoin tenu de fournir un rapport en vertu de la règle 26(a)(2)(B), quelle que soit la forme de ces communications, sauf dans la mesure où celles-ci :

(i) se rapportent à la rémunération de l'étude ou du témoignage de l'expert;

(ii) identifier les faits ou les données que l'avocat de la partie a fournis et que l'expert a pris en compte pour formuler les opinions à exprimer ; ou

(iii) identifier les hypothèses fournies par l'avocat de la partie et sur lesquelles l'expert s'est appuyé pour formuler les opinions à exprimer.

(D) Expert employé uniquement pour la préparation du procès. En règle générale, une partie ne peut, par interrogatoire ou déposition, découvrir les faits connus ou les opinions d'un expert retenu ou spécialement employé par une autre partie en prévision d'un litige ou pour préparer le procès, et qui n'est pas censé être cité comme témoin au procès. Cependant, une partie ne peut le faire que :

(i) comme prévu à la règle 35(b); ou

(ii) en démontrant des circonstances exceptionnelles dans lesquelles il est impossible pour la partie d'obtenir des faits ou des opinions sur le même sujet par d'autres moyens.

Machine Translated by Google

Règles fédérales de l'USCS, procédure civile R 26, partie 1 sur 5

(E) Paiement. Sauf si une injustice manifeste en résulte, le tribunal doit exiger de la partie qui demande la communication préalable :

(i) payer à l'expert des honoraires raisonnables pour le temps consacré à répondre à la communication préalable en vertu de la règle 26(b)(4)(A) ou (D) ; et

(ii) pour la découverte en vertu de (D), payer également à l'autre partie une part équitable des honoraires et des dépenses qu'elle a raisonnablement engagés pour obtenir les faits et les opinions de l'expert.

(5) Revendication de privilège ou protection des documents de préparation du procès.

(A) Informations non divulguées. Lorsqu'une partie retient des informations autrement dévoilables en prétendant qu'elles sont privilégiées ou protégées en tant que documents préparatoires au procès, elle doit :

(i) formuler expressément la réclamation; et

(ii) décrire la nature des documents, des communications ou des choses tangibles non produits ou divulgués, et le faire d'une manière qui, sans révéler des informations elles-mêmes privilégiées ou protégées, permettra aux autres parties d'évaluer la réclamation.

(B) Informations produites. Si des informations produites lors de la communication préalable font l'objet d'une revendication de privilège ou de protection en tant que documents préparatoires au procès, la partie qui formule cette revendication peut en informer toute partie ayant reçu les informations et en préciser le fondement. Après avoir été notifiée, une partie doit restituer, mettre sous séquestre ou détruire sans délai les informations spécifiées et toute copie qu'elle détient ; ne doit ni utiliser ni divulguer les informations jusqu'au règlement de la réclamation ; doit prendre des mesures raisonnables pour récupérer les informations si elle les a divulguées avant d'en avoir été informée ; et peut les présenter sans délai au tribunal sous scellés pour qu'il statue sur la réclamation. La partie qui les produit doit conserver les informations jusqu'au règlement de la réclamation.

(c) Ordonnances de protection.

(1) En général. Une partie ou toute personne visée par une demande de communication préalable peut demander une ordonnance au tribunal où l'action est en cours ou, à titre subsidiaire, pour les questions relatives à une déposition, au tribunal du district où la déposition sera recueillie. La requête doit inclure une attestation attestant que le requérant a, de bonne foi, consulté ou tenté de consulter les autres parties concernées afin de résoudre le litige sans recours judiciaire. Le tribunal peut, pour un motif valable, rendre une ordonnance visant à protéger une partie ou une personne contre tout désagrément, embarras, oppression ou fardeau ou frais excessifs, notamment un ou plusieurs des motifs suivants :

(A) interdire la divulgation ou la découverte;

(B) précisant les modalités, y compris le moment et le lieu ou la répartition des dépenses, pour la divulgation ou la découverte;

(C) prescrire une méthode de découverte autre que celle choisie par la partie qui demande la découverte;

(D) interdire toute enquête sur certaines questions ou limiter la portée de la divulgation ou de la découverte à certaines questions ;

(E) désignant les personnes qui peuvent être présentes pendant la conduite de la découverte;

(F) exigeant qu'une déposition soit scellée et ouverte uniquement sur ordonnance du tribunal ;

(G) exigeant qu'un secret commercial ou d'autres informations confidentielles de recherche, de développement ou commerciales ne soient pas révélés ou ne soient révélés que d'une manière spécifiée ; et

(H) exigeant que les parties déposent simultanément des documents ou des informations spécifiques dans des enveloppes scellées, à ouvrir selon les directives du tribunal.

(2) Ordonnance de communication préalable. Si une requête en ordonnance de protection est rejetée en tout ou en partie, le tribunal peut, à des conditions équitables, ordonner à toute partie ou personne de procéder à la communication préalable.

Machine Translated by Google

Règles fédérales de l'USCS, procédure civile R 26, partie 1 sur 5

(3) Attribution des frais. La règle 37(a)(5) s'applique à l'attribution des frais.

(d) Moment et séquence de la découverte.

(1) Délai. Une partie ne peut solliciter la communication préalable de documents auprès de quelque source que ce soit avant que les parties ne se soient concertées comme l'exige la règle 26(f), sauf dans le cadre d'une procédure exemptée de divulgation initiale en vertu de la règle 26(a) (1)(B), ou lorsque les présentes règles, une stipulation ou une ordonnance du tribunal l'autorisent.

(2) Demandes anticipées en vertu de la règle 34.

(A) Délai de remise. Plus de 21 jours après la signification de l'assignation et de la plainte à une partie, une demande en vertu de la règle 34 peut être remise :

(i) à cette partie par toute autre partie, et

(ii) par cette partie à tout demandeur ou à toute autre partie qui a été signifiée.

(B) Date de signification : La demande est réputée avoir été signifiée lors de la première conférence prévue à la règle 26(f).

(3) Séquence. Sauf convention contraire des parties ou ordonnance contraire du tribunal pour la commodité des parties et des témoins et dans l'intérêt de la justice :

(A) les méthodes de découverte peuvent être utilisées dans n'importe quel ordre ; et

(B) la découverte par une partie n'oblige pas une autre partie à retarder sa découverte.

(e) Compléter les divulgations et les réponses.

(1) En général. La partie qui a divulgué des éléments de preuve en vertu de la règle 26(a) — ou qui a répondu à un interrogatoire, à une demande de production ou à une demande d'admission —- doit compléter ou corriger ses éléments de preuve ou sa réponse :

(A) en temps opportun si la partie apprend que, sur un point important, la divulgation ou la réponse est incomplète ou incorrecte, et si les informations supplémentaires ou correctives n'ont pas été portées à la connaissance des autres parties au cours du processus de découverte ou par écrit ; ou

(B) tel qu'ordonné par le tribunal.

(2) Témoin expert. Pour un expert dont le rapport doit être divulgué en vertu de la règle 26(a)(2)(B), l'obligation de la partie de compléter s'étend à la fois aux informations contenues dans le rapport et à celles fournies lors de la déposition de l'expert. Tout ajout ou modification à ces informations doit être divulgué au plus tard à la date à laquelle la partie doit fournir ses informations préalables au procès en vertu de la règle 26(a)(3).

(f) Conférence des Parties ; Planification de la découverte.

(1) Moment de la conférence. Sauf dans le cas d'une procédure exemptée de divulgation initiale en vertu de la règle 26(a)(1)(B) ou lorsque le tribunal en ordonne autrement, les parties doivent se concerter dès que possible — et en tout état de cause au moins 21 jours avant la tenue d'une conférence de fixation du calendrier ou l'échéance d'une ordonnance de fixation du calendrier en vertu de la règle 16(b).

(2) Contenu de la conférence ; Responsabilités des parties. Lors de la conférence, les parties doivent examiner la nature et le fondement de leurs prétentions et de leurs défenses, ainsi que les possibilités de règlement amiable ou de résolution rapide de l'affaire ; effectuer ou faire effectuer les divulgations requises par la règle 26(a)(1) ; discuter de toute question relative à la préservation des informations susceptibles d'être découvertes ; et élaborer un projet de plan de communication préalable. Les avocats inscrits au dossier et toutes les parties non représentées ayant comparu dans l'affaire sont conjointement responsables de l'organisation de la conférence, de la tentative de bonne foi de parvenir à un accord sur le plan de communication préalable proposé et de la soumission au tribunal, dans les 14 jours suivant la conférence, d'un rapport écrit décrivant ce plan. Le tribunal peut ordonner aux parties ou aux avocats d'assister personnellement à la conférence.

(3) Plan de communication préalable. Un plan de communication préalable doit exposer les points de vue et propositions des parties sur :

(A) quels changements devraient être apportés au calendrier, à la forme ou aux exigences en matière de divulgation en vertu de la règle 26(a), y compris une déclaration indiquant quand les divulgations initiales ont été faites ou seront faites ;

Machine Translated by Google

Règles fédérales de l'USCS, procédure civile R 26, partie 1 sur 5

(B) les sujets sur lesquels la découverte peut être nécessaire, le moment où la découverte devrait être achevée et si la découverte devrait être menée par phases ou être limitée ou axée sur des questions particulières ;

(C) toute question relative à la divulgation, à la découverte ou à la préservation des informations stockées électroniquement, y compris la ou les formes sous lesquelles elles doivent être produites ;

(D) toute question relative aux revendications de privilège ou de protection en tant que documents de préparation au procès, y compris – si les parties conviennent d'une procédure pour faire valoir ces revendications après la production – s'il faut demander au tribunal d'inclure leur accord dans une ordonnance en vertu de la règle fédérale de preuve 502 ;

(E) quels changements devraient être apportés aux limitations de la découverte imposées en vertu de ces règles ou par une règle locale, et quelles autres limitations devraient être imposées ; et

(F) toute autre ordonnance que le tribunal devrait rendre en vertu de la règle 26(c) ou de la règle 16(b) et (c).

(4) Calendrier accéléré. Si nécessaire, pour respecter son calendrier accéléré pour les conférences visées à la règle 16(b), un tribunal peut, par règlement local :

(A) exiger que la conférence des parties ait lieu moins de 21 jours avant la tenue de la conférence de planification ou qu'une ordonnance de planification soit rendue en vertu de la règle 16(b) ; et

(B) exiger que le rapport écrit décrivant le plan de découverte soit déposé moins de 14 jours après la conférence des parties, ou dispenser les parties de soumettre un rapport écrit et leur permettre de rendre compte oralement de leur plan de découverte lors de la conférence de la règle 16(b).

(g) Signature des demandes de divulgation et de découverte, des réponses et des objections.

(1) Signature requise ; effet de la signature. Toute divulgation en vertu de la règle 26(a)(1) ou (a)(3) et toute demande, réponse ou objection de communication préalable doivent être signées par au moins un avocat inscrit au dossier, en son nom propre – ou par la partie personnellement, si elle n'est pas représentée – et doivent indiquer l'adresse, l'adresse courriel et le numéro de téléphone du signataire. En signant, l'avocat ou la partie certifie qu'au meilleur de sa connaissance, des informations et des convictions qu'il a recueillies après une enquête raisonnable :

(A) en ce qui concerne une divulgation, elle est complète et exacte au moment où elle est faite ; et

(B) en ce qui concerne une demande de communication, une réponse ou une objection, il s'agit :

(i) conforme aux présentes règles et justifiée par la loi existante ou par un argument non frivole en faveur de l'extension, de la modification ou de l'annulation de la loi existante, ou de l'établissement d'une nouvelle loi ;

(ii) ne pas intervenir à des fins inappropriées, telles que harceler, causer un retard inutile ou augmenter inutilement le coût du litige ; et

(iii) ni déraisonnable, ni excessivement onéreuse ou coûteuse, compte tenu des besoins de l'affaire, de la découverte antérieure dans l'affaire, du montant en litige et de l'importance des questions en jeu dans l'action.

(2) Défaut de signature. Les autres parties ne sont pas tenues de donner suite à une divulgation, une demande, une réponse ou une objection non signée tant qu'elle n'est pas signée, et le tribunal doit la rayer à moins qu'une signature ne soit fournie rapidement après que l'omission a été portée à l'attention de l'avocat ou de la partie.

(3) Sanction pour certification irrégulière. Si une certification contrevient à cette règle sans justification substantielle, le tribunal, sur requête ou de sa propre initiative, doit imposer une sanction appropriée au signataire, à la partie pour le compte de laquelle il agissait, ou aux deux. Cette sanction peut inclure une ordonnance de paiement des frais raisonnables, y compris les honoraires d'avocat, occasionnés par la violation.

## Histoire

Modifié le 27 décembre 1946, en vigueur le 19 mars 1948 ; le 21 janvier 1963, en vigueur le 1er juillet 1963 ; le 28 février 1966, en vigueur le 1er juillet 1966 ; le 30 mars 1970, en vigueur le 1er juillet 1970 ; le 29 avril 1980, en vigueur le 1er août 1980 ; le 28 avril 1983, en vigueur le 1er août 1983 ; le 2 mars 1987,

Machine Translated by Google

Règles fédérales de l'USCS, procédure civile R 26, partie 1 sur 5

en vigueur le 1er août 1987; en vigueur le 1er décembre 1993; en vigueur le 1er décembre 2000; en vigueur le 1er décembre 2006; en vigueur le 1er décembre 2007; en vigueur le 28 avril 2010; en vigueur le 1er décembre 2010; en vigueur le 29 avril 2015; en vigueur le 1er décembre 2015.

Machine Translated by Google

# PIÈCE 2

Machine Translated by Google

LBR 7026-1

(2) Autres parties. Toute partie autre que le demandeur qui n'a pas reçu la proposition de stipulation préalable
au procès dans les délais prévus au paragraphe (c) de la présente règle doit préparer, déposer et
signifier, au moins 14 jours avant le procès ou la conférence préalable au procès, si une telle conférence
est ordonnée, une déclaration attestant du manquement du demandeur à préparer et signifier une
proposition de stipulation préalable au procès en temps opportun.

(f) Sanctions en cas de non-respect de la règle. Outre les sanctions prévues par l'article 16(f) du FRCiv.P., si une
déclaration de conférence de mise en état ou une proposition conjointe de stipulation préalable au procès n'est
pas déposée dans les délais prévus respectivement aux paragraphes (a), (b) ou (e) de la présente règle, le
tribunal peut ordonner une ou plusieurs des mesures suivantes :

(1) Une prolongation de la date du procès, si aucun préjudice n'est causé à la partie qui n'est pas
en faute;

(2) Entrée d'une ordonnance préalable au procès basée sur la description proposée par la partie conforme de la
faits et droit;

(3) Une attribution de sanctions pécuniaires, y compris des honoraires d'avocat contre la partie fautive et/ou
l'avocat, payables à la partie non fautive ; et/ou

(4) L'attribution de sanctions non pécuniaires contre la partie fautive, y compris l'inscription d'un jugement de
rejet ou l'inscription d'une ordonnance annulant la réponse et inscrivant un défaut.

(g) Défaut de comparution à l'audience ou de préparation au procès. Le défaut de l'avocat d'une partie (ou de la
partie elle-même, si elle n'est pas représentée par un avocat) de comparaître devant le tribunal lors de la
conférence de mise en état ou de la conférence préparatoire au procès, ou d'effectuer les préparatifs nécessaires
à cet effet, ou de comparaître ou de se préparer au procès peut être considéré comme un abandon ou un défaut
de poursuite ou de défense diligente, et un jugement peut être rendu contre la partie défaillante, soit sur une
question spécifique, soit sur l'ensemble de la procédure, ou la procédure peut être rejetée.

LBR 7026-1. DÉCOUVERTE

(un) Généralités. Le respect de la norme FRBP 7026 et de cette règle est requis dans toutes les procédures
contradictoires.

(1) Avis. Le demandeur doit joindre à l'assignation et à la plainte un avis précisant que le respect de la FRBP
7026 et de la présente règle est requis.

(2) Preuve de signification. Le demandeur doit déposer une preuve de signification du présent avis avec
avec la preuve de la signification de l'assignation et de la plainte.

(b) Conférence de découverte et divulgations.

(1) Conférence des parties. Sauf défaut de tous les défendeurs, les parties doivent tenir la réunion et échanger
les informations requises par la règle FRBP 7026 dans les délais qui y sont fixés. Sauf ordonnance
contraire, la conférence initiale sur l'état d'avancement de la procédure est Pièce 2, page 13.

Machine Translated by Google

LBR 7026-1

constitue la « conférence de planification » visée dans le FRCP 26(f)(1) (incorporé par le FRBP 7026).

(2) Rapport conjoint sur l'état d'avancement. Dans les 7 jours suivant la réunion, les parties doivent préparer un rapport conjoint sur l'état d'avancement contenant les informations prévues à l'article 7016-1(a)(2) du LBR. Ce rapport servira de compte rendu écrit de la réunion exigé par le FRBP. 7026.

(c)    Défaut de divulgation ou de coopération lors de la découverte.

(1) Généralités. Sauf dispense du respect de cette règle par ordonnance du tribunal pour motif valable, une partie doit chercher à résoudre tout litige découlant du FRBP. 7026-7037 ou FRBP 2004 conformément à cette règle.

(2) Réunion des parties. Avant le dépôt de toute requête relative à la communication préalable, les parties doivent se rencontrer en personne ou par téléphone afin de tenter de résoudre un litige relatif à la communication préalable. Il incombe à la partie requérante d'organiser la conférence. Sauf modification convenue entre les parties ou par ordonnance du tribunal pour un motif valable, la partie adverse doit rencontrer la partie requérante dans les 7 jours suivant la signification à la partie adverse d'une lettre demandant une telle réunion et précisant les termes de l'ordonnance de communication préalable sollicitée.

(3) Documents de requête. Si les parties ne parviennent pas à résoudre le litige, la partie qui demande la communication préalable doit déposer et signifier un avis de requête accompagné d'une stipulation écrite des parties.

(A) La stipulation doit être contenue dans un seul document et doit identifier, séparément et avec précision, chaque question litigieuse qui reste à déterminer à l'audience ainsi que les prétentions, les points et les autorités de chaque partie quant à chaque question.

(B) La stipulation ne doit pas simplement renvoyer le tribunal au document contenant la demande de communication préalable à l'origine du litige. Par exemple, si la suffisance d'une réponse à un interrogatoire est en cause, la stipulation doit reprendre textuellement l'interrogatoire et la réponse prétendument insuffisante, suivis des arguments de chaque partie, exposés séparément.

(C) En l'absence d'une telle stipulation ou d'une déclaration de non-coopération d'une partie par la partie adverse, le tribunal n'examinera pas la requête en communication préalable.

(4) Coopération des parties ; sanctions. Le défaut d'une partie de coopérer à la présente procédure, d'assister à la réunion des parties ou de fournir à la partie requérante les informations nécessaires à la préparation de la stipulation requise par la présente règle dans les délais impartis constitue une infraction. 7 jours après la réunion des parties, des sanctions seront imposées, y compris les sanctions autorisées par FRBP 7037 et LBR 9011-3.

Machine Translated by Google



(5) Outrage. La LBR 9020-1 régissant les procédures d'outrage s'applique à une requête de communication visant à contraindre une non-partie à se conformer à une assignation à comparaître pour témoignage et/ou documents en vertu des FRBP 7030 et 7034.

## LBR 7026-2. DOCUMENTS DE DÉCOUVERTE – CONSERVATION, ARCHIVAGE ET COPIES

(un)  Conservation par la partie qui présente la demande. Les documents de communication suivants et leur preuve de signification ne doivent pas être déposés auprès du greffier avant qu'une procédure ne soit engagée dans laquelle ils sont en cause :

(1) Transcriptions des dépositions lors d'un interrogatoire oral; (2) Transcriptions des dépositions lors de questions écrites; (3) Interrogatoires;

(4) Réponses ou objections aux interrogatoires; (5) Demandes de production de documents ou d'inspection de choses tangibles; (6) Réponses ou objections aux demandes de production de documents ou d'inspection de choses tangibles;

(7) Demandes d'admission;
(8) Réponses ou objections aux demandes d'admission ; (9) Avis de déposition, à moins que le dépôt ne soit requis pour obtenir la délivrance d'une assignation à comparaître dans un autre district ; et (10) Assignation à comparaître ou assignation à comparaître Duces Tecum.

(b) Durée de conservation des documents de communication préalable. Les documents de communication préalable doivent être conservés par l'avocat de la partie qui les présente en attendant leur utilisation conformément à la présente règle pendant la durée spécifiée dans la LBR 9070-1(b) pour la conservation des pièces, sauf ordonnance contraire du tribunal.

(c)  Dépôt de documents de découverte.

(1) Lorsque cela est requis dans une procédure, seule la partie du document qui est en cause doit être déposée auprès du tribunal.

(2) Une fois déposés, les documents de découverte doivent être soumis avec un avis de dépôt qui identifie la date, l'heure et le lieu de l'audience ou du procès au cours duquel ils doivent être présentés.

(3) Les transcriptions originales des dépositions sont considérées comme des pièces à conviction et doivent être remises au juge pour être utilisées lors de l'audience ou du procès. La transcription originale et une copie doivent être déposées auprès du greffier conformément à l'article 7030-1(b) du LBR.

(d) Copies des documents de découverte.

(1) À moins qu'une ordonnance de protection applicable ne prévoie le contraire, toute entité peut obtenir une copie de tout document de découverte décrit au paragraphe (a) de la présente règle en adressant une demande écrite à cet effet au greffier et en payant les frais de duplication.

EXHIBIT 2

**19 SEP 2025**

REGISTERED in MONACO, on
F°/BD *143* Box 4
Received fifty Euros

| PRINCIPALITY OF MONACO |
| 1€ |

<span style="color:red">Me CLAIRE NOTARI
BAILIFF
17, bd Albert 1er
MONACO +377 97 97 09 09</span>

# NOTIFICATION

IN THE YEAR TWO THOUSAND AND TWENTY-FIVE AND THE *EIGHTEENTH*
OF THE MONTH OF SEPTEMBER ,

At the request of the **American company under the laws of the United States in liquidation called "THE LITIGATION PRACTICE GROUP P.C." (LPG),** having its registered office at 17542 E. 17th Street, Suite 100, Tustin, California 92780, - United States of America, represented by Mr. Richard A. Marshack, in his capacity as Liquidator Trustee of the LPG Litigation Trust, domiciled and residing in this capacity in its offices,  MARSHACK HAYS WOOD LLP Law Firm – 870, Roosevelt, Irvine, California 92620, United States of America,

Represented by Mr. Christopher Celentino, Mr. Jacob Bothamley, Mr. Yosina Lissebeck of the law firm DINSMORE & SHOHL LLP – slocated at 655 West Broadway, Suite 800, San Diego, California 92101, United States of America,

Electing for service at the Chambers of Maître Richard MULLOT, Lawyer-Defender at the Court of Appeal of Monaco, residing at 20, boulevard de Suisse,

DOCUMENT SERVED BY
SWORN CLERK

<span style="color:red">I, the undersigned, Claire NOTARI,
Master of Law, Bailiff at the Court of
Appeal of Monaco, residing there, 17,
boulevard Albert 1er</span>

Have signified and headed the one herein given to:

**Mr. Laurent REISS,** residing and domiciled at EUROPA RESIDENCE, Place des Moulins in MONACO, where being and speaking to: *his person.*

**1/** a complaint, in English "**TRUSTEE'S COMPLAINT**", (89 pages), filed by counsel for my applicant before the Judge of the United States Bankruptcy Court, Central District of California – Santa Ana Division on March 18, 2025, registered electronically by the said Court on March 18, 2025, Case No. 8:23-bk-10571-SC, and its translation into French, and **its seven annexes** in English and their translation into French,

**2/** a summons in English "**ANOTHER SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]**" (8 pages) before the United States Bankruptcy Court, CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA, issued by the said Court dated August 27, 2025, and signed by the Deputy Registrar in Case No. 8:23-BK-10571-SC, and its translation into French, Setting the date for the Status Conference at:

**March 19, 2026 at 1:30 p.m.,**

**Before the Judge of the United States Bankruptcy Court, CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA,**
**411W Fourth St., Crtrm 5C, Santa Ana, CA 92701.**

Declaring to the requested party that the time limit for reply set out in the said summons runs from the date hereof,

PRINCIPALITY OF MONACO
1€

Me CLAIRE NOTARI
BAILIFF
17, bd Albert 1er
MONACO +377 97 97 09 09

**3/** a mandatory notice of compliance with Rule 7026-0  of the Federal **Rules of BANKRUPTC Procedure and Rule 7026-1 of the Local Bakruptcy Rules for the Central District of California,**  with two appendices (15 pages) relating to the dispute between the parties before the United States Bankruptcy Court, CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA, pending before the Honourable Judge Scott C. CLARKSON, in case n°8:23-bk-10571-SC and the adversarial case n°8:25-ap-01192-SC dated September 03, 2025 and its translation into French,

Declaring further that if he fails to send his reply or appear within the time limit, he will be required to default against him,

With all reservations and for the purposes of which he is not ignorant, I have given him and left him a copy of the presents, being and speaking as before.

COST: SIX HUNDRED EUROS *(T: 1.50)*